THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHERYL KATER, individually and on behalf of all others similarly situated, | Case No. 15-cv-00612 MJP |
| Plaintiff, | **DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| CHURCHILL DOWNS INCORPORATED, a Kentucky corporation, | ORAL ARGUMENT REQUESTED |
| Defendant. | NOTE ON MOTION CALENDAR: July 24, 2015 |

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    FACTS ................................................................................................................ 3

     A.    The social gaming platform Big Fish Casino ........................................... 3

     B.    Big Fish Casino's Terms of Use ............................................................. 4

III.   LEGAL STANDARD ......................................................................................... 5

IV.    ARGUMENT ...................................................................................................... 6

     A.    The Complaint Fails to State a Claim for Illegal Gambling. ........................ 6

          1.    Plaintiff has not alleged facts that show that Churchill Downs operates an "illegal gambling game," as required by RCW § 4.24.070 ............................................................................. 6

          2.    The Washington State Gambling Commission has determined that Big Fish Casino is not a form of illegal "gambling." ................. 7

          3.    Plaintiff has not stated a basis for legal relief for Churchill Downs' alleged operation of "gambling devices." ........................... 17

     B.    The Claim for Violation of Washington's Consumer Protection Act Should be Dismissed ............................................................................ 20

          1.    Plaintiff's claim for violation of Washington's CPA is entirely contingent upon the claim against Churchill Downs for illegal gambling, which is not legally viable. .............................................. 20

          2.    The Washington CPA does not apply extraterritorially to two foreign parties, Plaintiff and Churchill Downs. ............................... 21

     C.    The Claim for Unjust Enrichment Should be Dismissed .............................. 22

          1.    Plaintiff has not shown any inequity in Churchill Downs' receipt of fees paid by Big Fish Casino customers. ........................... 22

          2.    Plaintiff has not pled facts that show how a user's payment of any fees within Big Fish Casino goes beyond the scope of any contract between such user and Churchill Downs. ........................... 22

     D.    All of Plaintiff's Claims, if not Dismissed, are Confined by the One Year Statute of Limitations in Big Fish Casino's Terms of Use. ................. 23

V.     CONCLUSION .................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................6

*Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*,
  366 F.3d 692 (9th Cir. 2004) ...................................................................20

*Beaton v. JPMorgan Chase Bank N.A.*,
  No. C11-0872 RAJ, 2012 WL 909768 (W.D. Wash. Mar. 15, 2012) ................8

*Broom v. Morgan Stanley DW Inc.*,
  236 P.3d 182 (Wash. 2010)......................................................................26

*Bullseye Distrib. LLC v. State Gambling Comm'n*,
  110 P.3d 1162 (Wash. App. 2005)......................................................21, 22

*Clegg v. Cult Awareness Network*,
  18 F.3d 752 (9th Cir. 1994) ......................................................................6

*Cowiche Canyon Conservancy v. Bosley*,
  828 P.2d 549 (Wash. 1992).....................................................................13

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ...................................................9, 10, 11, 12

*In re Destruction of One Gambling Device*,
  559 P.2d 1003 (Wash. App. 1977)...........................................................16

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) .....................................................................2

*Pareto v. F.D.I.C.*,
  139 F.3d 696 (9th Cir. 1998) ......................................................................6

*Red Lion Hotels Franchising, Inc. v. MAK, LLC*,
  663 F.3d 1080 (9th Cir. 2011) .................................................................24

*Robertson v. GMAC Mortgage LLC*,
  982 F. Supp. 2d 1202 (W.D. Wash. 2013)......................................5, 15, 19, 20

*Segle v. PNC Mortgage*,
  No. 10-5655 RJB, 2011 WL 1098936 (W.D. Wash. Mar. 25, 2011) .................9

*Silverstreak, Inc. v. Washington State Dep't of Labor and Indus.*,
  154 P.3d 891 (Wash. 2007)......................................................................14

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .................................................................6, 23

*Sprint Int'l Commc'ns Cor. v. Dep't of Revenue*,
  226 P.3d 253 (Wash. App. 2010).............................................................14

*State ex rel. Evans v. Bhd. of Friends*,
  247 P.2d 787 (Wash. 1952)...........................................................15, 17, 18

DEFENDANT'S MOTION TO DISMISS- ii
Case No. 15-cv-00612 MJP

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

*State ex rel. Schillberg v. Barnett*,
    488 P.2d 255 (Wash. 1971)..................................................................................15, 17

*State v. Delgado*,
    63 P.3d 792 (Wash. 2003)........................................................................................14

*Thornell v. Seattle Serv. Bureau, Inc.*,
    No. C14-1601 MJP, 2015 WL 999915 (W.D. Wash. Mar. 6, 2015) ...................24

*Tuttle v. Bank of New York Mellon*,
    No. C11-1048-RSM, 2012 WL 726969 (W.D. Wash. Mar. 6, 2012).....................2

*Waste Mgmt. of Seattle, Inc. v. Utilities & Transp. Comm'n*,
    869 P.2d 1034 (Wash. 1994)...............................................................................13, 14

*Young v. Young*,
    191 P.3d 1258 (Wash. 2008).....................................................................................25

**STATUTES**

RCW § 4.24.070 ..............................................................................................................passim

RCW § 9.46 et seq. .........................................................................................................passim

RCW § 19.86 et seq. .......................................................................................................1, 20

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ...........................................................7, 15, 19

DEFENDANT'S MOTION TO DISMISS- iii
Case No. 15-cv-00612 MJP

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

I.     INTRODUCTION

Defendant Churchill Downs Incorporated ("Churchill Downs") is a diversified entertainment company that owns and operates, among its other assets, a digital, free to play game and social entertainment platform called Big Fish Casino ("Big Fish Casino"). Big Fish Casino is free to join, free to play, and never awards money or any other tangible items to users. Despite the fact that Big Fish Casino users cannot win money and the vast majority of these users never pay any money to play,[1] Plaintiff Cheryl Kater ("Plaintiff") brings a Class Action Complaint (Dkt. No. 2) ("Complaint") against Churchill Downs for violation of the "Recovery of money lost at gambling" statute, RCW § 4.24.070, and for operating "unlawful gambling devices." *See* Complaint ¶¶ 49, 52-53. Because of these alleged infractions, Plaintiff also claims that she should recover damages and fees for violation of the Washington Consumer Protection Act, RCW § 19.86.020 ("CPA"), and for unjust enrichment. *See* Complaint ¶¶ 64-65, 76-78.

