The Hon. Marsha J. Pechman

1

2

3

4

5

6            UNITED STATES DISTRICT COURT

7          WESTERN DISTRICT OF WASHINGTON

8                      AT SEATTLE

9   CHERYL KATER, individually and on behalf   |   No. C15-612 MJP
10  of all others similarly situated,
                                               |
11                       Plaintiff,            |   **PLAINTIFF'S OPPOSITION TO**
                                               |   **DEFENDANT'S MOTION TO DISMISS**
12          v.
                                               |
13  CHURCHILL DOWNS INCORPORATED,              |   NOTE ON MOTION CALENDAR:
14  a Kentucky corporation,                    |   Friday, August 28, 2015
15                       Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

PL.'S OPP. TO MOT. TO DISMISS
No. C15-612 MJP

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

# TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................1

II. FACTUAL BACKGROUND ....................................................................................4

   A. Churchill Downs Operates Big Fish Casino and Profits from Its
      Secondary Market ............................................................................................4

   B. Plaintiff Used and Lost Money to Churchill Downs in its Big Fish Casino............5

III. LEGAL STANDARD ..............................................................................................5

IV. ARGUMENT ..........................................................................................................5

   A. Plaintiff Sufficiently States a Claim for Relief Under Washington's

      Gambling Loss Recovery Act, RCW § 4.24.070 ....................................................6

      1. Plaintiff Sufficiently Pleads the Elements of Her GLRA Claim, Including
         that Big Fish Casino Involves the Winning (and Losing) of "Things of
         Value." ..............................................................................................6

      2. The 1973 Gambling Act is not subject to "latent ambiguity" regarding
         "things of value." ................................................................................9

         a. There is No Latent Ambiguity in the GLRA ...................................10

         b. Even if there were Latent Ambiguity, the Legislative Intent
            of the GLRA Supports the Definition of Illegal Gambling.............11

         c. Churchill Downs' other authorities are unreliable. ......................13

   B. Plaintiff States a Valid Cause of Action for Churchill's Violation
      of the CPA........................................................................................................15

      1. Plaintiff Sufficiently Alleges that Churchill's Violation of the

         GLRA Constitutes an Unfair or Deceptive Practice as

         Contemplated by the CPA ....................................................................16

PL.'S OPP. TO MOT. TO DISMISS
No. C15-612 MJP

**Law Offices of**
**Clifford A. Cantor, P.C.**
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

- i -

2.    Application of the CPA is Required by the Big Fish Terms of Use is Otherwise Appropriate ..............................................................................17

C.    Plaintiff Sufficiently Pleads Her Unjust Enrichment Claim .................................19

D.    Plaintiff's Claims Should Not be Limited to the One-Year Statute of Limitations Found within the Big Fish Terms of Use .............................................................21

V.    CONCLUSION ....................................................................................................22

Law Offices of
Clifford A. Cantor, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1

## TABLE OF AUTHORITIES

2

### Supreme Court Cases

3  *Anderson Bros. Ford v. Valencia*, 452 U.S. 205 (1981)...............................................15

4  *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ......................................................5, 6

5  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................5

6  *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1 (1972) ......................................17, 18

7

### Court of Appeal Cases

8  *Anderson v. Clow*, 89 F.3d 1399 (9th Cir. 1996)...........................................5

9  *Arthur v. United States by and Through VA*, 45 F.3d 292 (9th Cir. 1995) ...................................20

10  *Doninger v. Pac. Nw. Bell, Inc*., 564 F.2d 1304 (9th Cir. 1977) .......................................21

11  *PAE Gov't Servs., Inc. v. MPRI, Inc*., 514 F.3d 856 (9th Cir. 2007)............................................20

12  *Richards v. Lloyd's of London,* 135 F.3d 1289 (9th Cir.1998).......................................18

13  *United States v. 14.02 Acres of Land More or Less in Fresno Cnty*.,
14      547 F.3d 943 (9th Cir. 2008) .......................................14

15  *Vinole v. Countrywide Home Loans, Inc*., 571 F.3d 935 (9th Cir. 2009) .......................................21

16

### District Court Cases

17  *Brown v. Scripps Investments & Loans, Inc.,*
    No. CO801166, 2009 WL 1649947 (W.D. Wash. June 11, 2009) ...................................18

18  *Garoutte v. Am. Family Mut. Ins. Co.,*
19      No. C12-1787-MJP, 2013 WL 231104 (W.D. Wash. Jan. 22, 2013) ..................................5

20  *Thornell v. Seattle Serv. Bureau, Inc.,*
    No. 14-cv-1601-MJP, 2015 WL 999915 (W.D. Wash. Mar. 6, 2015) .................17, 18, 19

21  *Watie v. Carey*, No. CIV S-04-1289, 2010 WL 3186224 (E.D. Cal. Aug. 11, 2010) ..................11

22

### State Court Cases

23  *Adler v. Fred Lind Manor*, 153 Wash.2d 331 (2004) .......................................21

24  *Ass'n of Washington Bus. v. State of Washington, Dep't of Revenue*,
25      155 Wash. 2d 430 (2005).......................................13–14

    *Berge v. Gorton*, 88 Wash.2d 756 (1977) .......................................14

26

27

PL.'S OPP. TO MOT. TO DISMISS
No. C15-612 MJP

- iii -

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

*Bullseye Distributing LLC v. State Gambling Com'n*,
  127 Wash.App. 231 (2005)..................................................................7, 8, 10

*City of Sunnyside v. Fernandez*, 59 Wash.App. 578 (1990) ........................................15

*Cowiche Canyon Conservancy v. Bosley*, 118 Wash. 2d 801 (1992)...........................14

*Densley v. Dep't of Ret. Sys.*, 162 Wash. 2d 210 (2007)............................................11

*Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wash.2d 1 (2002)...........................6

*Hayden v. Mutual of Enumclaw Ins. Co.,* 141 Wash.2d 55 (2000) .............................16

*Holiday Resort Cmty. Ass'n v. Echo Lake Assoc., LLC*,
  134 Wash. App. 210 (2006)..................................................................16, 17

*Internet Cmty. & Entm't Corp. v. Washington State Gambling Comm'n*,
  169 Wash.2d 687 (2010)......................................................................10–11

*Lea v. Young*, 168 Wash. 496 (1932)...........................................................................20

*McKee v. AT & T Corp.*, 164 Wash.2d 372 (2008) ..............................................18, 21, 22

*Parsons Supply, Inc. v. Smith*, 22 Wash.App. 520 (1979)...........................................20

*Schnall v. AT & T Wireless Servs., Inc.*, 171 Wash. 2d 260 (2011) ............................18

*Scott v. Cingular Wireless*, 160 Wash.2d 843 (2007)..................................................22

*Short v. Demopolis*, 103 Wash.2d 52 (1984) ..............................................................17

*State v. Brotherhood of Friends*, 41 Wash.2d 133 (1952) ............................................6

*State v. Delgado*, 148 Wash.2d 723 (2003) ................................................................10

*State ex rel. Evergreen Freedom Found. v. Washington Educ. Ass'n*,
  140 Wash.2d 615 (2000).........................................................................10

