1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   CHERYL KATER,                          CASE NO. C15-612 MJP

11                  Plaintiff,              ORDER GRANTING
                                            DEFENDANT'S MOTION TO
12          v.                              DISMISS

13   CHURCHILL DOWNS
     INCORPORATED,
14
                    Defendant.
15

16          THIS MATTER comes before the Court on Defendant's Motion to Dismiss.  (Dkt. No.

17   24.)  Having considered the Parties' briefing and all related papers, the Court GRANTS the

18   motion.

19                                      **Background**

20          Plaintiff Cheryl Kater brings this purported class action suit against Defendant Churchill

21   Downs, Inc., asserting claims under Washington's Recovery of Money Lost at Gambling Act and

22   Consumer Protection Act, and for unjust enrichment.  (Dkt. No. 2.)  Plaintiff alleges that

23   Defendant's Big Fish Casino, a virtual game that allows users to play a variety of electronic

24

1   casino games such as roulette and blackjack, constitutes illegal gambling under Washington law.

2   (Id.)  Plaintiff brings suit on behalf of herself and those similarly situated in order to recover

3   monies paid to Defendant inside the Big Fish Casino application, and for other relief, because

4   those monies were lost to an illegal gambling operation.  (Id.)

5           Big Fish Casino is a virtual game platform that can be downloaded free of charge.  (Dkt.

6   Nos. 2 at 3-13, 32 at 10-11.)  Although users can play the games for free by using only the

7   virtual casino chips awarded to them without charge, users have the option to purchase additional

8   chips and a wide variety of other low-cost virtual items that enhance or extend gameplay.  (Id.)

9   Users also receive additional chips as a reward when they win one of Big Fish Casino's games.

10  (Id.)  Users are required to have at least a minimum quantity of chips in order to play the

11  games—if users run out of chips but wish to continue playing, they must either wait until

12  additional chips are awarded to them free of charge or they must purchase additional chips

13  directly from Defendant.  (Id.)

14          Big Fish Casino's Terms of Use, which users must agree to before they can play the

15  games, state that the virtual chips have no cash value, and cannot be exchanged for cash or

16  merchandise, either at the Big Fish Casino virtual store or with other users.  (Id.)  Big Fish

17  Casino provides a mechanism inside of the application that allows users to transfer chips to other

18  users for a small fee.  (Id.)  Plaintiff alleges that Defendant knows about and facilitates a

19  secondary market where users exchange chips for actual money, and that Defendant profits from

20  these unauthorized exchanges by charging a fee to transfer chips from one user to another.  (Id.)

21          Defendant now moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6), arguing

22  that Plaintiff fails to state a plausible claim to relief because Big Fish Casino never awards any

23

24

1  cash or merchandise prizes and therefore does not constitute "gambling" under Washington law.

2  (Dkt. No. 24.)  Plaintiff opposes the motion.  (Dkt. No. 32.)

3  **Discussion**

4  I.    Legal Standard

5        A.    Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

6        Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a

7  claim upon which relief can be granted."  In ruling on a motion to dismiss, the Court must

8  construe the complaint in the light most favorable to the non-moving party.  <u>Livid Holdings Ltd.</u>

9  <u>v. Salomon Smith Barney, Inc.</u>, 416 F.3d 940, 946 (9th Cir. 2005).  The Court must accept all

10  well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of

11  the plaintiff.  <u>Wyler Summit P'ship v. Turner Broad. Sys.</u>, 135 F.3d 658, 661 (9th Cir. 1998).

12        Dismissal is appropriate where a complaint fails to allege "enough facts to state a claim

13  to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A

14  claim is plausible on its face "when the plaintiff pleads factual content that allows the court to

15  draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Aschcroft</u>

16  <u>v. Iqbal</u>, 556 U.S. 662, 678 (2009).  As a result, a complaint must contain "more than labels and

17  conclusions, and a formulaic recitation of the elements of a cause of action will not do."

18  <u>Twombly</u>, 550 U.S. at 555.

19  II.   Recovery of Money Lost at Gambling Act

20        The Court finds that Plaintiff has failed to state a plausible claim to relief because

21  Defendant's Big Fish Casino game is not "gambling" under Washington law and therefore

22  Plaintiff cannot recover for damages resulting from "illegal gambling."

23        Plaintiff brings suit pursuant to the Recovery of Money Lost at Gambling Act

24  ("RMLGA"), which provides:

1        All persons losing money or anything of value at or on any illegal gambling
2       games shall have a cause of action to recover from the dealer or player winning,
    or from the proprietor for whose benefit such game was played or dealt, or such
    money or things of value won, the amount of the money or the value of the thing
3       so lost.

