**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHERYL KATER, individually and on behalf of all others similarly situated, *Plaintiff-Appellant*, <br><br> v. <br><br> CHURCHILL DOWNS INCORPORATED, a Kentucky corporation, *Defendant-Appellee*. | No. 16-35010 <br><br> D.C. No. 2:15-cv-00612-MJP <br><br> OPINION |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, Senior District Judge, Presiding

Argued and Submitted February 6, 2018
Seattle, Washington

Filed March 28, 2018

Before: MILAN D. SMITH, JR. and MARY H. MURGUIA, Circuit Judges, and EDUARDO C. ROBRENO,[*] District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Eduardo C. Robreno, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## SUMMARY[**]

### Washington Gambling Law

The panel reversed the district court's dismissal of a purported class action against Churchill Downs alleging violations of Washington's Recovery of Money Lost at Gambling Act and Consumer Protection Act, and unjust enrichment; and held that Churchill Downs' virtual game platform "Big Fish Casino" constituted illegal gambling under Washington law.

All online or virtual gambling is illegal in Washington. Big Fish Casino's virtual chips have no monetary value and could not be exchanged for cash, but Big Fish Casino did contain a mechanism for transferring chips between users, which could be used to "cash out" winnings.

The panel held that the virtual chips extended the privilege of playing Big Fish Casino, and fell within Wash. Rev. Code § 9.46.0285's definition of a "thing of value." The panel concluded that Big Fish Casino fell within Washington's definition of an illegal gambling game. *See* Wash. Rev. Code § 9.46.0237.

The panel held that plaintiff Cheryl Kater stated a cause of action under Recovery of Money Lost at Gambling Act where she alleged that she lost over $1,000 worth of virtual chips while playing Big Fish Casino, and she could recover the value of those lost chips from Churchill Downs, as

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

proprietor of Big Fish Casino, pursuant to Wash. Rev. Stat. § 4.24.070.

## COUNSEL

Alexander G. Tievsky (argued), Roger Perlstadt, and Ryan D. Andrews, Edelson PC, Chicago, Illinois, for Plaintiff-Appellant.

Matthew R. Berry (argued), Susman Godfrey L.L.P, Seattle, Washington; Robert Rivera, Susman Godfrey L.L.P., Houston, Texas; for Defendant-Appellee.

## OPINION

M. SMITH, Circuit Judge:

In this appeal, we consider whether the virtual game platform "Big Fish Casino" constitutes illegal gambling under Washington law. Defendant-Appellee Churchill Downs, the game's owner and operator, has made millions of dollars off of Big Fish Casino. However, despite collecting millions in revenue, Churchill Downs, like Captain Renault in *Casablanca*, purports to be shocked—shocked!—to find that Big Fish Casino could constitute illegal gambling. We are not. We therefore reverse the district court and hold that because Big Fish Casino's virtual chips are a "thing of value," Big Fish Casino constitutes illegal gambling under Washington law.

## FACTUAL AND PROCEDURAL BACKGROUND

Big Fish Casino is a game platform that functions as a virtual casino, within which users can play various electronic

casino games, such as blackjack, poker, and slots. Users can download the Big Fish Casino app free of charge, and first-time users receive a set of free chips. They then can play the games for free using the chips that come with the app, and may purchase additional chips to extend gameplay. Users also earn more chips as a reward for winning the games. If a user runs out of chips, he or she must purchase more chips to continue playing. A user can purchase more virtual chips for prices ranging from $1.99 to nearly $250.

Big Fish Casino's Terms of Use, which users must accept before playing any games, state that virtual chips have no monetary value and cannot be exchanged "for cash or any other tangible value." But Big Fish Casino does contain a mechanism for transferring chips between users, which can be utilized to "cash out" winnings: Once a user sells her chips on a secondary "black market" outside Big Fish Casino, she can use the app's internal mechanism to transfer them to a purchaser. Plaintiff-Appellant Kater alleges that Churchill Downs profits from such transfers because it charges a transaction fee, priced in virtual gold, for all transfers. In other words, Kater alleges that Churchill Downs "facilitates the process" of players cashing out their winnings.

