The Honorable Ronald B. Leighton

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

## AT TACOMA

CHERYL KATER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CHURCHILL DOWNS INCORPORATED, a Kentucky corporation,

Defendant.

Case No.: 15-cv-00612-RBL

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

ORAL ARGUMENT REQUESTED

NOTE ON MOTION CALENDAR:

September 14, 2018

## <u>TABLE OF CONTENTS</u>

I.     CDI DID NOT WAIVE ITS RIGHT TO COMPEL ARBITRATION. ...........................................1

     A.     Plaintiff Does Not Dispute That The Parties Clearly And Unmistakably Delegated Threshold Issues Of Arbitrability—Including Waiver—To The Arbitrator.......................2

     B.     CDI Did Not Take Actions Inconsistent With Its Right To Compel Arbitration. .............. 3

     C.     Plaintiff Has Suffered No Prejudice. ................................................................................. 6

II.    PLAINTIFF AGREED TO ARBITRATE THIS DISPUTE. ........................................................8

III.   CONCLUSION.......................................................................................................................12

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION (15-cv-00612-RBL)

6052451v1/014810

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

*Allbaugh v. Perma-Bound*,
  2009 WL 10676437 (W.D. Wash. Aug. 14, 2009) ................................................................12

6
7

*Bell v. Game Show Network, LLC*.
  Dkt. No. 24, Case No. 18-cv-05393-RBL ..............................................................................2

8

*Benson v. Double Down Interactive, LLC*,
  Dkt. No. 49, Case No. 2:18-cv-00525-RBL ..........................................................................10

9
10

*Bestway (USA), Inc. v. Sgromo*,
  2018 WL 3219403 (N.D. Cal. July 2, 2018)........................................................................4, 5

11

*Brown v. Dillard's, Inc.*,
  430 F.3d 1004 (9th Cir. 2005) ...............................................................................................8

12
13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ...............................................................................................1

14

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*,
  835 F.3d 1195 (10th Cir. 2016) ............................................................................................12

15
16

*Creative Telecomms., Inc. v. Breeden*,
  120 F. Supp. 2d 1225 (D. Haw. 1999)....................................................................................7

17

*Cullinane v. Uber Technologies, Inc.*,
  893 F.3d 53 (1st Cir. 2018)...................................................................................................11

18
19

*Dasher v. RBC Bank (USA)*,
  882 F.3d 1017 (11th Cir. 2018) ............................................................................................12

20

*Ekin v. Amazon Servs., LLC*,
  84 F. Supp. 3d 1172 (W.D. Wash. 2014)................................................................................9

21
22

*Eshagh v. Terminix Int'l Co.*,
  2012 WL 1669416 (E.D. Cal. May 11, 2012) .....................................................................7, 8

23

*Freeney v. Bank of Am. Corp.*,
  2016 WL 5897773 (C.D. Cal. Aug. 4, 2016)..........................................................................4

24
25

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012)...................................................................................11

26

*Graf v. Match.com, LLC*,
  2015 WL 4263957 (C.D. Cal. July 10, 2015)........................................................................11

27
28

*Gray Holdco, Inc. v. Cassady*,
  654 F.3d 444 (3d Cir. 2011)....................................................................................................6

*Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*,
589 F.3d 917 (8th Cir. 2009) ...........................................................................................4

*Joca-Roca Real Estate, LLC v. Brennan*,
772 F.3d 945 (1st Cir. 2014) ...........................................................................................7

*Kater v. Churchill Downs Inc.*,
No. 16-35010, Dkt. No. 50 (9th Cir. Jan. 18, 2018) ........................................................6

*Kelly v. Public Utility Dist. No. 2 of Grant County*,
552 F. App'x 663 (9th Cir. 2013) ....................................................................................7

*Lake Commc'ns, Inc. v. ICC Corp.*,
738 F.2d 1473 (9th Cir. 1985) .........................................................................................5

*Madera W. Condo. Ass'n v. First Specialty Ins. Corp.*,
2013 WL 4015649 (W.D. Wash. Aug. 6, 2013) ......................................................2, 3, 8

*Martin v. Yasuda*,
829 F.3d 1118 (9th Cir. 2016) ..................................................................................2, 3, 4, 5

*McKee v. Audible, Inc.*,
2017 WL 4685039 (C.D. Cal. July 17, 2017) ................................................................11

*Messina v. N. Cent. Distrib., Inc.*,
821 F.3d 1047 (8th Cir. 2016) .........................................................................................6

*Meyer v. Uber Tech. Inc.*,
868 F.3d 66 (2d Cir. 2017) .............................................................................................10

