HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHERYL KATER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CHURCHILL DOWNS DOWNS INCORPORATED, a Kentucky corporation,

Defendant.

CASE NO. 3:15-cv-00612-RBL

ORDER DENYING MOTION TO COMPEL ARBITRATION

(DKT #60)

## INTRODUCTION

THIS MATTER is before the Court on Defendant Churchill Downs Incorporated's Motion to Compel Arbitration. Dkt. #60. This case began in 2015 when Cheryl Kater filed a class action to recover the money she had lost playing Churchill Downs' Big Fish Casino smart phone app. The trial court dismissed the case for failure to state a claim, but the Ninth Circuit reversed and remanded the case in 2018.

Now, after three years and three months of litigation, Churchill Downs has moved to compel arbitration. Despite this lengthy delay, Churchill Downs argues that it has not waived its right to enforce the arbitration provision in its Terms of Use because its only substantive action

in this case was filing a motion to dismiss. In any case, according to Churchill Downs, the arbitration provision that Kater accepted delegated all threshold issues, including waiver through litigation conduct, to the arbitrator. Finally, Churchill Downs contends that the agreement located in its Terms of Use is enforceable because Kater manifested her assent and it is not unconscionable.

Kater contests Churchill Downs' disavowal of its litigation conduct in the federal forum. Kater asserts that Churchill Downs' motion to dismiss went to the heart of the case and constituted an attempt to resolve this dispute on the merits in court. Furthermore, Kater points out that Churchill Downs went on to defend its victory in the Ninth Circuit and subsequently petitioned for rehearing *en banc* when it lost. Kater insists that she would be highly prejudiced if forced to re-litigate the same issues in front of an arbitrator.

## BACKGROUND

Kater filed her Complaint against Churchill Downs on April 17, 2015, alleging that Churchill Downs' Big Fish Casino game constitutes illegal gambling in violation of RCW § 4.24.070. Dkt. #2, at 16-18. Big Fish Casino is a game available as a smart phone app and allows users to play popular gambling games with virtual "chips" that may be purchased in the app after users run out of the initial free allotment. *Id*. at 8-9. Despite the fact that these chips cannot be redeemed for actual money, Kater alleges that they are nonetheless valuable because they can be used to continue playing or be sold to others. *Id*. at 17. Therefore, Kater alleges that Churchill Downs' game amounts to gambling as defined by statute and that she is entitled to recover the money she lost playing. *Id*. at 18. The Complaint spends all three pages allotted to the first cause of action explaining why Big Fish Casino is illegal gambling, and Kater's two additional causes of action derive from the alleged violation of RCW § 4.24.070. *Id*. at 16-22.

Rather than immediately moving to compel arbitration, on June 30, Churchill Downs moved to dismiss Kater's Complaint on the basis that Big Fish Casino does not amount to gambling under RCW § 4.24.070. Dkt. #24. In a footnote, Churchill Downs indicated that it was "evaluating" the arbitration provision in its Terms of Use and reserved the right to compel arbitration. *Id*. at 4. On November 19, the district court granted Churchill Downs' motion to dismiss. Dkt. #39. Kater appealed this ruling to the Ninth Circuit (Dkt. #43), which reversed on March 28, 2018. Dkt. #46. Churchill Downs petitioned for rehearing *en banc* (Dkt. #47), but was unanimously denied on June 12. Dkt. #48.

After the remand to district court, Churchill Downs finally moved to compel arbitration on July 20, 2018. Churchill Downs sought to enforce the arbitration provision in its Terms of Use, which reads in part as follows:

> **DISPUTE RESOLUTION BY BINDING ARBITRATION**
> PLEASE READ THIS "DISPUTE RESOLUTION BY BINDING ARBITRATION" PROVISION CAREFULLY, BECAUSE IT REQUIRES YOU TO ARBITRATE DISPUTES WITH BIG FISH AND IT LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF.
>
> . . .
>
> **Scope of Arbitration Provision.** You and Big Fish agree that any dispute, claim or controversy arising out of or relating to your access to or use of any Big Fish Offering or to these Terms of Use (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of these Terms of Use) (a "**Dispute**"), shall be determined by arbitration, except that you and Big Fish are NOT required to arbitrate any Dispute in which either party seeks equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets, or patents.

