1

2

3

4

5

6

7

The Honorable Ronald B. Leighton

8

9

10

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

TACOMA

11

12

13

14

15

16

17

18

CHERYL KATER and SUZIE KELLY,
individually and on behalf of all others
similarly situated,

Plaintiffs,

v.

CHURCHILL DOWNS INCORPORATED, a
Kentucky corporation, and BIG FISH
GAMES, INC., a Washington corporation,

Defendants.

Case No. 2:15-cv-00612-RBL

DEFENDANTS BIG FISH GAMES, INC.
AND CHURCHILL DOWNS INC.'S
MOTION TO COMPEL ARBITRATION

ORAL ARGUMENT REQUESTED

NOTE ON MOTION CALENDAR:
June 7, 2019

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.:  2:15-cv-00612-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 1

     A.     Facts ........................................................................................................ 1

          1.      Plaintiffs' Complaint ................................................................ 1

          2.      Big Fish Terms Of Use ............................................................ 2

          3.      Plaintiffs' Notice and Acceptance of the TOU ........................ 4

III.    LEGAL STANDARD .......................................................................................... 5

IV.     ARGUMENT ...................................................................................................... 6

     A.     Plaintiffs Agreed to Arbitrate Their Claims by Accepting the TOU. .................... 6

     B.     The Arbitration Provision Is Not Unconscionable .............................................. 11

     C.     The TOU Arbitration Provision Clearly Delegates To The Arbitrator The Question Of The Arbitrability Of Plaintiffs' Claims. ........................................... 13

     D.     BFG Has Not Waived Its Right To Compel Arbitration of Plaintiffs' Claims. ................................................................................................................ 14

     E.     CDI Has Not Waived Its Right To Compel Arbitration of Ms. Kelly's Claims. ................................................................................................................ 16

V.      CONCLUSION .................................................................................................. 17

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.:  2:15-cv-00612-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON 98104-7097
+1 206 839 4300

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Al-Safin v. Circuit City Stores, Inc.*,
4
    394 F.3d 1254 (9th Cir. 2005) ..............................................................11

5

*Allbaugh v. Perma-Bound*,
    2009 WL 10676437 (W.D. Wash. Aug. 14, 2009) ..................................11
6

*AT&T Mobility LLC v. Concepcion*,
7
    563 U.S. 333 (2011)..............................................................................13

8

*Be In, Inc. v. Google Inc.*,
9
    2013 WL 5568706 (N.D. Cal. Oct. 9, 2013)............................................7

10

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
    2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017) ....................................7, 10
11

*Britton v. Co-op Banking Grp.*,
12
    916 F.2d 1405 (9th Cir. 1990) ..............................................................15

13

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
14
    2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ..........................................7, 9

15

*Carideo v. Dell, Inc.*,
    520 F. Supp. 2d 1241 (W.D. Wash. 2007)........................................12, 13
16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
17
    207 F.3d 1126 (9th Cir. 2000) ................................................................5

18

*Circuit City Stores, Inc. v. Ahmed*,
19
    283 F.3d 1198 (9th Cir. 2002) ..............................................................13

20

*Conover v. Dean Witter Reynolds, Inc.*,
    837 F.2d 867 (9th Cir. 1988) ................................................................15
21

*Coppock v. Citigroup, Inc.*,
22
    2013 WL 1192632 (W.D. Wash. Mar. 22, 2013) ..................................13

23

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*,
    835 F.3d 1195 (10th Cir. 2016) ............................................................11
24

*Creative Telecommns., Inc. v. Breeden*,
25
    120 F. Supp. 2d 1225 (D. Haw. 1999)...................................................15

26

*Crewe v. Rich Dad Educ., LLC*,
27
    884 F. Supp. 2d 60 (S.D.N.Y. 2012)......................................................11

28

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.: 2:15-cv-00612-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

*Domain Name Comm'n Ltd. v. DomainTools, LLC*,
   2018 WL 4353266 (W.D. Wash. Sept. 12, 2018) ................................................................10

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) .............................................................................................6

*Ekin v. Amazon Servs.*,
   84 F. Supp. 3d 1172 (W.D. Wash. 2014)...........................................................................8

*Erwin v. Cotter Health Ctrs.*,
   161 Wash. 2d 676 (2007)....................................................................................................6

*Fagerstrom v. Amazon.com, Inc.*,
   141 F. Supp. 3d 1051 (S.D. Cal. 2015)............................................................................11

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995)....................................................................................................6, 8, 16

*Fisher v. A.G. Becker Paribas Inc.*,
   791 F.2d 691 (9th Cir. 1986) .....................................................................................15, 16

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012)...........................................................................8, 9

*Goldman, Sachs & Co. v. City of Reno*,
   747 F.3d 733 (9th Cir. 2014) ..............................................................................................5

*Graf v. Match.com*,
   2015 WL 4263957 (C.D. Cal. July 10, 2015) .................................................................12

*Green Tree Fin. Corp. Ala. v. Randolph*,
   531 U.S. 79 (2000).............................................................................................................5

*Guest v. Air Liquide Am. Specialty Gases*, LLC
   2018 WL 4523147 (D. Or. June 28, 2018) .....................................................................16

*Himber v. Live Nation Worldwide, Inc.*,
   2018 WL 2304770 (E.D.N.Y. May 21, 2018) .................................................................10

*Keystone Land & Dev. Co. v. Xerox Corp.*,
   152 Wash. 2d 171 (2004)...................................................................................................6

*Kilgore v. KeyBank, N.A.*,
   718 F.3d 1052 (9th Cir. 2013) .........................................................................................13

*Kiskadee Commc'ns (Bermuda), Ltd. v. Father*,
   2011 WL 1044241 (N.D. Cal. Mar. 22, 2011)................................................................16

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.: 2:15-cv-00612-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

*Knutson v. Sirius XM Radio Inc.*,
    771 F.3d 559 (9th Cir. 2014) ........................................................5

