| | |
|---|---|
| | HONORABLE RONALD B. LEIGHTON |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHERYL KATER and SUZIE KELLY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>CHURCHILL DOWNS INCORPORATED, a Kentucky corporation, and BIG FISH GAMES, INC., a Washington corporation,<br><br>Defendants. | CASE NO. C15-0612-RBL<br><br>ORDER ON TEMPORARY RESTRAINING ORDER AND LIMITED RELIEF FROM LITIGATION STAY |
| MANASA THIMMEGOWDA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BIG FISH GAMES, INC., a Washington corporation; ARISTOCRAT TECHNOLOGIES INC., a Nevada corporation; ARISTOCRAT LEISURE LIMITED, an Australian corporation; and CHURCHILL DOWNS INCORPORATED, a Kentucky corporation,<br><br>Defendants. | CASE NO. C19-0199-RBL<br><br>ORDER ON TEMPORARY RESTRAINING ORDER AND LIMITED RELIEF FROM LITIGATION STAY |

ORDER - 1

# I. INTRODUCTION

THIS MATTER is before the Court on Plaintiffs' Motions for Temporary Restraining Order and Limited Relief from Litigation Stay [Dkt. #s 73 (in *Thimmegowda*) and 122 (in *Kater*]. The facts underlying these two class action lawsuits were summarized by the Ninth Circuit in *Kater v. Churchill Downs Inc.*, 886, F.3d 784, 785-86 (9th Cir. 2018):

> Big Fish Casino is a game platform that functions as a virtual casino, within which users can play various electronic casino games, such as blackjack, poker, and slots. Users can download the Big Fish Casino app free of charge, and first-time users receive a set of free chips. They then can play the games for free using the chips that come with the app, and may purchase additional chips to extend gameplay. Users also earn more chips as a reward for winning the games. If a user runs out of chips, he or she must purchase more chips to continue playing. A user can purchase more virtual chips for prices ranging from $1.99 to nearly $250.

The only material differences between the cases are the addition of Big Fish's new owner as a defendant in *Thimmegowda*, and class definitions that cover different time periods. The proposed *Kater* class covers persons who lost purchased chips at Defendants' games before March 23, 2015, and the proposed *Thimmegowda* class covers persons who lost chips after that date. The pending motions are identical, and the Court will use the singular "motion" for clarity.

The Motion to Lift the Stay for the purpose of resolving the underlying TRO motion is GRANTED. Plaintiffs' Motion for Temporary Restraining Order is GRANTED in the form of a Preliminarily Injunction **limiting** Defendants' dissemination of the pop-up notification regarding the Big Fish Terms of Use dated August 18, 2019 (and displayed since October 14, 2019), as described below.

# II. BACKGROUND

On August 28, 2019, Big Fish changed the Terms of Use on its Big Fish Casino

website. Before then, the game's Terms contained a generic arbitration agreement, which is the subject of pending motions in both cases. The updated Terms, however, are expressly directed at this lawsuit:

> These Terms of Use dated August 28, 2019 do not apply to Cheryl Kater, Suzie Kelly, and Manasa Thimmegowda, who are named plaintiffs in class action lawsuits pending in the Western District of Washington: *Kater v. Churchill Downs Inc.*, Case No. 15-cv-00612-RBL, and *Thimmegowda v. Big Fish Games, Inc.*, Case No. 2:19-cv-00199-RBL. The lawsuits allege claims relating to Big Fish Casino under the Washington Recovery of Money Lost at Gambling statute, the Washington Consumer Protection Act, and Washington common law. The mandatory arbitration provision in these Terms of Use prevents you from participating in these class action lawsuits, even if a class is certified.

(https://www.bigfishgames.com/company/terms.html). The Terms do not provide information about the current status of these cases, the type of relief being sought, the Court's previous decisions about arbitration in *Kater*, or how to contact Plaintiffs' counsel. They do not advise players to seek their own counsel if they have questions about the Terms. The Terms include an opt-out provision, which purports to permit players to opt out of the arbitration agreement within 30 days of clicking the "I Agree" button.



More than 30 days after changing the Terms (about October 14, 2019), Big Fish's games began displaying a new pop-up window. The pop-up expressly references this litigation and tells players that clicking the "I Agree" button means that they will not be permitted to participate in these

lawsuits. Players cannot continue to play the game unless they click the "I Agree" button, even if they have already purchased chips. The pop-up window is depicted above.

