The Honorable Ronald B. Leighton

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| CHERYL KATER and SUZIE KELLY, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br>　　v.<br><br>CHURCHILL DOWNS INCORPORATED, a Kentucky corporation, and BIG FISH GAMES, INC., a Washington corporation,<br><br>　　　　　　Defendants. | Case No.: 2: 15-cv-00612-RBL<br><br>**DECLARATION OF LINDSEY BARNHART IN SUPPORT OF DEFENDANTS' MOTION FOR RULE 23(d) PROTECTIVE ORDER** |
| MANASA THIMMEGOWDA, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>BIG FISH GAMES, INC., a Washington corporation; ARISTOCRAT TECHNOLOGIES INC., a Nevada corporation; ARISTOCRAT LEISURE LIMITED, an Australian corporation; and CHURCHILL DOWNS INCORPORATED, a Kentucky corporation,<br><br>　　　　　　Defendants. | Case No.: 2:19-cv-00199-RBL<br><br>**DECLARATION OF LINDSEY BARNHART IN SUPPORT OF DEFENDANTS' MOTION FOR RULE 23(d) PROTECTIVE ORDER** |

I, Lindsey Barnhart, hereby declare as follows:

1. I am an attorney at the law firm of Covington & Burling LLP. I am one of the attorneys representing Defendants Big Fish Games, Inc., Aristocrat Technologies, Inc., and Aristocrat Leisure Limited in the above-captioned actions. I make this declaration based on my personal knowledge and, if called as a witness, I could and would competently testify thereto.

2. On January 22, 2020, I navigated to Edelson P.C.'s Opt-Out Website at the web address www.nocasinoarbitration.com. *See Kater* Dkt. 159. Attached hereto as **Exhibit A** is a true and correct copy of a screenshot I took of the Opt-Out Website.

3. On January 23, 2020, I emailed Plaintiffs' counsel to schedule a meet-and-confer call regarding content on the Opt-Out Website that Defendants believe to be misleading. Alex Tievsky, one of Plaintiffs' attorneys, responded that "[t]his is not an emergency," and stated that his firm was not available to meet and confer until the following week. At Mr. Tievsky's request, I responded by email on January 24, 2020 with numerous examples of statements on the Opt-Out Website that Defendants believe to be misleading. A true and correct copy of these emails is attached hereto as **Exhibit B.**

4. On January 27, 2020, my colleague Ashley Simonsen and I met and conferred with Todd Logan and Cecily Shiel, two of Plaintiffs' attorneys, by phone.

5. During the January 27 phone call, Mr. Logan confirmed that his law firm, Edelson P.C., has purchased Google and Facebook advertisements targeting putative class members in this litigation and directing them to the Opt-Out Website. Attached hereto as **Exhibit C** is a true and correct copy of what I understand to be the Facebook advertisement purchased by Edelson. Attached hereto as **Exhibit D** is a true and correct copy of the Google advertisement purchased by Edelson, which I located by searching on Google for "Big Fish Casino."

6. During the January 27 phone call, I asked Mr. Logan why Edelson had disclosed to the Court only the Opt-Out Website, and not the Facebook and Google

advertisements. Mr. Logan stated his belief that the advertisements are not communications subject to disclosure.

7. During the January 27 phone call, counsel discussed the example website statements I had previously identified by email. Mr. Logan stated his belief that none of the statements are misleading and indicated that Edelson would not remove the statements or take down the Opt-Out Website.

8. With respect to the Opt-Out Website's statement that this lawsuit might entitle players of the game "Jackpot Magic Slots" to relief, Mr. Logan took the position that the reference to "other similar Big Fish Games 'casino games'" in the alleged class definitions necessarily includes Jackpot Magic Slots.

9. With respect to the Opt-Out Website's statement that "it is not clear when [Defendants] think the thirty-day [opt-out] clock starts running," Mr. Logan acknowledged that the Terms of Use state that the thirty days begins as of the date of "acceptance of these Terms of Use." However, Mr. Logan took the position that the date of "acceptance" is unclear because determining when a user accepts the Terms of Use is a fact-intensive, individualized inquiry. In subsequent email correspondence, Mr. Logan purported to disavow the position he took during the call. A true and correct copy of emails exchanged between the parties following the meet-and-confer call is attached hereto as **Exhibit E**.

10. With respect to the Opt-Out Website's statement that putative class members may "recover *all* of the money" they have spent, I asked Mr. Logan whether Edelson intends to seek an award of attorneys' fees from any class recovery in this litigation. Mr. Logan did not disclaim any such intent.

11. Attached hereto as **Exhibit F** is a true and correct copy of in-game communications in which a Big Fish Casino user encouraged other users to visit Edelson's Opt-Out Website. Edelson previously identified this user as its client. *See Kater* Dkt. 140. During the parties' meet and confer, Edelson declined to state whether its lawyers have directed or urged their clients to send communications such as these, claiming that such information is protected

by the attorney-client privilege. Because Edelson requested that this user's identifying information not be disclosed in public filings, such information has been redacted from the exhibit attached hereto.

12. I understand that at least two users have reported receiving calls from attorneys regarding Big Fish Casino and/or Jackpot Magic Slots. One user reported that the attorney who called her was from Edelson, that the attorney made comments disparaging of the games, and that the attorney referred to a class action lawsuit.

13. At 4:43 p.m. PT on January 21, 2020, Mr. Tievsky, one of Plaintiffs' attorneys, notified Defendants' counsel by email that the in-game pop-up Big Fish Games was then displaying to users included the phone number for Mr. Logan, another one of Plaintiffs' attorneys, instead of the 1-800 number for the Edelson law firm. After confirming that Mr. Logan's phone number had been inadvertently displayed for less than 90 minutes due to a technical error, I responded to Mr. Tievsky at 5:18 p.m. PT to confirm that the error had been corrected. Attached hereto as **Exhibit G** is a true and correct copy of the emails exchanged regarding this issue.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct. This declaration is executed this 30th day of January, 2020, in Palo Alto, California.

_____
Lindsey Barnhart