The Honorable Ronald B. Leighton

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

### AT TACOMA

| | |
|---|---|
| CHERYL KATER and SUZIE KELLY, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br>     v.<br><br>CHURCHILL DOWNS INCORPORATED, a Kentucky corporation, and BIG FISH GAMES, INC., a Washington corporation,<br><br>                 Defendants. | Case No.: 2:15-cv-00612-RBL<br><br>**DEFENDANTS' RENEWED MOTION TO COMPEL ARBITRATION**<br><br>**Oral Argument Requested**<br><br>**Note on Motion Calendar: May 1, 2020** |
| MANASA THIMMEGOWDA, individually and on behalf of all others similarly situated,<br><br>                 Plaintiff,<br>     v.<br><br>BIG FISH GAMES, INC., a Washington corporation; ARISTOCRAT TECHNOLOGIES INC., a Nevada corporation; ARISTOCRAT LEISURE LIMITED, an Australian corporation; and CHURCHILL DOWNS INCORPORATED, a Kentucky corporation,<br><br>                 Defendants. | Case No.: 2:19-cv-00199-RBL<br><br>**DEFENDANTS' RENEWED MOTION TO COMPEL ARBITRATION**<br><br>**Oral Argument Requested**<br><br>**Note on Motion Calendar: May 1, 2020** |

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 1

    A.      Plaintiffs' Complaints. ........................................................................... 1

    B.      Big Fish Games Terms of Use. .............................................................. 2

    C.      Plaintiffs' Notice and Acceptance of the TOU. ..................................... 4

    D.      Defendants' Prior Assertions of Arbitration Rights................................ 5

III.    LEGAL STANDARD........................................................................................... 7

IV.     ARGUMENT ...................................................................................................... 8

    A.      Plaintiffs Agreed to Arbitrate Their Claims by Accepting the TOU. ..................... 8

    B.      The TOU Arbitration Provision Clearly Delegates Questions of Arbitrability to the Arbitrator.................................................................... 14

    C.      Any Attempt by Plaintiffs to Avoid Application of the Arbitration Provision Should Be Rejected.................................................................. 15

        1.      The Arbitration Provision Is Not Unconscionable.................................... 16

        2.      CDI and Aristocrat Are Third-Party Beneficiaries Entitled to Enforce the Arbitration Agreement. ................................................. 18

        3.      BFG and Aristocrat Have Asserted Their Rights to Compel Arbitration of Plaintiffs' Claims at Every Opportunity. ................................... 20

        4.      CDI Has Not Waived Its Right to Compel Arbitration of Ms. Kelly or Ms. Thimmegowda's Claims. ................................................. 22

V.      CONCLUSION.................................................................................................... 23

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)        - i -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Safin v. Circuit City Stores, Inc.*,
    394 F.3d 1254 (9th Cir. 2005) ..................................................................................16

*Allbaugh v. Perma-Bound*,
    2009 WL 10676437 (W.D. Wash. Aug. 14, 2009) ...................................................13

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011).................................................................................................18

*Baughan v. Royal Caribbean Cruises, Ltd.*,
    944 F. Supp. 2d 1216 (S.D. Fla. 2013) ...................................................................18

*Benson v. Double Down Interactive, LLC*,
    2018 WL 5921062 (W.D. Wash. Nov. 13, 2018) ...........................................6, 7, 11

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
    2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017)............................................................9

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) .................................................................................15

*Britton v. Co-op Banking Grp.*,
    916 F.2d 1405 (9th Cir. 1990) .................................................................................21

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
    2005 WL 756610 (N.D. Cal. Apr. 1, 2005)........................................................10, 12

*Carideo v. Dell, Inc.*,
    520 F. Supp. 2d 1241 (W.D. Wash. 2007)...........................................................17, 18

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ...................................................................................7

*Circuit City Stores, Inc. v. Ahmed*,
    283 F.3d 1198 (9th Cir. 2002) .................................................................................17

*Conover v. Dean Witter Reynolds, Inc.*,
    837 F.2d 867 (9th Cir. 1988) ...................................................................................21

*Coppock v. Citigroup, Inc.*,
    2013 WL 1192632 (W.D. Wash. Mar. 22, 2013) .....................................................18

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- ii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

*Creative Telecomms., Inc. v. Breeden*,
  120 F. Supp. 2d 1225 (D. Haw. 1999) ............................................21

*Crewe v. Rich Dad Educ., LLC*,
  884 F. Supp. 2d 60 (S.D.N.Y. 2012)............................................16

*Domain Name Comm'n Ltd. v. DomainTools, LLC*,
  2018 WL 4353266 (W.D. Wash. Sept. 12, 2018)............................13

*Dotson v. Midland Funding, LLC*,
  2019 WL 5678371 (D.N.J. Aug. 1, 2019) ....................................11

*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001) ....................................................8

*Erwin v. Cotter Health Ctrs.*,
  161 Wash. 2d 676 (2007)..........................................................8

*Fagerstrom v. Amazon.com, Inc.*,
  141 F. Supp. 3d 1051 (S.D. Cal. 2015)......................................16

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995)..............................................................8, 21

*Fisher v. A.G. Becker Paribas Inc.*,
  791 F.2d 691 (9th Cir. 1986) ................................................21, 22

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012)........................................11

*Geier v. m-Qube Inc.*,
  824 F.3d 797 (9th Cir. 2016) ..............................................19, 20

*George v. Midland Funding, LLC*,
  2019 WL 2591163 (D.N.J. June 25, 2019) ................................11

*Goldman, Sachs & Co. v. City of Reno*,
  747 F.3d 733 (9th Cir. 2014) ....................................................7

*Graf v. Match.com*,
  2015 WL 4263957 (C.D. Cal. July 10, 2015)..............................17

*Green Tree Fin. Corp. Ala. v. Randolph*,
  531 U.S. 79 (2000)..................................................................8

*Guest v. Air Liquide Am. Specialty Gases, LLC*,
  2018 WL 4523147 (D. Or. June 28, 2018) ................................22

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- iii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
  716 F.3d 764 (3d Cir. 2013) .................................................................................... 14

*Hamby v. Power Toyota Irvine*,
  2012 WL 13036860 (S.D. Cal. Mar. 22, 2012) ....................................................... 16

*Himber v. Live Nation Worldwide, Inc.*,
  2018 WL 2304770 (E.D.N.Y. May 21, 2018) ......................................................... 13

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*,
  835 F.3d 1195 (10th Cir. 2016) .............................................................................. 13

*In re Facebook Biometric Info. Privacy Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. May 5, 2016) ...................................................... 10

*In re Turner Bros. Trucking Co., Inc.*,
  8 S.W.3d 370 (Ct. App. Tex. 1999) ........................................................................ 16

*In re Verisign, Inc. Derivative Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. 2007) .................................................................. 13

*Jensen v. U-Haul Co. of Cal.*,
  18 Cal. App. 5th 295 (Ct. App. 2017) ..................................................................... 18

*Johnson v. Oracle Am., Inc.*,
  764 F. App'x 607 (9th Cir. 2019) ........................................................................... 15

*Keystone Land & Dev. Co. v. Xerox Corp.*,
  152 Wash. 2d 171 (2004) (en banc) .......................................................................... 8

*Kilgore v. KeyBank, N.A.*,
  718 F.3d 1052 (9th Cir. 2013) (en banc) ................................................................ 18

*Knutson v. Sirius XM Radio Inc.*,
  771 F.3d 559 (9th Cir. 2014) .................................................................................... 7

*Lake Washington Sch. Dist. No. 414 v. Mobile Modules Nw., Inc.*,
  28 Wash. App. 59 (1980) ......................................................................................... 21

*Letizia v. Prudential Bache Sec., Inc.*,
  802 F.2d 1185 (9th Cir. 1986) ........................................................................... 21, 22

*MCA Fin. Grp., Ltd. v. Gardere Wynne Sewell, LLP*,
  2007 WL 951959 (D. Ariz. Mar. 27, 2007) ........................................................... 13

*McKee v. Audible.com*,
  2017 WL 4685039 (C.D. Cal. July 17, 2017) ........................................................... 8

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- iv -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

*Meyer v. Kalanick*,
 291 F. Supp. 3d 526 (S.D.N.Y. 2018) ........................................................................21

*Meyer v. Uber Techs., Inc.*,
 868 F.3d 66 (2d Cir. 2017) ............................................................................9, 21, 22

*Mohamed v. Uber Techs., Inc.*,
 848 F.3d 1201 (9th Cir. 2016) ...........................................................................14, 17

*Momot v. Mastro*,
 652 F.3d 982 (9th Cir. 2011) ...................................................................................15

*Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*,
 2015 WL 6689572 (E.D. Cal. Oct. 30, 2015) ............................................................1

*Nevarez v. Forty Niners Football Co.*,
 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ........................................................18

