**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| CHERYL KATER and SUZIE KELLY, individually and on behalf of all others similarly situated,<br><br>   *Plaintiffs*,<br><br>  *v.*<br><br>CHURCHILL DOWNS INCORPORATED, a Kentucky corporation, and BIG FISH GAMES, INC., a Washington corporation.<br><br>   *Defendants*. | No. 2:15-cv-00612-RBL<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' RENEWED MOTION TO COMPEL ARBITRATION**<br><br>**NOTING DATE: May 1, 2020** |
| MANASA THIMMEGOWDA, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>  *v.*<br><br>BIG FISH GAMES, INC., a Washington corporation; ARISTOCRAT TECHNOLOGIES, INC., a Nevada corporation; ARISTOCRAT LEISURE LIMITED, an Australian corporation; and CHURCHILL DOWNS INCORPORATED, a Kentucky corporation,<br><br>   *Defendants*. | No. 2:19-cv-00199-RBL<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION TO COMPEL ARBITRATION**<br><br>**NOTING DATE: May 1, 2020** |

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND .............................................................................................. 2

III. ARGUMENT .................................................................................................... 3

    A.  Big Fish and Churchill Downs Waived Their Right to Seek
        Arbitration of Ms. Kater's and Ms. Kelly's Claims Against Them. ................. 3

        1.  Churchill Downs's waiver as to Ms. Kater applies
            equally to Ms. Kelly. ....................................................................... 4

        2.  Big Fish waived its right to arbitrate as to both
            Ms. Kater and Ms. Kelly by sitting on the sidelines
            as Churchill Downs litigated this case. ......................................... 8

    B.  Plaintiffs Never Agreed to Arbitrate Disputes With Defendants. ................. 11

        1.  Continuing to use the app after receiving the customer
            support communications did not create a contract. ........................ 14

        2.  Continuing to use the app after filing the complaints
            did not create a contract. ............................................................... 19

        3.  Plaintiffs never agreed to arbitration with Churchill
            Downs or Aristocrat. ...................................................................... 21

    C.  Defendants Don't Get More Discovery. ......................................................... 22

IV.  CONCLUSION ............................................................................................... 23

Resp. to Renewed Mot. to Compel Arb.
Nos. 2:15-CV-00612-RBL, 2:19-CV-00199-RBL -

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600  •  Fax: 206.682.2992

# <u>TABLE OF AUTHORITIES</u>

## <u>United States Supreme Court Cases</u>

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ................................................................................ 12

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) ................................................................................ 12

## <u>United States Circuit Court of Appeals Cases</u>

*Benson v. Double Down Interactive, LLC*,
    798 F. App'x 117 (9th Cir. 2020) ......................................................... 14

*Boardman v. Pac. Seafood Grp.*,
    822 F.3d 1011 (9th Cir. 2016) .............................................................. 12

*Campbell v. Gen. Dynamics Gov't Sys. Corp.*,
    407 F.3d 546 (1st Cir. 2005) ................................................................. 15

*Conover v. Dean Witter Reynolds, Inc.*,
    837 F.2d 867 (9th Cir. 1988) ................................................................ 11

*Dasher v. RBC Bank (USA)*,
    882 F.3d 1017 (11th Cir. 2018) ............................................................ 18

*DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*,
    268 F.3d 829 (9th Cir. 2001) ................................................................ 13

*Fisher v. A.G. Becker Paribas Inc.*,
    791 F.2d 691 (9th Cir. 1986) ................................................................ 11

*In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*,
    790 F.3d 1112 (10th Cir. 2015) .............................................................. 7

*In re Perle*,
    725 F.3d 1023 (9th Cir. 2013) .............................................................. 20

*Kater v. Churchill Downs Inc.*,
    886 F.3d 784 (9th Cir. 2018) .................................................................. 2

*Knutson v. Sirius XM Radio Inc.*,
    771 F.3d 559 (9th Cir. 2014) ................................................... 13, 16, 17

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*,
  845 F.3d 979 (9th Cir. 2017) ...................................... 12

*Letizia v. Prudential Bache Securities, Inc.*,
  802 F.2d 1185 (9th Cir. 1986) ................................. 8, 11

*Levin Metals Corp. v. Parr-Richmond Terminal Co.*,
  799 F.2d 1312 (9th Cir. 1986) .................................... 10

*Martin v. Yasuda*,
  829 F.3d 1118 (9th Cir. 2016) .................................... 11

*Mcghee v. N. Am. Bancard, LLC*,
  No. 17-56248, 2019 WL 1057854 (9th Cir. Mar. 6, 2019) ............. 22

*Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n*,
  62 F.3d 1356 (11th Cir. 1995) ................................. 9, 10

*Munro v. Univ. of S. Cal.*,
  896 F.3d 1088 (9th Cir. 2018) .................................... 12

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2013) .................................... 21

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) .................................... 13

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ..................................... 14

*Norcia v. Samsung Telecommunications Am., LLC*,
  845 F.3d 1279 (9th Cir. 2017) ................................ 12, 22

*Robinson v. Alston*,
  596 F. App'x 871 (11th Cir. 2015) ............................... 8, 9

*Russell v. Citigroup, Inc.*,
  748 F.3d 677 (6th Cir. 2014) .................................... 18

*Sanford v. MemberWorks, Inc.*,
  483 F.3d 956 (9th Cir. 2007) .................................... 12

*Schnabel v. Trilegiant Corp.*,
  697 F.3d 110 (2d Cir. 2012) ..................................... 15

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

*Starkey v. G Adventures, Inc.*,
796 F.3d 193 (2d Cir. 2015)..................................................... 17

*Wilson v. Huuuge, Inc.*,
944 F.3d 1212 (9th Cir. 2019) ........................................ 13, 14, 23

**United States District Court Cases**

*Booth v. Seaboard Fire & Marine Ins. Co.*,
285 F. Supp. 920 (D. Neb. 1968) ................................................ 9

*Cotter v. Lyft, Inc.*,
176 F. Supp. 3d 930 (N.D. Cal. 2016) ..................................... 4, 6

*Edwards v. First Am. Corp.*,
289 F.R.D. 296 (C.D. Cal. 2012)........................................ 4, 5, 7

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)...................................... 19

*George v. Midland Funding, LLC*,
No. 18-cv-15830, 2019 WL 2591163 (D.N.J. June 25, 2019)......... 19

*Hunichen v. Atonomi LLC*,
No. 19-0615, 2019 WL 7758597 (W.D. Wash. Oct. 28, 2019)........... 12, 13, 16

*In re Currency Conversion Fee Antitrust Litig.*,
361 F. Supp. 2d 237 (S.D.N.Y. 2005)....................................... 7

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .................................... 17

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
298 F. Supp. 3d 1285 (N.D. Cal. 2018) .................................... 15

*In re Universal Serv. Fund Tel. Billing Practices*,
320 F. Supp. 2d 1135 (D. Kan. 2004) ........................................ 4

*Kater v. Churchill Downs Inc.*,
No. 15-cv-00612, 2018 WL 5734656 (W.D. Wash. Nov. 2, 2018)........ 3, 4, 11

*Kater v. Churchill Downs, Inc.*,
423 F. Supp. 3d 1055 (W.D. Wash. 2019)................................. 17

*Kingsbury v. U.S. Greenfiber, LLC*,
No. CV08-00151, 2012 WL 2775022 (C.D. Cal. June 29, 2012) ....... 5

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

*Meyer v. Kalanick*,
  291 F. Supp. 3d 526 (S.D.N.Y. 2018)............................................................... 11

*Nicosia v. Amazon.com, Inc.*,
  No. 14-cv-4513, 2017 WL 10111078 (E.D.N.Y. Aug. 18, 2017) .................... 20

*Nicosia v. Amazon.com, Inc.*,
  No. 14 CV 4513, 2019 WL 2482674 (E.D.N.Y. June 14, 2019)...................... 20