Plaintiff's case rests entirely on the false premise that Big Fish Casino constitutes gambling under Washington law. However, the Washington State Gambling Commission ("the Gambling Commission" or "the Commission"), the very agency created by and charged with enforcing the statute under which Plaintiff seeks relief, has already considered that exact question and concluded that Big Fish Casino, and other similar social games, do not constitute gambling under the Washington statute because users can never win money or anything tangible. Indeed, one of the key purposes of the Washington gambling statute was to *preserve* forms of social entertainment such as Big Fish Casino. The Big Fish Casino Terms of Use (the "Terms of Use") are consistent and clear in stating that no purchases made in the game can ever lead to a user winning money or any other tangible item, and no user has a property interest in any virtual items purchased in the game.[2] As such, and as described herein, Big Fish Casino does not violate the Washington gambling statute; Churchill Downs is not operating a "gambling device" under

---

[1] From December 2012 through the present, an average of 92% of users played for free.
[2] This Court may rely on the Terms of Use, which are attached to Plaintiff's Complaint. *See* Dkt. No. 5 (Praecipe attaching Exhibit A, Terms of Use.); *Tuttle v. Bank of New York Mellon*, No. C11-1048-RSM, 2012 WL 726969, at *2 (W.D. Wash. Mar. 6, 2012) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

Washington law; and Plaintiff's claims for violation of the CPA and unjust enrichment—which depend entirely on a violation of the gambling statute—therefore fail as well. Thus, the Complaint fails to state a claim upon which relief may be granted, and the Court should dismiss the Complaint with prejudice for the following reasons:

*First*, the Court should dismiss Plaintiff's claim for violation of RCW § 4.24.070 because Big Fish Casino is *not* gambling. This fact is confirmed both by the Gambling Commission and the Terms of Use, which state that players never receive money or any tangible prize by playing Big Fish Casino. *See, e.g.*, Complaint p. 2 n. 1; Dkt. No. 5. In addition, when the Washington legislature enacted the 1973 Gambling Act, upon which the Complaint is premised, the legislature declared that its purpose was to both restrict the "criminal element" of gambling and to preserve entertaining, social pastimes. *See* RCW § 9.46.010. Big Fish Casino, a free game that allows users to socially interact and play games with one another, is precisely the type of "social pastime" that the legislature wanted to protect.

*Second*, the Complaint does not state a cause of action for operation of unlawful gambling devices. Plaintiff alleges that Churchill Downs operates illegal gambling devices, and that a purported class is entitled to damages and other relief based on that operation. *See, e.g.*, Complaint ¶¶ 41, 51-52, 59. However, the Complaint cites no statutory or common law cause of action for operation of unlawful gambling devices, which are defined at RCW § 9.46.0241, and it appears that no private cause of action exists. Further, even if Plaintiff could cite a cause of action for operating a gambling device, the free social games in Big Fish Casino do not provide or reward users with anything of value in return for game play, and as such the games are not gambling devices under the definition contained in RCW § 9.46.0241.

*Third*, because Plaintiff's Washington Consumer Protection Act claim rests entirely on the faulty interpretation of the 1973 Gambling Act, it too must also fail. *See* Complaint ¶¶ 62-66; RCW § 9.46.0241. The Complaint alleges that Churchill Downs violates the CPA <u>because</u> its operation of gambling devices offends public policy and is an unfair and deceptive business method. *See* Complaint ¶¶ 65-66. However, as explained above, even the Gambling Commission

DEFENDANT'S MOTION TO DISMISS- 2
Case No. 15-cv-00612 MJP

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

has recognized that social entertainment games such as Big Fish Casino do **not** constitute illegal gambling. To the contrary, Big Fish Casino is a "social pastime" favored by the 1973 Gambling Act, and is neither gambling nor illegal. Independently, Plaintiff's claim for violation of Washington's CPA should be dismissed because the CPA does not apply extraterritorially to two foreign parties—Plaintiff, who resides in Michigan, and Churchill Downs, which is incorporated in Kentucky.

*Finally*, the unjust enrichment count should be dismissed because it too rests entirely on the gambling claim, which is not legally viable. The Complaint seeks relief for unjust enrichment on the theory that it would be inequitable for Churchill Downs to retain the funds paid by Plaintiff and others for additional virtual currency because Churchill Downs is operating unlawful games of chance, *see* Complaint ¶ 78. However, because the gambling claim fails, so too must Plaintiff's claim for unjust enrichment.

The Complaint does not state a claim upon which relief can be granted for violation of RCW § 4.24.070, for operation of gambling devices, for violation of Washington's CPA, or for unjust enrichment. Churchill Downs respectfully asks the Court to dismiss the Complaint with prejudice for failure to state a claim.

## II.   FACTS

### A.  The social gaming platform Big Fish Casino

Churchill Downs, a Kentucky corporation, owns Big Fish Casino, a digital, social game that is available for play on computers and mobile devices.[3] Big Fish Casino is one of the many "free to play" games made available to users via the internet and on various platforms, including personal computers and mobile devices, in recent years. In a typical "free to play" game, users may play for free, but may also be offered the opportunity to purchase virtual items to supplement their in-game experience. For example, in the popular game "Hay Day," a user operates a virtual

---

[3]  Big Fish Casino is available at: http://www.bigfishgames.com/online-games/19475/big-fish-casino/index.html (accessed June 8, 2015).

DEFENDANT'S MOTION TO DISMISS- 3
Case No. 15-cv-00612 MJP

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

farm and may earn virtual points by exchanging goods.[4] There is also a "wheel of fortune" that users can spin once per day free of charge that awards virtual currency or virtual items. Users may, but are not required to, purchase additional spins. Users may also happen upon "treasure chests" that contain virtual currency and other virtual items. Hay Day and myriad games like it, including the widely played "FarmVille," are available to users in a variety of online platforms and allow users to make in-game purchases of virtual items or currency, but never give users any real currency or tangible merchandise in return.[5]

In Big Fish Casino, users access the game online and then play using virtual currency in the form of virtual chips and gold bars, which Big Fish Casino continually distributes for free at various times during a user's game play. *See* Complaint ¶ 3. In addition, users may, but are not required to, buy additional virtual currency. However, virtual currency cannot ever be "cashed out" for real currency or any other tangible item. *See id.* at ¶ 33-34. Further, Big Fish Casino does not allow users to "sell" virtual currency to one another, and in fact Big Fish's Terms of Use expressly prohibit such activity, as noted below. *See id.*[6] Big Fish Casino allows users to buy a gift of virtual chips for another user within the game, but the chips are not transferred between players, and the giver neither loses any virtual chips from his or her account during this transaction, nor does the giver or Churchill Downs receive any compensation when gifts are made.