*Washington State Physicians Ins. Exch. & Ass'n v. Fisions Corp.*,
  122 Wash.2d 299 (1993).........................................................................16

*Young v. Young*, 164 Wash.2d 477 (2008)..................................................................19

*ZDI Gaming Inc. v. State ex rel. Wash. State Gambling Com'n*,
  173 Wash.2d 608 (Wash. 2012).............................................................7, 9

**Miscellaneous**

Newberg on Class Actions (4th ed.) .............................................................................20

N. Singer, Sutherland Statutory Construction (4th ed. 1986) .......................................15

Fed R. Civ. P. 8 ............................................................................................................20

Law Offices of
**CLIFFORD A. CANTOR, P.C.**
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1   Fed. R. Civ. P. 12 .................................................................................................2, 5

2   RCW § 4.16.080 .........................................................................................................22

3   RCW § 4.24.070 ................................................................................................ *passim*

4   RCW § 9.46 ....................................................................................................... *passim*

5   RCW § 19.86 ..................................................................................................... *passim*

6   RCW § 34.05 ...............................................................................................................13

7   RCW § 42.17 ...............................................................................................................13

8   WAC 230-13 .........................................................................................................12, 13

9   www.wsgc.wa.gov ......................................................................................................15

10  <u>Churchill Downs Form 10-K</u>,
        http://files.shareholder.com/downloads/ABEA-4CIYZ4/587380370x0xS20212-15-
        11/20212/filing.pdf1 .........................................................................................8, 18

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

I.      **INTRODUCTION**

This case challenges Defendant Churchill Downs's ("Churchill" or "Defendant") popular and profitable virtual game aptly named "Big Fish Casino." Relevant here, Big Fish Casino allows individuals to play a multitude of electronic casino games, such as slot machines, roulette, and blackjack. In order to play, individuals purchase "chips" from Churchill and wager them within the various casino games in hopes of winning additional chips that can either be used to extend gameplay or be sold for real money on secondary markets. It turns out, however, that this seemingly benign game of chance actually constitutes unlawful gambling as defined by several Washington statutes, thus entitling players of the game to recoup the monies they have lost within it and to other relief.

Plaintiff Cheryl Kater ("Kater" or "Plaintiff") is just one such consumer that fell victim to Churchill's unlawful casino games, losing more than $1,000 in total. In response, Kater brought the instant action on behalf of herself and a class of similarly situated individuals (the "Class") in an effort to recoup funds that were unjustly obtained and retained by Churchill as a result of its unlawful conduct. In her complaint, Kater alleges three causes of action: (1) violations of RCS § 4.24.070 (the "Washington Gambling Loss Recovery Act" or "GLRA"), (2) violations of the Washington Consumer Protection Act, RCW 19.86.010, ("CPA"), and (3) unjust enrichment. Churchill now seeks dismissal of each of Plaintiff's claims, raising a handful of often repeated but ultimately unavailing arguments.

Churchill's motion to dismiss is based primarily on the mistaken premise that its Big Fish Casino does not allow users to win (or lose) "things of value" as that term is contemplated by the GLRA and therefore, that its conduct does not constitute "illegal gambling" under the statute. Churchill is wrong. It is undisputed that players of Big Fish Casino may obtain chips that both extend their game play and that can also be "cashed out" for actual currency on the secondary market—which Churchill supports and profits from in the form of fees charged to its players to

- 1 -

transfer their chips. Courts have found—and the legislature has defined—nearly identical conduct to constitute "things of value" under the GLRA.[1] The result should be no different here.

Notwithstanding, Churchill argues that the GLRA and specifically, the term "thing of value," is plagued with latent ambiguity because the statute was enacted years before the advent of online gambling and an award of virtual in-game prizes. That argument likewise fails, as courts have regularly held that the Washington gambling statutes are unambiguous. And even if latent ambiguities were present, the Court would still be bound by the legislative intent behind the statute, which is to "limit[] the nature and scope of gambling activities" with "strict regulation and control." RCW § 9.46.010. It goes without saying that by enforcing the GLRA against Churchill, the Court would limit both the nature and scope of its illegal gambling activities as the legislature intended, rendering the location of the gambling (i.e. online versus brick-and-mortar locations) irrelevant.

Churchill next touts certain unofficial materials of the Washington Gambling Commission as concrete and controlling support for its position in this regard. In particular, Churchill argues that a PowerPoint presentation and brochure put out by the Commission clearly states the Commission's controlling interpretation that the statute does not apply to such online games as Big Fish Casino. That, too, is wrong for a number of reasons. To start, the "interpretations" were never actually adopted by the Commission pursuant to the statutorily mandated rulemaking process. Thus, they are not binding on this Court and need not even be considered. But setting that aside, the Commission's materials actually support a finding that Big Fish Casino constitutes illegal gambling. For example, although Churchill omits it from its motion, the brochure expressly states that where, as in this case, "the virtual money [can] be sold or redeemed for 'real' money or a prize, the game is illegal." (Dkt. 25, Ex. 3 at 2.)

---

[1]   Notably, Churchill concedes that the first two elements of "illegal gambling" activity— that Plaintiff (i) provided consideration to (ii) play a game of chance—are satisfied here.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

Once the relatively low hurdle of Churchill's GLRA arguments is overcome, each of Plaintiff's claims naturally flows and is sufficiently pleaded. First, because Plaintiff sufficiently stated a claim for illegal gambling under the GLRA, she has also sufficiently pleaded a claim for Churchill's violation of the CPA, as courts regularly hold that the violation of another statute is a sufficient basis for a CPA claim. The only other argument raised by Churchill in this regard is that the CPA cannot apply to two extraterritorial parties like it and Kater. But that argument ignores the choice of law provision found within the Big Fish Casino Terms of Use, which explicitly provides for the application of Washington law to any disputes between the Parties. Tellingly, Churchill does not address the choice of law provision, let alone argue that it is unenforceable for any reason, nor could it.[2] Thus, given the Parties clear intent to be governed by Washington law here, the Court can appropriately apply the CPA.

Finally, Churchill's bid for dismissal of Plaintiff's unjust enrichment claim fails for similar reasons—primarily that Plaintiff has sufficiently pleaded a claim for illegal gambling under the GLRA. Beyond that, Churchill's contention that an unjust enrichment claim is barred by the mere existence of the Terms of Use plainly ignores that, even if Churchill is correct that a contract exists between the Parties, a plaintiff may still plead other equitable claims in the alternative. For example, if the Court finds that the Terms of Use are not binding upon the Parties or that Plaintiff has no other adequate remedy at law, then she may properly pursue her unjust enrichment claim.

For these reasons and as explained further below, Churchill's motion to dismiss should be denied in its entirety, and it should be ordered to answer Plaintiff's complaint.

---

[2]     Despite claiming that the CPA does not apply extraterritorially, Churchill otherwise analyzes each of its arguments under Washington law.