4   RCW 4.24.070.  Gambling means: (1) staking or risking something of value (2) upon the

5   outcome of a contest of chance or a future contingent event not under the person's control or

6   influence, (3) upon an agreement or understanding that the person or someone else will receive

7   something of value in the event of a certain outcome.  RCW 9.46.0237; <u>State ex rel. Evans v.</u>

8   <u>Bhd. of Friends</u>, 41 Wn.2d 133, 150 (1952) ("…all forms of gambling involve prize, chance, and

9   consideration…").

10         The dispute here surrounds the prize element, and centers on whether or not Big Fish

11   Casino awards a prize constituting "something of value."  Plaintiff asserts that Big Fish Casino's

12   virtual casino chips are prizes constituting things of value because although the chips cannot be

13   exchanged for cash or merchandise directly, they (1) allow users to extend gameplay, and (2) can

14   be sold to other users for actual money on a secondary market that Defendant facilitates and

15   profits from.  (Dkt. No. 32 at 12-22.)  In support of her position, Plaintiff points to the 1973

16   Gambling Act's definition of "thing of value," which defines the term to include "any money or

17   property, any token, object or article exchangeable for money or property, or any form of credit

18   or promise, directly or indirectly, contemplating transfer of money or property or of any interest

19   therein, <u>or involving extension of a service, entertainment or a privilege of playing at a game or</u>

20   <u>scheme without charge</u>."  RCW 9.46.0285 (emphasis added).

21         Defendant first argues that RCW 9.46.0285's "thing of value" definition does not apply

22   here because Plaintiff's claim is brought under RCW 4.24.070 rather than RCW 9.46, and RCW

23   4.24.070 does not define "thing of value" and does not specify that extended gameplay is a

24

1   "thing of value." (Dkt. No. 35 at 11-14.)  This argument is unavailing.  The 1973 Gambling Act,

2   codified at RCW 9.46, sets forth the law of Washington with regards to gambling, which both

3   Parties agree governs this case.  (Dkt. Nos. 24 at 10-21, 32 at 12-22.)  Defendant repeatedly cites

4   to RCW 9.46 throughout its briefing, including citing to provisions that mirror RCW 9.46.0285's

5   "as used in this chapter" language.  (See, e.g., Dkt. No. 24 at 18.)  Moreover, in urging the Court

6   not to apply RCW 9.46's definition of "thing of value," Defendant argues the Court should

7   instead adopt the conclusion of the Washington State Gambling Commission, which found that

8   Big Fish Casino does not constitute gambling under Washington law because it does not award

9   cash or merchandise prizes.  (Dkt. Nos. 24 at 11-17, 35 at 7-9.)  In coming to that conclusion, the

10  Gambling Commission was interpreting RCW 9.46.  (Id.)

11          Defendant next argues that even if extended gameplay can constitute something of value

12  in some circumstances, extended gameplay within Big Fish Casino is not a "thing of value" as

13  contemplated by RCW 4.24.070 because that gameplay can never be exchanged for money or

14  merchandise.  (Dkt. No. 35 at 13-14.)  Defendant argues that the definition of "thing of value"

15  found in RCW 9.46.0285 was adopted after courts in Washington and around the country found

16  that some businesses, in an attempt to circumvent anti-gambling laws that prohibited them from

17  directly awarding cash or merchandise prizes, were instead awarding "free plays" to users that

18  could later be exchanged for cash.  (Id.)  As an illustration, Defendant points to Brower v.

19  Johnson, where the Washington Supreme Court discussed a pinball machine operation with such

20  a design.  56 Wn.2d 321, 324 (1960).  There, although the pinball machines "did not contain an

21  automatic pay-off device, they did contain a numbering device or meter.  This meter indicated

22  the number of 'free games' won by a person playing the machines, and on this basis 'over the

23

24

1   counter' pay-off was made in each instance by the proprietors of the [taverns] in which the

2   machines were placed."  Id.

3          Both Parties cite to Bullseye Distrib. LLC v. State Gambling Comm'n, 127 Wn. App. 231

4   (2005), the only Washington case to discuss RCW 9.46.0285's "thing of value" definition, in

5   support of their respective positions.  (Dkt. Nos. 24 at 23, 32 at 14-15, 35 at 14.)  In Bullseye, the

6   court affirmed an administrative determination that a sports card vending machine that operated

7   like a slot machine constituted a "gambling device" under RCW 9.46.0241(1) based on "play

8   points" it awarded that extended the privilege of playing the game without charge and, if they

9   exceeded a certain threshold, could be redeemed for cash or merchandise.  127 Wn. App. at 242.

10  Plaintiff alleges that the Big Fish Casino chips awarded to users when they win extend the

11  privilege of playing Big Fish Casino without additional charge, just as the play points awarded in

12  Bullseye did, and asserts that because the chips meet RCW 9.46.0285's "thing of value"

13  definition, they satisfy the prize element.  (Dkt. No. 32 at 14-15.)  Defendant argues that Big Fish

14  Casino chips cannot be things of value constituting prizes because unlike the free play credits in

15  Bullseye, Big Fish Casino chips can never be redeemed for cash or merchandise.  (Dkt. No. 35 at

16  13-14.)