Kater began playing Big Fish Casino in 2013, eventually buying, and then losing, over $1,000 worth of chips. In 2015, Kater brought this purported class action against Churchill Downs, alleging: (1) violations of Washington's Recovery of Money Lost at Gambling Act (RMLGA), Wash. Rev. Code § 4.24.070; (2) violations of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010; and (3) unjust enrichment. The district court dismissed this case with prejudice, holding that because the virtual chips are not a "thing of value," Big Fish Casino is not illegal

gambling for purposes of the RMLGA.[1]  Kater moved for reconsideration, but the district court denied her motion.  Kater then timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  We review the dismissal of Kater's complaint *de novo*.  *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014).  Our review "is limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice."  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

## ANALYSIS

Pursuant to the RMLGA:

> All persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost.

Wash. Rev. Code § 4.24.070.  "Gambling" is defined as the "[1] staking or risking something of value [2] upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, [3] upon an

---

[1] The parties agree that the viability of Kater's other claims is contingent on Big Fish Casino constituting illegal gambling.

agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome." *Id.* § 9.46.0237; *see State ex rel. Evans v. Bhd. of Friends*, 247 P.2d 787, 797 (Wash. 1952) ("[A]ll forms of gambling involve prize, chance, and consideration . . . ." (quoting *State v. Coats*, 74 P.2d 1102, 1106 (Or. 1938))). All online or virtual gambling is illegal in Washington. *See Rousso v. State*, 239 P.3d 1084, 1086 (Wash. 2010).

### I. Big Fish Casino's Virtual Chips Are a "Thing of Value" Under Washington Law

The parties dispute whether Big Fish Casino's virtual chips are a "thing of value" pursuant to Washington's definition of gambling. Pursuant to Washington law, a "thing of value" is:

> [A]ny money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge.

Wash. Rev. Code § 9.46.0285. Kater's primary argument is that the virtual chips are a "thing of value" because they are a "form of credit . . . involving extension of . . . entertainment or a privilege of playing [Big Fish Casino] without charge." *Id.*

We agree. The virtual chips, as alleged in the complaint, permit a user to play the casino games inside the virtual Big Fish Casino. They are a credit that allows a user to place another wager or re-spin a slot machine. Without virtual

KATER V. CHURCHILL DOWNS 7

chips, a user is unable to play Big Fish Casino's various games. Thus, if a user runs out of virtual chips and wants to continue playing Big Fish Casino, she must buy more chips to have "the privilege of playing the game." *Id.* Likewise, if a user wins chips, the user wins the privilege of playing Big Fish Casino without charge. In sum, these virtual chips extend the privilege of playing Big Fish Casino.

Churchill Downs contends that the virtual chips do not extend gameplay, but only enhance it, and therefore are not things of value. This argument fails because, as alleged in the complaint, a user needs these virtual chips in order to play the various games that are included within Big Fish Casino. Churchill Downs argues that this does not matter, because users receive free chips throughout gameplay, such that extending gameplay costs them nothing. But because Churchill Downs' allegation is not included in the complaint, we do not further address this contention. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Notably, the only Washington court to analyze section 9.46.0285 supports our conclusion. In *Bullseye Distributing LLC v. State Gambling Commission*, the Washington Court of Appeals held that an electronic vending machine designed to emulate a video slot machine was a gambling device. 110 P.3d 1162, 1163, 1167 (Wash. Ct. App. 2005). To use the machine, players utilized play points that they obtained by purchase, by redeeming a once-a-day promotional voucher, or by winning a game on the machine. *Id.* at 1163–64. In reviewing an administrative law judge's decision, the court concluded that the game's play points were "things of value" because "they extend[ed] the privilege of playing the game without charge," even though they "lack[ed] pecuniary value on their own." *Id.* at 1166. Because the play points were a "thing of value," the machine fell within the

definition of a gambling device, and therefore was subject to Gambling Commission regulation. *Id.* at 1167.

Contrary to Churchill Downs' assertion, nothing in *Bullseye* conditioned the court's determination that the play points were "thing[s] of value" on a user's ability to redeem those points for money or merchandise. Instead, *Bullseye*'s reasoning was plain—"these points fall within the definition of 'thing of value' because they extend the privilege of playing the game without charge." *Id.* at 1166. Based on the reasoning in *Bullseye*, we conclude that Big Fish Casino's virtual chips also fall within section 9.46.0285's definition of a "thing of value."[2]

Churchill Downs nonetheless argues that Big Fish Casino cannot constitute illegal gambling based on the position of the Washington Gambling Commission and federal district courts that have analyzed similar games. We disagree.