*In re Mirant Corp.*,
613 F.3d 584 (5th Cir. 2010) ...........................................................................................7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614(1984) ..........................................................................................................5

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) .........................................................................................2

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011) ...........................................................................................2

*Morgan Stanley & Co. v. Couch*,
659 F. App'x 402 (9th Cir. 2016) ....................................................................................2

*Nevarez v. Forty Niners Football Co.*,
2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ..............................................................11

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .........................................................................................9

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)...........................................................................................11

iii

*Oracle Am., Inc. v. Myriad Grp., A.G.*,
    724 F.3d 1069 (9th Cir. 2013) ..................................................................................2

*Peters v. Amazon Servs. LLC*,
    2 F. Supp. 3d 1165, 1168, 1170 (W.D. Wash. 2013).............................................11

*Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*,
    575 F.3d 476 (5th Cir. 2009) .....................................................................................4

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010).....................................................................................................2

*Russell v. Citigroup, Inc.*,
    748 F.3d 677 (6th Cir. 2014) ...................................................................................12

*Sovak v. Chugai Pharm. Co.*,
    280 F.3d 1266 (9th Cir. 2002), *op.* ..........................................................................5

*Tatham v. Rogers*,
    170 Wash. App. 76, 283 P.3d 583 (2012) .................................................................8

*Van Ness Townhouses v. Mar Indus. Corp.*,
    862 F.2d 754 (9th Cir. 1989) ...........................................................................3, 4, 6

*In re Verisign, Inc. Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...................................................................12

*Wiseley v. Amazon.com, Inc.*,
    709 F. App'x 862 (9th Cir. 2017) ..............................................................................9

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION (15-cv-00612-RBL)
6052451v1/014810

Plaintiff's opposition obscures material facts to avoid having this dispute proceed where it belongs: in arbitration.  Plaintiff goes so far as to suggest that the Big Fish Casino ("BFC") Terms of Use ("TOU") were changed "mid-litigation" to gain an advantage in this lawsuit.  Opp. at 16.  But nothing could be further from the truth.  On March 24, 2015—24 days *before* Plaintiff filed suit—BFC's TOU incorporated the one and only arbitration provision that has ever existed, which provides that

> any dispute, claim or controversy arising out of or relating to your access to or use of any Big Fish Offering or to these Terms of Use (including without limitation any dispute concerning the breach, enforcement, construction, *validity*, interpretation, enforceability, or *arbitrability* of these Terms of Use) . . . *shall be determined by arbitration*.

Dkt. No. 60-2, Ex. A ("TOU") at 8 (emphases added).  Plaintiff's choice to end the class period the day before the arbitration provision was added to the TOU, *see* Dkt. No. 2 ("Compl.") ¶ 39, shows not only that she had knowledge of the provision, but purposefully designed her Complaint around it.  Though Plaintiff attempts to sweep this critical fact under the rug in her opposition by arguing in a footnote that her allegations merely "represent[] the legal strategy" of her counsel, Opp. at 24 n.4, her attorneys' knowledge is imputed to her and she is bound by the allegations in her own Complaint.

Plaintiff also argues that CDI was dilatory in moving to compel arbitration, but CDI notified both the Court and Plaintiff of its arbitration right in the first substantive pleading it filed in this case and has consistently thereafter stated its intent to move to compel arbitration.  Finally, Plaintiff contends that she never agreed to arbitrate this dispute, but the record demonstrates that Plaintiff (1) had actual or constructive notice of the TOU's arbitration provision before she filed this lawsuit; (2) manifested her acceptance of those terms by continuing to play BFC games; and (3) further expressly consented to the TOU by way of a standard "clickwrap" agreement.  Under these circumstances, the Court should compel resolution of Plaintiff's claims through arbitration, as she agreed to do before filing this lawsuit.

# I.     CDI DID NOT WAIVE ITS RIGHT TO COMPEL ARBITRATION.

CDI's right to arbitration is clear.  But if there were "any doubts concerning the scope of arbitrable issues," those issues—including issues of "waiver, delay, or . . . like defense[s] to arbitrability"—"should be resolved in favor of arbitration."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000).

---

**A.    Plaintiff Does Not Dispute That The Parties Clearly And Unmistakably Delegated Threshold Issues Of Arbitrability—Including Waiver—To The Arbitrator.**

Plaintiff offers no response to CDI's argument that the parties "*clearly and unmistakably*" delegated questions of arbitrability to the arbitrator in the TOU.  *Oracle Am., Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013); *see* Mot. at 10-11.  Her failure to respond to this argument in her opposition brief "waives [her] right to do so."  *Madera W. Condo. Ass'n v. First Specialty Ins. Corp.*, 2013 WL 4015649, at *4 (W.D. Wash. Aug. 6, 2013).