Dkt. #60-3, Ex. A, at 9. This version of the Terms of Use was implemented on March 24, 2015, just a few days before Kater filed this suit. Vella Decl., Dkt. #60-2, at 2. New users are required to click "I agree to the Terms of Use" before creating an account. *Id*. Churchill Downs also alerted existing users of the new Terms of Use by adding the word "NEW" with orange highlighting next to the Terms of Use hyperlink on the Big Fish Casino webpage, emailing users in December 2015, and "imposing an in-game overlay requiring existing users to expressly

acknowledge their acceptance of the [Terms of Use] beginning in January 2016." *Id*.; Dkt. #60-5, Ex. C. Kater clicked to close this in-game overlay on January 24, 2016. Vella Decl., Dkt. #60-2, at 3. She also "regularly played" after the updated Terms of Use were implemented. *Id*.

Before March 24, 2015, the Terms of Use for Big Fish Casino did not contain an arbitration provision. Dkt. #60-4, Ex. B. However, that version did warn users to "periodically check these Terms of Use . . . for updates" because any "revision(s) will take effect immediately upon being posted." *Id*. at 1.

**DISCUSSION**

**1.  Legal Standard**

The Federal Arbitration Act provides for the enforceability of valid arbitration agreements and "permits a party 'aggrieved by the alleged ... refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting 9 U.S.C. § 4). A court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* (citation omitted).  If the answer to both questions is 'yes,' then the agreement must be enforced.  *Id.*  The FAA "leaves no place for the exercise of discretion by a district court;" instead it mandates "that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original).

**2.  Waiver**

Although the right to compel arbitration may be waived, a court's determination on this issue must be "conducted in light of the strong federal policy favoring enforcement of arbitration

agreements." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). The party arguing waiver of arbitration therefore "bears a heavy burden of proof." *Id.* (quoting *Fisher*, 791 F.2d at 694). As a result, "[a] party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* (quoting *Fisher*, 791 F.2d at 694).

a.  *Delegation to the Arbitrator*

Churchill Downs first argues that the arbitration provision in the Terms of Use delegates all threshold issues of arbitrability to the arbitrator, including the issue of waiver by litigation conduct. Reply, Dkt. #70, at 2. According to Churchill Downs, several Ninth Circuit cases construing similar language reached this same conclusion. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016); *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011).

Kater responds that courts treat the issue of waiver through litigation conduct differently than other arbitrability issues. Kater points to *Martin v. Yasuda*, where the Ninth Circuit observed that arbitrators do not have expertise regarding whether litigation conduct constitutes a waiver. 829 F.3d at 1123 n.3. The court went on to hold that "courts generally decide whether a party has waived his right to arbitration by litigation conduct," and that this presumption can only be rebutted by "clear and unmistakable language." *Id*. at 1124. The defendant's arbitration clause, which stated that "[a]ll determinations as to the scope, enforceability and effect of this arbitration agreement shall be decided by the arbitrator, and not by a court," was not specific enough. *Id.*; *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121 (9th Cir. 2008) (reaching the same conclusion where the arbitration clause stated that "[a]ny controversy ...

involving the construction or application of the terms, provisions, or conditions of this Agreement or otherwise arising out of or related to this Agreement shall likewise be settled by arbitration").

Here, the Terms of Use provide that "any dispute, claim or controversy arising out of or relating to your access to or use of any Big Fish Offering or to these Terms of Use (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of these Terms of Use) . . . shall be determined by arbitration." Dkt. #60-3, Ex. A, at 9. Like the agreements in *Martin* and *Cox*, this language does not clearly and unmistakably delegate the issue of waiver through litigation conduct to the arbitrator. *See* 829 F.3d at 1124. Although the language in the Terms of Use is undeniably broad, the Ninth Circuit specifically stated that "all inclusive 'arising out of or related to' language" is insufficient. *Id*. (describing the holding in *Cox*, 533 F.3d at 1117). Furthermore, whereas the language in *Martin* and *Cox* specifically referenced the arbitration agreement itself, the language here refers instead to the "Terms of Use." While the arbitration agreement is admittedly part of the Terms of Use, this extra layer of abstraction makes delegation even less unmistakable to a consumer. *See id.* at 1124. Consequently, Churchill Downs' Terms of Use do not rebut the presumption that the court should apply its expertise to determine whether the parties have waived the right to compel arbitration.

b. *Acts Inconsistent with the Right to Arbitrate*

Since the waiver issue should be decided by this Court, the next question is whether Churchill Downs' conduct satisfies the three-prong test from *Fisher*. Churchill Downs concedes the first element (Dkt. #60, at 11), leading to the second prong concerning acts inconsistent with the right to compel arbitration. *Martin*, 829 F.3d at 1124 (quoting *Fisher*, 791 F.2d at 694).