*Kwan v. Clearwire Corp.*,
    2012 WL 32380 (W.D. Wash. Jan. 3, 2012)...............................7

*Lake Washington Sch. Dist. No. 414 v. Mobile Modules Nw., Inc.*,
    28 Wash. App. 59 (1980) .............................................................16

*Letizia v. Prudential Bache Sec., Inc.*,
    802 F.2d 1185 (9th Cir. 1986) .........................................15, 16, 17

*M.A. Mortensen Co. v Timberline Software Corp.*,
    140 Wash. 2d 568 (2000)..............................................................10

*MCA Fin. Grp., Ltd. v. Gardere Wynne Sewell, LLP*,
    2007 WL 951959 (D. Ariz. Mar. 27, 2007) ...............................11

*McKee v. Audible.com*,
    2017 WL 4685039 (C.D. Cal. July 17, 2017) ..............................6

*Meyer v. Kalanick*,
    291 F. Supp. 3d 526 (S.D.N.Y. 2018).........................................16

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017).....................................................7, 9, 16

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ...............................................13, 14

*Momot v. Mastro*,
    652 F.3d 982 (9th Cir. 2011) .......................................................14

*Nevarez v. Forty Niners Football Co.*,
    2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ...........................13

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) .............................................6, 7, 8

*Nicosia v. Amazon.com*,
    2017 WL 10111078 (E.D.N.Y. Aug. 18, 2017).............................8

*Olivares v. Hispanic Broad. Corp.*,
    2001 WL 477171 (C.D. Cal. Apr. 26, 2001) ...............................15

*Oracle Am., Inc. v. Myriad Grp., A.G.*,
    724 F.3d 1069 (9th Cir. 2013) .....................................................14

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.: 2:15-cv-00612-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004)..................................................................................7

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010) ............................................................................................14

*Singavong v. Volt Mgmt. Corp.*,
   2007 WL 1813845 (W.D. Wash. June 21, 2007) ..............................................13

*Snap-on Business Sols. Inc. v. O'Neil & Assocs., Inc.*,
   708 F. Supp. 2d 669 (N.D. Ohio 2010)..............................................................9

*Southwest Airlines Co. v. BoardFirst, LLC*,
   2007 WL 4823761 (N.D. Tex. Sept. 12, 2007)...................................................6

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
   2003 WL 21406289 (C.D. Cal. Mar. 7, 2003) ....................................................7

*Tjart v. Smith Barney, Inc.*,
   28 P.3d 823 (Ct. App. Wash. 2001) ..................................................................12

*In re Turner Bros. Trucking Co., Inc.*,
   8 S.W.3d 370 (Ct. App. Tex. 1999) ..................................................................12

*Van Ness Townhouses v. Mar Indus. Corp.*,
   862 F.2d 754 (9th Cir. 1989) ............................................................................15

*In re Verisign, Inc. Derivative Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) ............................................................11

*Vision Palm Springs LLLP v. Michael Anthony Co.*,
   2019 WL 943196 (Ct. App. Fl. Feb. 27, 2019).................................................6

*Zuver v. Airtouch Commcn's, Inc.*,
   153 Wash. 2d. 293 (2004)................................................................................12

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.: 2:15-cv-00612-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

## I.     INTRODUCTION

This dispute is for an arbitrator, not the Court, to decide.  Plaintiffs agreed to resolve any dispute arising from their use of Big Fish Casino ("BFC"), a virtual game and social entertainment platform, by binding arbitration.  Plaintiffs had constructive, if not actual, notice of the arbitration provision in the BFC Terms of Use, and by continuing to play the games despite that notice, they manifested their agreement to the binding arbitration provision.  Moreover, even though they were given the opportunity to do so, Plaintiffs chose not to opt out of the arbitration provision's requirements.  The Court should compel Plaintiffs to resolve their claims through arbitration, as they agreed to do, and stay this action pending the outcome of the arbitration as required by the Federal Arbitration Act.[1]

## II.    BACKGROUND

### A.     Facts

#### 1.     Plaintiffs' Complaint

On April 17, 2015, Plaintiff Cheryl Kater, a resident of Michigan, filed a putative class action against Defendant Churchill Downs Incorporated ("CDI"), asserting claims under Washington law.  Dkt. No. 2.  CDI is an entertainment company that formerly owned Big Fish Games, Inc. ("BFG"), which in turn owns and operates BFC, a virtual game and social entertainment platform.  *Id.* ¶ 1.  BFC is free to join, free to play, and includes a suite of video games, such as virtual roulette and poker.  Declaration of Jason Willig in Support of Big Fish Games, Inc.'s and Churchill Downs Inc.'s Motion to Compel Arbitration ("Willig Decl.") ¶ 2.  Virtual tokens are used to play the BFC games; no cash prizes are awarded to users and virtual tokens cannot be exchanged for money.  *Id.* ¶ 3.

---

[1] BFG's and CDI's arbitration rights as to any claims asserted by members of the alleged nationwide classes, or for newly added plaintiffs, are not yet at issue.  BFG reserves its right to compel arbitration against any plaintiffs who may later join, individually or as putative class members, in this or any other litigation.

DEFENDANTS' MOTION TO COMPEL ARBITRATION
Case No.: 2:15-cv-00612-RBL

1

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

On March 20, 2019, Ms. Kater and Plaintiff Suzie Kelly, a resident of Texas, filed a First Amended Class Action Complaint ("Amended Complaint").  Dkt. No. 85 ("Compl.").  The Amended Complaint for the first time named BFG as a defendant.

Both Plaintiffs are long-time users of BFC: Ms. Kater alleges that she began playing in January 2013, and Ms. Kelly alleges that she began playing in May 2014.  Compl. ¶¶ 46-47.  Ms. Kater and Ms. Kelly continue to play BFC games to this day.  *See* Willig Decl. ¶ 7.