Defendants did not tell Plaintiffs, Plaintiffs' counsel, or the Court about the changes to the Terms of Use or the addition of the pop-up window. Nor has the Court authorized any form of class notice. In fact, both cases have been stayed, with limited exceptions, pending the Ninth Circuit's resolution of the appeal in *Wilson v. Huuuge, Inc.* (*Kater* Dkt. # 121; *Thimmegowda* Dkt. # 70).

### III. DISCUSSION

The purpose of a TRO is "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing [on the preliminary injunction application], and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423 (1974); *see also Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130–31 (9th Cir. 2006). For a court to grant a preliminary injunction, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, Inc., 555 U.S. 7, 20 (2008). The last two factors merge if the government is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). When considering whether to grant this "extraordinary remedy, . . . courts must balance the competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular regard to the public consequences." *Winter*, 555 U.S. at 24.

The Ninth Circuit continues to apply one manifestation of the "sliding scale" approach to injunctions in which "a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *All. for the Wild Rockies v. Cottrell*, 632 F.3d

1127, 1131 (9th Cir. 2011). "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1131-32. However, an injunction cannot issue even when there is a strong likelihood of success on the merits if there is just a mere possibility of irreparable harm. *Id.* at 1131 (explaining the holding in *Winter*, 555 U.S. at 22).

1. Likelihood of Success on the Merits.

To obtain injunctive relief, Plaintiffs must demonstrate a likelihood of success on the merits. Here, the relevant merits question is whether, pursuant to Federal Rule of Civil Procedure 23(d), the Court should limit defendants' communications with putative class members and issue appropriate corrective notice (among other potentially appropriate remedies).

Plaintiffs argue that Big Fish's pop-up window is coercive because it forces addicted gamblers to choose between preserving their class action rights and continuing to play games they have already invested money in. Plaintiffs further contend that the pop-up and revised Terms of Use mislead users by omitting important information about the lawsuits, mischaracterizing the effect of accepting the Terms, and obscuring the procedure for opting out of the Terms. Plaintiffs request that the Court invalidate any purported arbitration agreements, issue corrective notice, and prevent Big Fish from communicating with putative class members regarding arbitration.

Big Fish argues that its new pop-up and Terms are not misleading and in fact clarify the effects of Big Fish's arbitration clause by informing users that accepting the Terms will prohibit them from participating in these suits. Big Fish also rejects the notion that players' addiction to their games is relevant to coercion and emphasizes that the Terms provide an opt-out procedure that allows users to avoid any coercive effects. In any case, Big Fish asserts that Plaintiffs'

suggested remedy would amount to a total moratorium on customer communication. This would not only exceed the scope of Rule 23(d) but violate Big Fish's First Amendment rights.

"Federal Rule of Civil Procedure 23(d) provides courts with considerable discretion in regulating defendant communications with putative class members to prevent abuse." *Jimenez v. Menzies Aviation Inc*, No. 15-CV-02392-WHO, 2015 WL 4914727, at *5 (N.D. Cal. Aug. 17, 2015); see also *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *judgment vacated on other grounds*, 565 U.S. 801, 132 S.Ct. 74, 181 L.Ed.2d 1 (2011). Because class actions "present opportunities for abuse, . . . 'a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties.'" *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6407583, at *5 (N.D. Cal. Dec. 6, 2013) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981)).

Many courts have found that a defendant's attempt to foist a new arbitration provision on putative class members is an improper communication. In addition to the post-complaint timing of the communication, courts focus on the potential to mislead and whether putative class members are at risk of forfeiting their rights without really knowing what they are. *See, e.g., Jimenez*, 2015 WL 4914727, at *6 (determining new arbitration policy was invalid as applied to putative class members who were not informed of the pending lawsuit); *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6407583, at *6 (N.D. Cal. Dec. 6, 2013) (finding

interference where employer's arbitration agreement was confusing and did not mention pending class action).

Courts have also found communications improper when they coerce putative class members by exploiting a dependent relationship or giving no realistic opportunity to opt out of the defendant's new terms. *See, e.g., McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2018 WL 2422582, at *6 (C.D. Cal. Apr. 6, 2018) (holding that new arbitration notification coercively forced members to forfeit preexisting credits and provided no opt out procedure); *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6407583, at *6 (N.D. Cal. Dec. 6, 2013) (new terms improper where defendant's opt-out provision was "buried in the agreement"); *In re Currency Conversion Fee Antitrust Litigation*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005) (new arbitration provision was improper where the putative class of cardholders "depend[ed] on defendants for their credit needs"). "Whether a communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall message or impression left by the communication." *Kutzman v. Derrel's Mini Storage, Inc.*, 354 F. Supp. 3d 1149, 1158 (E.D. Cal. 2018).