*Nguyen v. Barnes & Noble Inc.*,
 763 F.3d 1171 (9th Cir. 2014) ...................................................................................9

*Nicosia v. Amazon.com*,
 2017 WL 10111078 (E.D.N.Y. Aug. 18, 2017) ......................................................12

*Olivares v. Hispanic Broad. Corp.*,
 2001 WL 477171 (C.D. Cal. Apr. 26, 2001) ...........................................................21

*Oracle Am., Inc. v. Myriad Grp., A.G.*,
 724 F.3d 1069 (9th Cir. 2013) .................................................................................14

*Pincaro v. Glassdoor, Inc.*,
 2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017) .....................................................9, 10

*Rajagopalan v. NoteWorld, LLC*,
 718 F.3d 844 (9th Cir. 2013) .......................................................................18, 19, 20

*Rent-A-Center, West, Inc. v. Jackson*,
 561 U.S. 63 (2010) ...................................................................................................14

*Romero v. GE Betz, Inc.*,
 2016 WL 9138054 (C.D. Cal. June 28, 2016) ...........................................................9

*Schmidt v. Samsung Elecs. Am., Inc.*,
 2017 WL 2289035 (W.D. Wash. May 25, 2017) .....................................................16

*Singavong v. Volt Mgmt. Corp.*,
 2007 WL 1813845 (W.D. Wash. June 21, 2007) .....................................................17

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- v -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

*Southwest Airlines Co. v. BoardFirst, LLC*,
 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007)...................................................................8

*Specht v. Netscape Commc'ns Corp.*,
 306 F.3d 17 (2d Cir. 2002)...............................................................................................9

*Standard Fire Ins. Co. v. Knowles*,
 568 U.S. 588 (2013)....................................................................................................1, 22

*Starkey v. G Adventures, Inc.*,
 796 F.3d 193 (2d Cir. 2015)...........................................................................................10

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
 492 F. App'x 150 (2d Cir. 2012).....................................................................................15

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
 2003 WL 21406289 (C.D. Cal. Mar. 7, 2003)..................................................................9

*Tjart v. Smith Barney, Inc.*,
 28 P.3d 823 (Ct. App. Wash. 2001)................................................................................16

*TML Multistate Intergovt'l Employee Benefits Pool v. HealthEdge Software, Inc.*,
 2018 WL 3326839 (W.D. Tex. June 1, 2018) .................................................................15

*Townsend v. Quadrant Corp.*,
 153 Wash. App. 870 (2009)............................................................................................20

*United States v. Bestfoods*,
 524 U.S. 51 (1998).........................................................................................................19

*Van Ness Townhouses v. Mar Indus. Corp.*,
 862 F.2d 754 (9th Cir. 1989) .........................................................................................20

*Vision Palm Springs LLP v. Michael Anthony Co.*,
 272 So. 3d 441 (Ct. App. Fl. 2019).................................................................................8

*Walters v. Livingston*,
 519 S.W.3d 658 (Tex. App. 2017)..................................................................................19

*Wiese v. Cach, LLC*,
 189 Wash. App. 466 (2015)............................................................................................20

*Wilson v. Huuuge, Inc.*,
 351 F. Supp. 3d 1308 (W.D. Wash. 2018)...............................................................6, 7, 11

*Wilson v. Playtika, Ltd.*
 349 F. Supp. 3d 1028 (W.D. Wash. 2018).........................................................................7

*Zuver v. Airtouch Commcn's, Inc.*,
    153 Wash. 2d. 293 (2004) (en banc)................................................................................16

**Statutes**

9 U.S.C. § 3.............................................................................................................................7

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- vii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

1

## I.      INTRODUCTION

2       This dispute is for an arbitrator, not the Court, to decide.  Plaintiffs Cheryl Kater, Suzie Kelly,

3  and Manasa Thimmegowda agreed to resolve any dispute arising from their use of Big Fish Games

4  ("BFG") games, including Big Fish Casino ("BFC"), by binding arbitration.  Plaintiffs' communications

5  with BFG, as well as their own Complaints, show they had actual notice of the BFG Terms of Use

6  ("TOU"), which include an arbitration and class waiver provision.  After receiving actual knowledge of

7  the TOU, all plaintiffs continued to play BFC—including at points *after* they filed their Complaints in

8  this action.  By continuing to play BFC while having actual notice of the TOU, plaintiffs manifested

9  their agreement to the TOU and the arbitration provision therein.  Moreover, though they were given the

10  opportunity to do so, plaintiffs chose not to opt out of arbitration.  The Court should compel plaintiffs to

11  arbitrate their claims, as they agreed to do, and stay this action pending the outcome of the arbitration as

12  required by the Federal Arbitration Act.[1]

## II.     BACKGROUND

13

### A.      Plaintiffs' Complaints.

14

15       On April 17, 2015, plaintiff Cheryl Kater, a resident of Michigan, filed a putative class action

16  ("the *Kater* case") against defendant Churchill Downs Incorporated ("CDI"), asserting claims under

17  Washington law alleging that BFC is a form of unlawful "gambling" and that she should recover any

18

19
_____

20  [1] Defendants' arbitration rights as to any claims asserted by putative members of the alleged nationwide classes, or for any future named plaintiffs, are not yet at issue because those persons are not parties to
21  this action.  *See, e.g.*, *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) ("'[A] nonnamed class member is [not] a party to the class-action litigation *before the class is certified*.'" (quoting *Smith*
22  *v. Bayer Corp.*, 564 U.S. 299, 313 (2011))).  Defendants reserve their rights to compel arbitration under any applicable arbitration agreement with respect to persons who may later assert claims against
23  defendants, either as named plaintiffs or as absent class members, in this or any other litigation.

24  In addition, defendant CDI files this motion concurrently with its motion to dismiss for lack of personal jurisdiction, per the Court's Order.  *See Kater* Dkt. 191.  Defendants maintain that the Court must rule
25  on CDI's challenges to personal jurisdiction before reaching the question of whether plaintiff Thimmegowda's claims against CDI must be arbitrated, *see Nationwide Agribusiness Ins. Co. v. Buhler*
26  *Barth GmbH*, 2015 WL 6689572, at *2 (E.D. Cal. Oct. 30, 2015), and reserve all rights to argue that the Court lacks personal jurisdiction over CDI.

27

28

money "lost" while playing BFC.  *Kater* Dkt. 2.  CDI is an entertainment company that formerly owned

BFG, which in turn owns and operates BFC.  *Id.* ¶ 1.  On March 20, 2019, Ms. Kater and plaintiff Suzie

Kelly, a resident of Texas, filed a First Amended Class Action Complaint ("Amended Complaint").

*Kater* Dkt. 85 ("*Kater* Compl.").  The Amended Complaint for the first time named BFG as a defendant;

not until the Amended Complaint was filed did Ms. Kater or Ms. Kelly assert any claims against BFG.

On February 11, 2019, plaintiff Manasa Thimmegowda, a resident of Florida, filed a putative

class action that, according to her Complaint, "is essentially a companion case" to *Kater* ("the

*Thimmegowda* case") against defendants BFG, CDI, current BFG owner Aristocrat Technologies Inc.,

and Aristocrat Leisure, Ltd., also asserting claims under Washington law.[2]  *Thimmegowda* Dkt. 1 ¶ 3

("*Thimmegowda* Compl.").  Ms. Thimmegowda's case is premised on the same underlying factual

allegations as *Kater*.

All three plaintiffs accessed BFC for years.  Ms. Kater alleges that she began playing in January

2013, Ms. Kelly alleges that she began playing in May 2014, and Ms. Thimmegowda alleges that she

began playing BFC in approximately November 2017.  *Kater* Compl. ¶¶ 46–47; *Thimmegowda* Compl.

¶¶ 50–51.  BFG records indicate that all three plaintiffs continued to access BFC after BFG expressly

alerted them to the TOU governing the use of BFC, *and* after the dates on which they filed their

Complaints, *see infra* Section II.C: Ms. Kater until February 28, 2020, Ms. Kelly until March 9, 2020,

and Ms. Thimmegowda until February 20, 2019.  Declaration of David Grossman in Support of

Defendants' Renewed Motion to Compel Arbitration ("2020 Grossman Decl.") ¶ 3.