*Olivares v. Hispanic Broad. Corp.*,
  No. 00-00354, 2001 WL 477171 (C.D. Cal. Apr. 26, 2001) ........................... 11

*Penley v. NPC Int'l, Inc.*,
  No. 13-1031, 2014 WL 12634410 (W.D. Tenn. Dec. 3, 2014) ......................... 4

*Pincaro v. Glassdoor, Inc.*,
  No. 16 Civ. 6870, 2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017) ................... 17

*Reichert v. Keefe Commissary Network, L.L.C.*,
  No. C17-5848RBL, 2019 WL 7833109 (W.D. Wash. Oct. 30, 2019) ...... 12, 16

*Robbins v. Comcast Cable Commc'ns, LLC*,
  No. 19-cv-05603-RBL, 2019 WL 4139297 (W.D. Wash. Aug. 30, 2019).......... 12, 15, 16

*Rushing v. Viacom Inc.*,
  No. 17-cv-04492, 2018 WL 4998139 (N.D. Cal. Oct. 15, 2018) .................... 20

*Univar USA, Inc. v. Haas TCM, Inc.*,
  No. C09-344, 2009 WL 2406332 (W.D. Wash. Aug. 3, 2009) ....................... 10

*Wilson v. Huuuge, Inc.*,
  351 F. Supp. 3d 1308 (W.D. Wash. 2018)..................................................... 23

**State Court Cases**

*Bryant v. Clark*,
  584 N.E.2d 687 (Ohio 1992)............................................................................ 9

*Burnside v. Simpson Paper Co.*,
  864 P.2d 937 (Wash. 1994)............................................................................ 13

*City of Everett v. Sumstad's Estate*,
  631 P.2d 366 (Wash. 1981)........................................................... 15, 19, 21

*Elliott v. KB Home N. Carolina, Inc.*,
  752 S.E.2d 694 (N.C. Ct. App. 2013) ............................................................. 5

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

*Haselwood v. Bremerton Ice Arena, Inc.*,
    155 P.3d 952 (Wash. Ct. App. 2007) ................................................................. 21

*Keystone Land & Dev. Co. v. Xerox Corp.*,
    94 P.3d 945 (Wash. 2004) ................................................................................. 13

*Morgan v. AT&T Wireless Services, Inc.*,
    No. B241242, 2013 WL 5034436 (Cal. Ct. App. Sept. 13, 2013) ............... 5, 6, 8

*Ramos v. Arnold*,
    169 P.3d 482 (Wash. Ct. App. 2007) ................................................................. 21

*Riggins v. Bechtel Power Corp.*,
    722 P.2d 819 (Wash Ct. App. 1986) ................................................................. 22

*Tennyson v. Santa Fe Dealership Acquisition II, Inc.*,
    364 P.3d 1273 (N.M. Ct. App. 2015) .............................................................. 7, 8

*Townsend v. Quadrant Corp.*,
    224 P.3d 818 (Wash. Ct. App. 2009) ................................................................. 22

**Miscellaneous Authority**

9 U.S.C. § 4 ................................................................................................................. 10

28 U.S.C. § 2201 ......................................................................................................... 10

Fed. R. Civ. P. 19 .......................................................................................................... 9

1 Williston on Contracts,
    § 4:2 (4th ed.) ..................................................................................................... 14

Restatement (Second) of Contracts,
    § 19(2) ................................................................................................................. 14

Resp. to Renewed Mot. to Compel Arb.
Nos. 2:15-CV-00612-RBL, 2:19-CV-00199-RBL - v

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

# I. INTRODUCTION

No longer able to argue that users are bound to their inconspicuous browsewrap Terms of Use following a pair of Ninth Circuit decisions confirming as much, Defendants Churchill Downs Incorporated, Big Fish Games, Inc., Aristocrat Technologies, Inc., and Aristocrat Leisure Limited (the latter two, collectively, "Aristocrat," and all four, collectively, "Defendants") are left grasping at straws in their attempt to send this dispute to arbitration. Consequently, Defendants now proffer two different theories as to how Plaintiffs Cheryl Kater, Suzie Kelly, and Manasa Thimmegowda (collectively, "Plaintiffs") agreed to the Big Fish Casino app Terms of Use and the arbitration provision contained therein. First, Defendants argue that Plaintiffs manifested their assent to the Terms of Use by continuing to use the app after receiving customer support communications that obliquely referenced the Terms of Use. But those communications were sent in response to concerns expressed by Plaintiffs regarding inappropriate behavior on the app and a question about refunds; they cannot seriously be read as offers to enter into an agreement with Defendants that Plaintiffs accepted by continuing to use the app. Second, Defendants argue that Plaintiffs' complaints evidence that they were on notice of the Terms of Use and that their continued use of the app after filing the complaints thus manifested their assent to the Terms. But, among other things, the complaints' references to "terms" were all statements that users were never presented with the Terms, and thus do not evidence actual notice. Ultimately, the problem with both of Defendants' theories is that they impute an unreasonable meaning to the Parties' conduct contrary to Washington principles of contract interpretation. Defendants have failed to meet their burden of establishing an agreement to arbitrate, and their renewed motion to compel arbitration should be denied.

In any case, this Court need not even reach that issue with respect to Ms. Kater's and Ms. Kelly's claims against Churchill Downs and Big Fish because those two Defendants waived their right to compel arbitration against those two Plaintiffs. This Court has already held that, based on its years-long litigation of the merits in both the District Court and the Ninth Circuit, Churchill

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

Downs waived its right to seek arbitration against Ms. Kater. But because Ms. Kater was litigating on behalf of a putative class of which Ms. Kelly was a member, Churchill Downs waived its right to seek arbitration against Ms. Kelly as well. And while Big Fish was not named in this suit until March 2019, it too waived its right to compel arbitration against both Plaintiffs. By sitting on the sidelines while Churchill Downs spent years litigating the fate of the Big Fish Casino app, Big Fish waived its right to seek arbitration of Ms. Kater's and Ms. Kelly's claims against it. Neither Churchill Downs nor Big Fish should get yet another bite at the apple.

## II.    BACKGROUND

In April 2015, Ms. Kater filed suit against Churchill Downs, the then-owner and co-operator (with Big Fish) of the Big Fish Casino app, alleging that the Big Fish Casino was unlawful gambling under Washington law. (*Kater* dkt. 2.) Ms. Kater filed her complaint on behalf of a putative class of Big Fish Casino users, and sought, among other things, recovery of the money class members had lost gambling at the Big Fish Casino and an injunction against the further provision of illegal gambling through the Big Fish Casino app.

Churchill Downs elected to move to dismiss the complaint, arguing that the Big Fish Casino did not amount to gambling under Washington law. (*Kater* dkt. 24.) Though noting that it was "evaluating" an arbitration provision in the Big Fish Casino Terms of Use, Churchill Downs chose not to move to compel arbitration at that time. (*Kater* dkt. 24 at 4 n.6.) Judge Pechman granted Churchill Downs's motion to dismiss (*Kater* dkt. 39), and Ms. Kater appealed.

In the Ninth Circuit, Churchill Downs sought to substitute Big Fish in as appellee because Churchill Downs was in the process of selling its interest in Big Fish Casino to Aristocrat, and, in any event, Big Fish was "the real party in interest." (9th Cir. dkt. 48 at 1.) The Ninth Circuit reversed the dismissal of Ms. Kater's complaint, holding that "Big Fish Casino falls within Washington's definition of an illegal gambling game." *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 788 (9th Cir. 2018). The Ninth Circuit denied Churchill Downs's motion to substitute Big Fish in as appellee because the sale of Big Fish had not yet closed. *Id.* at 789 n.4.

Resp. to Renewed Mot. to Compel Arb.
Nos. 2:15-CV-00612-RBL, 2:19-CV-00199-RBL - 2

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

On remand, more than three years after this litigation began, Churchill Downs moved to compel arbitration. (*Kater* dkt. 60.) This Court denied that motion, holding that Churchill Downs "waived its right to arbitration when it took its first bite of the apple and chewed thoroughly for over three years." *Kater v. Churchill Downs Inc.*, No. 15-cv-00612, 2018 WL 5734656, at *6 (W.D. Wash. Nov. 2, 2018).