**B.    Big Fish Casino's Terms of Use**

Participation in Big Fish Casino is governed by the Terms of Use. The Terms of Use state, among other things, that (1) virtual currency or chips have no value, (2) the game will not "cash out" any virtual currency, and (3) virtual currency may not be sold. The Terms of Use state:

---

[4] Available at http://haydaygame.com/ (accessed June 26, 2015).
[5] FarmVille is available at https://www.farmville.com. Other examples include Boom Beach (http://boombeach.com/) Game of War (http://www.gameofwarapp.com/), and Gummy Drop! (http://www.bigfishgames.com/daily/gummy-drop/the-best-candy-game/) (all web addresses accessed June 26, 2015).
[6] Big Fish Casino's current Terms of Use are available at: http://www.bigfishgames.com/company/terms.html (accessed June 8, 2015). Those terms include a binding arbitration provision. Churchill Downs is evaluating that provision, and reserves its right to file a motion to compel arbitration.

DEFENDANT'S MOTION TO DISMISS- 4
Case No. 15-cv-00612 MJP

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

**VIRTUAL ITEMS**:

Certain Big Fish Offerings may provide you with the opportunity to license a variety of virtual items such as virtual currency, virtual goods, additional levels and content packs ("virtual items") that can be used while playing the Big Fish Offering. [ . . . ].

You have **no property interest** in any virtual item. Any purchase of virtual items, and virtual items accumulated through any applicable Big Fish Offering membership benefits, are purchases of a limited, non-transferable, revocable license to use those virtual items within the applicable Big Fish Offering. **Virtual items may not be transferred or resold for commercial gain** in any manner, including, without limitation, by means of any direct sale or auction service. **Virtual items may not be purchased or sold from any individual or other company via cash, barter or any other transaction.** Virtual items have **no monetary value**, and cannot be used to purchase or use products or services other than within the applicable Big Fish Offering. Virtual items cannot be refunded or exchanged for cash or any other tangible value. [ . . . ].

Dkt No. 5-1 at 2 (emphasis added).

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when the allegations contained within it fail to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *Robertson v. GMAC Mortgage LLC*, 982 F. Supp. 2d 1202, 1206 (W.D. Wash. 2013). In order to survive a 12(b)(6) motion to dismiss, a complaint must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating whether that standard has been satisfied, the court accepts as true all material allegations of the complaint, as well as all reasonable inferences to be drawn therefrom. *See Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The court construes the complaint in the light most favorable to the nonmoving party. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). However, the court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See id.* (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994)).

## IV.   ARGUMENT

### A.   The Complaint Fails to State a Claim for Illegal Gambling.

The Complaint alleges both that Churchill Downs has violated RCW § 4.24.070, the "Recovery of money lost at gambling statute," and that Churchill Downs is liable for operation of "gambling devices," as defined by RCW § 9.46.0241. *See* Complaint p. 16 (listing First Cause of Action as "Violations of RCW § 4.24.070); ¶ 59 (claiming entitlement to an injunction, damages, fees, and costs due to Churchill Downs' operation of gambling devices); ¶ 65 (alleging that Churchill Downs violated Washington's Consumer Protection Act by operating gambling devices). Both charges should be dismissed for failure to state a claim.

#### 1.   *Plaintiff has not alleged facts that show that Churchill Downs operates an "illegal gambling game," as required by RCW § 4.24.070.*

Plaintiff first alleges that Churchill Downs' operation of Big Fish Casino entitles the class to relief under RCW § 4.24.070, which allows for the "Recovery of money lost at gambling." That statute provides:

> All persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost.

Thus, Kater must allege facts that show that she and other members of the putative class have lost money or something of value on an "illegal gambling game." The Complaint fails this test for several reasons. Critically, the Gambling Commission has evaluated social games and determined that the virtual currency or "chips" awarded in Big Fish Casino do not constitute a prize under the specific statute alleged by Kater. Thus, the Gambling Commission has concluded that social games, including specifically Big Fish Casino, are not gambling. That interpretation is consistent with the reasoning of Washington courts, which have long required that "gambling" include the element of a "prize" awarded upon winning. Kater has not pled that Big Fish Casino awards any monetary prize or other tangible items or rewards, and the game's Terms of Use, upon which she relies, explicitly foreclose the possibility of a Big Fish Casino user securing a monetary or other tangible prize through gameplay. Finally, the 1973 Gambling Act, which forms the basis

DEFENDANT'S MOTION TO DISMISS- 6
Case No. 15-cv-00612 MJP

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

of Plaintiff's gambling allegations, includes a policy statement codifying the legislature's intent to prohibit the "criminal element" of gambling while preserving social, entertaining games. Nothing in the Complaint indicates that Big Fish Casino is criminal or facilitates any crime; to the contrary, Big Fish Casino is a social entertainment platform that allows members of the community to interact with one another through gameplay, a paradigm that is no different than most other free to play games, as discussed above.

### 2.   The Washington State Gambling Commission has determined that Big Fish Casino is not a form of illegal "gambling."

The Gambling Commission is a law enforcement agency that the Washington legislature created and tasked with administering and regulating gambling in Washington. *See* RCW § 9.46.070; RCW § 9.46.070(11) (stating that one of the Commission's powers and duties is "[t]o regulate and establish the type and scope of and manner of conducting the gambling activities authorized by this chapter, including but not limited to, the extent of wager, money, or other thing of value which may be wagered or contributed or won by a player in any such activities."); RCW § 9.46.210 (designating the Gambling Commission as law enforcement agency).

In 2013, the Commission examined the question of whether online social casino-style games that do not award money or other tangible prizes, ***including Big Fish Casino***, constituted illegal gambling under the Washington statute. While the 1973 Gambling Act has been in place for decades, social casino-style games played online that do not award money are relatively new, having become available only recently. Applying the 40-year-old statute to new social games played online, the Commission prepared a publicly available presentation that described social games awarding no money or prizes and concluded that they are ***not*** gambling. *See* Ex. 1. In addition to being attached as an Exhibit to this pleading, this presentation is available on the Gambling Commission's website at http://www.wsgc.wa.gov/agenda/2013/may-social-gaming-presentation.pdf (accessed June 9, 2015).