PL.'S OPP. TO MOT. TO DISMISS
No. C15-612 MJP                                      - 3 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

## II.     FACTUAL BACKGROUND

### A.     Churchill Downs Operates Big Fish Casino and Profits from Its Secondary Market.

Churchill Downs, a business largely known for its horseracing and casino gaming, also owns and operates a leading video game development company—Big Fish Games, headquartered in Seattle, Washington—that makes games designed to appeal to a mass audience of "casual gamers." (*See* Class Action Complaint and Jury Demand, Dkt. 2 ["Compl."] ¶¶ 1, 21–22.) Casual gamers are enticed by the "free-to-play" model of games such as Big Fish Casino: users are encouraged to download the game for free and prompted to buy many low-cost items within the game while playing. (*Id.* ¶ 12.) Over time, these games may influence addiction and psychological triggers similar to gambling addiction. (*Id.* ¶¶ 14–15.) Notably, none of these games are games of skill; rather, they are games of chance because the outcomes of the games are entirely determined by Big Fish Games' computerized algorithms. (*Id.* ¶ 32.)

One such game owned and operated by Churchill is a virtual casino—available for play on Android and Apple iOS devices, Facebook, and web browsers—called Big Fish Casino, through which Churchill offers a multitude of electronic versions of common casino games. (*Id.* ¶¶ 1–2.) New users are initially given a bundle of 100,000 free chips to play games, a cache that inevitably runs out. (*Id.* ¶¶ 3, 26.) After users have run out of this initial allotment, Churchill offers additional chips at cost—starting at $1.99 for 20,000 chips—to allow them to play more games. (*Id.* ¶ 3.) These games of chance reward winners with more chips; thus, chips extend players' available game time without the payment otherwise ordinarily required. (*Id.* ¶ 4.)

When players win or buy large amounts of chips, they can then "cash out" by selling their chips to other Big Fish Casino players on an active secondary market partially located within the mobile application and partially located on an external "black market." (*Id.* ¶¶ 5, 35.) In fact, when players arrange to exchange chips in this way, they must exchange chips through the Big Fish Casino platform itself—a transaction facilitated by Churchill for a profit (usually $1.99 per

PL.'S OPP. TO MOT. TO DISMISS
No. C15-612 MJP

- 4 -

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

transaction). (*Id.*) Plaintiff alleges that Churchill is aware that its players regularly cash out their winnings, because (as described) it both facilitates the transaction and profits from it. (*Id.* ¶ 36.)

**B.      Plaintiff Used and Lost Money to Churchill Downs in its Big Fish Casino.**

Plaintiff Kater is one such player of Big Fish Casino who, like tens of thousands of others, lost money to the unlawful gambling operation. (Compl. ¶¶ 37, 40.) Around January 2013, Plaintiff began playing Big Fish Casino using her Android device. Like so many others, she purchased chips from Churchill to be able to continue playing the game after she lost all of her initial allotment. (*Id.*) Ultimately, as Plaintiff continued to buy chips in order to continue playing, she lost over $1,000 playing Big Fish Casino. (*Id.* ¶ 38.)

## III.    LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive such a motion, a complaint need only contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (citing *Twombly*, 550 U.S. at 555). "The plausibility standard is not akin to a 'probability requirement' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. To determine whether a complaint possesses the requisite measure of specificity and plausibility, the court takes all factual allegations as true and draws all reasonable inferences to construe them in the light most favorable to the plaintiff. *See Garoutte v. Am. Family Mut. Ins. Co.*, No. C12-1787-MJP, 2013 WL 231104, at *1 (W.D. Wash. Jan. 22, 2013) (quoting *Anderson v. Clow*, 89 F.3d 1399, 1403 (9th Cir. 1996)).

## IV.    ARGUMENT

Churchill argues that Plaintiff's claims for violations of the Gambling Loss Recovery Act, CPA, and unjust enrichment all fail for four reasons: (1) that its Big Fish Casino does not constitute "illegal gambling" under the GLRA because the chips exchanged in the game are not

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

"prizes" or other "things of value;"[3] (2) the CPA does not apply extraterritorially to Plaintiff and Defendant as non-residents of Washington; (3) Plaintiff cannot state a claim for relief under an unjust enrichment theory because the instant dispute falls within the scope of a valid and enforceable agreement between the Parties—the BigFish Casino Terms of Use; and (4) Plaintiff's claims are limited by the contractual statute of limitations found within the Terms of Use. As discussed in detail below, each of these arguments fails.

**A.** **Plaintiff Sufficiently States a Claim for Relief Under Washington's Gambling Loss Recovery Act, RCW § 4.24.070.**

1. Plaintiff Sufficiently Pleads the Elements of her GLRA Claim, Including that Big Fish Casino Involves the Winning (and Losing) of "Things of Value."

First, Plaintiff adequately pleads a claim for relief under Washington's Gambling Recovery Act. The Gambling Loss Recovery Act (RCW § 4.24.070) provides, in relevant part:

> All persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost.

RCW § 4.24.070. From there, "illegal gambling" requires (i) that an individual risked something of value in consideration for the ability to play a game, (ii) that the game was one of chance, and (iii) that players had the opportunity to win a "prize" or "other thing of value." *See* RCW § 9.46.0237; *see also State v. Brotherhood of Friends*, 41 Wash.2d 133, 149 (1952) (en banc)

---

[3]   For the sake of clarity, Count I of Plaintiff's Complaint does not assert a cause of action under Washington's 1973 Gambling Act, as Churchill suggests. (*See* dkt. 2 ¶ 47; dkt. 24 at 6 – 7, 17.) Rather, Plaintiff's claim arises under the Gambling Loss Recovery Act (RCW § 4.24.070). (Dkt. 2 ¶ 47 – 59.) The 1973 Gambling Act merely acts as a useful reference for further clarifying the definitions of the terms found within the GLRA, such as "gambling," to the extent that is even necessary. *See Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wash.2d 1, 11 (2002) (en banc) (looking to related statutes to determine the meaning of statutory terms as part of the analysis of whether a plain meaning can be ascertained).

(recognizing that all forms of gambling require consideration, chance, and prize). In other words, to state a claim under the GLRA, a plaintiff must allege that she (i) lost something of value, (ii) that she had risked, (iii) to play a game of chance, (iv) with the opportunity to win a prize.

First, there is no question that Plaintiff lost money to Churchill through its Big Fish Casino, as she paid for and lost more than $1,000 in the game. (Dkt. 2 ¶ 28.) Additionally, Churchill concedes (as it must) that the next two elements of the GLRA claim are satisfied—Plaintiff sufficiently alleges that she gave consideration to Churchill (in the form of "chips" purchased with actual money) in exchange for the opportunity to play its Big Fish Casino "game of chance." (*See* dkt. 24 at 9; dkt. 2 ¶ 32 ("Notably, none of defendant's games depend on any amount of skill to determine their outcomes—all outcomes are based entirely on chance."); *see also Bullseye Distributing LLC v. State Gambling Com'n*, 127 Wash.App. 231, 240 (2005) (finding illegal gambling where players purchased "play points" which were risked as a "thing of value" in a game of chance) (citing RCW § 9.46.0285); *ZDI Gaming Inc. v. State ex rel. Wash. State Gambling Com'n*, 173 Wash.2d 608, 622 (2012) (recognizing that a game of chance does not "involve any substantial degree of skill or judgment") (emphasis removed) (citation and quotations omitted); RCW § 9.46.0225 (a "contest of chance" includes any "gaming device in which the outcome depends in a material degree upon an element of chance[.]").