17         The Court finds that Big Fish Casino chips cannot satisfy the prize element required to

18  establish that Big Fish Casino constitutes "gambling" under Washington law.  Plaintiff's reliance

19  on Bullseye is misplaced.  Bullseye considered whether play points—awarded to consumers

20  when they purchased a sports card and then used to play a game of chance situated within the

21  vending machine—constituted "things of value" sufficient to satisfy the consideration element.

22  127 Wn. App. at 238.  But the Bullseye court's discussion of whether or not extended gameplay

23  was "something of value" was framed by the fact that users could receive actual cash or

24

1   merchandise prizes by playing the game in <u>Bullseye</u> if they reached a certain point threshold—a

2   goal that became increasingly achievable the longer the user played the game.  <u>See</u> 127 Wn.

3   App. at 236.  In other words, extended gameplay in <u>Bullseye</u> was valuable because that game

4   was not free to play, and because of its interaction with the game's prize mechanism: additional

5   spins were only available in exchange for play points, and each additional spin increased the

6   likelihood that the user would reach the prize threshold, at which point the game ended and

7   money was awarded.  <u>Id.</u> at 241-42.

8        Here, extended gameplay does not satisfy the prize element because unlike with the game

9   in <u>Bullseye</u>, Big Fish Casino is free to play and there is never a possibility of receiving real cash

10  or merchandise, no matter how many chips a user wins.  While the chips do allow users to

11  continue playing the game, extended gameplay cannot result in any gain to the user, pecuniary or

12  otherwise, aside from the amusement that accompanies continuing to play a game that is already

13  available to play for free.  (Dkt. No. 2 at 3-8.)  This does not satisfy Washington's requirement of

14  prize.

15       Plaintiff then argues that even if Big Fish Casino chips are not "things of value" for the

16  sole reason that they extend gameplay, they nevertheless constitute "things of value" because

17  they can be sold for actual cash on a secondary market to other users of Big Fish Casino.  (Dkt.

18  No. 32 at 15.)  Plaintiff asserts that users exchange actual money for chips on the secondary

19  market, and then transfer the chips to one another through an exchange mechanism provided

20  within Big Fish Casino.  (Dkt. No. 2 at 2.)  Plaintiff asserts that Defendant actively facilitates

21  these transfers, and profits from them by charging a $1.99 fee for chip exchanges between

22  players.  (<u>Id.</u>)

23

24

1    Defendant argues that chips cannot constitute "things of value" on the basis that they can

2    be exchanged for cash on an unauthorized secondary market because Big Fish Casino's Terms of

3    Use expressly prohibit the exchange of chips for money.  (Dkt. Nos. 24 at 19, 35 at 9-11.)  The

4    Court agrees.  The Terms of Use clearly state that users "have no property interest in any virtual

5    item. . . .  Virtual items may not be transferred or resold for commercial gain in any manner . . . .

6    Virtual items may not be purchased or sold from any individual or other company via cash,

7    barter or any other transaction.  Virtual items have no monetary value, and cannot be used to

8    purchase or use products or services other than within the applicable Big Fish Offering.  Virtual

9    items cannot be refunded or exchanged for cash or any other tangible value."  (Dkt. No. 5-1 at 2.)

10   In other words, any user exchanging Big Fish Casino chips for cash on a secondary market is

11   expressly violating the game's Terms of Use, which users are required to agree to before they

12   can access the game.  (Dkt. No. 2 at 2.)  Allowing Plaintiff and those similarly situated to sue

13   Defendant for damages based on their own breach of contract would be contrary to basic

14   principles of law and equity.  See, e.g., First Mid Am., Inc. v. Palmer, 248 N.W.2d 30, 35 (Neb.

15   1976) ("It is axiomatic that the plaintiff cannot recover from the defendant for losses caused by

16   its own breach of contract.").

17       The Court finds that Plaintiff has failed to state a plausible claim for relief against

18   Defendant under the RMLGA because Big Fish Casino does not award something of value

19   satisfying the requisite prize element, and therefore the game is not "illegal gambling" under

20   Washington law.

21       III.    Additional Claims

22       The Parties agree that Plaintiff's other claims are contingent on Big Fish Casino

23   constituting illegal gambling in violation of Washington law.  (Dkt. Nos. 32 at 22-27, 35 at 14-

24

ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS- 8

16.)  Because the Court finds that Big Fish Casino does not constitute gambling forbidden by Washington law, the Court finds that Plaintiff has failed to state a plausible claim for relief for violation of the Consumer Protection Act or for unjust enrichment.  Defendant's Motion as to these claims is GRANTED.

### Conclusion

The Court GRANTS Defendant's Motion to Dismiss.  (Dkt. No. 24.)  Because amendment would be futile, the Court DISMISSES this case with prejudice.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 19th day of November, 2015.

Marsha J. Pechman
Chief United States District Judge