Churchill Downs argues that we should defer to the Gambling Commission's conclusion that Big Fish Casino is not illegal gambling. It cites to a slideshow deck used by two non-Commission members during a presentation to the

---

[2] Kater makes a second argument, which we reject. She argues that the chips are a "thing of value" because users can sell them for money on the "black market." However, Big Fish Casino's Terms of Use prohibit the transfer or sale of virtual chips. As a result, the sale of virtual chips for cash on a secondary market violates the Terms of Use. The virtual chips cannot constitute a "thing of value" based on this prohibited use. *See Mason v. Mach. Zone, Inc.*, 851 F.3d 315, 320 n.3 (4th Cir. 2017).

Commission, and the accompanying meeting minutes,[3] but these documents do not indicate that the Commission adopted a formal position on social gaming platforms, let alone Big Fish Casino specifically. It also cites to a two-page Commission pamphlet discussing online social gaming. But the pamphlet provides only "general guidance," to which we do not defer because the pamphlet "lacks an official, definitive analysis of the issue in question." *W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 998 P.2d 884, 891–92 (Wash. 2000) (requiring agency interpretation to be "clear and definitive," such as a rule, interpretive guideline, or policy statement).

Nor are we persuaded by the reasoning of other federal courts that have held that certain "free to play" games are not illegal gambling. Each case Churchill Downs cites for this proposition involves the analysis of different state statutes, state definitions, and games. *See Mason v. Mach. Zone, Inc.*, 851 F.3d 315 (4th Cir. 2017) (applying Maryland law); *Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731 (N.D. Ill. 2016) (applying Illinois law); *Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871 (N.D. Ill. 2016) (applying California law). Our conclusion here turns on Washington statutory law, particularly its broad definition of "thing of value," so these out of state cases are unpersuasive.

Because the virtual chips are a "thing of value," we conclude that Big Fish Casino falls within Washington's

---

[3] We grant Kater's motion to take judicial notice of the slideshow, meeting minutes, and pamphlet because they are publicly available on the Washington government website, and neither party disputes the authenticity of the website nor the accuracy of the information. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (citing Fed. R. Evid. 201).

definition of an illegal gambling game. *See* Wash. Rev. Code § 9.46.0237.

## II. Kater Can Recover the Value of the Virtual Chips Lost Under the RMLGA

Since Big Fish Casino, as alleged in the complaint, constitutes an illegal gambling game, Kater can recover "the value of the thing so lost" from Churchill Downs. *See* Wash. Rev. Code § 4.24.070. Citing *Mason*, Churchill Downs argues that Kater did not lose money at gambling because there was no possibility of her winning money. In *Mason*, the plaintiff could not recover money spent on virtual gold in a different game because the Maryland statute limited recovery to individuals who "lose[] money at a gaming device," Md. Code Crim. Law § 12-110, and did not "encompass virtual resources available and used only within [the game]." 851 F.3d at 320. But Washington's statute is broader than Maryland's. Washington law permits a plaintiff to recover "money or anything of value" lost from an illegal gambling game "from the dealer . . . or from the proprietor for whose benefit such game was played." Wash. Rev. Code § 4.24.070. As previously stated, this language encompasses the value of the virtual chips Kater purchased.

We hold that Kater has stated a cause of action under the RMLGA. She alleges that she lost over $1,000 worth of virtual chips while playing Big Fish Casino, and she can recover the value of these lost chips from Churchill Downs, as proprietor of Big Fish Casino, pursuant to section 4.24.070.[4]

---

[4] We deny Churchill Downs' motion to substitute Big Fish Games, Inc. as Defendant-Appellee in place of Churchill Downs pursuant to

## CONCLUSION

For the foregoing reasons, we reverse the district court's dismissal of Kater's complaint. We remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

---

Federal Rule of Appellate Procedure 43(b). A Rule 43(b) substitution is appropriate only where "necessary," which "means that a party to the suit is unable to continue, such as where a party becomes incompetent or a transfer of interest in the company or property involved in the suit has occurred." *Sable Commc'ns of Cal. Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 191 n.13 (9th Cir. 1989) (citation omitted) (quoting *Ala. Power Co. v. ICC*, 852 F.2d 1361, 1366 (D.C. Cir. 1988)). Churchill Downs argues it is transferring Big Fish Games, the subsidiary entity that purportedly operates Big Fish Casino, to Aristocrat. But it is not enough to claim that a transfer will occur; rather, substitution is proper where "a transfer of interest . . . has occurred." *Id.*