As CDI explained, *see* Mot. at 10-11, threshold issues of arbitrability may, as here, be delegated to an arbitral tribunal.  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).  Here, the TOU provide that "any dispute, claim or controversy arising out of or relating to your access to or use of any Big Fish Offering or to these Terms of Use (including without limitation any dispute concerning the . . . *validity . . .* or *arbitrability* of these Terms of Use) . . . *shall be determined by arbitration*."  TOU at 8 (emphases added).  Under controlling Ninth Circuit precedent, such language constitutes an express agreement to arbitrate these threshold questions.  *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (finding similarly-worded arbitration provision delegated threshold questions of arbitrability to arbitrator); *Momot v. Mastro*, 652 F.3d 982, 987-88 (9th Cir. 2011) (same); *cf. Morgan Stanley & Co. v. Couch*, 659 F. App'x 402, 404-05 (9th Cir. 2016) (pointing to arbitration provision in *Momot*, which as here delegated determinations of the "*validity*" of the arbitration clause, as example of "clear and unmistakable evidence that parties intended arbitrators to decide arbitrability").

In *Martin v. Yasuda*—a case prominently featured throughout Plaintiff's opposition—the Ninth Circuit observed that it has "made clear that waiver by litigation conduct is part of" the category of "gateway" arbitrability issues that may be delegated to an arbitrator, in addition to issues regarding whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. 829 F.3d 1118, 1123 (9th Cir. 2016).  Because the arbitration agreement is enforceable, *see infra* at 8-12, and clearly and unmistakably delegates gateway questions of arbitrability, it is for an arbitrator—not this Court—to determine whether CDI waived its right to compel arbitration.  Indeed, Plaintiff's counsel *agreed* "to have an arbitrator resolve the gateway issue of whether [plaintiff's] claims are compulsorily arbitrable" in *Bell v. Game Show Network, LLC*.  Dkt. No. 24, Case No. 18-cv-05393-RBL.

**B.      CDI Did Not Take Actions Inconsistent With Its Right To Compel Arbitration.**

Even if this Court rules that it should decide the threshold question of waiver, Plaintiff has failed to carry her "heavy burden of proof" to establish either that CDI took actions inconsistent with its right to compel arbitration or that Plaintiff suffered any prejudice resulting from any purported inconsistent acts. *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1989).

As a general matter, and as previewed in CDI's motion, Plaintiff's favored case for her waiver argument—*Martin v. Yasuda*—involved circumstances wholly distinguishable from those presented here. In *Martin*, the defendants (1) "agreed that there should be discovery and an opportunity for the court to resolve" a key question of law; (2) moved to dismiss plaintiffs' claims; (3) filed an answer; (4) waited a year to "even note their right to arbitration[,]" then represented to the court that they would rather resolve the dispute in federal court than in arbitration; (5) responded to written discovery; and (6) conducted two days of depositions—all before moving to compel arbitration. *Martin*, 829 F.3d at 1120-26. Here, in stark contrast to the defendants in *Martin*, CDI has been consistent and prompt in asserting its arbitration right. CDI promptly noted its arbitration right by expressly reserving its right to move to compel arbitration in its motion to dismiss—the first substantive pleading filed by CDI in this case. *See* Dkt. No. 24 at 4 n.6. After prevailing on its motion to dismiss, CDI spent two years and four months responding to a reconsideration motion and appeal filed by *Plaintiff*. Upon remand, CDI again clearly notified the Court and Plaintiff of its intention to file a motion to compel arbitration in the Joint Status Report, the first pleading filed after the case returned to this Court. *See* Dkt. No. 58. CDI also stated its position that discovery should be stayed until its then-forthcoming motion to compel arbitration is resolved. *Id.* CDI filed the present motion one week later. Dkt. No. 60. No discovery has occurred in this case other than initial disclosures—which were served *after* CDI filed this motion—and CDI has clearly and consistently noted its arbitration right throughout the proceedings.[1]

None of the specific purported inconsistent acts identified by Plaintiff changes the result. ***First***,

---

[1] Plaintiff faults CDI for not "seeking a stay before the Ninth Circuit and initiating private arbitration" while this case was on appeal. Opp. at 5. But she cites no authority suggesting that such action would have been procedurally proper. *Id.* And Plaintiff's assertion that CDI's choice of counsel is relevant to the waiver inquiry, *see id.*, is equally unsupported by legal authority (or common sense).