Parties are generally barred from taking advantage of both the judicial system and arbitration. However, Kater contends that Churchill Downs did exactly this by litigating the merits of its case for over three years before trying to compel arbitration. After this case began in April of 2015, Churchill Downs successfully moved to dismiss Kater's Complaint on the basis that Big Fish Casino did not constitute gambling under Washington law, unsuccessfully defended an appeal to the Ninth Circuit, and petitioned for rehearing *en banc*, all before moving to compel arbitration on July 20, 2018. Opp'n, Dkt. #68, at 5. Churchill Downs' motion to dismiss itself states that "Plaintiff's case rests entirely" on whether Big Fish Casino constitutes gambling. Dkt. #24, at 1. Kater argues that Churchill Downs' extended litigation over this key merits issue waived any right to arbitration. *See Martin*, 829 F.3d at 1126.

Churchill Downs argues that this situation is distinguishable from cases such as *Martin* where the court held that the defendant had waived arbitration through its conduct. Churchill Downs points out that, unlike *Martin*, Churchill Downs consistently reserved its right to compel arbitration, did not engage in discovery beyond initial disclosures, and only pursued its claims to the Ninth Circuit because of Kater's appeal. Reply, Dkt. #70, at 3. According to Churchill Downs, a motion to dismiss alone is not enough to waive arbitration.

*Martin* is the most recent and extensive controlling authority applying the waiver test from *Fisher*. In *Martin*, the Ninth Circuit stated that "a party's extended silence and delay in moving for arbitration may indicate a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which would be inconsistent with a right to arbitrate." 829 F.3d at 1125 (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988)). This element is satisfied when a party "chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court." *Id*. "A

statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver." *Id*. While filing a motion to dismiss on a non-merits issue, such as jurisdiction, is insufficient to defeat arbitration, "seeking a decision on the merits of an issue may satisfy this element." *Id*.

Churchill Downs makes much of the court's use of the word "may" (Reply, Dkt. #70, at 4), but *Martin* also approvingly cited the principle that "[a] party waives arbitration by seeking a decision on the merits before attempting to arbitrate." *Id*. (quoting *Petroleum Pipe Americas Corp. v. Jindal Saw*, Ltd., 575 F.3d 476, 480 (5th Cir. 2009)). In *In re Mirant Corp.*, also cited by *Martin*, the Fifth Circuit explained that "[m]otions to dismiss are not homogenous" and must be assessed based on the facts of the case with respect to waiver. 613 F.3d 584, 589 (5th Cir. 2010). Factors such as whether the defendant sought dismissal with prejudice may reinforce a conclusion that the party sought a decision on the merits." *Id*.

Here, Churchill Downs made extensive use of the federal judicial system to determine its liability to Kater for her losses playing Big Fish Casino. *Martin*, 829 F.3d at 1125. Churchill Downs' 28-page motion requested that the court dismiss Kater's claims with prejudice, and self-admittedly addressed the key issue in this case. Dkt. #24, at 1, 28. On appeal, Churchill Downs also contended that Kater could not recover because "there was no possibility of her winning money," thus adding another argument that could cut off relief. *See Kater v. Churchill Downs Downs Inc.*, 886 F.3d 784, 788 (9th Cir. 2018). Indeed, with these questions resolved by the Ninth Circuit, there is little uncertainty that Churchill Downs engaged in illegal conduct that Kater can recover for if she truly lost as much money as she claims. *See id.* at 788-89.

Churchill Downs tries hard to distinguish this case on the basis that the parties did not engage in discovery and Churchill Downs reserved its right to arbitrate. *See* Reply, Dkt. #70, at

3, 5. However, engaging in discovery is not an essential requirement for demonstrating commitment to a particular forum, especially when the dispute turns almost entirely on a single point of law. *See Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 921-22 (8th Cir. 2009) (holding that the defendant waived its right to arbitration by seeking a "total victory" in its motion to dismiss, despite engaging in no discovery). Nor is it dispositive that Churchill Downs reserved its right to compel arbitration in a footnote to its motion to dismiss. Dkt. #24, at 4; *see In re Mirant Corp.*, 613 F.3d 584, 588-90 (5th Cir. 2010) (holding that the defendant waived arbitration by filing three motions to dismiss but always reserving the right to compel arbitration in a footnote).

Churchill Downs relies on *Lake Communications, Inc. v. ICC Corp.* and *Sovak v. Chugai Pharmaceutical Co.*, but those cases only briefly touch on the issue of waiver and neither is analogous to the situation here. In *Lake Communications*, the defendant's motion to dismiss for lack of personal jurisdiction did not go to the merits. 738 F.2d 1473, 1476-77 (9th Cir. 1984). In any case, the court alternatively based its holding on lack of prejudice to the plaintiff. *Id.* at 1477. *Sovak*, where the court based its entire holding on the plaintiff's failure to show prejudice, is even less persuasive. 280 F.3d 1266, 1270 (9th Cir. 2002).