### 2. Big Fish Terms Of Use[2]

The Terms of Use applicable to BFC and in effect throughout the majority of the time Plaintiffs have played BFC games include a binding arbitration provision.  *See* Willig Decl. ¶¶ 4-5 & Exs. A, B ("TOU").  The TOU call this provision to users' attention in the first two paragraphs of the document, in bold font:

> **Please read these Terms of Use carefully, including the mandatory arbitration provision in the section titled "Dispute Resolution by Binding Arbitration", which requires that disputes are resolved by final and binding arbitration on an individual and not a class-wide or consolidated basis. If you do not wish to be subject to arbitration, you may opt out of the arbitration provision by following the instructions provided at the end of the section titled "Dispute Resolution by Binding Arbitration".**
>
> **By accessing or using any Big Fish Offering, you agree to be bound by these Terms of Use and all terms incorporated by reference. If you do not agree to these Terms of Use in their entirety, do not use any Big Fish Offerings.**

*Id.* Ex. A at 1.  Additionally, the arbitration provision itself is prefaced with the following language in bold font and all caps:

> **PLEASE READ THIS "DISPUTE RESOLUTION BY BINDING ARBITRATION" PROVISION CAREFULLY, BECAUSE IT REQUIRES YOU TO ARBITRATE DISPUTES WITH BIG FISH AND IT LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF.**

---

[2] CDI is a third-party beneficiary of the arbitration agreement between Plaintiffs and BFG, and so has the right to enforce that agreement.  The TOU expressly require arbitration of disputes with BFG and "its Affiliates."  Willig Decl. Ex. A at 1.  That term encompasses CDI as a former parent company of BFG.

DEFENDANTS' MOTION TO COMPEL ARBITRATION
Case No.: 2:15-cv-00612-RBL

2

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

THIS PROVISION PRECLUDES YOU FROM BRINGING ANY
CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION
AGAINST BIG FISH. IT ALSO PRECLUDES YOU FROM
PARTICIPATING IN OR RECOVERING RELIEF UNDER ANY
CURRENT OR FUTURE CLASS, COLLECTIVE, OR
REPRESENTATIVE ACTION AGAINST BIG FISH BY
SOMEONE ELSE. IN ADDITION, ARBITRATION PRECLUDES
YOU FROM SUING IN COURT OR FROM HAVING A JURY
TRIAL.

WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT
DECISION. IT IS YOUR DECISION TO MAKE AND YOU
SHOULD NOT RELY SOLELY ON THE INFORMATION
PROVIDED IN THIS AGREEMENT, AS IT IS NOT INTENDED
TO CONTAIN A COMPLETE EXPLANATION OF THE
CONSEQUENCES OF ARBITRATION. YOU SHOULD TAKE
REASONABLE STEPS TO CONDUCT FURTHER RESEARCH
AND TO CONSULT WITH OTHERS REGARDING THE
CONSEQUENCES OF YOUR DECISION. YOU MAY OPT OUT
OF THIS ARBITRATION PROVISION BY FOLLOWING THE
INSTRUCTIONS BELOW.

*Id.* at 7.

The TOU arbitration provision requires that "*any* dispute, claim or controversy arising out of or relating to your access to or use of any Big Fish Offering or to these Terms of Use (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of these Terms of Use) . . . shall be determined by arbitration[.]" *Id.* (emphasis added). The provision contains no temporal limitation and so on its face requires arbitration of disputes whether they arose before or after the user agreed to the TOU. *Id.* Users may opt out of the arbitration provision by mailing written notice within thirty days of the user's acceptance of the TOU. *Id.* at 8. Arbitration must take place in King County, Washington, but users can participate in the arbitration telephonically. *Id.* at 8. In addition, users' arbitration costs are capped at $250. *Id.*

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.: 2:15-cv-00612-RBL

3

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

3.      **Plaintiffs' Notice and Acceptance of the TOU**

The TOU are constantly available for review within the BFC app during gameplay to all users—including Ms. Kater and Ms. Kelly—who play BFC on an Android or Apple iOS device. Willig Decl. ¶ 6.  Whenever users log in to the BFC app to play games, they enter through a homepage called the "Lobby."  *Id.*  From the Lobby, users may access the TOU, contact customer support, and personalize game settings by clicking the "Settings" icon.  *Id.*  Within "Account Settings," a hyperlink to the "Terms Of Use" appears in contrasting white font on top of a yellow button icon, which conspicuously stands out against the screen's dark blue background.  *Id..*



Clicking the "Terms of Use" button launches the user's mobile browser and displays the complete version of the TOU—the first three sentences of which alert the user to the arbitration provision and notify the user that "[b]y accessing or using any Big Fish Offering, you agree to be bound by these Terms of Use[.]".  *Id.* & Ex. A.

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.: 2:15-cv-00612-RBL

4

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1    Each time Ms. Kater and Ms. Kelly played BFC games during the past six years and five

2    years, respectively, they accessed the Lobby of the BFC app and had the opportunity to review

3    the TOU through the account settings menu in the Lobby.  Plaintiffs' Amended Complaint

4    confirms their actual knowledge of the TOU, repeatedly referencing the "terms of service" and

5    general "terms" associated with BFC.  *See, e.g.*, Compl. ¶¶ 27-28, 32-33, 37.  Moreover, in both

6    the original Complaint filed on April 17, 2015 and the Amended Complaint filed earlier this

7    year, Plaintiffs alleged a class of "[a]ll persons in the United States who created BFC accounts

8    *on or before March 23, 2015*"—one day before the date on which BFG modified its TOU to

9    incorporate the arbitration provision described above.  Willig Decl. ¶ 5; Dkt. No. 2 ¶ 39; Compl.

10   ¶ 48.  This temporal limitation—otherwise unrelated to Plaintiffs' allegations regarding their

11   personal gameplay—strongly suggests Plaintiffs were on notice of the TOU.

12       Neither Plaintiff ever opted out of the TOU arbitration provision by mailing written

13   notice, and both Plaintiffs continue to play BFC to this day with knowledge that by doing so they

14   manifest acceptance of the TOU.  Willig Decl. ¶¶ 7-8.