Here, Big Fish's new pop-up, in conjunction with the revised Terms of Use, is coercive and misleading. The pop-up message presents putative class members with a stark choice: relinquish your class action rights and continue playing or maintain your rights and forfeit access to Big Fish's games. This ultimatum is made more coercive by the addictive nature of Big Fish's games and the fact that many players have already purchased chips that can only be accessed by agreeing to the terms. *See In re Currency Conversion*, 361 F. Supp. 2d at 253 ("If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive.") (quoting *Kleiner v. The First Nat'l Bank of*

*Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985)). With such pressures at play, the pop-up, and revised Terms, are clearly intended to steer putative class members away from participating in these cases.

Nor is the coercive effect negated by the existence of an opt-out procedure. The pop-up window makes no mention of opting out; instead, it states very simply that clicking "I agree" and accessing the game precludes participation in a lawsuit. This seemingly binary choice gives users no reason to believe an opt-out provision exists somewhere in the Terms—indeed, as Plaintiffs point out, the word "mandatory" leads them to believe the opposite. The opt-out provision itself thus does not mitigate the coercion, and Big Fish's attempt to hide the opt-out provision through a false ultimatum is misleading.

Big Fish's new pop-up and Terms are misleading for other reasons as well. Although the notifications do at least mention the lawsuits, they fail to meaningfully inform users about their potential rights. *See Kutzman v. Derrel's Mini Storage, Inc.*, 354 F. Supp. 3d 1149, 1156 (E.D. Cal. 2018) (finding settlement offer to putative class members improper under Rule 23(d) where it failed to explain the status of the case). When a class is certified, the Court sends out class notice in "plain, easily understood language," Fed. R. Civ. P. 23(c)(2)(B), that is "scrupulous to respect judicial neutrality." *Hoffmann-La Roche*, 493 U.S. at 174. But the pop-up merely mentions the case numbers and the Terms are written in dense language, rather than in language designed for laypersons. To putative class members who have likely never even heard of these cases, this is not enough to explain the stakes of clicking "I agree."

Big Fish argues that neither the new pop-up or the revised Terms substantively change its prior arbitration provision, which always contained a class action waiver. This argument fails for

several reasons. First, even a new notification system that does not update the content of an arbitration agreement can interfere with the rights of putative class members. *See McKee*, 2018 WL 2422582, at *6 (By fixing the problems with its method of informing users of its arbitration provision, Audible "effectively asked putative class members to waive their ability to participate in this, or any class action."). Given that the Court has already held in similar app-based gambling cases that non-obvious terms of use are not binding, the creation of a pop-up may well function as a new agreement. Second, Big Fish's pop-up and revised Terms *do* add new substance by specifically mentioning these lawsuits and prominently barring participation in any "past, current, and future disputes."

Big Fish also contends that granting Plaintiffs their requested relief would impermissibly silence Big Fish's communications with customers. Big Fish is correct that, "[b]efore a class is certified, counsel for both parties maintain a free-speech right to communicate with putative class members, *ex parte*, about the lawsuit." *Kutzman v. Derrel's Mini Storage, Inc.*, 354 F. Supp. 3d 1149, 1153 (E.D. Cal. 2018) (citing *Gulf Oil*, 452 U.S. at 99-100). The Court is therefore unlikely to ultimately impose a sweeping bar on all communications by Big Fish to its customers, even if they are putative class members. However, this does not change the fact that Plaintiffs are likely to succeed in their argument that Big Fish's current communications are improper. While Big Fish will not be barred from communicating with putative members about this case, it will have to do so within parameters designed to protect the rights created by Rule 23. The Court will explain these in more detail in the Conclusion of this Order.

2. <u>Likelihood of Irreparable Harm</u>.

"Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without

opportunity for rebuttal. The damage from misstatements could well be irreparable." *Kleiner*, 751 F.2d at 1203.

As explained above, Defendants' communications with putative class members are coercive and misleading. And once misinformation has been communicated to putative class members, that bell cannot be unrung. *Grewe v. Cobalt Mortgage, Inc.*, C16-577-JCC, 2016 WL 4547131, at *3 (W.D. Wash. Sept. 1, 2016) ["*Grewe II*"] (holding that misleading communication to putative class members constituted irreparable harm because "neither the Court nor the parties can 'go back in time and prevent those misrepresentations from occurring'"). Because no official class notice has been sent, Big Fish's coercive pop-up will be the first that many putative class members hear about these lawsuits. There is a serious risk that putative class members, having been pressured to click away their right to participate in these cases, will be inclined to disregard further communications about them. Convincing class members to take the steps necessary to secure recovery in a class action settlement or judgment is often difficult.