**B.    Big Fish Games Terms of Use.**

On March 24, 2015—before plaintiffs filed their Complaints—BFG modified the Terms of Use

applicable to all BFG games to include an arbitration and class waiver provision.  *See* Declaration of

Jason Willig ("Willig Decl.") (*Kater* Dkt. 101, attached as Exhibit 1 to Declaration of Lindsey Barnhart

---

[2] Defendant Aristocrat Technologies Inc. purchased BFG from CDI on January 9, 2018.  *Thimmegowda* Dkt. 36 ¶ 8.  Aristocrat Leisure, Ltd. is the ultimate parent company of Aristocrat Technologies Inc. *Thimmegowda* Dkt. 37 ¶ 4.  Aristocrat Technologies Inc. and Aristocrat Leisure, Ltd. are referred to together herein as "Aristocrat."

in Support of Defendants' Renewed Motion to Compel Arbitration ("Barnhart Decl.")) ¶¶ 4–5 & Exs. A, B.  This arbitration provision has been in effect, in materially the same form, since that time—*i.e.*, since four years prior to the date plaintiffs filed the claims defendants seek to compel to arbitration,[3] and throughout the majority of the time plaintiffs have played BFC.  *See* October 25, 2019 Declaration of David Grossman ("2019 Grossman Decl.") (*Kater* Dkt. 128, attached as Barnhart Decl. Ex. 2) ¶¶ 2–3 & Exs. A–E.  The TOU in place at the time the operative Complaints were filed called the arbitration provision to users' attention in the first two paragraphs:

> Please read these Terms of Use carefully, including the mandatory arbitration provision in the section titled "Dispute Resolution by Binding Arbitration", which requires that disputes are resolved by final and binding arbitration on an individual and not a class-wide or consolidated basis. If you do not wish to be subject to arbitration, you may opt out of the arbitration provision by following the instructions provided at the end of the section titled "Dispute Resolution by Binding Arbitration".
>
> By accessing or using any Big Fish Offering, you agree to be bound by these Terms of Use and all terms incorporated by reference. If you do not agree to these Terms of Use in their entirety, do not use any Big Fish Offerings.

*Id*. Ex. C at 1.  Additionally, the arbitration provision itself is conspicuously prefaced with the following language in all caps:

> PLEASE READ THIS "DISPUTE RESOLUTION BY BINDING ARBITRATION" PROVISION CAREFULLY, BECAUSE IT REQUIRES YOU TO ARBITRATE DISPUTES WITH BIG FISH AND IT LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF.
>
> THIS PROVISION PRECLUDES YOU FROM BRINGING ANY CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION AGAINST BIG FISH. IT ALSO PRECLUDES YOU FROM PARTICIPATING IN OR RECOVERING RELIEF UNDER ANY CURRENT OR FUTURE CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION AGAINST BIG FISH BY SOMEONE ELSE. IN ADDITION, ARBITRATION PRECLUDES YOU FROM SUING IN COURT OR FROM HAVING A JURY TRIAL.
>
> WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT DECISION. IT IS YOUR DECISION TO MAKE AND YOU SHOULD NOT RELY SOLELY ON THE INFORMATION PROVIDED IN THIS AGREEMENT, AS IT IS NOT INTENDED TO CONTAIN A COMPLETE EXPLANATION OF THE CONSEQUENCES OF ARBITRATION. YOU SHOULD TAKE REASONABLE STEPS TO CONDUCT FURTHER RESEARCH AND TO CONSULT WITH OTHERS REGARDING THE

---

[3] With this motion, defendants seek to compel arbitration of Ms. Kater's claims against BFG; Ms. Kelly's claims against both BFG and CDI; and Ms. Thimmegowda's claims against BFG, CDI, and Aristocrat, all of which were filed in February and March 2019.  Defendants do not seek to compel arbitration of Ms. Kater's claims against CDI, which were filed in April 2015.  *See Kater* Dkt. 75.

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)                - 3 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

CONSEQUENCES OF YOUR DECISION. YOU MAY OPT OUT OF THIS ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS BELOW. *Id.* at 10.

The TOU arbitration provision requires that "any dispute, claim or controversy arising out of or relating to your access to or use of any Big Fish Offering or to these Terms of Use (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of these Terms of Use) . . . shall be determined by arbitration[.]"  *Id.*  The provision contains no temporal limitation and so on its face requires arbitration of disputes whether they arose before or after the user agreed to the TOU.  *Id.*  Users may opt out of the arbitration provision by mailing written notice within thirty days of the user's acceptance of the TOU.  *Id.* at 11.  Arbitration must take place in King County, Washington, but users can participate in the arbitration telephonically. *Id.*  In addition, users' arbitration costs are capped at $250.  *Id.*

Neither the arbitration provision nor the opt-out procedures changed during the four years between March 24, 2015—when the arbitration provision was first added to the TOU—and February/March 2019, when plaintiffs filed the claims that defendants seek to compel to arbitration. 2019 Grossman Decl. ¶¶ 2–3 & Exs. A–E.

### C.    Plaintiffs' Notice and Acceptance of the TOU.

Plaintiffs were put on notice of the TOU and the arbitration provision therein through direct communications with BFG before the dates on which they filed their operative Complaints (*i.e.*, February 11, 2019, *Thimmegowa* Dkt. 1, and March 20, 2019, *Kater* Dkt. 85).  Specifically, on June 2, 2018, a BFG account specialist responded to a customer support message from Ms. Kater regarding inappropriate communications sent to her by other players; the specialist explained to Ms. Kater that BFG would "investigate these incidents and take action in accordance with our policies and *Terms of Use*."  2020 Grossman Decl. ¶ 11 & Ex. C (emphasis added).  On November 21, 2018, a BFG account specialist responded to a refund request by Ms. Thimmegowda, explaining: "Per our Terms of Use, we are unable to issue refunds . . . . More information about our Terms of Use can be found here: *Terms of Use*."  *Id.* ¶ 7 & Ex. A (emphasis added).  The third reference to the "Terms of Use" was a clickable hyperlink to the TOU themselves.  *Id.* ¶ 8.  Finally, on March 2, 2019, BFG customer service personnel

1   responded to various concerns lodged by Ms. Kelly, presenting her with a hyperlink to the TOU and

2   instructing her: "I'd also recommend taking a look at our *Terms of Use* to ensure that you don't ever

3   have to worry about this sort of thing in the future." *See id.* ¶¶ 9–10 & Ex. B (emphasis added).

4          Plaintiffs confirmed their actual knowledge of the TOU in their Complaints, which repeatedly

5   reference the "terms of service" and general "terms" associated with BFC. *See, e.g.*, *Kater* Compl.

6   ¶¶ 27–28, 32–33, 37; *Thimmegowda* Compl. ¶¶ 31–32, 36–38, 41, 45–46.  Moreover, both the original

7   *Kater* Complaint filed on April 17, 2015 and the Amended Complaint filed on March 20, 2019,

8   conspicuously allege a class of "[a]ll persons in the United States who created BFC accounts on or

9   before March 23, 2015"—*i.e.*, *the day befor*e BFG modified its TOU to incorporate the arbitration

10  provision described above.  Willig Decl. ¶ 5; *Kater* Dkt. 2 ¶ 39; *Kater* Compl. ¶ 48.  Likewise, Ms.

11  Thimmegowda, though she did not begin playing BFC until approximately November 2017, seeks to

12  represent a putative nationwide class of users who began playing BFC "on or after March 24, 2015"—

13  *i.e.*, *the date on which* BFG modified its TOU to incorporate the arbitration provision described above.

14  Willig Decl. ¶ 5; *Thimmegowda* Compl. ¶ 53.

15         Each of the plaintiffs continued to play BFC with actual knowledge of the TOU: Ms. Kater until

16  February 28, 2020, Ms. Kelly until March 9, 2020, and Ms. Thimmegowda until February 20, 2019.  *See*

17  2020 Grossman Decl. ¶ 3.  None of the plaintiffs ever opted out of the TOU arbitration provision.  *Id.*

18  ¶ 5.

19         **D.      Defendants' Prior Assertions of Arbitration Rights.**

20         This is not the first motion to compel arbitration in this litigation.  In July 2018, before any other

21  plaintiffs or defendants had joined the lawsuits, CDI moved to compel arbitration of Ms. Kater's claims.

22  The same lawyers that currently represent all three plaintiffs represented Ms. Kater and wrote the briefs

23  opposing CDI's motion.  *See Kater* Dkts 60, 68, 70, 72, 74.  The Court denied CDI's motion on waiver

24  grounds, albeit only with respect to Ms. Kater's claims against CDI (the only claims then advanced).

25  *Kater* Dkt. 75.

26         In 2019, shortly after Ms. Kater, Ms. Kelly, and Ms. Thimmegowda filed their operative

27  Complaints against defendants, defendants timely filed motions to compel arbitraiton of plaintiffs'

28

claims (except for Ms. Kater's claims against CDI).  *Kater* Dkt. 100; *Thimmegowda* Dkts. 33 & 35.
Plaintiffs moved to extend the briefing schedule on those motions, to which defendants stipulated, *see*
*Kater* Dkts. 111–112; *Thimmegowda* Dkts. 52–53.  Defendants simultaneously sought a stay of
discovery pending resolution of their motions to compel arbitration.  *Kater* Dkt. 105; *Thimmegowda*
Dkt. 43.  On September 12, 2019, the Court stayed both cases pending Ninth Circuit appeals of
arbitration rulings in three related cases (*Huuuge*, *Double Down*, and *Playtika*), and terminated the
motions to compel arbitration without prejudice, instructing that those motions could be renewed after
the Ninth Circuit's decisions.  *Kater* Dkt. 121; *Thimmegowda* Dkt. 70.