In February and March 2019, Ms. Thimmegowda filed her complaint against all Defendants (*Thimmegowda* dkt. 1), and Ms. Kater filed her First Amended Class Action Complaint adding Ms. Kelly as a named plaintiff and Big Fish as a defendant. (*Kater* dkt. 85.) Defendants subsequently moved to compel arbitration of all claims other than Ms. Kater's claim against Churchill Downs (which Churchill Downs had already waived). (*Kater* dkt. 100; *Thimmegowda* dkts. 33, 35.) Before briefing on those motions was complete, however, this Court stayed the litigation pending rulings from the Ninth Circuit in similar gambling app cases. (*Kater* dkt. 121; *Thimmegowda* dkt. 70.) The stay was ultimately lifted on March 4, 2020 (*Kater* dkt. 185; *Thimmegowda* dkt. 136), and Defendants have filed a renewed motion to compel arbitration (*Kater* dkt. 205; *Thimmegowda* dkt. 156).

## III.  ARGUMENT

The renewed motion to compel arbitration should be denied. As an initial matter, two of the Defendants (Big Fish and Churchill Downs) waived their right to seek arbitration against two of the Plaintiffs (Ms. Kater and Ms. Kelly). Regardless, no Plaintiff ever agreed to arbitrate disputes with any of the Defendants.

### A.  Big Fish and Churchill Downs Waived Their Right to Seek Arbitration of Ms. Kater's and Ms. Kelly's Claims Against Them.

This Court has already held that Churchill Downs waived its right to seek arbitration of Ms. Kater's claims against it. But that waiver applies equally to Ms. Kelly's claims against Churchill Downs because Ms. Kelly was a member of the putative class on whose behalf Ms. Kater filed her original complaint. And with respect to Big Fish, by sitting silently on the sidelines while Churchill Downs litigated this action for more than four years in multiple federal

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

forums, Big Fish likewise waived any right to now seek arbitration of Ms. Kater's and Ms. Kelly's claims.

### 1. Churchill Downs's waiver as to Ms. Kater applies equally to Ms. Kelly.

When a defendant waives its right to arbitrate the claims of a named plaintiff in a putative class action, it can waive its right to arbitrate the claims of the putative class members as well. *See, e.g.*, *In re Universal Serv. Fund Tel. Billing Practices*, 320 F. Supp. 2d 1135, 1141-42 (D. Kan. 2004), *aff'd*, 428 F.3d 940 (10th Cir. 2005) ("[D]efendants . . . did not move to compel arbitration of [named plaintiff's] claims despite knowing that [named plaintiff] was intended to serve as a class representative. . . . Thus, the court's waiver analysis applies with equal force to the unnamed class members."); *Penley v. NPC Int'l, Inc.*, No. 13-1031, 2014 WL 12634410, at *4 (W.D. Tenn. Dec. 3, 2014), *aff'd*, 625 F. App'x 261 (6th Cir. 2015) ("In the context of a putative Rule 23 class action, the Sixth Circuit has recognized that a defendant can waive its right to compel arbitration as to the entire class, even before it has been certified."); *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 943 (N.D. Cal. 2016) ("[Defendant] could be held to have waived its right to compel arbitration as to the class. After all, [it] explicitly waived its right to assert the arbitration provision against the named plaintiffs.").

Here, this Court has already held that Churchill Downs waived its right to seek arbitration against Ms. Kater because it "made extensive use of the federal judicial system to determine its liability to Kater for her losses playing Big Fish Casino." *Kater*, 2018 WL 5734656, at *4. But Churchill Downs's invocation of the judicial machinery—from which it sought a ruling that the Big Fish Casino was not unlawful gambling—was done to prevail not only on Ms. Kater's claims, but also on the claims of the unnamed putative class members, a group that included Ms. Kelly. *See Edwards v. First Am. Corp.*, 289 F.R.D. 296, 307 (C.D. Cal. 2012) (holding that defendant waived right to compel arbitration against both named and unnamed class members, noting that "[Defendant's] conduct appears to be highly calculated—Defendants would

Resp. to Renewed Mot. to Compel Arb.
Nos. 2:15-CV-00612-RBL, 2:19-CV-00199-RBL - 4

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

obviously prefer that Plaintiff's claims be dismissed on the merits, as any such ruling may be used for the purposes of issue preclusion and precedential effect in subsequent actions.").

Ms. Kater litigated this case for years as a putative class action in reliance on Churchill Downs's failure to assert any right to compel arbitration. Permitting Churchill Downs to now seek arbitration of previously unnamed putative class members like Ms. Kelly after years of litigating with named Plaintiff Ms. Kater prejudices both Ms. Kater and Ms. Kelly. *See Kingsbury v. U.S. Greenfiber, LLC*, No. CV08-00151, 2012 WL 2775022, at *6-7 (C.D. Cal. June 29, 2012) ("[Defendant's] argument [that unnamed class members were not prejudiced] ignores the realities of class-action litigation. . . . [Plaintiff] and his lawyers were attempting to vindicate not only [plaintiff's] interests but also the interests of other unrepresented class members. By waiting until *after* class certification to raise the issue of arbitration, [defendant] has prejudiced those interests."); *Morgan v. AT&T Wireless Services, Inc.*, No. B241242, 2013 WL 5034436, at *8 (Cal. Ct. App. Sept. 13, 2013) (reversing trial court's ruling that defendant had waived right to compel arbitration of named plaintiff's claims but not unnamed class members' claims because, among other things, doing so "would result in prejudice to the entire class"); *Edwards*, 289 F.R.D. at 308 ("Defendants' delay in asserting their right to arbitrate has resulted in the expenditure of enormous costs by [named plaintiff] and class counsel in litigating this matter at every level of the federal judiciary over the past five years, as well as thousands of hours of attorney time. Forcing the class to arbitrate now would result in those costs being stranded."); *Elliott v. KB Home N. Carolina, Inc.*, 752 S.E.2d 694, 703 (N.C. Ct. App. 2013) ("Plaintiffs and their attorneys invested significant amounts of time and sums of money prosecuting this case on behalf of themselves *and the purported class*.") (emphasis added).

Holding that extensive litigation of a putative class action waives a defendant's right to seek arbitration only against the named plaintiff but not its right to seek arbitration against unnamed putative class members "would be to condone gamesmanship." *Kingsbury*, 2012 WL 2775022, at *7. For example, a defendant could wait in the weeds and delay asserting arbitration

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

rights while litigating a putative class action. "If and when a class is finally certified, the defendant could simply assert its arbitration rights and defeat certification of the previously-certified class." *Id.* If waiver applied only to the claims of named plaintiffs, the defendant "would *benefit* from its delay in invoking arbitration by making it impractical for the [named] plaintiffs to proceed with the litigation and, ironically, by *forcing* the erstwhile putative class members to pursue arbitration if they wish to have their dispute heard." *Morgan*, 2013 WL 5034436, at *8. Such a result would defeat both the goals of arbitration (providing a quick, efficient, less expensive form of dispute resolution) and the goals of class litigation (providing an opportunity for numerous individual claims involving relatively small amounts of damages to be tried together in an efficient manner). *Id.* Allowing a defendant to compel arbitration against putative class members after waiving its right to compel arbitration against a named plaintiff would also undermine the waiver doctrine's purpose of preventing multiple bites at the apple. *See Cotter*, 176 F. Supp. 3d at 943 ("[Defendant waived its right to seek arbitration as to named plaintiff] in an attempt to get a favorable ruling on the merits from this Court before class certification. It would arguably be unfair for [defendant] to pursue litigation in a federal class action in hope of obtaining a favorable district court ruling at summary judgment, only to keep an arbitration provision in its back pocket in case things didn't go as planned.").