The Court may take judicial notice of materials made available on government websites. *See, e.g., Beaton v. JPMorgan Chase Bank N.A.*, No. C11-0872 RAJ, 2012 WL 909768, at *3

(W.D. Wash. Mar. 15, 2012) (stating that court had taken judicial notice of an agreement available on a government website); *Segle v. PNC Mortgage*, No. 10-5655 RJB, 2011 WL 1098936, at *2 (W.D. Wash. Mar. 25, 2011) (taking judicial notice of property documents that appeared on county's website); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (collecting cases and explaining that it was appropriate to take judicial notice of materials that government entities made publicly available on their websites).

The 2013 Gambling Commission presentation illustrates an example of virtual credits, similar to the virtual offerings available in Big Fish Casino (*see* Complaint ¶ 28; Figure 2). Ex. 1 at 8. The presentation then listed several popular gaming companies that provided social casino-style and other forms of free to play games, including Bigfish [sic]:



*Id*. at 11. Finally, the presentation listed the familiar consideration, chance, and prize elements of gambling as defined in Washington, along with the reasons why these social casino-style games do not constitute gambling under the statute:

DEFENDANT'S MOTION TO DISMISS- 8
Case No. 15-cv-00612 MJP

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

*Id.* at 12. The Commission concluded that, while social gaming may contain the elements of chance and consideration, even when real money is used to purchase virtual currency, social gaming does not provide a prize because "virtual currency cannot be converted to real money." *Id.*[7] The Commission's interpretation is consistent with the Terms of Use, which indicate that virtual items are not a user's property and may not be sold for cash or other consideration. *See* Dkt. No. 5-1 at 2.

---

[7] While Big Fish Casino has added new content since the publication of the Commission's presentation, Big Fish Casino's offerings have not changed in substance since that time, and the fundamental elements upon which the Commission based its conclusions are the same.

DEFENDANT'S MOTION TO DISMISS- 9
Case No. 15-cv-00612 MJP

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

**Is Social Gaming Legal in Washington?**
Social Gaming is legal in Washington State if no gambling takes place.

**What is Gambling?**
Gambling involves *3 elements*:
1. Prize;
2. Consideration (something of value, wager, fee to play); and
3. Chance.

*Legal*: If one of the *3 elements* of gambling is removed, the game is not gambling.
Things to keep in mind, to keep it legal:
• There must be a way to play for free.
• If "real" money can be used to enhance or extend play, there must be no prize.

*Illegal*: If a Social Game has the *3 elements* of gambling, it is illegal and cannot be played, or operated, in Washington State. It is illegal to solicit Washington residents to play illegal Social Games.

**Website's Rules of Play:**
• If you are thinking about participating in a Social Game, read the website's Rules or Terms of Use to determine if one of the *3 elements* of gambling is removed.
• Website operators should clearly state in their Rules that virtual money, points, and other items cannot be sold or redeemed for "real" money or prizes.

Washington State law defines gambling as:
"staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome." (RCW 9.46.0237)

Official minutes were recorded for the public meeting at which the Commission presented its analysis of social gaming. *See* Ex. 2.[8] At the meeting, members of the Commission explained clearly that online casino-style games that offer no redeemable currency are not gambling. Paul Dasaro, the Administrator of the Commission's Electronic Gambling Lab, stated that "casino-style games in social gaming are characterized by the use of virtual game play credits that players can earn or they can purchase credits to play the game with real money, but the credits cannot be redeemed for real money." *Id*. at 3. Commission Program Manager Rick Herrington explained that when trying to determine whether a game constitutes gambling, "especially on the internet, he applies the basic rules of gambling: chance, consideration, or prize." *Id*. at 4. Manager Herrington continued:

In each of these [social casino-style] games, there are two of the elements, but not the third, which is an actual prize. Players do get virtual prizes and/or an endorphin rush; they can build their avatar and improve their avatar by purchasing other things of the same nature. [But] it is not gambling in the current format according to Washington State law.

*Id.* The law at issue has not changed, nor has the way that Big Fish Casino operates. Importantly, when the Commission Chair John Ellis asked Mr. Herrington whether or not additional chips could be considered a "prize" because it allowed players to play longer and in some cases, play

---

[8] The Minutes are available on the Gambling Commission's website at http://www.wsgc.wa.gov/minutes/2013/may-2013-minutes.pdf (accessed June 9, 2015).

DEFENDANT'S MOTION TO DISMISS- 10
Case No. 15-cv-00612 MJP

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

better, *id.* at 5, Mr. Herrington answered that virtual currency did not really exist and had no redeemable value, and that purchasing additional chips for additional game play was no different from "buying endorphins." Ex. 2 at 5.

After the May 19, 2013 meeting, the Commission published a guide further explaining why social games are not a form of illegal gambling. *See* Ex. 3 (*above*).[9] The Gambling Commission stated that social gaming is legal in Washington if no gambling is present, *i.e.*, if one of the three elements of chance, consideration, or prize is missing. *Id.* at 2. The Commission also explained that "Even though 'real' money is used to buy" in-game items, those items do not have real-world value "because they cannot be sold or redeemed for 'real' money. Because there is no prize, it's not gambling." *Id.*

The Commission then specifically directed Washington citizens to a social game's terms of use to determine if one of the three gambling elements is missing. Providers and players are instructed that the rules or terms of use "should clearly state . . . that virtual money, points, and other items cannot be sold or redeemed for 'real' money or prizes." *Id.*  Big Fish Casino's Terms of Use, following the Commission's instructions, do precisely that: they inform potential players that "[v]irtual items may not be purchased or

**No Prize = No Gambling = OK To Play**

*Buying virtual money:*
Many Social Gaming websites give free virtual money to begin play, with an option to buy more virtual money with "real" money to continue play. All play uses this virtual money.



Legal Social Gaming websites will not let players cash in their virtual winnings or points for "real" money or prizes.

Because there is no prize, these games are not gambling. However, if the virtual money can be sold or redeemed for "real" money or a prize, the game is illegal.

*Buying virtual prizes, avatars & tools:*
If a player spends "real" money for a virtual prize, avatar or tool to assist with game play and these items cannot be sold or redeemed for "real" money or a prize, it's not gambling.



For example, let's say a player uses "real" money to purchase a key to open a chest containing a rare item that the player's character can use to advance their position in the game.

Even though "real" money is used to buy a key to get a rare item, neither the key or rare item have any real-world value because they cannot be sold or redeemed for "real" money.  Because there is no prize, it's not gambling.

---

[9]  The pamphlet, "Online Social Gaming: When is it Legal? What to Consider," is available at http://www.wsgc.wa.gov/publications/brochures/5-027-online-social-gaming.pdf (accessed June 9, 2015).