Churchill instead hangs its hat on the argument that Big Fish Casino supposedly lacks the exchange of a "prize" or "thing of value." (*See* dkt. 24 at 6 ("Kater has not pled that Big Fish Casino awards any monetary prize or other tangible items or rewards, and the game's Terms of Use, upon which she relies, explicitly foreclose the possibility of a Big Fish Casino user securing a monetary or other tangible prize through gameplay.").) There are three problems with that argument. First, Big Fish Casino chips are "things of value" because, at minimum, they extend gameplay for players. Beyond that, Plaintiff also expressly alleges that players can and do convert the chips into *real money* through a secondary market that is both supported by Churchill and through which Churchill profits. (*See* dkt. 2 ¶ 5, 35, 53, 56.) And finally, Churchill cannot

1  simply avoid liability by pointing to a provision in its Terms of Use that supposedly prohibits the

2  sale of chips, when it actually *facilitates and profits from* those sales.[4]

3      The *Bullseye* case is particularly instructive on the first point. In *Bullseye*, a company

4  utilizing a device designed to operate like a slot machine appealed from the Gambling

5  Commission's administrative ruling that its slot-like game was an illegal gambling device instead

6  of a promotional contest of chance. 127 Wash.App. at 233 – 35. There, the court's analysis

7  focused on whether the machine provided consumers "things of value," defined as:

8

9      any money or property, any token, object or article exchangeable for money or
       property, or any form of credit or promise, directly or indirectly, contemplating

10     transfer of money or property or of any interest therein, or involving extension
       of a service, entertainment or a privilege of playing at a game or scheme

11     without charge.

12  *Id.* at 240 – 41 (quoting RCW 9.46.0285). In finding that the machine constituted a "gambling

13  device," the *Bullseye* court ultimately held that the machine provided individuals a "thing of

14  value" in the form of "play points" that "extended a service or privilege of playing [a] game

15  without charge." *Id.* Indeed, the court expressly held that the play points did *not* need to have

16  monetary value so long as they extended gameplay. *Id.* ("*Although they may lack pecuniary*

17  *value on their own*, these points fall within the definition of 'thing of value' because they extend

18  the privilege of playing the game without charge.") (emphasis added) (citing RCW § 9.46.0285).

19      Under the *Bullseye* framework, there should be no question that the Big Fish Casino

20  chips at issue here are "things of value." Plaintiff repeatedly alleges that the chips won by

21  consumers provide them the opportunity to extend their play in the Big Fish Casino. (Dkt. 2 ¶¶

22  33-34; *see also id.* ¶ 56 ("The 'chips' Plaintiff and the Class had the chance of winning in

23

24  [4]     In Churchill's 10-K it distinguishes between "casual free-to-play" and "casino-style
       games." *See* Churchill Downs Form 10-K at 3 – 4, available at

25  http://files.shareholder.com/downloads/ABEA-4CIYZ4/587380370x0xS20212-15-
       11/20212/filing.pdf (last visited Aug. 17, 2015). This distinction is presumably due to the fact

26  that "Big Fish Casino…generates the majority of [Defendant's] social casino game revenue from
       mobile devices and specifically the Apple App Store." *Id*. at 8.

27

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

Defendant's Big Fish Casino are 'things of value' under Washington law because they are credits that involve the extension of entertainment and a privilege of playing a game without charge.")); *see also* RCS 9.46.0285 (establishing that the "extension of a service, entertainment or a privilege of playing at a game or scheme without charge" is a "thing of value").

Next, even if the chips were not "things of value" for the sole reason that they extend game play (they are), Plaintiff also alleges that they are "things of value" inasmuch as they may be exchanged for real money on a secondary market. (Dkt. 2 ¶ 56 ("the chips can be sold on the secondary market for cash and can be transferred to other Big Fish Casino players in exchange for cash.").) As such, they are an indirect form of credit, and they "contemplat[e] transfer of money" within the meaning of the statute. *See* RCW § 9.46.0285; *see also ZDI Gaming Inc.*, 173 Wash.2d 608 (holding that a cash card was effectively the same as cash for the purposes of gambling because the extra steps necessary to convert the card to cash were *de minimis*).

Finally, Defendant cannot simply evade liability for consumer-to-consumer sales of chips by pointing to its Terms of Use, which purport to prohibit such sales of the chips on the secondary market. (Dkt. 24 at 4.) That is especially true here, where Defendant both recognizes that Big Fish Casino players can "cash out" by selling their chips to other players in the mobile application and on an external "black market," (dkt. 2 ¶¶ 5, 35), and in fact requires them to sell the chips *through the Big Fish Casino* platform itself—a transaction that Churchill facilitates for a fee at $1.99 per transaction. (Dkt. 2 ¶¶ 5, 35, 53, 56.)

Accordingly, Plaintiff has adequately pled that Big Fish Casino constitutes illegal gambling as contemplated by the GLRA.

2. The 1973 Gambling Act is not subject to "latent ambiguity" regarding the term "things of value."

Perhaps recognizing that the plain application of the GLRA renders the Big Fish Casino an "illegal gambling game," Churchill argues that the statute is ambiguous and therefore needs clarity. In doing so, it spends the majority of its brief relying on an informal presentation given by certain employees of the Washington Gambling Commission, who supposedly found that

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

social gaming through Big Fish Casino does not constitute gambling because it does not involve the winning or losing of "things of value." (Dkt. 24 at 7–13.) That reliance is misplaced for three reasons. First, the statute is unambiguous and therefore, the Court should not consider other documents in applying it. Second, even if it was ambiguous, the Court would look to the legislative intent of the statute for guidance—not the personal opinions of three individuals on the Commission. And finally, the documents provided were not considered in the rulemaking process—the Commission has never issued any rules or regulations regarding the application or enforcement of the GLRA.

### a.    There is No Latent Ambiguity in the GLRA.

Churchill's overarching argument in this regard is that because the 1973 Gambling Act was drafted before the advent of personal computers and mobile devices, "there is a latent ambiguity in the definition of gambling in [it]…." (Dkt. 24 at 12.) From there, it argues that "the statutory definition of 'thing of value' was likewise enacted long before the advent of users purchasing virtual in-game items that cannot be exchanged for money" making it similarly ambiguous and requiring that the Court "defer to the strong guidance of the Gambling Commission…." (*Id.* at 12–13.) These arguments fail. The only authority Churchill relies upon in this regard—the *Bullseye* opinion—actually held that there is *no* latent ambiguity in the definition of "gambling."[5] *See Bullseye*, 127 Wash.App. at 240 ("*We find RCW 9.46.0241 unambiguous* in defining four separate devices, any one of which is a gambling device.") (emphasis added). Not surprisingly, other courts have found that provisions within the Gambling Act are unambiguous. *See Internet Cmty. & Entm't Corp. v. Washington State Gambling*

---

[5]      A "latent ambiguity is apparent [ ] when the language is applied to the facts as they exist and is not apparent on the face of the language," *State v. Delgado*, 63 P.3d 792, 794 (Wash. 2003) (en banc), and it can only exist where "no language guides" the reader on the applicability of a statute. *State ex rel. Evergreen Freedom Found. v. Washington Educ. Ass'n*, 140 Wash. 2d 615, 657 (2000), as amended (June 8, 2000) ("When words in a statute are plain and unambiguous, this Court is required to assume the Legislature meant what it said and apply the statute as written.").