none of the cases cited by Plaintiff support her apparent position that CDI's filing of a motion to dismiss at the pleadings stage of the case—in which CDI expressly noted its right to arbitration—presumptively waived its arbitration right. *See* Opp. at 6. While Plaintiff contends that, under *Martin*, CDI's motion to dismiss was "unquestionably an act inconsistent with a right to compel arbitration," *id.*, the Ninth Circuit observed only that "seeking a decision on the merits of an issue *may* satisfy" the inconsistent act element of the waiver analysis. 829 F.3d at 1125 (emphasis added). As noted above, *Martin* found waiver based on the "totality" of the defendants' aggressive litigation conduct, of which a motion to dismiss was only one small part. *Id.* at 1126. In particular, the Ninth Circuit repeatedly stressed defendants' failure to "note" their arbitration right until well into the litigation and subsequent representation to the court that they did "not intend to move to compel arbitration"—neither of which occurred here. *Id.* at 1125-26.

Plaintiff's other authority falls similarly short, particularly since no discovery or other substantive litigation proceedings transpired before CDI filed this motion. *See* Opp. at 6-9. In *Van Ness Townhouses*, unlike here, the party seeking to enforce its arbitration right *never* raised the issue of arbitration in any of its pleadings, including its answers and motion to dismiss. 862 F.2d at 756. Several cases cited by Plaintiff explicitly hold that the filing of a motion to dismiss is *not* dispositive of the inconsistent act element of the waiver inquiry. *See Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009) ("Not every motion to dismiss is inconsistent with the right to arbitration."); *Freeney v. Bank of Am. Corp.*, 2016 WL 5897773, at *5 (C.D. Cal. Aug. 4, 2016) ("If Defendants had filed a single motion to dismiss . . . prior to seeking to compel arbitration . . . the Court might not find that they waived their right to compel arbitration."). In other cases cited in Plaintiff's opposition, the defendants "invoke[d] the judicial process" far more extensively than CDI has here. *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480-81 (5th Cir. 2009) (defendant removed case to federal court, filed counterclaims, and "participated in discovery and numerous discovery meetings"). Plaintiff incorrectly asserts that the court in *Freeney* found "waiver in [the] absence of any discovery," Opp. at 15, but in fact, the court found "that Defendants' participation in discovery, while not dispositive of the issue, has not been entirely consistent with preserving their right to compel arbitration." 2016 WL 5897773, at *5 n.3. And *Bestway (USA), Inc. v. Sgromo* similarly involved circumstances plainly not present here: the party seeking arbitration had "previously initiated

1   binding arbitration against [another party to the litigation], only to later abandon the effort" and instead

2   seek "several forms of relief," including summary judgment, in federal court.  2018 WL 3219403, at *4

3   (N.D. Cal. July 2, 2018).

4       Indeed, as explained in CDI's motion, *see* Mot. at 12, courts in this Circuit have found no waiver

5   in circumstances analogous to those presented here, where (a) CDI expressly, promptly, and consistently

6   noted its arbitration right, (b) no discovery has been conducted, and (c) CDI has filed no substantive

7   motions beyond a motion to dismiss.  *See, e.g.*, *Lake Commc'ns, Inc. v. ICC Corp.*, 738 F.2d 1473, 1477

8   (9th Cir. 1985) (finding no waiver of arbitration right when "only limited discovery has occurred"),

9   *overruled on other grounds by Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614,

10  632-35 (1984); *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270-71 (9th Cir. 2002), *op. amended on*

11  *denial of reh'g*, 289 F.3d 615 (9th Cir. 2002) (finding no waiver when defendant waited to move to

12  compel arbitration until after plaintiff filed a third amended complaint, following dismissal of second

13  amended complaint for failure to state a claim).  Plaintiff is flatly incorrect that *Martin* "overruled" *Lake*

14  *Communications*.  *See* Opp. at 13.  In fact, *Martin* cited approvingly to the Ninth Circuit's waiver

15  analysis in *Lake Communications* and correctly noted that the case had been overruled on other grounds

16  by a 1985 Supreme Court case.  *See Martin*, 829 F.3d at 1125.

17      **Second**, Plaintiff unconvincingly attempts to equate the parties' pro forma stipulations—which

18  concerned only time extensions and briefing schedules—with the "considerable time and effort" spent

19  structuring discovery and class certification in *Martin*.  *See* Opp. at 7.  The parties' stipulations in this

20  case were focused on *avoiding* the expenditure of "considerable time and effort."  *See* Dkt. Nos. 7, 22,

21  26, 28, 30, 33, 36 (requesting extensions of briefing and initial discovery deadlines).  Each of the

22  stipulations is approximately one page or less in length, required minimal time and expense to prepare,

23  and *postponed* substantive discussions regarding the "structure" of the litigation.  *See, e.g.*, Dkt. No. 36

24  (noting "early stage of the case" in agreeing to stay discovery until after Court ruled on CDI's motion to

25  dismiss).  These clerical filings *postponing* discovery are the inverse of the substantial effort invested by

26  the parties in *Martin* to *structure* discovery for active litigation.  *See Martin*, 829 F.3d at 1126.