In addition to the dispositive issues addressed in the motion to dismiss, it is also relevant that these proceedings have been ongoing for over three years and spanned multiple federal forums. Although Churchill Downs correctly points out that it was Kater's choice to appeal the dismissal, she did not have much choice after Churchill Downs forced a decision on the merits in district court. Churchill Downs' defense in the Ninth Circuit can thus be seen as a continuation of the process Churchill Downs started by moving to dismiss. In addition, Churchill Downs

actively extended this process even further by petitioning for rehearing *en banc*. Dkt. #47. All of this amounts to acts inconsistent with the right to compel arbitration.

c.      *Prejudice to the Party Opposing Arbitration*

The final element from *Fisher* is satisfied when the party opposing arbitration suffers prejudice. *Martin*, 829 F.3d at 1124 (quoting *Fisher*, 791 F.2d at 694). Kater argues that she would suffer extreme prejudice here because arbitration would force her to re-litigate whether Big Fish Casino constitutes illegal gambling. As Kater explains, Churchill Downs would likely try to convince an arbitrator that the Ninth Circuit's ruling is not binding on Washington State courts and the holding was a "flawed" prediction of Washington law. Opp'n, Dkt. #68, at 10; *see also* Dkt. #68-2, Ex. 1, at ¶ 6 (showing that Churchill Downs argued this very point in its Petition to the Washington State Gambling Commission in July 2018). Kater also contends that she has already spent far more time and money litigating this case over the past three years than would have been required if the parties had gone immediately to arbitration.

Churchill Downs responds that delay, no matter how lengthy, does not itself constitute prejudice. *See Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1051 (8th Cir. 2016). Churchill Downs also stresses that litigating the motion to dismiss only took seven months, while Kater's appeal took over two years. Churchill Downs thus characterizes the lion's share of the delay as a "self-inflicted wound" that bars a finding of prejudice. *Martin*, 829 F.3d at 1126. Finally, Churchill Downs argues that Kater "grossly overstates the import of the Ninth Circuit's ruling in this case" and emphasizes that "the parties have expended no effort developing evidence to actually prove or disprove Plaintiff's claims." Reply, Dkt. # 70, at 7. Churchill Downs does not elaborate on exactly how developing evidence will change the fact that its product has been found to constitute illegal gambling. *See Kater*, 886 F.3d at 788.

1    "Although litigation conduct inconsistent with a right to arbitrate most frequently causes

2    prejudice to the opposing party, the link is not automatic." *Martin*, 829 F.3d at 1126. A plaintiff

3    must prove more than "self-inflicted" wounds that were a direct result of choosing to sue in

4    federal court, rather than proceed to arbitration. *Id*. "Such wounds include costs incurred in

5    preparing the complaint, serving notice, or engaging in limited litigation regarding issues directly

6    related to the complaint's filing, such as jurisdiction or venue." *Id*. Proving prejudice thus

7    requires showing that the defendant's delay has caused the plaintiff to incur costs they would

8    have otherwise avoided, or that compelling arbitration would cause the parties to re-litigate an

9    issue on the merits. *Id*. (citing *Van Ness Townhouses*, 862 F.2d at 759).

10   Here, it is clear that Kater would suffer prejudice if compelled to arbitrate. Aside from

11   the fact that Churchill Downs' motion to dismiss sparked the subsequent appeal, even the seven

12   months of litigation in 2015 at the district court go well beyond "limited litigation regarding

13   issues directly related to the complaint's filling." *Id*. Rather, the motion to dismiss went to the

14   heart of the case and forced Kater to marshal her best legal arguments from the get-go.

15   Furthermore, it is telling that Churchill Downs does not deny its intent to re-litigate whether Big

16   Fish Casino constitutes gambling, but rather tries to down-play the importance of this issue. *See*

17   Reply, Dkt. #70, at 7-8. If this issue is so inconsequential, it is odd that Churchill Downs has

18   doggedly pursued a favorable ruling on it through three different forums for the past 3+ years.

19   Contrary to Churchill Downs' suggestion, re-litigating this issue would prejudice Kater and give

20   Churchill Downs "a second bite at the apple through arbitration." *In re Mirant Corp.*, 613 F.3d at

21   590. Rather than let this happen, the Court holds that Churchill Downs waived its right to

22   arbitration when it took its first bite of the apple and chewed thoroughly for over three years.

## CONCLUSION

For the reasons stated above, Churchill Downs' Motion to Compel Arbitration (Dkt. #60) is **DENIED**.

IT IS SO ORDERED.

Dated this 2nd day of November, 2018.

Ronald B. Leighton
United States District Judge