15   **III.    LEGAL STANDARD**

16       The Federal Arbitration Act requires federal district courts to compel arbitration of claims

17   covered by a written and enforceable arbitration agreement.  9 U.S.C. § 3.  "Under the FAA, the

18   basic role for courts is to determine (1) whether a valid agreement to arbitrate exists and, if it

19   does, (2) whether the agreement encompasses the dispute at issue."  *Knutson v. Sirius XM Radio*

20   *Inc.*, 771 F.3d 559, 564-65 (9th Cir. 2014).  "If the response is affirmative on both counts, then

21   the Act requires the court to enforce the arbitration agreement in accordance with its terms."

22   *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  "When

23   determining whether parties have agreed to submit to arbitration, [courts] apply general state-law

24   principles of contract interpretation, while giving due regard to the federal policy in favor of

25   arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."

26   *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).

27

28

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.: 2:15-cv-00612-RBL

5

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1    The party seeking arbitration bears the initial burden of showing a valid arbitration

2    agreement exists by a preponderance of the evidence, and the party resisting arbitration bears the

3    burden of showing that the arbitration agreement is invalid or does not encompass the claims at

4    issue. *See Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

5    **IV.    ARGUMENT**

6    This dispute should not proceed in federal (or any) court. Plaintiffs broadly and without

7    limitation agreed to arbitrate "any dispute, claim or controversy arising out of or relating to

8    [their] access to or use of [BFC]." Willig Decl. Ex. A at 7. Accordingly, the Court should

9    compel arbitration of their claims.

10   **A.    Plaintiffs Agreed to Arbitrate Their Claims by Accepting the TOU.**

11   To determine whether a valid arbitration agreement exists, federal courts "apply ordinary

12   state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v.*

13   *Kaplan*, 514 U.S. 938, 944 (1995). In Washington, "parties must objectively manifest their

14   mutual assent" to form a contract.[3] *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash. 2d

15   171, 177 (2004) (en banc).

16   Courts have divided Internet contracts such as the TOU into various "flavors: 'clickwrap'

17   (or 'click-through') agreements, in which website users are required to click on an 'I agree' box

18   after being presented with a list of terms and conditions of use; and 'browsewrap' agreements,

19   where a website's terms and conditions of use are generally posted on the website via a hyperlink

20   at the bottom of the screen." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir.

---

[3] BFG does not concede that Washington law applies in this case and reserves its right to argue that other state laws—including the laws of the states where users reside—apply to Plaintiffs' and putative class members' claims. For purposes of this motion, however, the result is the same under other state laws, including Florida, Texas, and California. *See Vision Palm Springs LLLP v. Michael Anthony Co.*, 2019 WL 943196, at *4 (Ct. App. Fl. Feb. 27, 2019) ("Contract formation requires a manifestation of mutual assent, the existence of which is determined by an objective test."); *McKee v. Audible.com*, 2017 WL 4685039, at *5 (C.D. Cal. July 17, 2017) (noting that Washington and California law do not conflict "on the relevant issue of contract formation and the enforceability of arbitration provisions"); *Southwest Airlines Co. v. BoardFirst, LLC*, 2007 WL 4823761, at *4 (N.D. Tex. Sept. 12, 2007) (manifestation of assent to contract under Texas law may be shown through actions or conduct). Under Washington choice of law rules—which apply in this diversity case, *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001)—Washington law applies in the absence of a conflict. *Erwin v. Cotter Health Ctrs.*, 161 Wash. 2d 676, 692 (2007).

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.: 2:15-cv-00612-RBL

6

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

2014).  "The defining feature of browsewrap agreements is that the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists."  *Be In, Inc. v. Google Inc.*, 2013 WL 5568706, at *6 (N.D. Cal. Oct. 9, 2013).  Other "flavors" of online agreements have also been recognized, including "sign-in wrap" and "checkout-wrap."  *See Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *3 (S.D.N.Y. Nov. 20, 2017).  These various flavors reflect that "there are infinite ways to design a website or smartphone application, and not all interfaces fit neatly into" predefined categories.  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017).  As a result, "the enforeceability of a web-based agreement . . . is a fact-intensive inquiry."  *Id.*

All of these flavors of agreements are enforceable under the right circumstances.  For example, courts "have consistently enforced browsewrap agreements where the user had actual notice of the [terms of use agreement]."  *Nguyen*, 763 F.3d at 1176.  Even where the record is devoid of evidence that a user had actual knowledge of the agreement, courts will enforce it if "the website puts a reasonably prudent user on inquiry notice of the terms of the contract."  *Id.* at 1177; *see also Kwan v. Clearwire Corp.*, 2012 WL 32380, at *7 (W.D. Wash. Jan. 3, 2012) ("In ruling upon the validity of browsewrap agreements, courts primarily consider whether a website user has actual or constructive notice of the terms and conditions prior to using the website or other product.").  Factors relevant to this inquiry include "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design."  *Nguyen*, 763 F.3d at 1177.

"The principle has long been established that no particular form of words is necessary to indicate assent"—rather, "a contract can be formed by [continuing to play the game] after knowledge (or, in some cases, presumptive knowledge) of the conditions accepted when doing so."  *Ticketmaster Corp. v. Tickets.Com, Inc.*, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003).  It is well-settled that Plaintiffs' access to and use of BFC "with knowledge of" the TOU "constitute[s] acceptance of the terms, which accordingly are binding on [them]."  *Cairo, Inc. v.*

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.: 2:15-cv-00612-RBL

7

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

*Crossmedia Servs., Inc.*, 2005 WL 756610, at *5 (N.D. Cal. Apr. 1, 2005) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004)).

Whatever "flavor" of online contract the BFC TOU are considered, Plaintiffs had actual or constructive notice of and manifested their assent to the terms, including the arbitration provision.