Defendants' opt-out procedure does not counteract the irreparable harm. Although some courts have found that the presence of an opt-out procedure renders any harm "self-inflicted," *see, e.g., Adtrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2018 WL 1876950, at *4 (N.D. Cal. Apr. 19, 2018), that is not the case here where the pop-up seems to rule out the possibility of opting out. Consequently, the continued dissemination of defendants' improper communications causes irreparable harm to plaintiffs and to putative class members.

3. <u>The Balance of Equities and Public Interest Favor Plaintiffs</u>.

The final two factors, the balance of equities and the public interest, favor Plaintiffs.

In weighing equities, "the Court considers each party's claimed injury, as well as the effect that granting or denying Plaintiff's motion would have on the parties." *Quinault Indian*

*Nation v. Kempthorne*, C09-5064 RBL, 2009 WL 734682, at *3 (W.D. Wash. Mar. 18, 2009) (Leighton, J.). Issuance of a TRO or preliminary injunction would have very little practical effect on Big Fish. It would have to take down the new pop-up and abide by the Court's limitations in future communications with the putative class. Big Fish will not lose its ability to communicate with the majority of its customers or even those who have bought chips and are thus putative class members.

For Plaintiffs and putative class members, on the other hand, these communications have "imposed significant hardship on the fair administration of this case." *Grewe I*, 2016 WL 4211530, at *3. As explained above, it is difficult, and sometimes impossible, to correct laypersons' mistaken initial impressions or even to get their attention after they have been told that they can't participate in this case. If Big Fish are right and the arbitration agreement is enforceable, then it is unfair to require putative class members to decide whether they are going to submit to such an agreement without meaningful information about their rights and options.

The public interest favors allowing courts to control the judicial process and ensure compliance with the Federal Rule of Civil Procedure.

## IV. CONCLUSION

The Court's task, then, is to fashion a narrow remedy to these problems, without infringing on Big Fish's right to communicate with its players.

As an initial matter, the request to appoint interim class counsel is DENIED. The Court can address the problems with the pop-up without jumping the gun on class status.

Second, the Court will LIFT THE STAY for the limited purpose of implementing the corrective actions outlined below.

The existing pop-up is coercive and misleading as to those players who are putative class members in either lawsuit. Big Fish claims that some 90% of its players never buy chips. If it is feasible to do so, Big Fish may show a revised pop-up only to those players who have purchased chips during the relevant time periods and are therefore members of the putative class(es). The Court will not interfere with Big Fish's communications with new players or old players who did not purchase chips in the relevant time frames. However, if Big Fish cannot find a way to separate its communications with putative class members from those with its general customers, Big Fish will have to abide by the following limitations in all pop-ups or whatever other method of communication regarding Terms that first reaches putative class members.

Any pop-up or other initial communication directed to putative class members must do the following. First, it must reference the ability to (and provide instruction on how to) OPT-OUT of arbitration and out of the agreement to WAIVE a player's status as putative class member in either litigation. Second, it must briefly explain the rights at issue in these lawsuits such that an average user would understand what they are giving up by agreeing to the Terms. Finally, it must advise players to contact an attorney for advice on any of the legal terms and provide contact information for the Plaintiff's attorneys with respect to the class action lawsuits. (Examples: "If you have questions about the legal effect of these provisions, you should contact an attorney." "Plaintiffs in the putative class actions are represented by [Plaintiffs' attorneys' contact information].").

The Court is not inclined to draft the pop-up itself, nor to include the Court's seal on the revised version that is ultimately used. The parties would be well-advised to cooperate and together attempt to draft language for a notice with these features and which addresses the

Court's concerns in the analysis above. If they cannot agree, each shall propose language and the Court will choose (and perhaps modify) a proposal that meets these requirements.

If competing proposals are necessary, they should be submitted within ten days. Each party may provide three additional pages of briefing defending its proposed language. Obviously, Big Fish's cooperation in drafting language consistent with this Order does not waive its right to appeal or otherwise object to any Court-ordered "edits" to its communications with its players.

The Plaintiffs' Motion for a Preliminary Injunction is, to this extent, GRANTED.

IT IS SO ORDERED.

Dated this 19th day of November, 2019.

Ronald B. Leighton
United States District Judge