In December 2019 and January 2020, the Ninth Circuit affirmed the Court's denials of the
motions to compel arbitration in *Huuuge* and *Double Down*.  Importantly, plaintiffs' actual and inquiry
notice of the TOU in this case far exceeds the mere constructive notice alleged by the plaintiffs in
*Huuuge* and *Double Down*.  For instance, in *Huuuge*, the defendant unsuccessfully sought to compel
arbitration of the plaintiff's claims, arguing that the plaintiff was bound by terms of use (including an
arbitration agreement) because they were available for review by navigating through multiple pages at
the time the game at issue was downloaded, or by navigating into that game's settings.  *Wilson v.*
*Huuuge, Inc.*, 351 F. Supp. 3d 1308, 1311–17 (W.D. Wash. 2018), *aff'd*, 944 F.3d 1212 (9th Cir. 2019).
In contrast to Ms. Kater, Ms. Kelly, and Ms. Thimmegowda, the *Huuuge* plaintiff had not pled any
awareness of the terms of use in his complaint; nor was there any indication that the defendant had
expressly communicated with the plaintiff regarding those terms.  *See id.*

Likewise, the terms of use (including an arbitration provision) applicable to the game at issue in
*Double Down* were presented to users only though (1) a hyperlink at the bottom of the game's Facebook
page; (2) navigating through multiple pages at the time of downloading the game app; and (3) by
navigating into the game's settings menu.  *Benson v. Double Down Interactive, LLC*, 2018 WL
5921062, at *1–6 (W.D. Wash. Nov. 13, 2018), *aff'd*, 2020 WL 468422 (9th Cir. Jan. 29, 2020).  Again,

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)                    - 6 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the plaintiffs' complaint had not indicated any awareness of the terms of use, and the defendant did not present evidence of any direct communications with the plaintiffs regarding those terms.  *See id.*[4]

This Court previously recognized that the actual and inquiry notice arguments presented by plaintiffs here are materially different from those at issue in *Huuuge* and *Double Down*:

> The Court recognizes that the Defendants have raised a new arbitrability argument in this case: *actual* or imputed notice of the TOUs, on top of the *constructive* notice at issue in the appealed orders.  Actual notice was not fully addressed in the prior cases.  Thus, the *Huuuge* opinion will not necessarily inform the resolution of the motion[s] in this case.

*Thimmegowda* Dkt. 70 at 2.

On March 4, 2020, the Court ordered defendants to renew their motions to compel arbitration, but continued to stay discovery pending resolution of those motions.  *Kater* Dkt. 185; *Thimmegowda* Dkt. 136.

## III.   LEGAL STANDARD

The Federal Arbitration Act requires federal district courts to compel arbitration of claims covered by a written and enforceable arbitration agreement.  9 U.S.C. § 3.  "Under the FAA, the basic role for courts is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564–65 (9th Cir. 2014).  "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  "When determining whether parties have agreed to submit to arbitration, [courts] apply general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."  *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).

The party seeking arbitration bears the initial burden of showing that a valid arbitration agreement exists, and the party resisting arbitration bears the burden of showing that the arbitration

---

[4] A similar argument regarding constructive notice was attempted in *Wilson v. Playtika, Ltd.*, albeit in the context of an attempt to invoke a forum selection clause in the applicable terms of use, rather than an arbitration agreement.  349 F. Supp. 3d 1028, 1037–38 (W.D. Wash. 2018).

1   agreement is invalid or does not encompass the claims at issue.  *See Green Tree Fin. Corp. Ala. v.*

2   *Randolph*, 531 U.S. 79, 91–92 (2000).

3   **IV.   ARGUMENT**

4           This dispute should not proceed in court because plaintiffs have agreed to arbitrate their claims

5   against defendants.  By continuing to access BFC after having notice of the TOU, plaintiffs broadly and

6   without limitation agreed to arbitrate "any dispute, claim or controversy arising out of or relating to

7   [their] access to or use of [BFC]."  2019 Grossman Decl. Ex. C at 10.  Under the express terms of the

8   arbitration agreement, all questions of arbitrability, including the scope of the agreement, have been

9   delegated for determination by an arbitrator.  And plaintiffs have no basis to avoid enforcement of the

10  arbitration agreement: it is not unconscionable, all defendants have a right to invoke the arbitration

11  agreement, and defendants have not waived their rights to compel arbitration.  Accordingly, the Court

12  should compel arbitration of plaintiffs' claims.

13          **A.     Plaintiffs Agreed to Arbitrate Their Claims by Accepting the TOU.**

14          To determine whether a valid arbitration agreement exists, federal courts "apply ordinary state-

15  law principles that govern the formation of contracts."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S.

16  938, 944 (1995).  In Washington, "parties must objectively manifest their mutual assent" to form a

17  contract.[5]  *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash. 2d 171, 177 (2004) (en banc).

18          Courts have divided Internet contracts such as the TOU into various "flavors: 'clickwrap' (or

19  'click-through') agreements, in which website users are required to click on an 'I agree' box after being

20  _____

21  [5] Defendants do not concede that Washington law applies in this case and reserve their rights to argue
    that other state laws—including the laws of the states where users reside—apply to plaintiffs' and

22  putative class members' claims.  For purposes of this motion, however, the result is the same under other
    state laws, including Florida, Texas, and California.  *See Vision Palm Springs LLP v. Michael Anthony*

23  *Co.*, 272 So. 3d 441, 444 (Ct. App. Fl. 2019) ("Contract formation requires a manifestation of mutual
    assent, the existence of which is determined by an objective test."); *McKee v. Audible.com*, 2017 WL

24  4685039, at *5 (C.D. Cal. July 17, 2017) (noting that Washington and California law do not conflict "on
    the relevant issue of contract formation and the enforceability of arbitration provisions"); *Southwest*

25  *Airlines Co. v. BoardFirst, LLC*, 2007 WL 4823761, at *4 (N.D. Tex. Sept. 12, 2007) (manifestation of
    assent to contract under Texas law may be shown through actions or conduct).  Under Washington

26  choice of law rules—which apply in this diversity case, *Downing v. Abercrombie & Fitch*, 265 F.3d 994,
    1005 (9th Cir. 2001)—Washington law applies in the absence of a conflict.  *Erwin v. Cotter Health*

27  *Ctrs.*, 161 Wash. 2d 676, 692 (2007).

28

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)                - 8 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014). Other "flavors" of online agreements have also been recognized, including "sign-in wrap" and "checkout-wrap." *See Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *3 (S.D.N.Y. Nov. 20, 2017). These various flavors reflect that "there are infinite ways to design a website or smartphone application, and not all interfaces fit neatly into" predefined categories. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017). As a result, "the enforceability of a web-based agreement . . . is a fact-intensive inquiry." *Id.* at 76.

All of these "flavors" of agreements are enforceable under the right circumstances, so long as the plaintiff has adequate notice of the arbitration agreement. For example, courts "have consistently enforced browsewrap agreements where the user had *actual notice* of the [terms of use agreement]," *i.e.*, where the user was "fully aware of the terms." *Nguyen*, 763 F.3d at 1176 (citation omitted) (emphasis added). Online arbitration agreements may also be enforceable where a user is on "inquiry notice" of the arbitration agreement, even if she lacks actual notice. *Id.* at 1177 (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30–31 (2d Cir. 2002)). Inquiry notice occurs where the person to whom an agreement is offered had a full opportunity to read the agreement, and the "slightest inquiry would have disclosed [the] relevant facts." *Specht*, 306 F.3d at 31 (citations omitted). Inquiry notice sufficient to enforce an arbitration agreement exists, for example, where a plaintiff is presented with a conspicuous hyperlink to an agreement of which the arbitration provision is a part. *See, e.g.*, *Pincaro v. Glassdoor, Inc.*, 2017 WL 4046317, at *6 (S.D.N.Y. Sept. 12, 2017); *see also Romero v. GE Betz, Inc.*, 2016 WL 9138054, at *5 (C.D. Cal. June 28, 2016) (even if plaintiff did not read them, written notifications about arbitration agreement placed plaintiff on inquiry notice of the agreement).