Defendants argue that Churchill Downs could not waive its right to seek arbitration against Ms. Kelly because it had no such right until Ms. Kelly was added as a named plaintiff. (Mot. at 22-23.) That is false. To the extent Churchill Downs had a right to compel arbitration of Ms. Kelly's claims (which, as explained in Part III.B below, it doesn't), it had that right when the original class action complaint was filed. *See Morgan*, 2013 WL 5034436, at *5 ("[F]rom the outset all plaintiffs—named and potential—were signatories to the arbitration agreement, and the class was always contemplated as including those who were subject to the arbitration agreement. Waiver of the right to arbitrate was based on [defendant's] delay . . . , and such conduct constituting waiver applied equally to all named plaintiffs and putative class members."); *id.* at

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

*6 (holding that when defendant had a right to arbitrate against named plaintiff, "the time was ripe for [defendant] to move to compel arbitration as to the named plaintiffs *and the putative class members*") (emphasis added); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 257-58 (S.D.N.Y. 2005) ("This Court rejects [defendant's] argument that prior to the class certification order, the instant [arbitration motion] would not have been ripe. . . . Indeed, the putative class members' rights in this litigation were protected as of the filing date of the complaint.").[1]

Regardless, even if Churchill Downs couldn't compel arbitration against a putative class member like Ms. Kelly before she was added as a named plaintiff, it could still waive its ability to do so. *See In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1119 (10th Cir. 2015) ("The court may not have been able to *compel* arbitration of absent class members at that time [pre-certification], but [defendant's] *assertion* or mention of its right at that point would have fundamentally changed the course of the litigation, ensured a more expedient and efficient resolution of the trial, and prevented [defendant's] improper gamesmanship."); *Edwards*, 289 F.R.D. at 307 ("It is true that Defendants likely could not have moved to compel arbitration of the . . . class members' claims until after the class was certified. Nevertheless, Defendants could have asserted their intention to raise arbitration as a defense at a much earlier stage in the proceeding.") (internal citation omitted); *Tennyson v. Santa Fe Dealership Acquisition II, Inc.*, 364 P.3d 1273, 1279-80 (N.M. Ct. App. 2015) ("Simply because the district court did not have jurisdiction to compel absent class members to arbitrate their claims does not mean that Defendants had no obligation to rely upon the [arbitration] clause before the district court granted Plaintiff's motion to certify."). As one court explained, in determining whether a defendant has waived its right to seek arbitration of the claims of a

---

[1]    It is worth noting that here, "the putative class members are readily definable . . . , limited in time and not prospective . . . , and all were at least potentially subject to arbitration agreements." *Morgan*, 2013 WL5034436, at *6. Ms. Kelly is not asking that Churchill Downs "be[] held to have waived a right to compel arbitration in perpetuity against unknown putative class members who do not yet exist." *Id.* That is why Plaintiffs are not arguing that Churchill Downs waived its right to seek arbitration against Ms. Thimmegowda.

Resp. to Renewed Mot. to Compel Arb.
Nos. 2:15-CV-00612-RBL, 2:19-CV-00199-RBL - 7

putative class member, "[the defendant's] conduct is the correct focus here, not whether putative class members are parties to the action." *Morgan*, 2013 WL 5034436, at *8. *See also Tennyson*, 364 P.3d at 1279 ("[T]he question is not whether or when absent class members would be bound by an order compelling arbitration; the question is whether Defendants waived their right to invoke their right to arbitrate disputes with absent class members.").

In support of their argument that Churchill Downs had no right to compel arbitration of Ms. Kelly's claims until she was added as a named plaintiff, Defendants cite *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185 (9th Cir. 1986). But *Letizia* doesn't say anything about how a defendant does or does not waive its right to compel arbitration against unnamed putative class members; it wasn't even a class action case. *Letizia* simply held that a defendant had not waived its right to compel arbitration by failing to seek arbitration until after a Supreme Court case changed the law to make the plaintiff's formerly non-arbitrable claims arbitrable. *Id.* at 1187.

This Court has already determined that Churchill Downs waived its right to compel arbitration of Ms. Kater's claims. Because Ms. Kelly was an unnamed member of the putative class represented by Ms. Kater, Churchill Downs waived its right to compel arbitration of Ms. Kelly's claims as well.

### 2. Big Fish waived its right to arbitrate as to both Ms. Kater and Ms. Kelly by sitting on the sidelines as Churchill Downs litigated this case.

Big Fish has also waived its right to seek arbitration against Ms. Kater and Ms. Kelly. Defendants argue that Big Fish has not engaged in any conduct inconsistent with its right to seek arbitration because it invoked its arbitration right in its first substantive filing in the case. (Mot. at 20-21.) But directly participating in litigation is not the only way to waive arbitration rights. *See Robinson v. Alston*, 596 F. App'x 871, 873 (11th Cir. 2015) (rejecting "inaction" argument that defendant's failure to "affirmatively invoke litigation machinery" meant that he could not have waived right to compel arbitration). To the contrary, multiple courts have held that sitting on the sidelines while someone *else* actively litigates your interests can waive your right to later

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

seek arbitration of the disputed matter. *See, e.g.*, *Booth v. Seaboard Fire & Marine Ins. Co.*, 285 F. Supp. 920, 925 (D. Neb. 1968) *aff'd in relevant part*, 431 F.2d 212 (8th Cir. 1970); *Bryant v. Clark*, 584 N.E.2d 687, 690 (Ohio 1992); *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1365-66 (11th Cir. 1995); *Robinson*, 596 F. App'x at 873.

That's exactly what happened here. Even before being added as a defendant, Big Fish admitted it was a necessary party under Fed. R. Civ. P. 19(a)(1)(B)(i) (Declaration of Todd Logan ("Logan Decl.") ¶ 3, Ex. 1 (Email from Emily Henn, Counsel for Big Fish Games, Inc.)), meaning that it "claims an interest relating to the subject of the action and is so situated that disposing of the action in [its] absence may . . . impair or impede [its] ability to protect the interest." Yet despite having an obvious and admitted interest in the fate of the Big Fish Casino, Big Fish was more than happy to sit back and let Churchill Downs litigate for years whether the Casino constitutes unlawful gambling under Washington law. Big Fish could have sought arbitration of this dispute with Ms. Kater when she first challenged the legality of the Big Fish Casino in her original complaint against Churchill Downs in 2015. It could have sought arbitration when Ms. Kater appealed the issue to the Ninth Circuit in 2016. It could have sought arbitration when Churchill Downs tried to substitute it in as a party in the Ninth Circuit because Big Fish was "the real party in interest." (9th Cir. dkt. 48 at 1.) It could have sought arbitration when the Ninth Circuit remanded the matter back to this Court in 2018. Yet at each of these junctures (and every point in between) Big Fish declined to seek arbitration. By failing to demand arbitration at any time during the four years its interests were being actively litigated by Churchill Downs, Big Fish has waived its right to do so now. *See Booth*, 285 F. Supp. at 925 ("[Defendant insurer], having full knowledge of the proceedings [between plaintiff and an uninsured motorist], allowed the plaintiff to bring suit against the uninsured motorist, prosecute that suit to judgment, and allowed the plaintiff to file this action before making any statement which could be argued to be a demand for arbitration. This is a waiver of the right to arbitration."); *Bryant*, 584 N.E.2d at 690 ("An insurer that . . . does not request arbitration

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

[during a suit between its insured and an uninsured motorist] has waived its right to submit the issues of liability and damages to arbitration."); *Morewitz*, 62 F.3d at 1366 (holding that defendant waived right to arbitration because "the appropriate time" to demand arbitration was during prior proceedings in another court where defendant's interests were being litigated, even though defendant was not a party to that litigation).