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

sold from any individual or other company via cash, barter or any other transaction," and "[v]irtual items have no monetary value." Dkt. No. 5-1 at 2. Importantly, the Commission made clear that its requirement of the three traditional gambling elements derives from its interpretation of the definition of gambling in RCW § 9.46.0237, the definition relied upon in the Complaint. *See* Ex. 3 at 2; Complaint ¶ 50.

Additionally, and directly relevant to this case, the Commission explained that "[m]any Social Gaming websites give free virtual money to begin play, with an option to buy more virtual money with 'real' money to continue play . . . [l]egal Social Gaming websites will not let players cash in their virtual winnings or points for 'real' money or prizes. Because there is no prize, these games are not gambling." Ex. 3 at 2 (*above*).

It is difficult to imagine a more direct proclamation from Washington's gambling enforcement agency than concluding that the virtual currency provided in Big Fish Casino is not a prize, and that the games in Big Fish Casino do not constitute gambling pursuant to the statute. Because the Complaint only alleges that users receive virtual currency through game play—not real money or tangible merchandise—the Complaint fails to state a claim for recovery of money lost at gambling, RCW § 4.24.070.

The Gambling Commission's interpretation of the definition in RCW § 9.46.0237 should be dispositive. In Washington, courts give "great deference" to an agency charged with the administration and enforcement of a statute when that statute is ambiguous. *See Waste Mgmt. of Seattle, Inc. v. Utilities & Transp. Comm'n*, 869 P.2d 1034, 1038 (Wash. 1994) (en banc); *accord Cowiche Canyon Conservancy v. Bosley,* 828 P.2d 549, 556 (Wash. 1992) (en banc). The 1973 Gambling Act was drafted at a time in which personal computers were not available to most individuals, let alone mobile devices which could be used to play interactive social games and make online purchases of virtual items to extend or enhance game play. As a result, there is a latent ambiguity in the definition of gambling in the 1973 Gambling Act because it was enacted long before the advent of online social gaming, the unique framework of which could not have been contemplated at such time. For instance, the statutory definition of "thing of value" was

enacted long before the advent of users purchasing virtual in-game items that cannot be exchanged for money, which are at the heart of Plaintiff's allegations of illegal gambling. Therefore, this Court should defer to the strong guidance of the Gambling Commission, which has carefully and recently considered the case of Big Fish Casino itself and other games like it, and determined that these social games are not gambling. *See Waste Mgmt. of Seattle,* 869 P.2d at 1038; *State v. Delgado*, 63 P.3d 792, 794 (Wash. 2003) (en banc) ("A latent ambiguity is apparent [ ] when the language is applied to the facts as they exist and is not apparent on the face of the language."); *Sprint Int'l Commc'ns Cor. v. Dep't of Revenue*, 226 P.3d 253, 260 (Wash. App. 2010) (recognizing the possibility that a latent ambiguity in a statute may "ar[ise] with the emergence of internet service."); Ex. 1 at 12.

Further, the Gambling Commission's publications and official meeting minutes publicly give guidance to business owners like Churchill Downs and other social game operators, who rely on the Gambling Commission's interpretation of the law. *See Silverstreak, Inc. v. Washington State Dep't of Labor and Indus.*, 154 P.3d 891, 903 (Wash. 2007) (en banc) (explaining that citizens must be able to rely on the plain meaning of regulations and on a state entity's interpretation of those rules, without concern that another state entity will later change the interpretation of the regulations to the citizens' detriment).

Plaintiff's failure to allege that Big Fish Casino allows virtual currency to be redeemed for money or any other form of tangible merchandise is fatal to her demand for recovery under RCW § 4.24.070. This flaw cannot be cured by amendment because it is undisputed that virtual currency has no cash value. Thus, the Complaint should be dismissed with prejudice because it does not state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Robertson*, 982 F. Supp. 2d at 1206.

> a.   *Washington courts have instructed that illegal gambling must include the three elements of consideration, chance, and a prize.*

The Gambling Commission's interpretation of gambling is consistent with Washington caselaw. Washington courts have stated that illegal gambling must include the three elements of

consideration, chance, and a prize. In determining whether a slot machine fell into the anti-lottery statute in place at the time, the Washington Supreme Court stated that "all forms of gambling involve prize, chance, and consideration," and explained that machines which were similar to pinball games, but which were "played for amusement purposes only, with no prize available to players, d[id] not constitute a lottery." *State ex rel. Evans v. Bhd. of Friends*, 247 P.2d 787, 797 (Wash. 1952) (en banc) (internal citations omitted). The Court later affirmed its requirement that illegal gambling contain all three elements when it affirmed a trial court's decision that certain card games violated the statute because the defendant conceded consideration was paid and prizes were awarded, and an element of chance existed as well. *State ex rel. Schillberg v. Barnett*, 488 P.2d 255, 256-57 (Wash. 1971) (en banc) ("It is conceded that the elements of consideration and prize are present in the instant games . . . the trial court's finding that these games involve a substantial element of chance is sustained by the evidence. The element of chance in the instant card games satisfies the requisite element of chance for a gambling game within the statutory prohibition . . . ."). Finally, the Washington Court of Appeals upheld an order compelling the destruction of a slot machine in part because "[t]he legislative purpose [behind the gambling statutes] in this state was to ban from the state all machines that when operated for a consideration would by chance return a prize to the operator." *In re Destruction of One Gambling Device*, 559 P.2d 1003, 1005 (Wash. App. 1977).

These requirements of consideration, chance, and prize are codified in the definition of "gambling" in RCW § 9.46.0237, which reads in relevant part:

> "Gambling," as used in this chapter, means staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome.

While the Complaint alleges the existence of consideration paid to Churchill Downs, along with the element of chance, Plaintiff has not pled the existence of a prize that a user can receive from Big Fish Casino. *See* Complaint ¶¶ 52-53. The Complaint alleges merely that after

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

providing consideration and playing a game of chance, users may receive a "thing of value" in the form of virtual currency. *See id.*

However, as the Terms of Use relied on by Plaintiff, and attached to the Complaint, make clear: virtual currency *cannot* be exchanged or sold for real money, and users have no property interest in the virtual currency. *See* Dkt. No. 5-1 at 2 ("You have no property interest in any virtual item . . . . Virtual items may not be transferred or resold for commercial gain in any manner, including, without limitation, by means of any direct sale or auction service. Virtual items may not be purchased or sold from any individual or other company via cash, barter or any other transaction."). As such, the virtual currency cannot constitute the necessary "prize" that Washington courts require before finding that illegal gambling exists. *See Schillberg*, 488 P.2d at 256-57. As the Washington Supreme Court specified, games that are played only for amusement and that do *not* offer the chance of a prize at the end are *not* illegal games. *See Evans*, 247 P.2d at 797 ("[T]he operation of machines which, although similar to pinball games, are played for amusement purposes only, with no prize available to players, does not constitute a lottery.") (internal citations omitted).