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

*Comm'n*, 169 Wash.2d 687, 694 (2010) (holding that an internet website operator who accepted bets "post[ed] … on its web site for a fee" was "*unambiguously* engaged in 'bookmaking' as that term is defined under the gambling act" without finding that the 1973 statute had latent ambiguity) (emphasis added). And as it relates to a "thing of value," specifically, the term is expressly defined in the statute and merely requires that the object be exchangeable for money or extended play. RCW § 9.46.0285. That is not a remarkable proposition or something that is not otherwise easily understood from the face of the statute. *See Densley v. Dep't of Ret. Sys.*, 162 Wash. 2d 210, 219 (2007) (finding that when "a statute is clear on its face, its meaning should be derived from the language of the statute alone.") (quotation and citation omitted).

### b.   Even if there were Latent Ambiguity, the Legislative Intent of the GLRA Supports the Definition of Illegal Gambling.

Next, even if the Court found that there is a latent ambiguity in the statute (there is not), it should look solely to the "customary rules of statutory construction or legislative history for guidance." *See Watie v. Carey*, No. CIV S-04-1289, 2010 WL 3186224, at *8 (E.D. Cal. Aug. 11, 2010). The legislative intent behind the Gambling Act is "to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control." RCW § 9.46.010. Its purpose is to "*restrain all persons from seeking profit* from professional gambling activities in this state" and "to *safeguard the public* against the evils induced by common gamblers and common gambling houses engaged in professional gambling." *Id.* (emphasis added). Here, there is no question that by enforcing the GLRA against Churchill, the Court would both "limit[] the nature and scope of gambling activities," RCW § 9.46.010, but also "safeguard the public against the evils induced by [Churchill]"—a company known for its gambling operations.

Nevertheless, Churchill still argues that the legislature did not intend to stop games like Big Fish Casino, because these "activities and social pastimes are more for amusement ***rather than for profit***, do not maliciously affect the public, and do not breach the peace." (Def. Mot. at

PL.'S OPP. TO MOT. TO DISMISS
No. C15-612 MJP

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

- 11 -

16 (citing RCW § 9.46.010 (emphasis added)).) That contention fails for two reasons. First, Big Fish Casino operates *for profit*, which is evidenced by the fact that in the past year, "Defendant's Big Fish subsidiary posted over $312 million in 'annual bookings,' with much of the 'bookings' coming from 'Big Fish Casino,' the 'top revenue producing social casino app on [Apple's iOS devices] last year." (Dkt. 1 at 7.) Second, a game played for entertainment or amusement is a game in which:

> (1) The contestant actively participates; (2) The outcome depends in a material degree upon the skill of the contestant; (3) Only merchandise prizes are awarded; (4) The outcome is not in the control of the operator; (5) The wagers are placed, the winners are determined, and a distribution of prizes or property is made in the presence of all persons placing wagers at such game; and (6) Said game is conducted or operated by any agricultural fair, person, association, or organization in such manner and at such locations as may be authorized by rules and regulations adopted by the commission pursuant to this chapter as now or hereafter amended.

RCW § 9.46.0201. "Amusement games must not award additional plays as prizes," WAC 230-13-005, and "[o]perators must not allow winners to forfeit previously won prize(s) in exchange for another play [at the amusement game]." WAC 230-13-130.

There is no question that Big Fish Casino is not an amusement game. Players do not actively participate in Big Fish Casino because their interaction is limited to the press of a single button. The outcome of the game does not depend on the consumer's skill, but rather, the Big Fish Casino algorithms. Churchill awards free replays and coins that can be redeemed for cash, rather than merchandise. Thousands of players can play Big Fish Casino at the same time, making the presence of all players essentially impossible. Big Fish Casino is not operated at an agricultural fair, nor is it authorized by any rule or regulation. *See* RCW § 9.46.0201. Big Fish Casino also unquestionably "allow[s] winners to forfeit previously won [chips] in exchange for another play…." *See* WAC 230-13-120; (*see also* dkt. 2 ¶ 3, 4, 38, 52, 53, 65.) Thus, it is clear that Churchill cannot hide behind a "social pastime" exception to the statute and its arguments in this regard should be rejected as well.

PL.'S OPP. TO MOT. TO DISMISS
No. C15-612 MJP

- 12 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

### c. *Churchill Downs' other authorities are unreliable.*

Finally, Churchill's reliance on the Gambling Commission materials—declarations of several Commission employees and a PowerPoint presentation and brochure on whether social games fit the statutory definition of "gambling" (dkt. 24 at 7 – 13)—is misplaced. First, the Gambling Commission has not implemented its "interpretations" through the well-established—not to mention required—rulemaking process. Second, the interpretations relied upon amount to nothing more than certain individuals' opinions on the scope of the statute, not any binding authority. And finally, the brochure relied on by Churchill Downs itself expressly says that "if the virtual money can be sold or redeemed for 'real' money or a prize, the game is illegal." (Dkt. 25, Ex. 3 at 2.) As such, the Court should not defer to the Gambling Commission's supposed interpretation of the statute.

As an initial matter, in order for courts to be bound by an agency's interpretation of a statute, that interpretation must be adopted as law through a rigorous rule-making process. *See* RCW § 42.56.040 (requiring agencies to publish "[s]ubstantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency" in the Washington Administrative Code). To start the rulemaking process, agencies are required to "solicit comments from the public on a subject of possible [rulemaking] before filing with the code reviser a notice of proposed rulemaking." RCW 34.05.310(1)(a). Abstracts of interpretive statements are then published in the Washington State Register with contact information to guide an interested person to the agency for a copy. RCW § 34.05.230(4).

Here, none of that process took place and the Gambling Commission has not actually implemented a rule on what constitutes "gambling" under the statute. Absent that, the Commission documents attached to Churchill's motion cannot properly be considered as an interpretation of the statute, and certainly not any authority to which this Court is bound. *See Ass'n of Washington Bus. v. State of Washington, Dep't of Revenue*, 155 Wash. 2d 430, 443

PL.'S OPP. TO MOT. TO DISMISS
No. C15-612 MJP

- 13 -

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

(2005) ("Again, interpretive statements cannot be published in the WAC without first surviving the rule-making process, implying authority to make such rules.").[6] Accordingly, the Court need not follow the interpretation of the Gambling Commission.

Even if that were not the case, the Court should still refuse to give any weight to the Gambling Commission's informal interpretations of the statute. "If an agency is asserting that its interpretation of an ambiguous statute is entitled to great weight it is incumbent on that agency to show that it has adopted and applied such interpretation *as a matter of agency policy. It need not be by formal adoption equivalent to an agency rule, but it must represent a policy decision by the person or persons responsible.*" *Cowiche Canyon Conservancy v. Bosley*, 118 Wash. 2d 801, 815 (1992) (emphasis added).