27      **Third**, contrary to Plaintiff's implication, *see* Opp. at 7, CDI promptly re-notified Plaintiff and

28  the Court of its intent to enforce its arbitration right following issuance of the Ninth Circuit's mandate.

Leaving aside applications for *pro hac vice* admission, the first pleading filed after the mandate issued was the parties' Joint Status Report—in which CDI referenced its forthcoming motion to compel arbitration eleven times.  Dkt. No. 58.  CDI notified Plaintiff of its intent to move to compel arbitration even earlier than that, when the parties were exchanging drafts prior to filing the Joint Status Report. Plaintiff's statement that "the lone mention of arbitration [CDI] has ever before made in this case, either to the Court or to [Plaintiff's] counsel," was in CDI's motion to dismiss is simply false.  *See* Opp. at 11. CDI promptly and consistently noted its arbitration right throughout this litigation.

     *Finally*, while Plaintiff devotes considerable space in her opposition brief to Big Fish Games' petition to the Washington State Gambling Commission, she never explicitly argues that such proceeding is "inconsistent" with CDI's assertion of its right to compel arbitration in this lawsuit.  Nor could she.  Neither Kater nor CDI are parties to the Commission proceedings, and Big Fish Games is not a party to this lawsuit.  In fact, Plaintiff successfully *opposed* CDI's motion to substitute Big Fish Games for CDI in this lawsuit.  *Kater v. Churchill Downs Inc.*, No. 16-35010, Dkt. No. 50 (9th Cir. Jan. 18, 2018).  The Gambling Commission proceeding is entirely separate from both this litigation and the arbitration which should be compelled, and Plaintiff does not argue that the Commission proceeding would halt if this dispute goes to arbitration.   Moreover, although CDI disputes Plaintiff's characterization of the Commission meetings related to Big Fish Games' petition, Plaintiff offers no case supporting its relevance to the waiver analysis.

     **C.**    **Plaintiff Has Suffered No Prejudice.**

     Plaintiff's failure to carry her "heavy burden of proof" to establish that CDI acted inconsistently with its arbitration right ends the waiver inquiry.  *Van Ness Townhouses*, 862 F.2d at 758.  But even if Plaintiff could identify inconsistent acts, Plaintiff must also demonstrate that she will be prejudiced if this dispute proceeds before an arbitrator.  This she has likewise failed to do.

     Plaintiff first argues that she has been prejudiced by the "three years, three months, and three days" that elapsed between the date this lawsuit was filed and the date CDI moved to compel arbitration. Opp. at 1.  But the cases Plaintiff cites in support of her delay-as-prejudice argument state that "[d]elay in seeking to compel arbitration does not itself constitute prejudice."  *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1051 (8th Cir. 2016); *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 454-55 (3d Cir. 2011)

(delay in initiating arbitration proceedings "is not, standing alone, outcome determinative on the waiver issue"); *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 950 (1st Cir. 2014) ("[M]ere delay in asserting a right to arbitrate, without more, does not require a finding of waiver.").[2]

In addition, Plaintiff ignores that only *seven* months elapsed between the Complaint's filing and the Court's resolution of CDI's motion to dismiss, while Plaintiff's pursuit of a reconsideration motion and appeal caused the ensuing *two years and four months* of delay in this case. As Plaintiff concedes, delay caused by *her* litigation choices cannot constitute prejudice sufficient to establish waiver of CDI's arbitration right. *See* Opp. at 9-10 (citing *Martin*, 829 F.3d at 1126); *see also* Mot. at 13; *Creative Telecomms., Inc. v. Breeden*, 120 F. Supp. 2d 1225, 1234 (D. Haw. 1999) (finding no waiver because., "[a]lthough the amount of litigation in this case is not minimal, little of the litigation has been generated by [the party moving to compel arbitration]"). Nor does Plaintiff provide any evidence of prejudice— such as by quantifying any expense she has personally incurred as a result of CDI's purportedly inconsistent acts. *Compare In re Mirant Corp.*, 613 F.3d 584, 591 (5th Cir. 2010) (case cited by Plaintiff affirming finding that specific calculation of hundreds of thousands of dollars in "considerable legal expenses" was sufficient to support a finding of prejudice); *with Eshagh v. Terminix Int'l Co.*, 2012 WL 1669416, at *5 (E.D. Cal. May 11, 2012) (finding no prejudice when plaintiff incurred fees and expenses "in excess of $277,000" because "[p]laintiff's response to the motion to dismiss and the decision to incur litigation expenses do not demonstrate prejudice").