*First*, Plaintiffs had actual notice of the TOU and its arbitration provision at least as of the dates they filed their Complaint and Amended Complaint.  Plaintiffs repeatedly reference throughout the Amended Complaint the "terms of service" and general "terms" associated with BFC.  *See, e.g.*, Compl. ¶¶ 27-28, 32-33, 37; *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836-37 (S.D.N.Y. 2012) (holding that the plaintiff's allegations regarding the defendant's terms of use "suggests that he had constructive knowledge" of those terms).  Moreover, Plaintiffs allege a class of "[a]ll persons in the United States who created BFC accounts *on or before March 23, 2015*[.]"  Dkt. No. 2 ¶ 39 (emphases added); Compl. ¶ 48.  Plaintiffs' specific temporal limitation—tied to the date the arbitration provision was added to the TOU, and not to any facts related to their gameplay—indicates their awareness of the TOU.

There is no question that Plaintiffs' *lawyers* knew of the TOU and its arbitration provision, given their briefing in opposition to CDI's motion to compel arbitration in 2018.  *See* Dkt. Nos. 60, 68, 70, 75.  Counsel's knowledge is properly imputed to Plaintiffs.  *Nicosia v. Amazon.com*, 2017 WL 10111078, at *11 (E.D.N.Y. Aug. 18, 2017) (holding that plaintiff was on notice "through his counsel" of defendant's arbitration provision).

Both Ms. Kater and Ms. Kelly have continued to play BFC since receiving notice of the TOU by filing this lawsuit and alleging their awareness of the TOU.  Willig Decl. ¶ 7.  In other words, Plaintiffs have continued to play BFC with knowledge that by doing so they are bound by the TOU.  Plaintiffs' continued and repeated play of BFC games with actual notice of the TOU manifests their acceptance of the terms.  *See Nguyen*, 763 F.3d at 1177; *Ekin v. Amazon Servs.*, 84 F. Supp. 3d 1172, 1175 n.5 (W.D. Wash. 2014) (noting that plaintiffs could not dispute their

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.: 2:15-cv-00612-RBL

8

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1   acceptance of arbitration agreement given their "myriad active purchases and renewals" of the

2   defendant's services).

3       *Second*, Plaintiffs had constructive notice of the TOU and its arbitration provision by

4   continuously playing BFC games for over five years on their Apple iOS and Android devices.

5   When assessing constructive notice in the context of online agreements, "precedent and basic

6   principles of contract law instruct that we consider the perspective of a reasonably prudent

7   smartphone user." *Meyer*, 868 F.3d at 77. "Accordingly, . . . we need not presume that the user

8   has never before encountered an app or entered into a contract using a smartphone. . . . [A]

9   reasonably prudent smartphone user knows that text that is highlighted in blue and underlined is

10  hyperlinked to another webpage where additional information will be found." *Id.* at 77-78.

11  Moreover, a reasonably prudent smartphone user knows that downloading and accessing an app

12  generally contemplates "some sort of continuing relationship between the putative user and [the

13  maker of the app], one that would require some terms and conditions[.]" *Id.* at 80.

14      Here, Plaintiffs undoubtedly know their way around smartphone apps: they located and

15  downloaded the BFC app in the Apple App Store and Google Play Store, and then they

16  continuously accessed and played BFC games for over five years. Throughout this time,

17  Plaintiffs have had constant access to the TOU, of which they had at least inquiry notice by

18  virtue of the hyperlink to the TOU in the Lobby of the BFC app—which would be obvious to a

19  "reasonably prudent smartphone user." *Meyer*, 868 F.3d at 77-80. Every time Plaintiffs open

20  the BFC app, they land in the Lobby, where they have "easy access to the full [TOU]" via the

21  Settings menu. *Snap-on Business Sols. Inc. v. O'Neil & Assocs., Inc.*, 708 F. Supp. 2d 669, 683

22  (N.D. Ohio 2010); *see* Willig Decl. ¶ 6.

23      Plaintiffs' "repeated" access to and use of the BFC app "can form the basis of imputing

24  knowledge to [them] of the terms on which [BFC's games] were offered even before" they had

25  actual notice of the TOU. *Cairo*, 2005 WL 756610, at *5. Whether or not Plaintiffs actually

26  accessed and reviewed the TOU is "irrelevant," since inquiry notice coupled with continued use

27  of the BFC app is sufficient to form a binding contract. *Fteja*, 841 F. Supp. 2d at 839 (holding

28

DEFENDANTS' MOTION TO COMPEL              9        ORRICK, HERRINGTON & SUTCLIFFE LLP
ARBITRATION                                         701 Fifth Avenue, Suite 5600
Case No.: 2:15-cv-00612-RBL                        Seattle, Washington  98104-7097
                                                        +1 206 839 4300

that "it is not too much to expect that" the modern app user "to whom the internet is an indispensable part of daily life" "would understand that the hyperlinked phrase 'Terms of Use' is really a sign that says 'Click Here for Terms of Use,'" and so prompts the consumer "to examine terms of sale that are located somewhere else"); *see also Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *5, 10 (S.D.N.Y. Nov. 20, 2017) (granting motion to compel arbitration when plaintiff "appears to be a relatively sophisticated internet and smartphone user" and "customers could easily learn of the existence of and access and read the TOU" on defendant's website); *M.A. Mortensen Co. v Timberline Software Corp.*, 140 Wash. 2d 568, 584 (2000) (en banc) (use of product following receipt of "shrinkwrap" agreement constituted assent even though plaintiff claimed not to have read the contract terms, since "it was not necessary for [the plaintiff] to actually read the agreement in order to be bound by it").