"The principle has long been established that no particular form of words is necessary to indicate assent"—rather, "a contract can be formed by [continuing to access a service] after knowledge (or, in some cases, presumptive knowledge) of the conditions accepted when doing so." *Ticketmaster Corp. v. Tickets.Com, Inc.*, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003). It is well-settled that a

1    consumer's access to and use of an online product or service "with knowledge of" the TOU

2    "constitute[s] acceptance of the terms, which accordingly are binding on [them]."  *Cairo, Inc. v.*

3    *Crossmedia Servs., Inc.*, 2005 WL 756610, at *5 (N.D. Cal. Apr. 1, 2005) (citing *Register.com, Inc. v.*

4    *Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004)).

5         Here, plaintiffs had actual and inquiry notice of, and manifested their assent to, the terms

6    governing their use of BFC, including the arbitration provision within those terms.  Plaintiffs had actual

7    notice of the TOU and its arbitration provision before they filed their Complaints.  Plaintiffs were

8    expressly alerted to the TOU in direct communications with BFG.  Specifically, on March 2, 2019, a

9    BFG customer support representative instructed Ms. Kelly to review the BFG TOU and provided her

10   with a hyperlink to the TOU.  2020 Grossman Decl. ¶¶ 9–10 & Ex. B.  Likewise, on June 2, 2018, a

11   BFG customer support representative explicitly notified Ms. Kater of the BFG TOU.  *Id.* ¶ 11 & Ex. C.

12   Ms. Thimmegowda was also expressly alerted to the TOU, and provided a hyperlink to them, in

13   customer service communications with BFG personnel on November 21, 2018.  *Id.* ¶¶ 7–8 & Ex. A.

14   These communications alone placed plaintiffs on at least inquiry notice of the TOU and the arbitration

15   provision therein.  The communications with each of the plaintiffs occurred before each plaintiff filed

16   the claims which defendants seek to compel to arbitration—*i.e.*, before Ms. Kelly and Ms.

17   Thimmegowda filed *any* claims, and before Ms. Kater brought her claims against BFG.

18        Similar communications have been held to place plaintiffs on enforceable inquiry notice of

19   arbitration agreements in other cases.  In *Pincaro v. Glassdoor, Inc.*, for example, the court held that the

20   plaintiffs were on inquiry notice of terms of service to which the defendant had alerted them in an email

21   including a hyperlink through which the terms could be viewed.  2017 WL 4046317, at *6; *see also In*

22   *re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. May 5, 2016)

23   (finding Facebook's communication to users describing changes to the terms of the user agreement, in

24   combination with the users' continued use of Facebook, "is enough for notice and assent"); *Starkey v. G*

25   *Adventures, Inc.*, 796 F.3d 193, 195-97 (2d Cir. 2015) (finding that communications containing a

26   hyperlink and language advising plaintiff to click on the hyperlink sufficiently directed the

27   plaintiff's attention to the terms and conditions).

28

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- 10 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

1

2       Moreover, unlike the plaintiffs in *Huuuge*, *Double Down*, and *Playtika*, *see supra* Section II.D,

3   plaintiffs here repeatedly reference throughout their Complaints the "terms of service" and general

4   "terms" associated with playing BFC—confirming they were on notice of the TOU at least as of the

5   time they filed their Complaints. *See, e.g.*, *Kater* Compl. ¶¶ 27–28, 32–33, 37; *Thimmegowda* Compl.

6   ¶¶ 31–32, 36–38, 41, 45–46. Plaintiffs continued to play BFC after making those allegations in their

7   Complaints. 2020 Grossman Decl. ¶ 3. Similar pleadings have been deemed to establish a plaintiff's

8   notice of an arbitration agreement in other cases, even absent the subsequent use of the product or

9   service governed by the applicable terms of use. For instance, in *George v. Midland Funding, LLC*, the

10  court found an agreement to arbitrate because the complaint's allegations about the "terms and

11  conditions" at issue amounted to incorporation of those terms by reference, and the plaintiff did not

12  argue that she had no notice of the agreement. 2019 WL 2591163, *3 (D.N.J. June 25, 2019); *see also*

13  *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836 (S.D.N.Y. 2012) (holding that the plaintiff's

14  allegations regarding the defendant's terms of use "suggests that he had constructive knowledge" of

15  those terms).

16      Similarly, plaintiffs allege putative classes of all persons in the United States who "created BFC

17  accounts on or *before March 23, 2015*," *Kater* Compl. ¶ 48 (emphasis added), or "began playing [BFC]

18  *on or after March 24, 2015*," *Thimmegowda* Compl. ¶ 53 (emphasis added). Plaintiffs' specific

19  temporal limitations—tied to the date the arbitration provision was added to the TOU, and not to any

20  facts related to their gameplay—demonstrate their awareness of the TOU. And the *Thimmegowda*

21  putative class is composed of users, like Ms. Thimmegowda, whose entire time playing BFC occurred

22  after the arbitration provision was in place. Class definitions have been held to indicate a plaintiff's

23  awareness of an arbitration agreement. In *Dotson v. Midland Funding, LLC*, for example, because the

24  proposed class concerned "persons to whom a letter from [the defendant] was mailed," the Court looked

25  to that letter to determine whether a valid arbitration agreement existed between the parties—and found

26  that there was such an agreement. 2019 WL 5678371, at *5 (D.N.J. Aug. 1, 2019), *report and*

27  *recommendation adopted*, 2020 WL 291537 (D.N.J. Jan. 21, 2020). Further, there is no question that

28

---

plaintiffs' *lawyers* knew of the TOU and its arbitration provision, given their briefing in opposition to CDI's motion to compel arbitration in 2018 in the *Kater* case. *See Kater* Dkts. 60, 68, 70, 75. The same lawyers represent each of Ms. Kater, Ms. Kelly, and Ms. Thimmegowda, and counsel's knowledge is properly imputed to plaintiffs. *See Nicosia v. Amazon.com*, 2017 WL 10111078, at *11 (E.D.N.Y. Aug. 18, 2017) (holding that plaintiff was on notice "through his counsel" of defendant's arbitration provision). In addition, Ms. Thimmegowda specifically alleges that her lawsuit "is essentially a companion case" to the *Kater* case. *Thimmegowda* Compl. ¶ 3. Because the arbitration provision in the BFG TOU was the subject of extensive briefing in *Kater* before Ms. Thimmegowda filed her lawsuit, her admitted knowledge of and affiliation with the *Kater* case evidences her actual knowledge of the TOU and the arbitration provision therein. Indeed, that the *Thimmegowda* Complaint alleges a purported class of BFC users who started playing the game on or after March 24, 2015—the very date on which BFG added the arbitration provision to its TOU—is evidence that Ms. Thimmegowda and her attorneys had actual notice of that provision when they filed the Complaint. Why else use that date as the temporal demarcation?

All three plaintiffs manifested their acceptance of the TOU because they continued to play BFC after learning of the BFG TOU, and indeed continued to play even after filing their Complaints that referenced the TOU. *See* 2020 Grossman Decl. ¶ 3. Plaintiffs' continued and repeated play of BFC after being put on actual and inquiry notice of the TOU manifests their acceptance of the TOU, including the arbitration provision. *See Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610, at *5 (N.D. Cal. Apr. 1, 2005) (finding the plaintiff's "use of [the defendant's] web site under circumstances in which [the plaintiff] had actual or imputed knowledge of [the defendant's] terms effectively binds [the plaintiff] to [the defendant's] Terms of Use and the forum selection clause therein").

Importantly, plaintiffs have never asserted that they were not on notice of the TOU, or that they did not manifest acceptance of those terms by continuing to play BFC. *See Kater* Compl. ¶¶ 46–47; *Thimmegowda* Compl. ¶¶ 50–51; *see also Kater* Dkt. 68 (Kater's opposition to CDI's first motion to compel arbitration). Plaintiffs' failure to contest their notice of the arbitration provision—juxtaposed with plaintiffs' continued play of BFC after having actual notice that doing so would bind them to the

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- 12 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

TOU—is sufficient to find contract formation.  *See George*, 2019 WL 2591163, at *3 (finding agreement to arbitrate in part because the "[p]laintiff [did] not argue that she never received the Agreement, that it [was] not binding on her, or that she [did] not reference its terms in her complaint); *Himber v. Live Nation Worldwide, Inc.*, 2018 WL 2304770, at *4 (E.D.N.Y. May 21, 2018) (granting motion to compel arbitration when plaintiff did "not deny having actually seen or read the Terms of Use, including the arbitration provision" when using defendant's website); *Domain Name Comm'n Ltd. v. DomainTools, LLC*, 2018 WL 4353266, at *4 (W.D. Wash. Sept. 12, 2018) (finding contract likely formed when party was not "a one-time or sporadic user" but rather "has been querying plaintiff's system for years" and "has not denied knowledge in this litigation").