Contrary to Defendants' repeated assertion that Big Fish invoked its right to arbitrate at the "first available opportunity" (Mot. at 20-22), Big Fish didn't have to wait to be added as a defendant to this suit before seeking arbitration. Parties to an arbitration agreement can seek arbitration of a dispute before being sued and can seek federal courts' assistance in compelling a reluctant party to arbitrate. 9 U.S.C. § 4. *See also Univar USA, Inc. v. Haas TCM, Inc.*, No. C09-344, 2009 WL 2406332, at *1 (W.D. Wash. Aug. 3, 2009). As soon as Ms. Kater asserted that the Big Fish Casino was unlawful gambling and that she sought, among other things, to shut it down, there was a dispute between Ms. Kater and Big Fish that Big Fish could have sought to arbitrate. The purported arbitration agreement that Big Fish now seeks to enforce provides that "the arbitrator shall have the authority to grant any remedy that would otherwise be available in court." (*Kater* dkt. 206-1 at 23.) A declaratory judgment that Big Fish Casino was not unlawful gambling and that Big Fish was not liable to Ms. Kater would be one such remedy. *See* 28 U.S.C. § 2201; *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir. 1986) ("The Declaratory Judgment Act . . . was enacted to afford an added remedy to one who is uncertain of his rights and desires an early adjudication *without having to wait until he is sued by his adversary*.") (emphasis added). From day one, then, Big Fish could have demanded arbitration against Ms. Kater, whether or not it was named in this suit. Instead, it did nothing, letting Ms. Kater and Churchill Downs litigate for over four years the dispute it now seeks to send to arbitration. This "extended silence and delay in moving for arbitration" indicates a conscious decision to allow a judicial judgment on the merits of the allegedly arbitrable claims,

Resp. to Renewed Mot. to Compel Arb.
Nos. 2:15-CV-00612-RBL, 2:19-CV-00199-RBL - 10

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

which is inconsistent with a right to arbitrate. *Kater*, 2018 WL 5734656, at *4 (quoting *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016)).[2]

Defendants cite *Meyer v. Kalanick*, 291 F. Supp. 3d 526 (S.D.N.Y. 2018), for the proposition that Big Fish could not have engaged in any conduct inconsistent with its arbitration rights prior to being named as a defendant. (Mot. at 21-22.) As discussed above, however, that is not the case. In any event, *Meyer* is distinguishable. In *Meyer*, the plaintiff argued that Uber's CEO's explicit waiver of his right to arbitrate a dispute should be imputed to Uber when it was later added as a defendant. 291 F. Supp. 3d at 535. Here, Plaintiffs are making no such claim. Big Fish's waiver is based on its own failure to timely seek arbitration, not on any imputation to it of Churchill Downs's waiver. Furthermore, in *Meyer*, only six months had elapsed between the original complaint and Uber's motion to compel arbitration. (*See Meyer* dkt. 1, 91.) Here, over four years passed between Ms. Kater's complaint (*Kater* dkt. 1) and Big Fish's first assertion of a right to compel arbitration (*Kater* dkt. 100).

To allow Big Fish to belatedly demand arbitration because it wasn't named as a party to this litigation until March 2019 would be the worst kind of formalism. Big Fish should not be allowed to sit back and let its parent company litigate its interests for years, and then, when that fails, demand arbitration for yet another bite at the apple. Big Fish has waived its right to compel arbitration of the claims brought against it by Ms. Kater, and, for the reasons discussed in Part III.A.1 above, by Ms. Kelly as well.

### B.     Plaintiffs Never Agreed to Arbitrate Disputes With Defendants.

Regardless of waiver, Defendants' motion to compel arbitration should be denied because none of the Plaintiffs ever agreed to arbitrate this (or any other) dispute with any of the Defendants.

---

[2]     The "first available opportunity" cases cited by Defendants all involved motions to compel arbitration that could not have been brought prior to a later change in the law. *See Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 695-97 (9th Cir. 1986); *Conover v. Dean Witter Reynolds, Inc.*, 837 F.2d 867, 868 (9th Cir. 1988); *Letizia*, 802 F.2d at 1187; *Olivares v. Hispanic Broad. Corp.*, No. 00-00354, 2001 WL 477171, at *1 (C.D. Cal. Apr. 26, 2001). That is not the case here where, as discussed above, Big Fish could have sought arbitration as soon as Ms. Kater began challenging the legality of Big Fish Casino in 2015.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600  •  Fax: 206.682.2992

Arbitration is a matter of "consent, not coercion." *Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1092 (9th Cir. 2018) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) and *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Consequently, a court cannot compel arbitration in the absence of an agreement to arbitrate. *Id.* Further, where—as here—a motion to compel arbitration is opposed on the ground that the parties never agreed to arbitrate, "the presumption in favor of arbitrability does not apply." *Robbins v. Comcast Cable Commc'ns, LLC*, No. 19-cv-05603-RBL, 2019 WL 4139297, at *3 (W.D. Wash. Aug. 30, 2019) (quoting *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1018 (9th Cir. 2016)). In such cases, "the party seeking to compel arbitration . . . bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). "This burden is substantial and the Court must give the party denying the existence of an agreement to arbitrate 'the benefit of all reasonable doubts and inferences that may arise.'" *Hunichen v. Atonomi LLC*, No. 19-0615, 2019 WL 7758597, at *3 (W.D. Wash. Oct. 28, 2019) (quoting *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)).

Defendants argue that this is a question of arbitrability for an arbitrator, not for this Court. (Mot. at 14-15.) That is wrong. "Issues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007); *see also Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017); *Robbins*, 2019 WL 4139297, at *3 ("[F]ormation issues are decided by a district court, not an arbitrator."). As this Court has explained: "Put simply, without a contract, there is no Arbitration Agreement, no Arbitrator, and no Delegation of Power to an Arbitrator to decide the question of arbitrability." *Reichert v. Keefe Commissary Network, L.L.C.*, No. C17-5848RBL, 2019 WL 7833109, at *1 (W.D. Wash. Oct.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

30, 2019) (internal quotations omitted). The cases cited by Defendants all involved validity or enforcement issues, not—as here—a formation issue.[3] The question of whether the Parties ever agreed to arbitrate disputes between them is for this Court, not an arbitrator, to decide. *See, e.g., Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019).

To answer that question, this Court must "apply ordinary state-law principles that govern the formation of contracts." *Id.* (internal quotations omitted). Here, that means Washington law.[4] Like other states, Washington follows the objective manifestation theory of contracts. *Compare Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004) *with Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). "Accordingly, for a contract to form, the parties must objectively manifest their mutual assent." *Keystone*, 94 P.3d at 949. The "primary concern" behind requiring objective manifestation of assent "is to avoid trapping parties in surprise contractual negotiations." *Id.*

Because Plaintiffs didn't sign any documents or click any check-boxes—two common and straightforward methods of expressing assent—Defendants instead argue that Plaintiffs manifested their assent to the Big Fish Casino Terms of Use (and the arbitration clause contained therein) simply by using the app. (Mot. at 12.) But in order for use of the app to constitute an objective manifestation of assent to the app's terms, Plaintiffs need to have known that using the app could reasonably be interpreted as assent. *Hunichen*, 2019 WL 7758597, at *10 (manifestation of assent to an online contract can be accomplished through conduct "so long as the user . . . knows or has reason to know that the other party may infer from his conduct that he

---

[3]     Or, to be more precise, the cases cited by Defendants *in section IV.B of their brief* all involved validity or enforcement issues. In the "Legal Standard" section of their brief, Defendants correctly cite *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564-65 (9th Cir. 2014), which *did* involve formation issues, for the proposition that "[u]nder the FAA, the basic role for courts is to determine … whether a valid agreement to arbitrate exists[.]" (Mot. at 7.)

[4]     Federal courts apply the choice of law rules of the state in which they sit. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 973 (9th Cir. 2013). Under Washington choice of laws rules, Washington substantive law applies unless a conflict of law is presented to the court. *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 845 (9th Cir. 2001) (citing *Burnside v. Simpson Paper Co.*, 864 P.2d 937, 942 (Wash. 1994)). While Defendants purport to "not concede that Washington law applies in this case," they (1) admit that Washington substantive law applies in the absence of a conflict, (2) identify no conflict, and (3) cite Washington substantive law. (Mot. at 8 and n.5.)