Plaintiff also alleges that a secondary market exists for Big Fish Casino's virtual chips. This allegation is expressly contradicted by the Terms of Use, which prohibit users from selling any virtual item, including virtual chips.[10] *See, e.g.*, Complaint ¶¶ 5, 53; Dkt. No. 5-1 at 2. Plaintiff relies on these Terms of Use in her Complaint. *See, e.g.*, Complaint p. 2 n. 1. Plaintiff cannot pick and choose which parts of the Terms of Use she seeks to enforce.

---

[10] Though not relevant for purposes of this motion, this allegation is also false. Churchill Downs actively enforces the Terms of Use in this regard, both by monitoring and banning from game play any users who attempt to sell virtual items, and by working with third parties to take down any illicit web pages that endeavor to do so.

DEFENDANT'S MOTION TO DISMISS- 15
Case No. 15-cv-00612 MJP

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

b.   *The Washington state legislature explicitly stated that the 1973 Gambling Act was not intended to inhibit social amusement games, such as Big Fish Casino.*

In addition, Big Fish Casino is not the type of insidious, harmful activity that the Washington legislature set out to eliminate in the 1973 Gambling Act. To the contrary, it is a social pastime offered for amusement. The legislature stated its purpose in RCW § 9.46.010:

> The public policy of the state of Washington on gambling is to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control.
>
> It is hereby declared to be the policy of the legislature, recognizing the close relationship between professional gambling and organized crime, to restrain all persons from seeking profit from professional gambling activities in this state; to restrain all persons from patronizing such professional gambling activities; to safeguard the public against the evils induced by common gamblers and common gambling houses engaged in professional gambling; and at the same time, both to preserve the freedom of the press and to avoid restricting participation by individuals in activities and social pastimes, which activities and social pastimes are more for amusement rather than for profit, do not maliciously affect the public, and do not breach the peace.

This declaration reflects a dual purpose: to eliminate the criminal element of gambling, including professional gambling and organized crime, and to preserve activities and social pastimes that are undertaken for amusement, rather than for profit. *See id.* Big Fish Casino provides neither professional gambling nor any form of organized crimes. Rather, the game allows users to interact socially, play games together, and play games for free with the option of purchasing virtual items. *See* Complaint ¶¶ 2-3, 24. This is no different than most other free to play video games across a variety of genres.  Further, as explained above, no player can profit from playing games on Big Fish Casino. *See supra* §II.B. These types of amusement games fall distinctly outside of what the legislature intended to restrict with the enactment of the 1973 Gambling Act. *See* RCW § 9.46.010. Indeed, the legislature declared that the Act should not be read to "restrict[] participation by individuals in . . . activities and social pastimes [which] are

DEFENDANT'S MOTION TO DISMISS- 16
Case No. 15-cv-00612 MJP

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

more for amusement rather than for profit." *Id*. Big Fish Casino is a social game that comports with the spirit and the letter of the 1973 Gambling Act.

### 3.   Plaintiff has not stated a basis for legal relief for Churchill Downs' alleged operation of "gambling devices."

The Complaint also fails to state a claim upon which relief can be granted for Churchill Downs' alleged operation of "gambling devices," as defined by RCW § 9.46.0241. This claim should be dismissed both because the Complaint does not point to a cause of action that entitles Plaintiff and a potential class to recovery, and because Big Fish Casino is not a "gambling device" under RCW § 9.46.0241.

### a.   The Complaint cites neither a statutory nor a common law cause of action for recovery against Churchill Downs for the operation of a gambling device.

The Complaint seeks relief for Churchill Downs' alleged operation of "gambling devices." *See* Complaint ¶ 51 (listing statutory definition of gambling devices), ¶ 52 (stating that Big Fish Casino's games are gambling devices), ¶ 53 (alleging that Plaintiff and the potential class gambled when they purchased chips to wager at Churchill Downs' purported gambling devices); ¶ 59 (stating that Plaintiff and the potential class are entitled to an order granting an injunction, damages, costs, and fees for Churchill Downs' operation of the purported gambling devices).

However, the Complaint lists no portion of the 1973 Gambling Act, RCW § 9.46 et seq., or any other statute, that entitles the plaintiffs to relief for a company's or an individual's operation of a "gambling device" under § 9.46.0241. Nor does the Complaint allege that a common law right of recovery exists in Washington for another's operation of a gambling device. Indeed, it appears that no private right of action exists for operation of a gambling device under § 9.46.0241.

As such, Plaintiff's claim for operation of an illegal gambling device should be dismissed for failure to state a cause of action. *See* Fed. R. Civ. P. 12(b)(6); *Robertson*, 982 F. Supp. 2d at 1206.

DEFENDANT'S MOTION TO DISMISS- 17
Case No. 15-cv-00612 MJP

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

b.   *Big Fish Casino does not qualify as a "gambling device" under RCW § 9.46.0241 because it is not a form of gambling and because it does not provide users a "thing of value."*

Even if the Complaint included a basis for relief for Churchill Downs' operation of a gambling device, which it does not, that claim would fail because the Complaint does not allege facts that show that Big Fish Casino is a "gambling device" under RCW § 9.46.0241. That statutory definition provides, in relevant part:

> "Gambling device," as used in this chapter, means: [ ] Any device or mechanism the operation of which a right to money, credits, deposits or other things of value may be created, in return for a consideration, as the result of the operation of an element of chance, including, but not limited to slot machines, video pull-tabs, video poker, and other electronic games of chance[.]

*Id.* As stated above, Big Fish Casino is not a form of "gambling" as defined in the 1973 Gambling Act because it does not provide users the opportunity to win actual money or other tangible items in return for consideration. *See supra* § IV.A.1. Therefore, by extension, the game cannot be a *gambling* device as defined by that same Act. *See Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 700 (9th Cir. 2004) ("A basic rule of statutory construction is that one provision should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless.") (internal citation omitted). If Big Fish Casino is not gambling under RCW § 9.46, then neither should it qualify as a gambling "device" within the same statute. *See Bayview Hunters*, 366 F.3d at 700.