Rather than being created (or commissioned) by the Gambling Commission as required, the PowerPoint presentation Churchill relies upon was created by two staff members and presented during a public meeting—not a rulemaking procedure. The brochure likewise provided the interpretive feelings of the Commission and merely sought to "give[] general guidance" rather than establish any hard and fast rule. (Dkt. 25-3 at 2.) Indeed, they were not in a legislative or regulatory environment when they were presented, there was no vote on implementing regulations, there were no rules made as a result of the presentation, and the presentation was

---

[6]     Despite the Gambling Commission's notable lack of rulemaking on the subject of social gaming and "things of value," Churchill urges the Court to take judicial notice of the documents that the Gambling Commission has put up on its website. The applicability and authenticity of the documents, however, are squarely in dispute because Churchill relies nearly entirely on the documents, which contradict Plaintiff's plain allegations.[6] *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (finding that judicial notice is appropriate where the report of an administrative body is referred to as "background material, *without relying on it to resolve any factual dispute*") (emphasis added); *see also Berge v. Gorton*, 88 Wash.2d 756, 763 (1977) (en banc) (finding that the trial court may take judicial notice of public documents *if their applicability cannot be reasonably disputed in ruling on a motion to dismiss*). Accordingly, the Court should not take judicial notice of the documents.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

never published.[7] Second, the interpretations presented within the PowerPoint presentation are not the policy of the Gambling Commission. Instead, they are "unofficial staff interpretations" that are "entitled to no weight whatsoever." *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 227–28 (1981); *see also City of Sunnyside v. Fernandez*, 59 Wash.App. 578, 581 (1990) (refusing to defer and give weight to "subjective understanding" of agency employee); N. Singer, Sutherland Statutory Construction § 66.04, at 308–09 (4th ed. 1986) (stating that the interpretations given judicial weight should be from expressions of the agency's legislative and regulatory power and from informal rulings of the agency or its officers).

In any event, even if the Court found that the unofficial documents were relevant and binding, the Court should still find that Big Fish Casino participates in illegal gambling. Indeed, Churchill blatantly misrepresents the "findings" of the Commission in the brochure attached to its motion when it states:

> "Additionally, and directly relevant to this case, the Commission explained that '[m]any Social Gaming websites give free virtual money to begin play, with an option to buy more virtual money with 'real' money to continue play . . . [l]egal Social Gaming websites will not let players cash in their virtual winnings or points for 'real' money or prizes. Because there is no prize, these games are not gambling.'"

(Def. Mot. at 12) (citing Dkt 25, Ex. 3 at 2). That is because the very next sentence of the brochure reads: "However, if the virtual money can be sold or redeemed for 'real' money for a prize, the game is illegal." Of course, Plaintiff repeatedly alleges that Big Fish Casino awards

---

[7]     Although the presentation is hosted on the Gambling Commission's website, it is hardly "published" by the Commission as Churchill contends. In fact, the Commission has not linked to the presentation at all. Instead, the only way to access the presentation is to already know the URL. Compare that to the meeting minutes made available by the Commission on a page accessible by navigating to www.wsgc.wa.gov then clicking on "Public Meetings," then "Past Meetings," then "2013," then "May 9 in Vancouver." Similarly, the Commission made the brochure available to those who navigate to www.wsgc.wa.gov then click on "Publications & Reports" and then "Online Social Gaming."

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

virtual money that (1) can be sold or (2) can be redeemed for a prize, and its game therefore are illegal.

**B.      Plaintiff States a Valid Cause of Action for Churchill's Violation of the CPA.**

Having sufficiently pleaded that the Big Fish Casino constitutes "illegal gambling," Plaintiff also states a claim for Churchill's violations of the Washington Consumer Protection Act. Nevertheless, Churchill challenges Plaintiff's CPA claim on the (false) premise that Plaintiff has not sufficiently pleaded Big Fish Casino's status as an "illegal gambling" operation. (*See* dkt. 24 at 20 – 21; *see also* Section IV(A), *supra*.) Accepting Plaintiff's allegations in this regard as true (as described above and is required at this stage of the proceedings), there is no question that Plaintiff has sufficiently stated a claim under the CPA. Likewise, Churchill's contention that the CPA cannot be applied is belied by its own Big Fish Terms of Use.

1.      <u>Plaintiff Sufficiently Alleges that Churchill's Violation of the GLRA Constitutes an Unfair or Deceptive Practice as Contemplated by the CPA.</u>

In order to state a CPA claim, a plaintiff must allege "(1) an unfair or deceptive act or practice; (2) which occurs in trade or commerce; (3) that impacts the public interest; (4) which causes injury to the plaintiff in his or her business or property; and (5) which injury is causally linked to the unfair or deceptive act." *Washington State Physicians Ins. Exch. & Ass'n v. Fisions Corp.*, 122 Wash.2d 299, 312 (1993) (en banc). Here, Churchill contends that Plaintiff has failed to sufficiently plead an "unfair or deceptive act or practice" inasmuch as the Big Fish Casino supposedly does not constitute "illegal gambling" under the GLRA. (Dkt. 24 at 20 – 21.)[8] As described in detail above, Churchill is wrong.

---

[8]      Churchill does not otherwise dispute that Plaintiff has sufficiently pleaded each element of her claim for violations of the CPA and indeed, she has done so. That is, Plaintiff sufficiently alleges that (i) Churchill Downs operated an illegal gambling device, (ii) its illegal practices were conducted in commerce, (iii) Churchill Downs' illegal conduct violates public policy against gambling and impacts the public interest, (iv) Kater lost over $1,000 on Defendant's unlawful game of chance, and (v) Kater's injury occurred as a direct result of Churchill Downs' conduct. (Dkt. 2 ¶¶ .65–71)

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

Having sufficiently pleaded Churchill's violation of the GLRA, that statutory violation may act as the basis for Plaintiff's CPA claim. Indeed, the Washington courts have been clear that "[o]ne way a plaintiff can establish an unfair or deceptive act or practice in trade or commerce is to show a per se violation of a regulation or statute." *Holiday Resort Cmty. Ass'n v. Echo Lake Associates, LLC*, 134 Wash.App. 210, 220 (2006), *as amended on denial of reconsideration* (Aug. 15, 2006) (citing *Hayden v. Mutual of Enumclaw Ins. Co.,* 141 Wash.2d 55, 62 (2000)). That is especially true in cases such as this, where the conduct at issue violates a statute whose primary purpose is to protect consumers and the public at large from what the legislature has deemed injurious or otherwise unlawful. *See Holiday Resort Cmty. Ass'n*, 134 Wash.App. at 220 (citing RCW 19.86.20) (holding that "[t]he purpose of the CPA is 'to protect the public and foster fair and honest competition'" and that "[t]he Legislature also states that the CPA 'shall be liberally construed that its beneficial purposes may be served.")); *see also Short v. Demopolis*, 103 Wash.2d 52, 61 (1984) (holding that the CPA is "a carefully drafted attempt to bring within its reaches *every* person who conducts unfair or deceptive acts or practices in *any* trade or commerce.") (emphasis in original). There can be no question that Washington's anti-gambling statutes are designed to "limit the nature and scope of gambling." RCW § 9.46.010. The language of the Act states as much and therefore, Plaintiff has sufficiently pleaded Churchill's operation of illegal gambling activities under the GLRA its violation of the CPA as a result.