Lastly, Plaintiff grossly overstates the import of the Ninth Circuit's ruling in this case, incorrectly claiming that she "has already prevailed in federal court on the legality of Big Fish Casino" and would be prejudiced by having to "relitigate" that issue in arbitration. Opp. at 10. If that were true, this case would be over. The Ninth Circuit's ruling was limited to whether the allegations in Plaintiff's Complaint, if assumed to be true, state a claim for relief; the parties have expended *no* effort developing evidence to actually prove or disprove Plaintiff's claims. As CDI has explained, litigation of threshold

---

[2] *Kelly v. Public Utility Dist. No. 2 of Grant County*, another case cited by Plaintiff, is an unpublished, non-precedential Ninth Circuit memorandum opinion that offers no reasoned analysis of waiver helpful here. 552 F. App'x 663, 664 (9th Cir. 2013) (dedicating three sentences to prejudice analysis).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

pleadings issues does not constitute prejudice, let alone prejudice sufficient to establish waiver of CDI's arbitration right.  *See* Mot. at 13; *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005) ("[C]ourts are reluctant to find prejudice . . . simply because the defendant litigated briefly (e.g., by filing a motion to dismiss or requesting limited discovery)[.]"); *see also Eshagh*, 2012 WL 1669416, at *5 (no prejudice when defendant filed motion to compel arbitration after losing motion to dismiss).

## II.   PLAINTIFF AGREED TO ARBITRATE THIS DISPUTE.

Plaintiff concedes that the TOU arbitration provision encompasses this dispute,[3] *see* Opp. at 4-5, but contends that she never agreed to the BFC TOU.  Plaintiff's arguments are belied by the allegations in her Complaint evidencing that she had actual notice of the TOU; the undisputed fact of her continued and frequent use of BFC after being on notice that such use would bind her to the TOU; and her explicit agreement to the TOU in January 2016.

*First*, Plaintiff only half-heartedly responds (in a footnote) to CDI's argument that Plaintiff's own allegations establish that she had actual notice of the TOU at least as of the date she filed this lawsuit.  In her Complaint filed on April 17, 2015, Plaintiff circumscribes the putative class she purports to represent as those users who created BFC accounts *on or before March 23, 2015*, the day before the arbitration provision was added to the TOU.  Compl. ¶ 39.  In addition, Plaintiff—a Michigan resident with no ties to this State—*relies* in her Complaint on a previous version of the TOU to establish that Washington law "governs Plaintiff's and the Class's claims."  *Id.* ¶ 6 & n.1 (citing to September 18, 2014 version of TOU, attached as Exhibit A to the Complaint).  Plaintiff now takes the position that her allegations merely "represent[] the legal strategy of Ms. Kater's litigation counsel," and cannot be imputed to Plaintiff herself.  Opp. at 24 n.4.  But "[t]he knowledge of an attorney is imputed to the client." *Tatham v. Rogers*, 170 Wash. App. 76, 109, 283 P.3d 583, 601 (2012).  And even if her counsel's legal strategy included attempting to plead around the binding effect of the March 24, 2015 arbitration provision, she cannot now disavow the allegations in her own Complaint, which evidence actual notice, or at a minimum constructive notice of the TOU.  Given Plaintiff's reliance on the TOU in

---

[3] Plaintiff also does not dispute CDI's argument that the arbitration provision of the TOU is not unconscionable.  *See* Mot. at 8-10.

1

2

the Complaint, her argument that "nothing in the record suggests that Ms. Kater had ever previously agreed to any prior" versions of the TOU is disingenuous at best.[4]  Opp. at 24 n.4.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

Plaintiff is also wrong in contending that "even if [she] knew that the [TOU] changed in March 2015, that would have no bearing on whether she agreed to be bound by those new Terms."  Opp. at 24 n.4.  The TOU added on March 24, 2015 clearly provide that "accessing or using any Big Fish offering" evidences the user's agreement to be bound by the TOU, and warns users not to use any Big Fish offerings if they "do not agree to these [TOU] in their entirety."  TOU at 1.  Courts have "consistently enforced" online terms of use where users had actual or constructive knowledge of those terms.  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176-77 (9th Cir. 2014); *see also Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) (Washington law does not "allow[] a party to escape contract obligations if it had actual or constructive notice" of those obligations.); *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1175 n.5 (W.D. Wash. 2014) (noting that plaintiffs could not dispute their acceptance of arbitration agreement given their "myriad active purchases and renewals" of defendant's services).  Accordingly, Plaintiff's actual or constructive knowledge of the TOU, and her continued use of the BFC platform, *see* Dkt. No. 60-2 ¶ 8, has *significant* "bearing" on whether she agreed to the TOU—indeed, it is dispositive.