Plaintiffs do not allege that they were *not* on notice of the TOU, or that they did *not* manifest acceptance of those terms by continuously playing BFC for over five years.  *See* Willig Decl. ¶ 7; Compl. ¶¶ 46-47.  This silence—juxtaposed with strong indications that Plaintiffs continue to play BFC games after having at least constructive, if not actual, notice that doing so would bind them to the TOU—is sufficient to infer contract formation.  *See Himber v. Live Nation Worldwide, Inc.*, 2018 WL 2304770, at *4 (E.D.N.Y. May 21, 2018) (granting motion to compel arbitration when plaintiff did "not deny having actually seen or read the Terms of Use, including the arbitration provision" when using defendant's website); *Domain Name Comm'n Ltd. v. DomainTools, LLC*, 2018 WL 4353266, at *4 (W.D. Wash. Sept. 12, 2018) (finding contract likely formed when party was not "a one-time or sporadic user" but rather "has been querying plaintiff's system for years" and "has not denied knowledge in this litigation").[4]

---

[4] No matter when Plaintiffs acquired constructive/actual notice of the TOU, the arbitration provision still applies to this dispute since that provision requires arbitration of "*any* dispute, claim or controversy arising out of or relating to your access to or use of any Big Fish Offering," without temporal limitation.  Willig Decl. Ex. A at 7.  As courts in this District have held, such language compels arbitration "regardless of when the underlying events occurred." *Allbaugh v. Perma-Bound*, 2009 WL 10676437, at *9 (W.D. Wash. Aug. 14, 2009) (granting motion to compel arbitration when arbitration clause "covers not just any claims arising under the [agreement] but also any claims *relating to it*") (emphasis added); *see also In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1202 (10th Cir. 2016) (finding that the "only reasonable interpretation of the *arising* language was that it

DEFENDANTS' MOTION TO COMPEL ARBITRATION
Case No.: 2:15-cv-00612-RBL

10

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

By continuing to play BFC games after they had constructive and/or actual notice that such use bound them to the TOU, Plaintiffs manifested their agreement to those terms, including the arbitration provision.  As a result, a valid arbitration agreement exists, and the burden switches to Plaintiffs to show that the arbitration agreement is invalid or does not encompass the claims at issue, which they cannot do.

**B.    The Arbitration Provision Is Not Unconscionable.**

An arbitration agreement is enforceable unless it is unconscionable.  Washington "recognizes two classifications of unconscionability, substantive and procedural."  *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1258 (9th Cir. 2005).[5]  "Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh . . . 'Shocking to the conscience,' 'monstrously harsh,' and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability.  Procedural unconscionability is the lack of a meaningful choice, considering all the circumstances surrounding the transaction including the manner in which the contract was entered, whether the party had a reasonable opportunity to understand the terms of the contract, and whether the important terms were hidden in a maze of fine print."  *Zuver v. Airtouch Commc'n's, Inc.*, 153 Wash. 2d. 293, 303 (2004) (en

---

applied to a dispute predating the arbitration agreement" and observing that "the word *relate* does not have the same temporal connotation as *arise*; we can say that something arises at a particular point in time; but *relate* is broader and includes a relationship in subject matter that is independent of time") (internal marks omitted); *MCA Fin. Grp., Ltd. v. Gardere Wynne Sewell, LLP*, 2007 WL 951959, at *5 (D. Ariz. Mar. 27, 2007) (granting motion to compel arbitration and finding that arbitration provision governing "any dispute or controversy regarding or arising out of our representation of you" applied retroactively); *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (granting motion to compel arbitration and finding that the broadly-worded arbitration provision applied to plaintiff's claims even though "all the events underlying the claims occurred before the parties executed the agreement").  In any event, the arbitrability of this dispute is for an arbitrator, not the Court, to decide.  *See infra* at 14-15.

[5] Again, for purposes of this motion, the result is the same under other state laws, and so Washington law applies in the absence of a conflict.  *See supra* n.3; *see also, e.g.*, *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1063 (S.D. Cal. 2015) ("In both Washington and California, unconscionability doctrine is rooted in the same policy concerns, involves a similar doctrinal test, and is applied in similar fashion."); *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 80-81 (S.D.N.Y. 2012) (Florida law requires assessment of procedural and substantive unconscionability); *In re Turner Bros. Trucking Co., Inc.*, 8 S.W.3d 370, 376-77 (Ct. App. Tex. 1999) (Texas law requires assessment of procedural and substantive unconscionability).

DEFENDANTS' MOTION TO COMPEL ARBITRATION
Case No.: 2:15-cv-00612-RBL

11

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

banc) (citations omitted).  Plaintiffs have the burden of proving unconscionability.  *See Tjart v. Smith Barney, Inc.*, 28 P.3d 823, 830 (Ct. App. Wash. 2001).

Courts have consistently enforced arbitration agreements that, like the TOU here, clearly call the user's attention to the arbitration provision.  *See Carideo v. Dell, Inc.*, 520 F. Supp. 2d 1241, 1249 (W.D. Wash. 2007) (finding arbitration agreement not procedurally unconscionable because "[t]he arbitration clause was not hidden in a maze of fine print, but was presented in all capital letters"); *Graf v. Match.com*, 2015 WL 4263957, at *5 (C.D. Cal. July 10, 2015) (finding arbitration agreement not procedurally unconscionable when the arbitration provision was presented as its own section in the Terms of Use, used bold type to draw attention to the section, and clearly explained its terms).  Here, the TOU uses all caps to give clear notice of the arbitration provision *in the first sentence of the TOU*:

> PLEASE READ THESE TERMS OF USE CAREFULLY, INCLUDING THE MANDATORY ARBITRATION PROVISION IN THE SECTION TITLED "DISPUTE RESOLUTION BY BINDING ARBITRATION," WHICH REQUIRES THAT DISPUTES ARE RESOLVED BY FINAL AND BINDING ARBITRATION ON AN INDIVIDUAL AND NOT A CLASS-WIDE OR CONSOLIDATED BASIS.