No matter when plaintiffs acquired notice of the TOU, the arbitration provision applies to this dispute because that provision requires arbitration of "any dispute, claim or controversy arising out of or relating to your access to or use of any Big Fish Offering," without temporal limitation.  2019 Grossman Decl. Ex. C at 10.  As courts in this District have held, such language compels arbitration "regardless of when the underlying events occurred."  *Allbaugh v. Perma-Bound*, 2009 WL 10676437, at *9 (W.D. Wash. Aug. 14, 2009) (granting motion to compel arbitration where arbitration clause "covers not just any claims arising under the [agreement] but also any claims relating to it"); *see also In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1202 (10th Cir. 2016) (finding that the "only reasonable interpretation of the *arising* language was that it applied to a dispute predating the arbitration agreement" and observing that "the word *relate* does not have the same temporal connotation as *arise*; we can say that something arises at a particular point in time; but *relate* is broader and includes a relationship in subject matter that is independent of time" (internal quotation marks omitted)); *MCA Fin. Grp., Ltd. v. Gardere Wynne Sewell, LLP*, 2007 WL 951959, at *5 (D. Ariz. Mar. 27, 2007) (granting motion to compel arbitration and finding that arbitration provision governing "any dispute or controversy regarding or arising out of our representation of you" applied retroactively); *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (granting motion to compel arbitration and finding that the broadly-worded arbitration provision applied to the plaintiff's claims even though "all the events underlying the claims occurred before the parties executed the agreement").

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- 13 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

1   In any event, the arbitrability of this dispute is for an arbitrator, not the Court, to decide.  *See infra*

2   Section IV.B.

3        By continuing to play BFC games after they had actual and inquiry notice that such use bound

4   them to the TOU, plaintiffs manifested their agreement to those terms, including the arbitration

5   provision.  As a result, a valid arbitration agreement exists, and the burden shifts to plaintiffs to show

6   that the arbitration agreement is invalid or does not encompass the claims at issue—which they cannot

7   do.[6]

8   ### B.   The TOU Arbitration Provision Clearly Delegates Questions of Arbitrability to the Arbitrator.

9        Parties may "agree to arbitrate 'gateway' questions of 'arbitrability' such as whether the parties

10  have agreed to arbitrate or whether their agreement covers a particular controversy."  *Rent-A-Center,*

11  *West, Inc. v. Jackso*n, 561 U.S. 63, 68–69 (2010).  The arbitrator, not the Court, decides these questions

12  when the parties "clearly and unmistakably" delegate questions of arbitrability to an arbitrator.  *Oracle*

13  *Am., Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (citations omitted).  "Clear and

14  unmistakable evidence of an agreement to arbitrate arbitrability might include . . . an express agreement

15  to do so."  *Mohamed v. Uber Techs., Inc.,* 848 F.3d 1201, 1208 (9th Cir. 2016) (internal marks omitted).

16       Here, the TOU to which plaintiffs agreed clearly and unmistakably delegate the issue of

17  arbitrability to an arbitrator.  The TOU provide that "any dispute, claim or controversy arising out of or

18  relating to your access to or use of any Big Fish Offering or to these Terms of Use (including without

19  limitation any dispute concerning the breach, enforcement, construction, validity, interpretation,

20  enforceability, or arbitrability of these Terms of Use) . . . shall be determined by arbitration."  2019

21  Grossman Decl. Ex. C at 10.  The Ninth Circuit has held that similar language constitutes an express

22  agreement to arbitrate the question of arbitrability of a plaintiff's claims.  *See Mohamed*, 848 F.3d at

23

24  [6] If plaintiffs were to now dispute their actual notice of or agreement to the TOU, and the Court is not
25  yet prepared to compel arbitration, then defendants are, at a minimum, entitled to discovery, including
    depositions, to probe plaintiffs' denials.  *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716
26  F.3d 764, 776 (3d Cir. 2013) ("if the plaintiff has responded to a motion to compel arbitration with
    additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled
27  to discovery on the question of arbitrability before a court entertains further briefing on the question"
    (citation omitted)).

28

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)                    - 14 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

1208 (parties delegated questions of arbitrability where agreement provided that "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision"); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (same, where agreement provided that "[i]f a dispute arises out of or relates to . . . the validity or application of any of the provisions of this [arbitration agreement], . . . the dispute shall be resolved exclusively by binding arbitration." (emphasis omitted)).

The TOU also expressly require that any arbitration be conducted "in accordance with the rules of the Judicial Arbitration and Mediation Service ('JAMS')," 2019 Grossman Decl. Ex. C at 11, and the JAMS rules expressly provide:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Rule 11(b). Incorporation of JAMS rules thus confirms that any questions as to the scope of the arbitration agreement in the TOU are for the arbitrator to decide. *Johnson v. Oracle Am., Inc.*, 764 F. App'x 607, 608 (9th Cir. 2019).

Accordingly, because the arbitration agreement is enforceable and delegates to the arbitrator any disputes as to its scope, an arbitrator must decide whether this dispute is arbitrable.

**C.      Any Attempt by Plaintiffs to Avoid Application of the Arbitration Provision Should Be Rejected.**

Plaintiffs may attempt to avoid application of the arbitration provision by arguing that it is unconscionable or that certain of the defendants may not enforce it or waived the right to compel arbitration. These are questions of arbitrability that the parties delegated to the arbitrator, and therefore should not be considered by this Court. *See* 2019 Grossman Decl. Ex. C at 10 (delegating arbitrability questions to arbitrator); JAMS Rule 11(b) (same); *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 492 F. App'x 150, 151 (2d Cir. 2012) (delegated questions of arbitrability include "whether other parties ha[ve] standing as third-party beneficiaries"); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015) (agreement to arbitration rules delegating to the arbitrator questions as to their own jurisdiction delegated questions of unconscionability); *TML*

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- 15 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

1    *Multistate Intergov't Employee Benefits Pool v. HealthEdge Software, Inc.*, 2018 WL 3326839, at *3

2    (W.D. Tex. June 1, 2018) (JAMS rule 11(b) delegates unconscionability challenges to arbitrator), *report*

3    *and recommendation adopted*, 2018 WL 8619806 (W.D. Tex. Dec. 17, 2018); *Hamby v. Power Toyota*

4    *Irvine*, 2012 WL 13036860, at *7 (S.D. Cal. Mar. 22, 2012) (delegated questions of arbitrability include

5    whether party seeking to compel arbitration has waived its right to do so).  Even if it were proper for the

6    Court to consider these arguments, they should be rejected.

7                  **1.      The Arbitration Provision Is Not Unconscionable.**

8            An arbitration agreement is enforceable unless the party opposing arbitration can prove it is

9    unconscionable—a "high standard."  *See Schmidt v. Samsung Elecs. Am., Inc.*, 2017 WL 2289035, at *4

10   (W.D. Wash. May 25, 2017).  Washington "recognizes two classifications of unconscionability,

11   substantive and procedural."  *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1258 (9th Cir. 2005).[7]

12   "Substantive unconscionability involves those cases where a clause or term in the contract is alleged to

13   be one-sided or overly harsh . . . 'Shocking to the conscience,' 'monstrously harsh,' and 'exceedingly

14   calloused' are terms sometimes used to define substantive unconscionability.  Procedural

15   unconscionability is the lack of a meaningful choice, considering all the circumstances surrounding the

16   transaction including the manner in which the contract was entered, whether the party had a reasonable

17   opportunity to understand the terms of the contract, and whether the important terms were hidden in a

18   maze of fine print."  *Zuver v. Airtouch Commcn's, Inc.*, 153 Wash. 2d 293, 303 (2004) (en banc)

19   (citations omitted).  Plaintiffs have the burden of proving unconscionability.  *See Tjart v. Smith Barney,*

20   *Inc.,* 28 P.3d 823, 830 (Ct. App. Wash. 2001).

21

22

23

24   [7] For purposes of this motion, the result is the same under other state laws, and so Washington law
applies in the absence of a conflict.  *See supra* n.4; *see also, e.g., Fagerstrom v. Amazon.com, Inc.*, 141
25   F. Supp. 3d 1051, 1063 (S.D. Cal. 2015) ("In both Washington and California, unconscionability
doctrine is rooted in the same policy concerns, involves a similar doctrinal test, and is applied in similar
26   fashion."); *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 80–81 (S.D.N.Y. 2012) (Florida law
requires assessment of procedural and substantive unconscionability); *In re Turner Bros. Trucking Co.,*
27   *Inc.*, 8 S.W.3d 370, 376–77 (Ct. App. Tex. 1999) (Texas law requires assessment of procedural and
substantive unconscionability).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Courts have consistently enforced arbitration agreements that, like the TOU here, clearly call the user's attention to the arbitration provision.  *See Carideo v. Dell, Inc.*, 520 F. Supp. 2d 1241, 1249 (W.D. Wash. 2007) (finding arbitration agreement not procedurally unconscionable because "[t]he arbitration clause was not hidden in a maze fine print, but was presented in all capital letters"); *Graf v. Match.com*, 2015 WL 4263957, at *5 (C.D. Cal. July 10, 2015) (finding arbitration agreement not procedurally unconscionable when the arbitration provision was presented as its own section in the Terms of Use, used bold type to draw attention to the section, and clearly explained its terms).  Here, the TOU uses all caps to give clear notice of the arbitration provision *in the first sentence of the TOU*:

> PLEASE READ THESE TERMS OF USE CAREFULLY, INCLUDING THE MANDATORY ARBITRATION PROVISION IN THE SECTION TITLED "DISPUTE RESOLUTION BY BINDING ARBITRATION," WHICH REQUIRES THAT DISPUTES ARE RESOLVED BY FINAL AND BINDING ARBITRATION ON AN INDIVIDUAL AND NOT A CLASS-WIDE OR CONSOLIDATED BASIS.