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

assents") (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 232 (2d Cir. 2016)); *see also* Restatement (Second) of Contracts § 19(2); 1 Williston on Contracts § 4:2 (4th ed.).

Here, Defendants have wisely abandoned their previous position that the Big Fish Casino app's browsewrap provided adequate notice to Plaintiffs that using the app would bind them to the Terms of Use. *Compare Kater* dkt. 100 *and Thimmegowda* dkt. 33 *with Wilson*, 944 F.3d at 1220-21, *and Benson v. Double Down Interactive, LLC*, 798 F. App'x 117, 118-20 (9th Cir. 2020). Instead, Defendants now point to two other things they contend establish that Plaintiffs had the requisite knowledge: (1) customer support communications from Big Fish to each Plaintiff obliquely referencing the Terms of Use, and (2) Plaintiffs' complaints. Contrary to Defendants' assertion, however, neither shows—as they must—that Plaintiffs knew or should have known that simply by using the Big Fish Casino app they were binding themselves to an agreement with Defendants. Consequently, Plaintiffs' conduct did not manifest their assent to the Terms of Use, and did not form a contract to arbitrate. And even if the Court were to determine that an arbitration agreement existed with Big Fish Games, there is no basis under Washington law for either Churchill Downs or Aristocrat to enforce it.

### 1. Continuing to use the app after receiving the customer support communications did not create a contract.

None of the customer support communications identified by Defendants provided any clue to Plaintiffs that continuing to use the Big Fish Casino app would bind them to a contract with Defendants. The communication to Ms. Kater was in response to a complaint that someone had sent her an obscene photograph and made inappropriate comments through the Big Fish Casino app. The communication's only reference to the app's Terms of Use was an assurance that Big Fish "will investigate these incidents and take action in accordance with [its] policies and Terms of Use." (*Kater* dkt. 207-3.) Similarly, the reference to the Big Fish Casino Terms of Use in the communication with Ms. Kelly was part of a discussion about use of inappropriate language in the app. (*Kater* dkt. 207-2 ("I'd also recommend taking a look at our Terms of Use to ensure that you don't ever have to worry about that sort of thing in the future.").) And the

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

communication with Ms. Thimmegowda simply explained that "[p]er our Terms of Use," Big Fish was unable to issue refunds for purchased chips. (*Kater* dkt. 207-1.)

In Defendants' view, these communications were offers to enter into an agreement (the Terms of Use), which Plaintiffs accepted by continuing to use the Big Fish Casino app. But that's a wholly unreasonable reading of the Parties' actions. *See City of Everett v. Sumstad's Estate*, 631 P.2d 366, 367 (Wash. 1981) (when determining whether parties entered into a contract under Washington law, courts should "impute an intention corresponding to the reasonable meaning of a person's words and acts"). The customer support communications here weren't offers. They contained "no language that would put a reasonable [person] on notice that an offer to contract was on the table." *Robbins*, 2019 WL 4139297, at *5. Nor did they "raise a red flag vivid enough to cause a reasonable [person] to anticipate the imposition of a legally significant alteration" to the parties' relationship. *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 557 (1st Cir. 2005). Each of the customer support communications were sent in response to concerns raised by Plaintiffs about their experiences with the app, and simply made offhand reference to the Terms of Use in the course of those responses.

Additionally, even if the customer support communications could somehow be read as presenting an offer to agree to the Big Fish Casino Terms of Use, there's no evidence that Plaintiffs had any reason to know that continuing to use the app would constitute acceptance of that purported offer. In order to be bound by the Terms of Use, Plaintiffs need to have had not just notice of the *existence* of the Terms of Use, but notice that their continued use of the app would manifest their assent to those terms. *See, e.g.*, *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d 1285, 1293-94 (N.D. Cal. 2018) ("This Court . . . must determine whether a reasonable person in each Plaintiff's position would have known about the arbitration provision *and known that using the phone constituted acceptance of that provision*.") (emphasis added); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 124 (2d Cir. 2012) ("Ultimately . . . the touchstone of the analysis is whether reasonable people in the position of the

Resp. to Renewed Mot. to Compel Arb.
Nos. 2:15-CV-00612-RBL, 2:19-CV-00199-RBL - 15

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

parties would have known about the terms *and the conduct that would be required to assent to them*.") (emphasis added).

Here, none of the customer support communications to Plaintiffs "contain[ed] an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound." *Nguyen*, 763 F.3d at 1177 (9th Cir. 2014)*; see also Benson*, 798 F. App'x at 119 n.3 ("The notifications that courts have deemed sufficient have stated much more explicitly that continued use of a website binds a user to the terms of use."). "Even assuming [Plaintiffs] opened and read" the customer support communications, the communications did not "identify any conduct that could be construed as reflecting assent" to the terms of use. *Hunichen*, 2019 WL 7758597, at *9*; see also Knutson*, 771 F.3d at 566 ("[W]here there was no effective notice that action was required… [plaintiff's] continued use of the service after his receipt of the Customer Agreement did not manifest his assent to the provisions in the Customer Agreement.").[5]

In short, Plaintiffs' continued use of the Big Fish Casino app after receiving the customer support communications—communications about Big Fish's policies regarding inappropriate behavior and refunds—simply can't be reasonably read as manifesting their assent to be bound by the Terms of Use and the arbitration clause therein. "An offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Reichert*, 2019 WL 7833109, at *1 (quoting *Knutson*, 771 F.3d at 566). "If a party wishes to bind in writing another to an agreement to arbitrate future disputes, such purpose should be accomplished in a way that each party to the arrangement will fully and clearly comprehend that the agreement to

---

[5]    While the Terms of Use themselves state that "[b]y accessing or using any Big Fish Offering, you agree to be bound by these Terms of Use" (Mot. at 3), "this is unhelpful when the [customer support communication] itself does not inform [plaintiffs] that this is the case." *Robbins*, 2019 WL 4139297, at *5*; see also Nguyen*, 763 F.3d at 1174 (affirming district court's finding that Terms of Use were not binding where notification of method of manifesting assent to those terms was found only within the terms themselves).

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

arbitrate exists and binds the parties thereto." *Knutson*, 771 F.3d at 566. The customer support

communications to which Defendants point don't even come close.[6]

Finally, Defendants' reliance on the customer support communications to Ms. Kater and

Ms. Kelly are particularly problematic because they were made to a named plaintiff and a

putative class member during pending litigation. In Defendants' view, Big Fish presented a

litigation-ending arbitration agreement to Ms. Kater and Ms. Kelly while this case was ongoing,

not through counsel but through a customer support communication, and they accepted it—

likewise not through counsel, but by simply continuing to use the Casino app.

This Court has held that solicitations of putative class members' agreements to terms of

use must (1) reference the ability to opt-out of arbitration, (2) explain the rights at issue in the

litigation, and (3) advise the user to contact an attorney. *Kater v. Churchill Downs, Inc.*, 423 F.

Supp. 3d 1055, 1065 (W.D. Wash. 2019). The customer support communications did not include

any of those things, and were thus—to the extent Defendants want to treat them as an offer to

enter into an arbitration agreement—"coercive and misleading." *Id.* That alone is enough for the

Court to find that the customer support communications were insufficient to bind Ms. Kater and

Ms. Kelly to arbitration agreements.