Further, the statutory definition of "gambling device" requires the device to create "things of value" in return for a user's payment of consideration at a game of chance. *See* RCW § 9.46.0241. Big Fish Casino awards users no actual money or merchandise, nor anything that can be exchanged for either money or merchandise. *See supra* § IV.A.1; Dkt. No. 5-1 at 2. The statutory definition of "thing of value" repeatedly indicates that it must involve money or property or a future transfer of money or property. *See* RCW § 9.46.0285. But Big Fish Casino provides neither an immediate transfer of money or property, nor items that may be exchanged in the future

DEFENDANT'S MOTION TO DISMISS- 18
Case No. 15-cv-00612 MJP

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

for money or property, and the Complaint does not claim otherwise. The most the Complaint can allege is that Big Fish Casino provides, in return for consideration, a "thing of value" in the form of extended game play without charge. *See* Complaint ¶¶ 52-53. However, the lone Washington case interpreting the statutory definition of "thing of value" suggests that games awarding credits that allow for additional playing time constitute gambling devices if those credits may *also* be exchanged for money. *See Bullseye Distrib. LLC v. State Gambling Comm'n*, 110 P.3d 1162, 1166 (Wash. App. 2005). In that case, Division Two of the Washington Court of Appeals reviewed an administrative law judge's determination that a sports card vending machine that operated like a slot machine was an illegal gambling device under RCW § 9.46.0241. *See Bullseye*, 110 P.3d at 1163. The combination vending/slot machine awarded "playing" points upon the purchase of a card, which points could then be wagered by playing a game of chance or could be cashed out as "prize" points. *See id*. As the court recognized that the device created a thing of value in the form of additional game play without charge (consistent with the definition of "thing of value" in RCW § 9.46.0285), the court emphasized that the player could ultimately "redeem the points [generated in game play] for cash and/or merchandise." *Bullseye*, 110 P.3d at 1166 ("A player receives the credits by inserting a dollar or by presenting a promotional voucher. If a person wins, he may attempt to increase his points by risking them with the double down feature. If the prize point target is reached, the person can redeem the points for cash and/or merchandise.").

Big Fish Casino provides for no such redemption or exchange. Although a user may earn or purchase virtual currency that may entitle him or her to additional game play, that additional game play and that virtual currency may *never* be redeemed for cash or tangible items. Furthermore, the game frequently allocates free virtual currency to users during game play. That Big Fish Casino virtual currency may never be transferred or exchanged for money or other tangible items means that Big Fish Casino does not provide a "thing of value" and is further confirmation that Big Fish Casino is not a "gambling device" under RCW § 9.46.0241. *See* RCW § 9.46.0285; *Bullseye*, 110 P.3d at 1166.

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1
2

**B.    The Claim for Violation of Washington's Consumer Protection Act Should be Dismissed.**

3
4
5

Plaintiff's Second Cause of Action is for violation of the Washington Consumer Protection Act, RCW § 19.86.010 et seq. *See* Complaint p. 18; ¶ 61. This claim fails because it rests on the flawed gambling claim, and because the CPA does not apply extraterritorially between two foreign parties.

6
7
8

*1.    Plaintiff's claim for violation of Washington's CPA is entirely contingent upon the claim against Churchill Downs for illegal gambling, which is not legally viable.*

9
10
11
12
13
14
15

The Complaint alleges two bases for recovery under Washington's CPA, both of which depend entirely on alleged violations of Washington's gambling statute.  If the gambling claim fails, there is no legal basis to support the CPA claim.  First, Plaintiff alleges that Churchill Downs' operation of Big Fish Casino violates RCW § 19.86.020, which prohibits "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce," and second, that Churchill Downs' allegedly unfair or deceptive act or practice is "is injurious to the public interest because it . . . violates a statute that contains a specific legislative declaration of public interest impact." *See* RCW § 19.86.093; Complaint ¶¶ 62-63.

16
17
18
19
20

The Complaint's allegation that Churchill Downs' operation of Big Fish Casino violates the CPA because it violates RCW § 9.46.010 et seq., the public policy provision of the 1973 Gambling Act, fails because Big Fish Casino is not a form of "gambling" and is not a "gambling device," as explained above. *See supra* §§ IV.A.1-2; Complaint ¶¶ 64-65.

21
22
23
24
25
26
27

Likewise, the Complaint's allegation that Churchill Downs' operation of Big Fish Casino constitutes unfair or deceptive competition fails for the same reason. Plaintiff has not alleged facts that show that Churchill Downs' operation of Big Fish Casino is in any way illegal, unfair, or deceptive, and no facts in the Complaint indicate that Big Fish Casino violates any statute or common law. The Complaint's statements that Churchill Downs' practices are unfair and deceptive are purely conclusory, and this Court need not accept them as true. *See Sprewell*, 266 F.3d at 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely

DEFENDANT'S MOTION TO DISMISS- 20
Case No. 15-cv-00612 MJP

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

conclusory, unwarranted deductions of fact, or unreasonable inferences."); Complaint ¶¶ 66-72. For example, the Complaint alleges Churchill Downs' practices are "unethical, oppressive, or unscrupulous," "cause substantial injury to consumers," and "have the capacity to deceive a substantial portion of the public." Complaint ¶ 66. However, the Complaint offers no facts whatsoever to support these accusations. Plaintiff's conclusory charge for violation of Washington's CPA should be dismissed for failure to state a claim.

### 2. The Washington CPA does not apply extraterritorially to two foreign parties, Plaintiff and Churchill Downs.

Independently, Plaintiff's Second Cause of Action should also be dismissed because Washington's CPA does not apply extraterritorially to two parties that are non-residents of Washington, Plaintiff, a Michigan citizen, and Churchill Downs, which is incorporated in Kentucky. *See* Complaint ¶¶ 7-8. As this Court has recognized, "[n]o case specifically holds that the WCPA applies to a foreign plaintiff's suit against a foreign corporation," and the extraterritorial application of Washington's CPA to a foreign plaintiff remains an "open question."[11] *See Thornell v. Seattle Serv. Bureau, Inc.*, No. C14-1601 MJP, 2015 WL 999915, at *3-*4 (W.D. Wash. Mar. 6, 2015); *see also Red Lion Hotels Franchising, Inc. v. MAK, LLC*, 663 F.3d 1080, 1091 (9th Cir. 2011) (explaining that in the wake of the Washington Supreme Court's withdrawal of its opinion limiting the CPA to actions brought by Washington citizens, the "territorial reach of the CPA is [ ] an open question.").

In *Thornell*, this Court certified the question of extraterritorial application of the CPA to the Washington Supreme Court. *See* 2015 WL 999915, at *4. If the Court declines to dismiss the Complaint in this case, Churchill Downs respectfully asks the Court to defer its ruling on Churchill Downs' request to dismiss Plaintiff's Washington CPA claim until the Washington Supreme Court issues its ruling on the *Thornell* matter.