2.    <u>Application of the CPA is Required by the Big Fish Terms of Use is Otherwise Appropriate.</u>

Next, Churchill argues that the CPA cannot be applied in this case because neither party is a resident of the State of Washington. At the very least, Churchill argues that this case should be stayed in light of this Court's recent certification of the question to the Washington Supreme Court in the *Thornell v. State Farm, et al.* matter. Those arguments only tell part of the story.

First, Churchill ignores that the Big Fish Terms of Use (upon which it relies heavily in other areas of its Motion) includes the follow choice of law provision:

1

2
　　　These Terms of Use are governed by and shall be construed in accordance with
　　　the laws of the State of Washington, USA….

3  (Dkt. 5-1 at 5.) Churchill does not, however, contend that the choice of law provision nor any

4  other portion of the Terms of Use are unenforceable.[9] Further, Churchill is clearly a party to the

5  Terms of Use. Indeed, the Terms expressly state that "Big Fish Games, Inc. and/or its Affiliates

6  provide access to the Big Fish Offerings subject to the terms and conditions set forth in these

7  Terms of Use." (Dkt. 5-1 at 1.) "Affiliate" is further defined to mean "any person or entity which

8  controls, is controlled by, or is under common control with, [a] party…." (*Id.*)[10] And as Plaintiff

9  alleges and Churchill has publicly confirmed, Big Fish is a wholly owned subsidiary under the

10 control of Churchill. (*See* dkt. 2 at 22); *see also* Churchill Downs Form 10-K at 3 – 4, available

11 at http://files.shareholder.com/downloads/ABEA-4CIYZ4/587380370x0xS20212-15-

12 11/20212/filing.pdf (last visited Aug. 17, 2015).[11] Thus, the choice of law provision must control

13

14
[9]　　The standard for whether a forum selection clause such as the one found in Big Fish
Casino's Terms of Use should be enforced is found in *M/S Bremen v. Zapata Off-Shore Co.*, 407

15 U.S. 1 (1972). In *Bremen* the Supreme Court held that forum selection clauses are *prima facie*
valid and will not be set aside unless the party challenging the enforcement of such a provision

16 can show it is unreasonable or unjust under the circumstances. *Id.* at 12. A forum selection clause
is only unreasonable if: "(1) the inclusion of the clause in the agreement was the product of fraud

17 or overreaching, (2) the party wishing to repudiate the clause would effectively be deprived of
his day in court were the clause enforced, or (3) enforcement would contravene a strong public

18 policy of the forum in which suit is brought." *Brown v. Scripps Investments & Loans, Inc.*, No.
CO801166, 2009 WL 1649947, at *3 (W.D. Wash. June 11, 2009); *see also Richards v. Lloyd's*

19 *of London*, 135 F.3d 1289, 1294 (9th Cir.1998) (citing *Bremen*, 407 U.S. at 12–13, 15, 18).
Churchill hasn't even attempted to meet that burden here. It does not argue that the choice of law

20 provision was included in the Terms of Use as a result of Plaintiff's fraud or overreaching—nor
could it. Churchill would not be deprived of its day in court if the clause were enforced—indeed,

21 it is here before this Court now. And, enforcement of the choice of law provision would not
contravene any of Washington's public policies, especially as the legislative purpose behind the

22 GLRA (as discussed above) was to prohibit the sorts of unlawful gambling at issue here.

23

24
[10]　　The Terms of Use also make clear that references therein to "Big Fish" means "Big Fish
Games, Inc….along with its Affiliates." (Dkt. 5-1 at 1.)

25
[11]　　Also notable, although it disputes the application of the CPA in this case, Churchill does

26 not otherwise dispute the applicability of Washington law to Plaintiff's claims here. Instead, its
motion and each argument raised within it are based entirely upon Washington law—it cites no

27

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1    here. *Schnall v. AT & T Wireless Servs., Inc.*, 171 Wash. 2d 260, 266 (2011) (holding that courts

2    "interpret contract provisions to render them enforceable whenever possible" and "generally

3    enforce contract choice of law provisions.") (quoting *McKee v. AT & T Corp.*, 164 Wash.2d 372,

4    384 (2008)).[12]

5         For the same reasons, Churchill's reliance on this Court's opinion in *Thornell* is also

6    misplaced. Unlike in this case, *Thornell* involved the question of the CPA's applicability to two

7    extraterritorial parties where the only alleged tie to Washington was the conduct of an agent of

8    the defendant. This Court ultimately certified the question to the Washington Supreme Court

9    because "[n]o case specifically holds that the WCPA applies to a foreign plaintiff's suit against a

10   foreign corporation." *Thornell v. Seattle Serv. Bureau, Inc.*, No. 14-cv-1601-MJP, 2015 WL

11   999915, at *3–4 (W.D. Wash. Mar. 6, 2015). The case at hand presents a different scenario.

12   Although Plaintiff Kater is a citizen of the state of Michigan, she can sustain a CPA claim

13   against Churchill because unlike the respective plaintiff and defendant in *Thornell*, the Parties

14   have voluntarily subjected themselves to being governed by Washington law by way of the Big

15   Fish Terms of Use. (*See* dkt. 5-1 at 5.) And in any event, even if the Washington Supreme Court

16   answers the certified question in the negative, it is not clear that such a ruling would be

17

18

19

---

20   other law, does no other choice of law analysis, and makes no suggestion that any other state's
21   law applies.

22   [12]     Churchill will likely argue in response that Plaintiff is trying to "have it both ways" by,
     on the one hand, arguing that the choice of law provision is enforceable, while on the other,
23   arguing that the contractually limited statute of limitations period is not. (*See* dkt. 24 at 21, 23.)
     There is, however, a material distinction. While Churchill has failed to present any argument or
24   authority with respect to the enforceability of the choice of law provision, Plaintiff has identified
     controlling case law that identifies a specific basis for invalidating the statutory limitation
25   language of the Terms of Use—it is void as against Washington public policy. *See McKee*, 164
     Wash.2d at 399.
26

27

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

controlling in this scenario, where the Parties have contractually agreed to application of

Washington law.[13]

### C.    Plaintiff's Sufficiently Pleads Her Unjust Enrichment Claim.

Churchill next argues that Plaintiff's unjust enrichment claim must be dismissed because

(i) the fees for Big Fish Casino that it admittedly accepted from Plaintiff and retained were not

received as a result of an illegal gambling operation as Plaintiff alleges, and (ii) Plaintiff has

supposedly failed to allege that the fees she paid to use Big Fish Casino fall outside of the Big

Fish Terms of Use. (Dkt. 24 at 22 – 23.) Both arguments miss their mark.[14]

Given that Plaintiff has sufficiently pleaded Churchill's operation of an "illegal

gambling" device, *see supra* Section IV(A), the retention of Plaintiff's and the proposed Class's

losses would be inequitable under the Gambling Loss Recovery Act. And, while Churchill

contends the Big Fish Terms of Use specifically prohibit users from generating real money in

exchange for chips, Plaintiff has specifically alleged that just the opposite occurred. That is,

despite the contractual prohibition against the sale of "virtual currency" for real money,

Churchill, in fact, supported its customers' sale of their Big Fish accounts in exchange for actual

money on secondary markets and actually profited therefrom by requiring such exchanges of

chips occur within the Big Fish game and charging a fee for each transaction. (Dkt. 2 ¶ 35); *see*

---

[13]    For the same reason, a stay of this case pending the Washington Supreme Court's ruling would be fruitless, as the order will only provide answers to the questions raised in *Thornell* under the circumstances of that case, and likely not the issue of a contractual choice of law.