17

18

19

20

In addition, Plaintiff again accepted the TOU's terms in January 2016.  *See* Mot. at 6-7.  All of Plaintiff's arguments to the contrary fail.  Plaintiff does not dispute that, as described in CDI's motion, in January 2016 she clicked to close an in-game overlay that notified her clearly and in plain English that, by "clicking to close" the overlay she was agreeing to the TOU:

21

22

23

24

25

26

27

28

---

[4] Similarly disingenuous is Plaintiff's contention that, when she first created her BFC account, she was not required to accept the TOU.  *See* Opp. at 15.  In her Complaint, Plaintiff alleges that "[p]layers visiting [BFC] for the first time agree to [the TOU]"; that "players and Defendant agree," pursuant to the terms, that the TOU are "construed in accordance with the laws of the State of Washington"; and that as a result Washington law governs her claims.  Compl. ¶ 6 & n.1.



*See* Dkt. No. 60-2 ¶¶ 6-7 & Ex. C.

Plaintiff's argument that no reasonable person would understand such action to constitute assent to the TOU belies common sense.  It is difficult to imagine how BFC could have been more explicit or clear in notifying Plaintiff that, by clicking to close the overlay, she was agreeing to the TOU.  BFC prominently informed users that closing the overlay and/or continuing to access BFC constituted assent to the TOU "INCLUDING A MANDATORY ARBITRATION PROVISION." Plaintiff chose both to close the overlay and continue playing BFC games, *id.* ¶¶ 6-8, thereby agreeing once again to the TOU.

In opposition, Plaintiff argues that, in other contexts, clicking to close a pop-up window on the BFC platform "is understood to be an objective manifestation of declination, not assent."  Opp. at 20. But the exemplar pop-up windows reproduced in Plaintiff's opposition do not conspicuously instruct the user that closing the pop-up window will have any effect.  *Id.*  Plaintiff's exemplars are thus inapposite, as the only relevant overlay warned users that "clicking to close this notification or continuing to access this game" indicates their acceptance of the TOU "INCLUDING A MANDATORY ARBITRATION PROVISION."  Such language unambiguously communicated to Plaintiff that by closing the overlay or continuing to play BFC games she again accepted the TOU.[5]

Plaintiff's tortured argument that no court has held that clicking to "close" a pop-up window constitutes acceptance of a contract does not withstand scrutiny.  It is well established that contracts to

---

[5] In *Benson v. Double Down Interactive, LLC*, another case before this Court, Plaintiff's counsel cites to *Meyer v. Uber Technologies, Inc.* as a model of what constitutes sufficient notification of online terms of use.  *See* Dkt. No. 49, Case No. 2:18-cv-00525-RBL.  The in-game overlay at issue here is materially indistinguishable from the notification in *Meyer*, which was "uncluttered," contained a "reasonably conspicuous" hyperlink to the terms at issue, and did not require the user to "scroll beyond what is immediately visible to find notice of the" terms.  *Meyer*, 868 F.3d 66, 78-79 & Add. A (2d Cir. 2017).

which users have "clicked" to manifest their acceptance are enforceable—particularly when, as here, a prominent link to view the TOU was also included in the overlay notification. *See* Mot. at 6-7; *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1168, 1170 (W.D. Wash. 2013) (enforcing arbitration clause when the plaintiff clicked to indicate his agreement to terms of use); *Nevarez v. Forty Niners Football Co.*, 2017 WL 3492110, at *7-8 (N.D. Cal. Aug. 15, 2017) (same); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835, 838-40 (S.D.N.Y. 2012) (same); *Graf v. Match.com, LLC*, 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015) (same).   Here, Plaintiff clicked to accept the TOU, including the arbitration provision.   Plaintiff provides no basis for treating the act of clicking to close an in-game overlay differently from clicking a button or checking a box, when in each case the user is told clearly that taking a particular action constitutes assent to the terms at issue.