Willig Decl. Ex. A at 1.  The TOU also uses all caps and bold font to call attention to the specific provision governing arbitration:

> **PLEASE READ THIS "DISPUTE RESOLUTION BY BINDING ARBITRATION" PROVISION CAREFULLY, BECAUSE IT REQUIRES YOU TO ARBITRATE DISPUTES WITH BIG FISH AND IT LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF.**

*Id.* at 7; *see Singavong v. Volt Mgmt. Corp.*, 2007 WL 1813845, at *3 (W.D. Wash. June 21, 2007) (finding arbitration agreement not unconscionable when "the terms of the arbitration provision are in capital-lettered, normal size typeface").

Courts also reject unconscionability arguments when, as here, the arbitration agreement provides consumer-friendly terms such as the option to participate in the arbitration telephonically and to opt out of the arbitration agreement entirely by mailing written notice within thirty days.  Willig Decl. Ex. A at 7-8; *see Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201,

DEFENDANTS' MOTION TO COMPEL ARBITRATION
Case No.: 2:15-cv-00612-RBL

12

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1210-11 (9th Cir. 2016); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002)

("[T]his case lacks the necessary element of procedural unconscionability . . . because [plaintiff]

was given the opportunity to opt-out of the [defendant's] arbitration program by mailing in a

simple one-page form [within thirty days].").  In addition, the TOU cap any arbitration costs paid

by the consumer at $250.  Willig Decl. Ex. A at 8.  Courts have determined that such terms

preclude a finding of unconscionability since they do "not prohibit Plaintiffs from bringing their

claims."  *Carideo*, 520 F. Supp. 2d at 1248; *see Nevarez v. Forty Niners Football Co.*, 2017 WL

3492110, at *12 (N.D. Cal. Aug. 15, 2017) (finding arbitration agreement not substantively

unconscionable when fee required to be paid by the consumer was capped at $250 because that

amount is comparable to what would be required to file a lawsuit).

Finally, it is well-settled that the arbitration provision's class action waiver is not

unconscionable: any argument that a "ban on class arbitration is unconscionable . . . is now

expressly foreclosed by" the Supreme Court's holding in *AT&T Mobility LLC v. Concepcion*,

563 U.S. 333, 351 (2011).  *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en

banc); *see also Coppock v. Citigroup, Inc.*, 2013 WL 1192632, at *8 n.2 (W.D. Wash. Mar. 22,

2013) ("Under *Concepcion*, the Court cannot consider Washington's policy on unconscionability

of class-action waivers . . . since the FAA preempts that policy and precludes a court from taking

it into account in conducting the unconscionability analysis.").

Plaintiffs manifested their assent to the reasonable and consumer-friendly terms of the

TOU arbitration agreement.  The Court should therefore enforce that agreement.

## C.     The TOU Arbitration Provision Clearly Delegates To The Arbitrator The Question Of The Arbitrability Of Plaintiffs' Claims.

Parties may "agree to arbitrate 'gateway' questions of 'arbitrability' such as whether the

parties have agreed to arbitrate or whether their agreement covers a particular controversy."

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).  The arbitrator, not the Court,

decides these questions when the parties "*clearly and unmistakably*" delegate questions of

arbitrability to an arbitrator."  *Oracle Am., Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069, 1072 (9th

Cir. 2013) (emphasis in original).  "Clear and unmistakable evidence of an agreement to arbitrate

DEFENDANTS' MOTION TO COMPEL ARBITRATION
Case No.: 2:15-cv-00612-RBL

13

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

arbitrability might include . . . an express agreement to do so." *Mohamed*, 848 F.3d at 1208 (internal marks omitted).

Here, the TOU to which Plaintiffs agreed clearly and unmistakably delegate the issue of arbitrability to an arbitrator.  The TOU provide that "any dispute, claim or controversy arising out of or relating to your access to or use of any Big Fish Offering or to these Terms of Use (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or *arbitrability* of these Terms of Use) . . . *shall be determined by arbitration*."  Willig Decl. Ex. A at 7 (emphases added).  The Ninth Circuit has held that similar language constitutes an express agreement to arbitrate the question of arbitrability of a plaintiff's claims.  *See Mohamed*, 848 F.3d at 1208 ("disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision"); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) ("If a dispute arises out of or relates to . . . the validity or application of any of the provisions of this [arbitration agreement], . . . the dispute shall be resolved exclusively by binding arbitration.") (emphasis omitted).  Accordingly, because the arbitration agreement is enforceable and contains an express delegation clause, an arbitrator must decide whether this dispute is arbitrable.

### D.    BFG Has Not Waived Its Right To Compel Arbitration of Plaintiffs' Claims.

BFG is invoking its right to arbitrate at the first available opportunity in its first substantive filing in this litigation.  Under those circumstances, Plaintiffs could not carry their "heavy burden of proof" to show BFG waived its right to arbitrate.   *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1989) (waiver of the right to arbitration is disfavored).  To establish that BFG waived its arbitration rights under the TOU arbitration clause, Plaintiffs "must demonstrate (1) [BFG's] knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts."  *Britton v. Co-op Banking Grp.*, 916 F.2d 1405,

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.: 2:15-cv-00612-RBL

14

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1412 (9th Cir. 1990).[6]  "Any doubts as to waiver are resolved in favor of arbitration." *Creative*

*Telecommns., Inc. v. Breeden*, 120 F. Supp. 2d 1225, 1232 (D. Haw. 1999).

When a party moves to compel arbitration at the first available opportunity, as here, the

Ninth Circuit has repeatedly held that the party does not waive its right to arbitrate the dispute.

*Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 697 (9th Cir. 1986) (plaintiff could not meet

heavy burden to show waiver where defendant moved to compel arbitration as soon as it was no

longer futile to do so after a new Supreme Court decision); *Conover v. Dean Witter Reynolds,*

*Inc.*, 837 F.2d 867, 868 (9th Cir. 1988) (same); *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d

1185, 1187 (9th Cir. 1986) (same); *see also Olivares v. Hispanic Broad. Corp.*, 2001 WL

477171, at *1 (C.D. Cal. Apr. 26, 2001) (no waiver where defendant moved to compel at "the

first opportunity").  BFG was just added as a party to this lawsuit on March 20, 2019, and this is

its first substantive filing.  In short, BFG has not taken any acts in this litigation inconsistent with

its arbitration rights.