2019 Grossman Decl. Ex. C at 1.  The TOU also uses all caps to call attention to the specific provision governing arbitration:

> PLEASE READ THIS "DISPUTE RESOLUTION BY BINDING ARBITRATION" PROVISION CAREFULLY, BECAUSE IT REQUIRES YOU TO ARBITRATE DISPUTES WITH BIG FISH AND IT LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF.

*Id.* at 11; *see Singavong v. Volt Mgmt. Corp.*, 2007 WL 1813845, at *3 (W.D. Wash. June 21, 2007) (finding arbitration agreement not unconscionable when "the terms of the arbitration provision are in capital-lettered, normal size typeface").

Courts also reject unconscionability arguments when, as here, the arbitration agreement provides consumer-friendly terms such as the option to participate in the arbitration telephonically or to opt out of the arbitration agreement entirely by mailing written notice within thirty days.  2019 Grossman Decl. Ex. C at 11–8; *see Mohamed*, 848 F.3d at 1210–11; *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) ("[T]his case lacks the necessary element of procedural unconscionability . . . because [plaintiff] was given the opportunity to opt-out of the [defendant's] arbitration program by mailing in a simple one-page form [within thirty days].").  In addition, the TOU cap any arbitration costs paid by the consumer at $250.  2019 Grossman Decl. Ex. C at 11.  Courts have determined that such terms preclude a finding of unconscionability since they do "not prohibit Plaintiffs from bringing their

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- 17 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

claims." *Carideo*, 520 F. Supp. 2d at 1248; *see Nevarez v. Forty Niners Football Co.*, 2017 WL 3492110, at *12 (N.D. Cal. Aug. 15, 2017) (finding arbitration agreement not substantively unconscionable when fee required to be paid by the consumer was capped at $250 because that amount is comparable to what would be required to file a lawsuit).

Finally, it is well-settled that the arbitration provision's class action waiver is not unconscionable: any argument that a "ban on class arbitration is unconscionable . . . is now expressly foreclosed by" the Supreme Court's holding in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011). *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc); *see also Coppock v. Citigroup, Inc.*, 2013 WL 1192632, at *8 n.2 (W.D. Wash. Mar. 22, 2013) ("Under *Concepcion*, the Court cannot consider Washington's policy on unconscionability of class-action waivers . . . since the FAA preempts that policy and precludes a court from taking it into account in conducting the unconscionability analysis.").

Plaintiffs manifested their assent to the reasonable and consumer-friendly terms of the TOU arbitration agreement. The Court should therefore enforce that agreement.

### 2. CDI and Aristocrat Are Third-Party Beneficiaries Entitled to Enforce the Arbitration Agreement.

CDI and Aristocrat are third-party beneficiaries of the arbitration agreement between plaintiffs and BFG, and may therefore enforce the agreement.

Whether nonparties to an arbitration agreement may enforce the agreement is determined according to "traditional principles of state law"—in this case, Washington law. *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013); 2019 Grossman Decl. Ex. C at 10 (requiring that the agreement "shall be governed by and construed in accordance with the laws of the State of Washington"); *id.* Ex. B at 7 (same).[8] Under Washington law, a nonparty is a third-party beneficiary if

---

[8] The result would be the same under other state laws, including Florida, Texas, and California. *See Jensen v. U-Haul Co. of Cal.*, 18 Cal. App. 5th 295, 301 (Ct. App. 2017) ("The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract." (citation omitted)); *Baughan v. Royal Caribbean Cruises, Ltd.*, 944 F. Supp. 2d 1216, 1218 (S.D. Fla. 2013) ("Under Florida law, a third party is an

---

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)                    - 18 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

1

2

3

"the parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract." *Rajagopalan*, 718 F.3d at 847 (quoting *Burke & Thomas, Inc. v. Int'l Org. of Masters*, 92 Wash. 2d 762, 767 (1979)).

4

5

6

7

8

9

10

11

12

To illustrate, the Ninth Circuit recently considered whether two nonparties were third-party beneficiaries of a similar arbitration agreement under Washington law.  *See Geier v. m-Qube Inc.*, 824 F.3d 797, 799 (9th Cir. 2016).  There, as here, the arbitration agreement was contained in a company's terms of use that customers were required to accept upon using the company's product.  *See id.* at 799.  Under the agreement, customers not only assumed an obligation to arbitrate disputes with the company, but also assumed "a direct obligation" to do so with "the Company's suppliers."  *Id.* at 800.  In holding that the two defendants could invoke the arbitration agreement if the district court found on remand that they were such suppliers, the court recognized that "the Company's suppliers are intended third-party beneficiaries" that "may enforce the arbitration clause."  *Id.* at 801.

13

14

15

16

17

18

19

Likewise, CDI and Aristocrat are intended third-party beneficiaries of plaintiffs' arbitration agreements.  Like the agreement in *Geier*, plaintiffs not only assumed an obligation to arbitrate disputes with "Big Fish Games, Inc.," but also assumed a direct obligation to do so with "its Affiliates."  2019 Grossman Decl. Ex. C at 1.  In turn, "Affiliates" encompasses "any person or entity which controls, is controlled by, or is under common control with" BFG.  *Id.*  CDI and Aristocrat, as either direct or indirect parents of BFG during the relevant time period alleged in the Complaints, are plainly "Affiliates" because they are "entit[ies] which control[]" or controlled Big Fish Games.[9]  As

20

21

22

23

24

intended beneficiary if the intent to benefit the third party is specific and clearly expressed in the contract to endow the third-party beneficiary with a legally enforceable right." (emphases omitted)); *Walters v. Livingston*, 519 S.W.3d 658, 666 (Tex. App. 2017) ("To . . . create a legally enforceable third-party beneficiary contract, an agreement must clearly and fully express an intent to confer a direct benefit to the third party." (citation omitted)).

25

26

27

28

[9] The "control" Aristocrat and CDI exercise as parent companies is not to be confused with the level of control required under the alter ego or agency theories of personal jurisdiction, which is different in kind and degree.  *See United States v. Bestfoods,* 524 U.S. 51, 61 (1998) (noting that it is "hornbook law" that "the exercise of the 'control' which stock ownership gives to the stockholders" does not permit a court to pierce the subsidiary's corporate veil to reach the parent).

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)                                    - 19 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"Affiliates," CDI and Aristocrat are intended third-party beneficiaries of the arbitration agreement that may enforce the arbitration clause.  *See Geier*, 824 F.3d at 801.

Even in the absence of the parties' clear intent, CDI and Aristocrat may still invoke the arbitration clause under other "traditional principles" of Washington law.  *See Rajagopalan*, 718 F.3d at 847.  "[O]rdinary principles of contract and agency" allow a parent to invoke an arbitration agreement to which only its subsidiary is a party "[w]hen the charges against the parent and subsidiary are based on the same facts, as is the case here, and are inherently inseparable."  *Townsend v. Quadrant Corp.*, 153 Wash. App. 870, 889 (2009), *aff'd on other grounds*, 173 Wash. 2d 451 (2012).  Plaintiffs allege the same claims based on the same allegations against a single, monolithic group they describe as "Defendants," consisting of BFG and its parents—CDI and/or Aristocrat—during the alleged period. *See Kater* Compl. ¶¶ 38–85; *Thimmegowda* Compl. ¶¶ 61–91.  Because plaintiffs' claims are "based on the same facts" and "inherently separable," CDI and Aristocrat may therefore enforce the arbitration agreement.  *See, e.g.*, *Townsend*, 153 Wash. App. at 889–90 (holding that parent company and parent's parent company could invoke arbitration agreement entered into by subsidiary); *Wiese v. Cach, LLC*, 189 Wash. App. 466, 482 (2015) (holding that parent company could invoke arbitration agreement entered into by subsidiary).