But here, Defendants' position is even more unreasonable, because at the time those

communications were sent, they *knew* that both Ms. Kater and Ms. Kelly were represented by

counsel as it relates to this action. The communication with Ms. Kater took place in 2018, while

this action was pending. The communication with Ms. Kelly took place on March 2, 2019, but

Big Fish and all other defendants have known that Ms. Kelly was represented by counsel since at

least February 28, 2019, when Todd Logan apprised Defendants' attorneys from both Susman

---

[6] The customer support communications here stand in stark contrast to the communications at issue in the cases cited by Defendants. *See Pincaro v. Glassdoor, Inc.*, No. 16 Civ. 6870, 2017 WL 4046317, at *3, *6 (S.D.N.Y. Sept. 12, 2017) (email informed users that defendant was changing its terms of use, summarized certain of the changes (including changes to the arbitration clause), and warned users to delete accounts if they did not wish to be bound to changes); *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 195 (2d Cir. 2015) (emails warned plaintiff that she was agreeing to terms and conditions by confirming travel booking); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1162-64 (N.D. Cal. 2016) (plaintiffs checked boxes or clicked buttons stating they had read and agree to terms).

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

1  Godfrey and Covington of that fact. *See* Logan Decl. ¶ 4., Ex. 2 (February 28, 2019 Email from

2  Todd Logan).

3  Courts routinely reject the argument that defendants can sneak litigation-ending

4  arbitration agreements directly to plaintiffs, bypassing counsel. For example, in *Dasher v. RBC*

5  *Bank (USA)*, 882 F.3d 1017 (11th Cir. 2018), the defendant bank added an arbitration clause to

6  its account holder agreement during ongoing litigation involving overdraft charges. The bank

7  sought to compel arbitration, arguing that the plaintiff's continued use of his account without

8  opting out of the arbitration agreement manifested his assent to the agreement. The Eleventh

9  Circuit rejected the bank's argument, holding that the plaintiff had not assented to the arbitration

10  agreement for two reasons:

11       First, [the bank] distributed the proposed, purportedly retroactive and litigation-
12       ending [arbitration agreement] directly to [plaintiff], even though [the bank] knew
         [plaintiff] was an adverse litigant actively represented by counsel as to the very
13       issues raised in the amendment. Second, at the time [plaintiff] failed to opt out of
         the proposed amendment, he was forcefully and consistently resisting arbitration of
14       the pending litigation. At most, then, [the bank] demonstrated inconsistent
         communications from [plaintiff] (his implicit acceptance by failing to opt out and
15       his express resistance to arbitration) coupled with a failure on [the bank's] part to
         communicate through counsel. In this narrow context, we cannot overlook [the
16       bank's] failure to direct its purportedly court-evicting proposed amendment
         through known litigation counsel.

17  *Id*. at 1021-22; *see also Russell v. Citigroup, Inc.*, 748 F.3d 677, 680 (6th Cir. 2014)

18  ("[Plaintiff's] behavior—signing the contract [containing an arbitration clause] without

19  consulting counsel and carrying on with the lawsuit as before—would make little sense if

20  [plaintiff] understood the contract to cover the case at hand."). Indeed, Defendants' position—

21  that the customer support communication to Ms. Kater was an offer to end ongoing litigation—

22  raises serious ethical questions involving communication with represented parties. *See Dasher*,

23  882 F.3d at 1023-24 (holding that the "risks of communicating directly with the opposing party

24  as to a purportedly court-evicting [arbitration agreement] outside the presence of opposing

25  counsel" were relevant to determining whether the parties had manifested their assent to the

26  agreement); *Russell*, 748 F.3d at 680 ("[W]e do not mean to suggest that [defendant's] in-house

27

Resp. to Renewed Mot. to Compel Arb.
Nos. 2:15-CV-00612-RBL, 2:19-CV-00199-RBL - 18

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

counsel violated the rules of ethics. . . .  But we do mean to ask: Did [defendant] expect the contract to bear a meaning that would even raise these questions? . . . [N]ot likely.").

At the end of the day, and "imput[ing] an intention corresponding to the reasonable meaning of" the Parties' respective words and acts, *City of Everett*, 631 P.2d at 367, Plaintiffs did not agree to the Terms of Use by continuing to use the Big Fish Casino app after being sent the customer support communications.

> ### 2. Continuing to use the app after filing the complaints did not create a contract.

Nor can Plaintiffs' continued use of the app after filing their respective complaints be read as assent to be bound by the Terms of Use. Defendants argue that the fact that the complaints reference "terms of service" or "terms" establishes that Plaintiffs had actual knowledge of the Big Fish Casino Terms of Use at the time they filed their complaints such that their subsequent use of the app formed a contract. (Mot. at 5, 11-12.) But the complaints' references to terms are all allegations that users of the Big Fish Casino app are never presented with or asked to consent to any terms. (*Kater* dkt. 85 ¶¶ 27-28, 32-33, 37, 42; *Thimmegowda* dkt. 1 ¶¶ 31-32, 36-38, 41, 45-46.) That is the complete opposite of the cases cited by Defendants, *George v. Midland Funding, LLC*, No. 18-cv-15830, 2019 WL 2591163 (D.N.J. June 25, 2019) and *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012). In *George*—unlike here—the plaintiff didn't dispute that she was bound by the defendants' terms and conditions; to the contrary, the legal theory alleged in her complaint (that deceptive statements were made about interest charged in violation of the terms) was "inextricably linked" to those terms. 2019 WL 2591163, at *1. Similarly, in *Fteja*, the plaintiff's complaint alleged that he had complied with Facebook's terms of use, not—as here—that no terms were adequately presented. 841 F. Supp. 2d at 836-37. Even more importantly in *Fteja* was the fact that in signing up for Facebook, users like plaintiff had to click a "Sign Up" button immediately above text that read "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service." *Id.* at 834-35. Defendants' cases simply do not support their position that Plaintiffs' continued use of the Big

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

Fish Casino app after filing complaints referencing the app's failure to present or seek consent to the Terms of Use satisfies the requirements of contract formation. *See, e.g.*, *Rushing v. Viacom Inc.*, No. 17-cv-04492, 2018 WL 4998139, at *1 (N.D. Cal. Oct. 15, 2018) (rejecting actual notice argument where "[t]he only thing [defendant] points to as evidence of actual notice is plaintiffs' complaint").

Defendants also argue that date limitations in the proposed class definitions "demonstrate [Plaintiffs'] awareness" of the Terms of Use. (Mot. at 11.) But the proposed class definitions represent the litigation strategy of Plaintiffs' counsel, not any actual knowledge of the Plaintiffs. *See Rushing*, 2018 WL 4998139, at *1 (holding that "[t]he possibility that one of plaintiffs' lawyers read and decided" to add something to the complaint that suggested possible awareness of terms could not "bear the weight [defendant] trie[d] to place upon it"). Likewise, the fact that Plaintiffs' counsel were aware of the Terms of Use when they litigated Churchill Downs's belated motion to compel arbitration of Ms. Kater's claim cannot be imputed to Plaintiffs. The only case cited by Defendants in support of the proposition that attorney knowledge of terms of use is imputed to clients is the magistrate's report and recommendation in *Nicosia v. Amazon.com, Inc.*, No. 14-cv-4513, 2017 WL 10111078, at *11 (E.D.N.Y. Aug. 18, 2017). But the magistrate's determination that Nicosia's continued use of Amazon following his counsel's learning of Amazon's arbitration provision during the litigation was expressly not adopted by the district court. *Nicosia v. Amazon.com, Inc.*, No. 14 CV 4513, 2019 WL 2482674, at *16 (E.D.N.Y. June 14, 2019). The district court instead held that Nicosia was bound to Amazon's arbitration agreement through his wife's pre-complaint enrollment in a program called Amazon Mom. *Id.* at *10-15. Further, any knowledge gained by Plaintiffs' counsel while representing Ms. Kater cannot be imputed to Ms. Kelly or Ms. Thimmegowda. *See In re Perle*, 725 F.3d 1023, 1028 (9th Cir. 2013) ("[Debtor] has identified no case, nor are we able to find one, that imputes to a client knowledge that his lawyer gained while representing a *different* client. In fact, the authority is to the contrary.").