---

[11] While the Terms of Use provide that they are governed by and should be construed in accordance with Washington law, they do not purport to extend the reach of Washington's CPA to two non-residents of Washington or a non-resident plaintiff. *See* Dkt. No. 5-1 at 5.

DEFENDANT'S MOTION TO DISMISS- 21
Case No. 15-cv-00612 MJP

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1

### C.      The Claim for Unjust Enrichment Should be Dismissed.

Finally, Plaintiff's claim for unjust enrichment, like the CPA claim, is premised entirely on Churchill Downs' alleged engagement in illegal gambling activities. *See* Complaint ¶¶ 74-78. Because Churchill Downs' operation of Big Fish Casino is not gambling under Washington law, Plaintiff's Third Cause of Action should also be dismissed.

#### 1.      *Plaintiff has not shown any inequity in Churchill Downs' receipt of fees paid by Big Fish Casino customers.*

To prevail on a claim for unjust enrichment in Washington, Plaintiff must show that there is "a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstance as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). In an attempt to satisfy the inequity requirement, the Complaint states that "[u]nder principles of equity and good conscience, [Churchill Downs] should not be permitted to retain the money obtained as a result of its unlawful operation of slot machines and/or gambling devices." Complaint ¶ 78. However, the Complaint has not alleged facts that show that Churchill Downs' operation of Big Fish Casino is in any way unlawful. *See supra* §§ IV.A.-B. On the facts pled in the Complaint, and as concluded by the Commission, Big Fish Casino is no different from any popular online or mobile game, or video service, for which a user may pay a fee, and there is nothing in the Complaint to support the claim that Big Fish Casino's collection of fees from users, and retention of those fees, is inequitable.

#### 2.      *Plaintiff has not pled facts that show how a user's payment of any fees within Big Fish Casino goes beyond the scope of any contract between such user and Churchill Downs.*

The Complaint also claims that Plaintiff and the potential class should recover for Churchill Downs' unjust enrichment because "the purchase of the chips to wager at [Churchill Downs'] Big Fish Casino is and was beyond the scope of any contractual agreement between [Churchill Downs and Plaintiff] and members of the Class." In support of this claim, the Complaint states that Churchill Downs' "terms of service do not mention that the Big Fish Casino

DEFENDANT'S MOTION TO DISMISS- 22
Case No. 15-cv-00612 MJP

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

video game includes unlawful games of chance" and "the terms of service specifically prohibit the discussions of any matters which are explicitly or by inference illegal in any way." Complaint ¶ 76.

The Terms of Use for Big Fish Casino, which Plaintiff relies upon in, and which are attached to, the Complaint, expressly inform potential users that virtual currency may not be exchanged or cashed out for money. *See* Dkt. No. 5-1 at 2. As the Gambling Commission directs, users like Plaintiff should look to the terms of use to determine whether they can redeem virtual currency for "real money." As the Terms of Use clearly indicate, no such redemption right exists in Big Fish Casino, and any attempt to commercialize the virtual currency is strictly prohibited. *See* Ex. 3 at 2; *supra* § IV.A.1.b. The Complaint has not shown that Churchill Downs allows users to operate beyond the scope of any contractual provision, and has not pled facts that demonstrate that Plaintiff is entitled to relief for unjust enrichment on this or any other basis. Plaintiff's claim for unjust enrichment should be dismissed for failure to state a claim on which relief may be granted.

**D.    All of Plaintiff's Claims, if not Dismissed, are Confined by the One Year Statute of Limitations in Big Fish Casino's Terms of Use.**

Plaintiff alleges that Churchill Downs is liable for the money she paid during her game play from January 2013 through March 2015. Complaint ¶ 38. However, even if her claims were viable (which they are not), they would be limited to those arising within one year of filing of the Complaint, *i.e.*, on or after April 17, 2014. Big Fish Casino's Terms of Use provide:

> **STATUTE OF LIMITATIONS**
> You and Big Fish agree that regardless of any statute or law to the contrary, any claim or cause of action arising out of or related to use of a Big Fish Offering, these Terms of Use or the Privacy Policy must be filed within ONE (1) YEAR after such claim or cause of action arose, and is therefore forever barred.

Dkt. No. 5-1 at 5. Under Washington law, contractual limitations periods may govern over statutory limitations periods so long as the shorter time frame is not unreasonable or prohibited by public policy. *See, e.g.*, *Broom v. Morgan Stanley DW Inc.*, 236 P.3d 182, 191 (Wash. 2010) (en

banc). Plaintiff has made no attempt to make a showing that the limitations period in the Terms of Use should not apply in this case. Her claims, if viable, are therefore limited to those arising on or after April 17, 2014 and before April 17, 2015.

## V.   CONCLUSION

Plaintiff has failed to plead facts that, if proven, show that Churchill Downs' operation of the social game Big Fish Casino violates any law. Plaintiff has not alleged that Big Fish Casino awards any prizes to users, as required by the Gambling Commission and Washington courts. Further, Plaintiff cannot point to any statutory or common law relief for the allegation that Churchill Downs operates a "gambling device," and Big Fish Casino does not fit within that definition because it neither facilitates gambling nor provides anything of value to users. The claims for violation of the Washington CPA and unjust enrichment should be dismissed as they are entirely dependent on a violation of gambling laws, which Plaintiff cannot show. Furthermore, the Washington CPA should not be applied extraterritorially to a dispute between two foreign entities. Churchill Downs respectfully requests that the Complaint be dismissed with prejudice.

Dated: June 30, 2015

Respectfully submitted,

By: */s/ Brooke A.M. Taylor*
Brooke A. M. Taylor, WSBA #33190
E. Lindsay Calkins, WSBA #44127
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA  98101-3000
P: (206) 516-3880
F: (206) 516-3883
btaylor@susmangodfrey.com
lcalkins@susmangodfrey.com

Robert Rivera (*Admitted Pro Hac Vice*)
rrivera@SusmanGodfrey.com
SUSMAN GODFREY LLP
1000 Louisiana Street, Ste. 5100
Houston, TX  77002-5096
P: (713) 653-7809
F: (713) 654-6666
rrivera@SusmanGodfrey.com

*Attorneys for Defendant*

DEFENDANT'S MOTION TO DISMISS- 24
Case No. 15-cv-00612 MJP

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**CERTIFICATE OF SERVICE**

I hereby certify that on the date below I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Dated this 30th day of June, 2015.

/s/  *Brooke A.M. Taylor*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883