[14]    Notably, Churchill only challenges Plaintiff's supposed failure to allege that its retention of the fees she paid as part of her use of Big Fish Casino was *inequitable*. Indeed, Churchill does not dispute that Plaintiff has otherwise sufficiently alleged the elements of her claim for unjust enrichment—i.e., its receipt of a benefit from her in the form of the fees she paid to Big Fish Casino and its retention of that benefit. *See Thornell*, 2015 999915, at *5 (citing *Young v. Young*, 164 Wash.2d 477, 484 (2008) (holding that "under Washington law, unjust enrichment occurs when there is 'a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.'").

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

*Parsons Supply, Inc. v. Smith*, 22 Wash.App. 520, 523 (1979) ("[A] breaching party cannot demand performance from the nonbreaching party.") (citing *Lea v. Young*, 168 Wash. 496, 12 P.2d 601 (1932)).

Moreover, the existence of Terms of Use would not alone require dismissal of Plaintiff's unjust enrichment claim as Churchill contends. Rather, federal law allows Plaintiff to plead her unjust enrichment claim in the alternative to the existence of a valid and enforceable agreement: "A party may set out 2 or more statements of a claim or defense alternately or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2); *see also Arthur v. United States by and Through VA*, 45 F.3d 292, 296 (9th Cir. 1995); *see also PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 (9th Cir. 2007) (Ninth Circuit "allow[s] pleadings in the alternative—even if the alternatives are mutually exclusive"). Thus, to the extent the Court ultimately determines that the Terms of Use do not apply or that Plaintiff otherwise lacks an adequate remedy at law, she may pursue her alternative claim for unjust enrichment and has sufficiently pleaded it as such.

### D.   Plaintiff's Claims Should Not be Limited to the One-Year Statute of Limitations Found Within the Big Fish Terms of Use.

Finally, Churchill argues that Plaintiff's claims are limited to the one-year statute of limitations in Big Fish Casino's Terms of Use.[15] While parties may generally shorten the

---

[15]   Churchill does not, however, contend that even if the Term of Use's one-year limitations period applied that Plaintiff's claims would be time-barred, nor could it. (*See* dkt. 2 ¶ 38 (alleging that Plaintiff wagered, and lost, chip to Churchill as recently as March 2015). Instead, Churchill seems to be seeking premature determination that the one-year limitations period would apply in hopes of limiting the putative class period. Of course, that sort of determination should not be made at this stage of the proceedings, prior to the Parties having developed on sufficient factual record regarding, *inter alia*, which versions of the Terms of Use applied during the class period, whether there were any variations in the Terms of Use, and the like. *See, e.g.*, *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 943 (9th Cir. 2009) ("considerably more information was available to the district court when it ruled on the motion to deny certification than just the pleadings"); *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977); 3 Newberg on Class Actions § 7:16 (4th ed.) ("Class rulings are often deferred pending certain events such as discovery on class issues"). The question here is simply whether Plaintiff has sufficiently pleaded her claims.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

applicable statute of limitations by contract, a material exception to that rule exists where (like here) (i) the shortened statutory period is included within a consumer contract of adhesion, and (ii) would be unreasonable or prohibited by statute or public policy. *See Adler v. Fred Lind Manor*, 103 P.3d 773787 (Wash. 2004) (en banc).

With respect to the CPA specifically, Washington courts have consistently held that the "act would be meaningless if consumer contracts of adhesion routinely stripped consumers of their remedies under the [CPA.]" *McKee*, 164 Wash. 2d at 399. The *McKee* matter is particularly instructive on this point. There, the defendant sought to enforce a contract between the parties requiring all claims against the defendant to be brought within two years. *Id*. at 380. The trial court found the contract substantively unconscionable, in part due to the shortening of the statute of limitations. *Id*. at 381. In reviewing the trial court's holding, the Washington Supreme Court reached the same conclusion, noting that the CPA "provides for a four year statute of limitations, but [the defendant's] agreement cut[] that period in half." *Id*. at 399. The importance of the four years offered by the CPA is to provide "adequate time for consumers to vindicate their rights violated by unfair business practices." *Id*. Accordingly, the Court ultimately held that limitations on such actions are "substantively unconscionable as against public policy as to Consumer Protection Act claims." *Id*.

Churchill's arguments in this respect should be rejected as well. *See Scott v. Cingular Wireless*, 160 Wash.2d 843, 854 (2007) (en banc) (by limiting CPA's statutory period "consumers would have far less ability to vindicate" their rights, which is against Washington public policy).[16]

---

[16] The same is true with respect to the Gambling Loss Recovery Act's three-year statute of limitations. RCW 4.16.080. While Plaintiff is not of aware of any court having considered the issue in the context of the GLRA, specifically, given that the legislative intent behind the GLRA—to protect consumers from illegal (gambling) business operations—it would be surprising if consumers could forgo those rights at the hands of a contract of adhesion like the Big Fish Terms of Use here. *See* RCW § 9.46.010 (declaring the legislative intent behind the Gambling Act of 1973).

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

**V.     CONCLUSION**

For the foregoing reasons, Plaintiff Cheryl Kater, individually and on behalf of all others similarly situated, respectfully requests that the Court enter an Order (i) denying Defendant Churchill Downs Inc.'s motion to dismiss in its entirety, (ii) requiring Churchill Downs to answer Plaintiff's Class Action Complaint and Jury Demand, and (iii) providing such other and further relief as the Court deems reasonable and just.

Dated: August 18, 2015                     Respectfully submitted,

                                            s/ Cliff Cantor
                                           Cliff Cantor, WSBA # 17893
                                           LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
                                           cliff.cantor@outlook.com
                                           627 208th Avenue SE
                                           Sammamish, Washington 98074
                                           Tel: 425.868.7813
                                           Fax: 425.732.3752

                                           EDELSON PC
                                           Rafey S. Balabanian
                                           rbalabanian@edelson.com
                                           Benjamin H. Richman
                                           brichman@edelson.com
                                           Amir C. Missaghi
                                           amissaghi@edelson.com
                                           Courtney C. Booth
                                           cbooth@edelson.com
                                           350 North LaSalle Street, Suite 1300
                                           Chicago, Illinois 60654
                                           Tel: 312.589.6370
                                           Fax: 312.589.6378

                                           Counsel for Plaintiff Cheryl Kater

Certificate of Service

I hereby certify that on the date stamped above I e-filed this brief with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties via their counsel of record.

Dated Aug. 18, 2015.                        s/ Cliff Cantor

PL.'S OPP. TO MOT. TO DISMISS
No. C15-612 MJP                          - 23 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752