The cases cited by Plaintiff do not suggest any different result.   In *Nicosia v. Amazon.com, Inc.*—a ruling on a motion to dismiss, not a motion to compel arbitration—the Second Circuit held that "reasonable minds could disagree" as to whether Amazon provided sufficient notice that, by placing an order, the purchaser agreed to its terms of use.   834 F.3d 220, 238 (2d Cir. 2016).   Unlike here, the "notice" at issue in *Nicosia* was "not bold, capitalized, or conspicuous," was obscured by "numerous other links on the webpage, in several different colors, fonts, and locations," and was distracted from by other information on the page such as shipping options and the purchase summary.   *Id.* at 237; *see* Case No. 1:14-cv-04513-ILG-LB, Dkt. Nos. 53-2, 53-3 (E.D.N.Y. Dec. 24, 2014) (showing screenshots). Here, BFC's prominent in-game overlay obscured all other features of the game and featured bold, capitalized letters.   Dkt. No. 60-2, Ex. C.   The prominence of BFC's notification also distinguishes this case from *Cullinane v. Uber Technologies, Inc.*, decided under Massachusetts law, where the conspicuousness of the defendant's terms-of-use notification was "diminished" by "[o]ther similarly displayed terms presented simultaneously to the user[.]"   893 F.3d 53, 63 (1st Cir. 2018).[6]

Plaintiff also contends—without citing any authority—that the "contract terms proposed" in the January 2016 overlay were intended "to be exclusively prospective in nature."   Opp. at 18.   This is a

---

[6] Oddly, Plaintiff cites *McKee v. Audible, Inc.*, which *granted* a motion to compel arbitration involving facts similar to those presented here.   2017 WL 4685039, at *11 & n.7 (C.D. Cal. July 17, 2017).

non-sequitur.  The January 2016 overlay did not "propose" new contract terms: the arbitration provision in the TOU was in place on March 24, 2015, *before* Plaintiff filed this lawsuit, and Plaintiff had actual or constructive notice of the TOU *before* she filed this lawsuit and after which she continued to play BFC games, *see supra* at 8-9.  In any event, Plaintiff's contention is contradicted by the authority cited in CDI's motion establishing that language such as that used in the TOU here applies regardless of when the dispute arose.  *See* Mot. at 7 n.2; *see also Allbaugh v. Perma-Bound*, 2009 WL 10676437, at *9 (W.D. Wash. Aug. 14, 2009) (finding similarly-worded arbitration provision applies retroactively); *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1202 (10th Cir. 2016) (same); *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (same).

Finally, Plaintiff's insinuation that there was a breach of professional rules of conduct ignores that the arbitration provision was added to the TOU *before* Plaintiff filed suit.  Opp. at 17-18.  Unlike the defendants in the cases cited by Plaintiff, BFC did not change its TOU mid-litigation to add or amend an arbitration clause.  *See Russell v. Citigroup, Inc.*, 748 F.3d 677, 679 (6th Cir. 2014) (arbitration agreement amended after initiation of litigation); *Dasher v. RBC Bank (USA)*, 882 F.3d 1017, 1020 (11th Cir. 2018) (arbitration provision added to accountholder agreement after initiation of litigation and after defendant lost motion to compel arbitration).  Rather, the arbitration provision has been in place since March 2015—before Plaintiff filed her Complaint—and has not since been amended.  Plaintiff knew of the updated TOU before she filed the lawsuit, as evidenced by the allegations in her Complaint, and by continuing to play she evidenced her agreement to be bound by those terms.  *See supra* at 8-9.  Nor did BFC target Plaintiff: the in-game overlay depicted above was distributed to all existing users.  Dkt. No. 60-2 ¶ 6.  Plaintiff's attempt to obscure these basic facts cannot overcome her obligation to arbitrate this dispute, as she agreed to do.

## III.    CONCLUSION

For the foregoing reasons, the Court should compel arbitration of this dispute and stay the case pending resolution of the arbitration proceedings.

1   Dated:   September 14, 2018                Respectfully submitted,

2                                             */s/ Matthew R. Berry*
                                              Matthew R. Berry, WSBA #37364
3                                             mberry@susmangodfrey.com
                                              Susman Godfrey L.L.P.
4                                             1201 Third Avenue, Suite 3800
                                              Seattle, WA 98101-3000
5                                             P: (206) 516-3880

6                                             Robert Rivera (*Pro Hac Vice Pending*)
                                              rrivera@SusmanGodfrey.com
7                                             Susman Godfrey L.L.P.
                                              1000 Louisiana Street, Ste. 5100
8                                             Houston, TX 77002-5096
                                              P: (713) 653-7809
9
                                              *Attorneys for Defendant*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on the date below I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Dated this 14th day of September, 2018.

*/s/  Matthew R. Berry*