Plaintiffs may argue that the Court's ruling that CDI waived its right to compel

arbitration of Ms. Kater's claims should be imputed to BFG's right to compel arbitration of

Plaintiffs' claims.  That argument would fail for several reasons.  *First*, BFG has not waived its

right to compel arbitration of the claims asserted by Ms. Kater, since BFG was only recently

added as a party to this case.  Until BFG was added as a defendant, it had no right to compel

arbitration of Ms. Kater's claims that could be waived.  *See Letizia*, 802 F.2d at 1187.  Even if

BFG had somehow waived its right to arbitrate the claims alleged by Ms. Kater, BFG had no

right to compel arbitration of the claims alleged by Ms. Kelly until they were alleged in the

Amended Complaint on March 20, 2019.  *Id.*

*Second*, any waiver of arbitration rights by CDI—BFG's former parent company—

cannot be imputed to BFG.  *See Kiskadee Commc'ns (Bermuda), Ltd. v. Father*, 2011 WL

1044241, at *6 (N.D. Cal. Mar. 22, 2011) (nonparty's waiver did not bind defendants); *see also*

---

[6] BFG and CDI do not contest that they knew of their right to compel arbitration when the Amended Complaint was filed.

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.: 2:15-cv-00612-RBL

15

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

*Lake Washington Sch. Dist. No. 414 v. Mobile Modules Nw., Inc.*, 28 Wash. App. 59, 62 (1980) ("waiver is a power exclusive to the party relinquishing the right to demand arbitration").

Applying these same principles, one court recently refused to impute waiver under analogous circumstances. *See Meyer v. Kalanick*, 291 F. Supp. 3d 526, 534–35 (S.D.N.Y. 2018). In *Meyer*, the plaintiff elected not to name the real party in interest (Uber) in a lawsuit relating to Uber's pricing algorithm, choosing instead to name only Uber's CEO. *Id.* at 530. Once Uber was joined, the company invoked the arbitration clause in its terms of use, to which Uber's CEO was a third-party beneficiary. *See id.* at 530–32. In holding that Uber did not waive its arbitration rights, even if Uber's CEO did waive them, the *Meyer* court rejected the plaintiff's argument that Uber acted inconsistently with that right because the argument was "premised entirely on conduct undertaken by [Uber's CEO] before Uber was even a party to the case." *Id.* at 534–35. For the same reasons, any waiver by CDI cannot serve as a basis for showing that BFG acted inconsistent with its arbitration rights.

Finally, Plaintiffs would suffer no cognizable prejudice if compelled to arbitrate their claims against BFG. For purposes of the waiver analysis, courts may only consider prejudice "resulting from [the moving party's] inconsistent acts." *Fisher*, 791 F.2d at 697; *Guest v. Air Liquide Am. Specialty Gases*, LLC, 2018 WL 4523147, at *14 (D. Or. June 28, 2018) ("To establish waiver, the prejudice must result from the defendant's inconsistent acts."). BFG has not acted inconsistent with its right to compel arbitration against Plaintiffs, considering that the first action it took was to assert that right. In the absence of inconsistent conduct, it follows that Plaintiffs will not suffer any cognizable prejudice.

Accordingly, Plaintiffs cannot meet their heavy burden to show waiver, should they make any such argument, because BFG timely asserted its right to compel arbitration at the first available opportunity.

### E.   CDI Has Not Waived Its Right To Compel Arbitration of Ms. Kelly's Claims.

For similar reasons, Ms. Kelly cannot carry her heavy burden to show that CDI waived its right to compel arbitration of her claims—which were alleged for the first time less than two

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.: 2:15-cv-00612-RBL

16

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1    months ago.  Until Ms. Kelly brought her claims in this lawsuit, CDI had no right to compel

2    arbitration of those claims that could be waived.  *See Letizia*, 802 F.2d at 1187.

3    **V.      CONCLUSION**

4                For the foregoing reasons, the Court should compel arbitration of Ms. Kater's claims

5    against BFG and Ms. Kelly's claims against both BFG and CDI, and stay the case pending

6    resolution of the arbitration proceedings.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO COMPEL                17
ARBITRATION
Case No.: 2:15-cv-00612-RBL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: May 10, 2018                    ORRICK, HERRINGTON & SUTCLIFFE LLP

By:   *s/Mark S. Parris*
Mark S. Parris (WSBA No. 13870)
mparris@orrick.com

701 Fifth Avenue
Suite 5600
Seattle, WA  98104-7097
Telephone:  +1 206 839 4300
Facsimile:  +1 206 839 4301

*Attorney for Defendants Big Fish Games, Inc.
and Churchill Downs Incorporated*

COVINGTON & BURLING LLP

By:   *s/Gary Rubman*
Gary Rubman (*pro hac vice* pending)
grubman@cov.com

One CityCenter
850 Tenth Street NW
Washington, D.C.  20001
Telephone:  +1 202 662 6000

By:   *s/Matthew Q. Verdin*
*s/David Watnick*
Matthew Q. Verdin (*pro hac vice* pending)
mverdin@cov.com
David Watnick (*pro hac vice* pending)
dwatnick@cov.com

Salesforce Tower
415 Mission Street
Suite 5400
San Francisco, CA  94105
Telephone:  +1 415 591 7065

By:   *s/Lindsey Barnhart*
*s/Emily Johnson Henn*
Lindsey Barnhart (*pro hac vice* pending)
LBarnhart@cov.com
Emily Johnson Henn (*pro hac vice* pending)
ehenn@cov.com

3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA  94306
Telephone:  +1 650 632 4700

*Attorneys for Defendant Big Fish Games, Inc.*

DEFENDANTS' MOTION TO COMPEL
ARBITRATION
Case No.: 2:15-cv-00612-RBL

18

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300