### 3.   BFG and Aristocrat Have Asserted Their Rights to Compel Arbitration of Plaintiffs' Claims at Every Opportunity.

BFG and Aristocrat invoked their rights to arbitrate at the first available opportunity, in their first substantive filings in these cases, *see Kater* Dkt. 100; *Thimmegowda* Dkts. 33 & 35, and now renew their attempts to invoke those rights at the first opportunity permitted by the Court, *see Kater* Dkt. 121 & *Thimmegowda* Dkt. 70 (terminating defendants' motions to compel arbitration without resolution and staying the case); *Kater* Dkt. 185 & *Thimmegowda* Dkt. 136 (instructing defendants to renew their motions).  Under these circumstances, plaintiffs could not carry their "heavy burden of proof" to show BFG and Aristocrat waived their right to arbitrate.  *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1989) (a finding of waiver of arbitration rights is disfavored).  To establish that BFG and Aristocrat waived their arbitration rights, plaintiffs "must demonstrate (1) [BFG and Aristocrat's] knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)
- 20 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

1

2

3

(3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990). "Any doubts as to waiver are resolved in favor of arbitration." *Creative Telecomms., Inc. v. Breeden*, 120 F. Supp. 2d 1225, 1232 (D. Haw. 1999).

4

5

6

7

8

9

10

11

Where, as here, a party moves to compel arbitration at the first available opportunity, the Ninth Circuit has repeatedly held that the party does not waive its right to arbitrate the dispute. *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 697 (9th Cir. 1986) (plaintiff could not meet heavy burden to show waiver where defendant moved to compel arbitration as soon as it was no longer futile to do so after a new Supreme Court decision); *Conover v. Dean Witter Reynolds, Inc.*, 837 F.2d 867, 868 (9th Cir. 1988) (same); *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) (same); *see also Olivares v. Hispanic Broad. Corp.*, 2001 WL 477171, at *1 (C.D. Cal. Apr. 26, 2001) (no waiver where defendant moved to compel at "the first opportunity").

12

13

14

15

16

17

Plaintiffs may argue that the Court's ruling that CDI waived its right to compel arbitration of Ms. Kater's claims should be imputed to BFG's and Aristocrat's rights to compel arbitration of plaintiffs' claims. Such an argument is contrary to law. *First*, any waiver of arbitration rights by CDI—BFG's former parent company—cannot be imputed to BFG or Aristocrat. *See Lake Washington Sch. Dist. No. 414 v. Mobile Modules Nw., Inc.*, 28 Wash. App. 59, 61 (1980) ("waiver is a power exclusive to the party relinquishing the right to demand arbitration").

18

19

20

21

22

23

*Second*, BFG was not even a party to *Kater*—and no suit naming Aristocrat had been filed— when the Court held that CDI had waived its arbitration rights with respect to Ms. Kater. Until BFG was added as a defendant, it had no right to compel arbitration of Ms. Kater's claims that could have been waived. *See Letizia*, 802 F.2d at 1187. Similarly, neither Ms. Thimmegowda nor Ms. Kelly brought *any* claims against *any* defendant until February and March 2019, respectively; before that time, none of the defendants could have moved to compel arbitration of then-nonexistent claims against them.

24

25

26

27

One court recently refused to impute waiver under analogous circumstances. *See Meyer v. Kalanick*, 291 F. Supp. 3d 526, 534–35 (S.D.N.Y. 2018). In *Meyer*, the plaintiff elected not to name the real party in interest (Uber) in a lawsuit relating to Uber's pricing algorithm, choosing instead to name only Uber's CEO individually. *Id.* at 530. Once Uber (the company) was joined, the company invoked

28

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- 21 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

the arbitration clause in its terms of use, to which Uber's CEO was a third-party beneficiary.  *See id.* at 530–32.  In holding that Uber did not waive its arbitration rights, even if Uber's CEO did waive them, the *Meyer* court rejected the plaintiff's argument that Uber had acted inconsistently with that right because the argument was "premised entirely on conduct undertaken by [Uber's CEO] before Uber was even a party to the case."  *Id.* at 534–35.  For the same reasons, any waiver by CDI cannot be imputed to BFG or Aristocrat to serve as a basis for showing that BFG acted inconsistently with its arbitration rights.

Finally, plaintiffs would suffer no cognizable prejudice if compelled to arbitrate their claims against BFG and Aristocrat.  For purposes of the waiver analysis, courts may only consider prejudice "resulting from [the moving party's] inconsistent acts."  *Fisher*, 791 F.2d at 697; *Guest v. Air Liquide Am. Specialty Gases, LLC*, 2018 WL 4523147, at *14 (D. Or. June 28, 2018) ("To establish waiver, the prejudice must result from the defendant's inconsistent acts.").  BFG and Aristocrat have acted consistently with their rights to compel arbitration against plaintiffs, and no waiver arguments can be asserted.  The first actions BFG and Aristocrat took in these matters were to assert their contractual arbitration rights, and they again have sought to invoke those rights.  In the absence of any inconsistent conduct, it follows that plaintiffs will not suffer any cognizable prejudice.

### 4.    CDI Has Not Waived Its Right to Compel Arbitration of Ms. Kelly or Ms. Thimmegowda's Claims.

For the same reasons plaintiffs cannot show that either BFG or Aristocrat waived its arbitration rights, neither Ms. Kelly nor Ms. Thimmegowda can meet her heavy burden of showing that CDI waived its right to compel arbitration of her claims.  Ms. Kelly's claims were alleged for the first time in the Amended Complaint in the *Kater* case, after which CDI promptly filed a motion to compel arbitration.  *See Kater* Dkts. 85 & 100.  CDI has now renewed that motion at the first possible opportunity.  Until Ms. Kelly brought her claims in this lawsuit, CDI had no right to compel arbitration as to Ms. Kelly that could be waived, because she had not yet asserted any claims against CDI.  *See Letizia*, 802 F.2d at 1187; *see also Standard Fire*, 568 U.S. at 593 (absent class members are not parties before class certification is granted).  Likewise, CDI had no right to compel arbitration of Ms. Thimmegowda's claims until it was named as a defendant in her lawsuit, after which it promptly filed a

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- 22 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

motion to compel arbitration.  *See Thimmegowda* Dkts. 1 & 35.  CDI also now renews that motion at the first possible opportunity.

In short, any waiver argument that Ms. Kelly or Ms. Thimmegowda might advance would necessarily be premised on an impossibility: that CDI should have filed a motion to compel arbitration as to persons who had not yet asserted any claims against it and who were in no respect parties to the litigation that Ms. Kater had brought on her own.  Finding waiver of the right to compel arbitration in these circumstances would constitute clear legal error.

## V.    CONCLUSION

Because plaintiffs agreed to arbitration by continuing to play BFC with notice of the TOU, all questions of arbitrability are delegated to the arbitrator, all defendants are entitled to enforce the arbitration agreement, and plaintiffs cannot establish unconscionability or waiver, the Court should compel arbitration of Ms. Kater's claims against BFG; Ms. Kelly's claims against both BFG and CDI; and Ms. Thimmegowda's claims against BFG, CDI, and Aristocrat; and stay the case pending resolution of the arbitration proceedings.

DEFENDANTS' RENEWED MOTION TO COMPEL
ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- 23 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

DATED:  April 10, 2020                    Respectfully submitted,

*/s/ Mark Parris*
*/s/ Paul Rugani*
Mark Parris (Bar No. 13870)
mparris@orrick.com
Paul F. Rugani (Bar No. 38664)
prugani@orrick.com
ORRICK HERRINGTON & SUTCLIFFE LLP
701 5th Avenue, Suite 5600
Seattle, WA 98104
Telephone: (206) 839-4320

*Attorneys for Defendants Aristocrat*
*Technologies, Inc., Aristocrat Leisure*
*Limited, Big Fish Games, Inc. and*
*Churchill Downs Inc.*

*/s/ Emily Johnson Henn*
*/s/ Lindsey Barnhart*
Emily Johnson Henn (*pro hac vice*)
ehenn@cov.com
Lindsey Barnhart (*pro hac vice*)
lbarnhart@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306
Telephone: (650) 632-4700

*/s/ Gary Rubman*
Gary Rubman (*pro hac vice*)
grubman@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001
Telephone: (202) 662-6000

*/s/ Ashley M. Simonsen*
Ashley M. Simonsen (*pro hac vice* pending)
asimonsen@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4782

*/s/ Matthew Q. Verdin*
*/s/ David Watnick*
Matthew Q. Verdin (*pro hac vice*)
mverdin@cov.com
David Watnick (*pro hac vice*)
dwatnick@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
Telephone: (415) 591-7065

*Attorneys for Defendants Aristocrat*
*Technologies, Inc., Aristocrat Leisure*
*Limited, and Big Fish Games, Inc.*

DEFENDANTS BIG FISH GAMES, INC.'S AND
CHURCHILL DOWNS INC.'S MOTION TO COMPEL
ARBITRATION (2:19-cv-00199-RBL)

- 24 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300