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

But the biggest problem with Defendants' reliance on the complaints to try to establish the existence of an agreement to arbitrate is that their theory once again ascribes completely unreasonable meaning to the Parties' actions. Under Defendants' reasoning, Plaintiffs—while engaged in ongoing litigation against Defendants—accepted Defendants' offer to arbitrate these disputes. But rather than having their lawyers communicate this to Defendants' counsel, Plaintiffs instead manifested their agreement to the arbitration clause in the Terms of Use simply by continuing to use the app (an app, by the way, that the record shows is addictive). Such a reading does not "correspond[] to the reasonable meaning of [Plaintiffs'] words and acts." *City of Everett*, 631 P.2d at 367.

### 3. Plaintiffs never agreed to arbitration with Churchill Downs or Aristocrat.

Even assuming that Plaintiffs agreed to arbitration by assenting to a contract with Big Fish Games, which they did not, they certainly did not agree to arbitration with Churchill Downs or Aristocrat. The general rule is that only signatories to an arbitration agreement can enforce it. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). Churchill Downs and Aristocrat are not signatories to the Terms of Use, and they don't claim to be. Instead, each argues that it is a third party beneficiary entitled to enforce the arbitration agreement. (Mot at 18-20.) Whether a non-signatory to an arbitration agreement can enforce that agreement is a matter of state contract law. *Murphy*, 724 F.3d at 1229. If Washington contract law does not permit Churchill Downs or Aristocrat to enforce the contract as third party beneficiaries, then they cannot do so.

Under Washington law, "creation of a third party beneficiary contract requires that the parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract." *Ramos v. Arnold*, 169 P.3d 482, 487 (Wash. Ct. App. 2007). When a contract expressly disclaims third party rights, then that contract has no third party beneficiaries, and third parties are prohibited from enforcing the contract. *Haselwood v. Bremerton Ice Arena, Inc.*, 155 P.3d 952, 961 (Wash. Ct. App. 2007), *aff'd*, 210 P.3d 308 (Wash. 2009) ("RV Associates cannot recover as a third party beneficiary to the concession agreement

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

because that agreement expressly disclaimed any third party rights."); *Riggins v. Bechtel Power Corp.*, 722 P.2d 819, 825-26 (Wash Ct. App. 1986) ("Although Bechtel claims to be a third party beneficiary . . . the contract expressly provides that no provision is intended or is to be construed to be for the benefit of a third party. This clause defeats Bechtel's contention that it is a third party beneficiary.").

Here, the Terms of Use state specifically that "You agree that these Terms of Use are not intended to confer and do not confer any rights or remedies upon any third party." (*Kater* dkt. 206-1 at 11, 22.) The Terms also state that they are "entered into between you and Big Fish Games, Inc," and nobody else (*Id.* at 6, 16.) Because the plain language of the Terms expressly disclaims any intent to grant any rights to third parties, Aristocrat and Churchill Downs are not third party beneficiaries, and they can't seek arbitration pursuant to the Terms of Use.[7]

## C.      Defendants Don't Get More Discovery.

One last point: Defendants argue that "plaintiffs have never asserted that they were not on notice of the [Terms of Use], or that they did not manifest acceptance of those terms by continuing to play [the Big Fish Casino]." (Mot. at 12.) But that's not true. Being "on notice" and "manifest[ing] acceptance" are legal conclusions, and Plaintiffs have always taken the position that using the app didn't bind them to the Terms of Use. Defendants seem to be complaining that Plaintiffs have not proffered affidavits attesting to some underlying facts about what they did or didn't see, or what they did or didn't think they were doing. But Defendants' complaint flips the Parties' burdens on their head. As noted above, Defendants "bear[] the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia*, 845 F.3d at 1283. Any burden on Plaintiffs to present evidence rebutting the existence of an agreement to arbitrate arises only after Defendants have first met their own

---

[7]        Churchill Downs and Aristocrat also briefly suggest that they can enforce the arbitration agreements by virtue of the parent-subsidiary relationship, but the case they cite merely relies on "ordinary principles of contract and agency," *Townsend v. Quadrant Corp.*, 224 P.3d 818 (Wash. Ct. App. 2009), which (as explained above) prohibit third parties from enforcing the Terms of Use. Further, Churchill Downs has expressly disclaimed any authority on the part of Big Fish Games to enter into agreements on its behalf. (*Kater* dkt. 203 ¶ 17.)

Resp. to Renewed Mot. to Compel Arb.
Nos. 2:15-CV-00612-RBL, 2:19-CV-00199-RBL - 22

burden of establishing the existence of such an agreement—something they haven't done here. *See Mcghee v. N. Am. Bancard, LLC*, No. 17-56248, 2019 WL 1057854, at *1 (9th Cir. Mar. 6, 2019) ("[Defendant] did not make a 'prima facie' showing that [plaintiff] assented to the User Agreement and the arbitration clause; therefore, it was unnecessary for [plaintiff] to provide rebutting evidence."); *Wilson v. Huuuge, Inc.*, 351 F. Supp. 3d 1308, 1314 n.1 (W.D. Wash. 2018) (rejecting argument that plaintiff was likely to have viewed terms of use at some point, noting that "[g]iven that the party seeking to compel arbitration bears the burden of proving that a contract was formed, this sort of speculation is not enough to prove actual knowledge"), *aff'd* 944 F.3d 1212 (9th Cir. 2019).[8]

Defendants thus argue that they are "at a minimum, entitled to discovery, including depositions, to probe plaintiffs' denials." (Mot. at 14 n.6.) But other than during the time this case was stayed pending decisions in the similar Ninth Circuit cases, discovery—including depositions—has been available to Defendants; they just have chosen not to pursue it. To the extent they are *now* seeking such discovery in a footnote of a motion to compel arbitration, it's "too little, too late." *Wilson*, 944 F.3d at 1220. As the Ninth Circuit has explained:

> [Defendant] wanted it both ways—if it won the motion to compel, great; if it didn't win, only then did it want discovery. Although [defendant] had the burden to present evidence of actual notice, it rolled the dice and chose not to pursue additional discovery at the outset[.]

*Id.* Here, Defendants have likewise rolled the dice by moving to compel arbitration based solely on (1) the customer support communications and (2) Plaintiffs' complaints. If the motion fails—which it should, for the reasons discussed—Defendants don't get another roll.[9]

## IV. CONCLUSION

Defendants' motion to compel arbitration should be denied.

---

[8] The defendant in *Wilson* made—and this Court rejected—the same argument that Defendants make here: "[w]ithout a denial from Plaintiff that he failed to [see a link to the terms], the Court should conclude that Plaintiff is bound." Reply Supp. Mot. Compel Arbitration, *Wilson v. Huuuge, Inc.*, No. 18-cv-05276, dkt. 39 at 8:5-7 (Sept. 24, 2018).

[9] Defense counsel expressly acknowledged that filing a motion to compel arbitration without seeking additional discovery would waive their right to such discovery. (*See* Mar. 4, 2020 Hrg. Transcript at 12:13-14.)

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600 • Fax: 206.682.2992

Dated: April 24, 2020

Respectfully submitted,

**CHERYL KATER, SUZIE KELLY, and MANASA THIMMEGOWDA,** individually and on behalf of all others similarly situated,

By: /s/ Todd Logan

Rafey S. Balabanian*
rbalabanian@edelson.com
Todd Logan*
tlogan@edelson.com
Brandt Silver-Korn*
bsilverkorn@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300 / Fax: 415.373.9435

Alexander G. Tievsky*
atievsky@edelson.com
EDELSON PC
350 N LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370 / Fax: 312.589.6378

By: /s/ Cecily C. Shiel

TOUSLEY BRAIN STEPHENS PLLC
Cecily C. Shiel, WSBA #50061
cshiel@tousley.com
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Cheryl Kater, Suzie Kelly and Manasa Thimmegowda*

Resp. to Renewed Mot. to Compel Arb.
Nos. 2:15-CV-00612-RBL, 2:19-CV-00199-RBL - 24

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200, Seattle, Washington 98101
Tel: 206.682.5600  •  Fax: 206.682.2992