UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| CHERYL KATER and SUZIE KELLY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>CHURCHILL DOWNS INCORPORATED, a Kentucky corporation, and BIG FISH GAMES, INC., a Washington corporation,<br><br>Defendants. | Case No.: 2:15-cv-00612-RBL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL ARBITRATION**<br><br>**Oral Argument Requested**<br><br>**Note on Motion Calendar: May 1, 2020** |
| MANASA THIMMEGOWDA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>BIG FISH GAMES, INC., a Washington corporation; ARISTOCRAT TECHNOLOGIES INC., a Nevada corporation; ARISTOCRAT LEISURE LIMITED, an Australian corporation; and CHURCHILL DOWNS INCORPORATED, a Kentucky corporation,<br><br>Defendants. | Case No.: 2:19-cv-00199-RBL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL ARBITRATION**<br><br>**Oral Argument Requested**<br><br>**Note on Motion Calendar: May 1, 2020** |

DEFENDANTS' REPLY IN SUPPORT OF RENEWED
MOTION TO COMPEL ARBITRATION (2:15-cv-00612-
RBL; 2:19-cv-00199-RBL)

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON 98104-7097
+1 206 839 4300

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ........................................................................................................ 2

    A. Plaintiffs Agreed to Arbitrate Because They Played BFG Games with Knowledge or Reason to Know that Doing So Manifested Assent to Arbitrate. ....................... 2

        1. Plaintiffs' Complaints and Communications with BFG Demonstrate Their Notice of the Terms of Use Prior to Filing Their Claims. ......................... 2

        2. Plaintiffs' Knowledge of the Terms of Use Conferred At Least Constructive Notice of their Contents. ....................................................... 5

        3. Plaintiffs Accepted the Terms of Use by Continuing to Play BFG Games. 6

    B. Defendants Have Not Waived Their Rights to Compel Arbitration. ..................... 7

        1. CDI Did Not Act Inconsistently With Any Existing Right to Compel Ms. Kelly's Claims to Arbitration. ................................................................... 7

        2. BFG Did Not Act Inconsistently With Any Existing Arbitration Right. .... 9

        3. Plaintiffs Have Not Been Prejudiced By Defendants' Timely Invocation of Their Arbitration Rights. .......................................................................... 10

    C. As BFG "Affiliates," CDI and Aristocrat Are Entitled to Enforce the Terms of Use Arbitration Agreement. .................................................................................. 11

III. CONCLUSION ................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Fred Lind Manor*,
    103 P.3d 773 (Wash. 2004) ..................................................................................................12

*Booth v. Seaboard Fire & Marine Ins. Co.*,
    285 F. Supp. 920 (D. Neb. 1968) .........................................................................................10

*Britton v. Co-op Banking Grp.*,
    916 F.2d 1405 (9th Cir. 1990) ..............................................................................7, 9, 10, 11

*Bryant v. Clark*,
    584 N.E.2d 687 (Ohio 1992) ................................................................................................10

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
    2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ...........................................................................6

*Cotter v. Lyft, Inc.*,
    176 F. Supp. 3d 930 (N.D. Cal. 2016) ...................................................................................8

*Cox v. CA Holdings Inc.*,
    2015 WL 631393 (S.D. Ind. Feb. 13, 2015) ........................................................................12

*Dasher v. RBC Bank (USA)*,
    882 F.3d 1017 (11th Cir. 2018) .............................................................................................4

*Edwards v. First Am. Corp.*,
    289 F.R.D. 296 (C.D. Cal. 2012) .................................................................................4, 8, 11

*Elliott v. KB Home N. Carolina, Inc.*,
    752 S.E.2d 694 (N.C. 2013) .................................................................................................11

*Fisher v. A.G. Becker Paribas Inc.*,
    791 F.2d 691 (9th Cir. 1986) ...............................................................................................10

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ...................................................................................2

*George v. Midland Funding, LLC*,
    2019 WL 2591163 (D.N.J. June 25, 2019) ...........................................................................2

*Grigsby v. DC 4400, LLC*,
    2016 WL 7115903 (C.D. Cal. Dec. 5, 2016) .......................................................................11

DEFENDANTS' REPLY IN SUPPORT OF RENEWED
MOTION TO COMPEL ARBITRATION (2:15-cv-00612-
RBL; 2:19-cv-00199-RBL)

- ii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON 98104-7097
+1 206 839 4300

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
    716 F.3d 764 (3d Cir. 2013) ..........................................................................................................5

*Gutierrez v. Wells Fargo Bank, NA*,
    889 F.3d 1230 (11th Cir. 2018) ....................................................................................................8

*Hamby v. Power Toyota Irvine*,
    2012 WL 13036860 (S.D. Cal. Mar. 22, 2012) ............................................................................7

*Haselwood v. Bremerton Ice Arena, Inc.*,
    155 P.3d 952 (Wash. Ct. App. 2007) ..........................................................................................12

*Hernandez v. Dickey*,
    2018 WL 5906031 (C.D. Cal. May 10, 2018) ..............................................................................3

*Himber v. Live Nation Worldwide, Inc.*,
    2018 WL 2304770 (E.D.N.Y. May 21, 2018) ..............................................................................3

*In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*,
    790 F.3d 1112 (10th Cir. 2015) ....................................................................................................8

*In re Facebook Biometric Info. Privacy Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ....................................................................................4, 5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2011 WL 1753784 (N.D. Cal. May 9, 2011) ................................................................................7

*In re Universal Serv. Fund Tel. Billing Practices*,
    320 F. Supp. 2d 1135 (D. Kan. 2004) ..........................................................................................8

*Kingsbury v. U.S. Greenfiber, LLC*,
    2012 WL 2775022 (C.D. Cal. June 29, 2012) .........................................................................8, 11

*M.A. Mortenson Co. v. Timberline Software Corp.*
    998 P.2d 305 (Wash. 2000) ..........................................................................................................5

*Meyer v. Kalanick*,
    291 F. Supp. 3d 526 (S.D.N.Y. 2018) ........................................................................................10

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ...........................................................................................................6

*Miebach v. Colasurdo*,
    685 P.2d 1074 (Wash. 1984) ........................................................................................................5

*Mora v. Harley-Davidson Credit Corp.*,
    2012 WL 1189769 (E.D. Cal. Apr. 9, 2012) ................................................................................8

DEFENDANTS' REPLY IN SUPPORT OF RENEWED
MOTION TO COMPEL ARBITRATION (2:15-cv-00612-
RBL; 2:19-cv-00199-RBL)

- iii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON 98104-7097
+1 206 839 4300

*Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)*,
   62 F.3d 1356 (11th Cir. 1995) ...........................................................................................10

*Morgan v. AT&T Wireless Services, Inc.*,
   2013 WL 5034436 (Cal. Ct. App. Sept. 13, 2013) ...........................................................11

*Nicosia v. Amazon.com, Inc.*,
   2017 WL 10111078 (E.D.N.Y. Aug. 18, 2017)..................................................................3

*Nicosia v. Amazon.com, Inc.*,
   384 F. Supp. 3d 254 (E.D.N.Y. 2019) ................................................................................3

*Olivares v. Hispanic Broad. Corp.*,
   2001 WL 477171 (C.D. Cal. Apr. 26, 2001) ......................................................................8

*Prouty v. Gores Tech. Grp.*,
   121 Cal. App. 4th 1225 (2004) .........................................................................................12

*Riggins v. Bechtel Power Corp.*,
   722 P.2d 819 (Wash Ct. App. 1986).................................................................................12

*Robinson v. Alston*,
   596 F. App'x 871 (11th Cir. 2015) ...................................................................................10

*Rushing v. Viacom Inc.*,
   2018 WL 4998139 (N.D. Cal. Oct. 15, 2018).....................................................................3

*Russell v. Citigroup, Inc.*,
   748 F.3d 677 (6th Cir. 2014) ..............................................................................................4

*Standard Fire Ins. Co. v. Knowles*,
   568 U.S. 588 (2013)............................................................................................................7

*Tatham v. Rogers*,
   283 P.3d 583 (Wash. 2012)................................................................................................3

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
   492 F. App'x 150 (2d Cir. 2012) .....................................................................................11

*Townsend v. Quadrant Corp.*,
   153 Wash. App. 870 (2009)..............................................................................................12

*Univar USA, Inc. v. Haas TCM, Inc.*
   2009 WL 2406332 (W.D. Wash. Aug. 3, 2009) .................................................................9

*Van Ness Townhouses v. Mar Indus. Corp.*,
   862 F.2d 754 (9th Cir. 1989) .........................................................................................7, 10

DEFENDANTS' REPLY IN SUPPORT OF RENEWED
MOTION TO COMPEL ARBITRATION (2:15-cv-00612-
RBL; 2:19-cv-00199-RBL)

- iv -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON 98104-7097
+1 206 839 4300

*Wilson v. Huuuge*,
    944 F.3d 1212 (9th Cir. 2019) ...................................................................................................5

*Wilson v. Huuuge*,
    351 F. Supp. 3d 1308 (W.D. Wash. 2018) ..................................................................................5

DEFENDANTS' REPLY IN SUPPORT OF RENEWED
MOTION TO COMPEL ARBITRATION (2:15-cv-00612-
RBL; 2:19-cv-00199-RBL)

- v -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

# I. INTRODUCTION

Before plaintiffs' early 2019 filing of the claims that defendants seek to compel to arbitration, plaintiffs were aware that the BFG Terms of Use governed their play of BFG games—the conduct that forms the basis for their claims. Since March 2015, those Terms of Use have required that any disputes relating to gameplay be resolved by individual arbitration. By continuing to play BFG games with notice of the Terms of Use, plaintiffs manifested their agreement to the Terms of Use, including their agreement to arbitrate claims and waive any right to class action relief.

In their Opposition, plaintiffs do not disclaim that they knew of the Terms of Use prior to filing their claims. Nor do they dispute that, prior to filing their claims, they were expressly alerted to the existence of the Terms of Use in communications with BFG customer support personnel. And plaintiffs confirmed their awareness by repeatedly alleging the existence of the Terms of Use in their Complaints. Plaintiffs nevertheless argue that they are not bound to *specific* provisions in the Terms of Use—namely, the arbitration provision and class action waiver—in the absence of evidence showing that defendants provided them express notice of such specific provisions. But Washington law makes clear that plaintiffs' notice of the existence of the Terms of Use and their application to the games at issue constitutes notice of the terms therein, to which they agreed when they continued playing the games.

Plaintiffs also argue that BFG and CDI waived their rights to arbitrate certain of plaintiffs' claims, and that defendants Aristocrat and CDI may not enforce the Terms of Use. But the delegation clause in the arbitration agreement requires that, once the Court determines that plaintiffs agreed to the Terms of Use, any questions of arbitrability—including waiver or the enforceability of the arbitration agreement by particular parties—are left to the arbitrator to decide. Even if the parties' agreement permitted the Court to reach these arguments, the Court should reject them: Defendants invoked their arbitration rights consistently and at the earliest opportunity—namely, as soon as the claims defendants seek to compel to arbitration were filed. Plaintiffs' contention that defendants should have sought arbitration of plaintiffs' claims *before those claims existed* is nonsensical and not supported by law. Further, the Terms of Use specifically provide that BFG affiliates, including CDI and Aristocrat, are entitled to enforce the arbitration agreement.

Plaintiffs' latest effort to avoid the consequences of their contractual obligations should therefore be rejected, and the Court should compel arbitration of plaintiffs' claims.

## II.     ARGUMENT

### A.    Plaintiffs Agreed to Arbitrate Because They Played BFG Games with Knowledge or Reason to Know that Doing So Manifested Assent to Arbitrate.

Plaintiffs' allegations in their Complaints, coupled with their direct communications with BFG, demonstrate that plaintiffs had actual and/or inquiry notice of the Terms of Use prior to filing the claims that are the subject of defendants' Motion. Mot. at 8-12. Plaintiffs do not dispute this evidence, but argue that notice as to the Terms of Use does not equate to notice of their specific contents. *See* Opp. at 14-21. That is wrong. Under Washington law, plaintiffs' actual and inquiry notice of the Terms of Use placed them on constructive notice of the *contents* of the Terms of Use, including (a) the arbitration and class waiver provision and (b) that continued gameplay constituted acceptance of the Terms. Plaintiffs do not dispute that they continued to play BFG games with such notice, *see id.*; in doing so, they agreed to the Terms of Use, including the arbitration provision therein. Mot. at 12-14.

#### 1.    Plaintiffs' Complaints and Communications with BFG Demonstrate Their Notice of the Terms of Use Prior to Filing Their Claims.

The evidence shows—and plaintiffs do not dispute—that plaintiffs were aware of the Terms of Use before filing the claims that defendants seek to compel to arbitration. Mot. at 10-13. As described in defendants' Motion, plaintiffs repeatedly reference the existence of "Big Fish's terms" throughout their Complaints. *See Kater* Compl. (Dkt. 85) ¶¶ 32–33, 37; *Thimmegowda* Compl. (Dkt. 1) ¶¶ 36–37, 41, 45. Such allegations unquestionably show plaintiffs' knowledge of the Terms of Use at least as of the time they filed their claims. *See George v. Midland Funding, LLC*, 2019 WL 2591163, at *3 (D.N.J. June 25, 2019); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836 (S.D.N.Y. 2012).[1] Plaintiffs argue that they also alleged that unidentified "[c]onsumers" were (at one point in time) not expressly "asked to consent to Big Fish's terms before playing" Big Fish Casino. *See* Opp. at 19. That is beside the point; it

---

[1] Plaintiffs try to distinguish *George* and *Fteja* on the ground that the plaintiffs in those cases expressly pled their agreement to the Terms of Use. *See* Opp. at 19. But that is a distinction without a difference; here, plaintiffs' allegations demonstrate *notice* of the Terms of Use, and their continued gameplay constitutes acceptance of—and agreement to—the terms. *See* Mot. at 10-13.

DEFENDANTS' REPLY IN SUPPORT OF RENEWED
MOTION TO COMPEL ARBITRATION (2:15-cv-00612-
RBL; 2:19-cv-00199-RBL)
- 2 -
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON  98104-7097
+1 206 839 4300

does not change the fact that *plaintiffs* knew of "Big Fish's terms" at the time they brought their claims. *Kater* Compl. ¶ 33. Plaintiffs' citation to *Rushing v. Viacom Inc.*, 2018 WL 4998139, at *1 (N.D. Cal. Oct. 15, 2018), is equally unavailing. Opp. at 20. Unlike plaintiffs here, the plaintiff in *Rushing* did not plead awareness of the terms of use or even reference the terms; the plaintiff's complaint contained a quote from a webpage that elsewhere referenced the applicable terms of use, and there was no evidence that either the plaintiff or counsel was aware of those terms. *Rushing*, 2018 WL 4998139, at *1.

Moreover, in tying their class definitions to the date BFG introduced the arbitration provision (March 23, 2015), *Kater* Dkt. 85 ¶ 48; *Thimmegowda* Dkt. 1 ¶ 53, plaintiffs' Complaints further confirm their awareness of the Terms of Use and the arbitration provision therein. That date otherwise has no connection to plaintiffs' gameplay or allegations, and plaintiffs' Opposition does not contend otherwise. Rather, plaintiffs claim, without citing any sworn declarations or other evidence, that "the proposed class definitions represent the litigation strategy of Plaintiffs' counsel, not any actual knowledge of the Plaintiffs." Opp. at 20. But plaintiffs are bound by their allegations; they cannot simply disavow them when convenient. *See Hernandez v. Dickey*, 2018 WL 5906031, at *11 n.26 (C.D. Cal. May 10, 2018) ("Plaintiff is bound by the allegations in his complaint[.]"). And, tellingly, nowhere do plaintiffs disclaim their awareness of the Terms of Use at the time they filed their claims. *See Himber v. Live Nation Worldwide, Inc.*, 2018 WL 2304770, at *4 (E.D.N.Y. May 21, 2018) (granting motion to compel arbitration when the plaintiff did "not deny having actually seen or read the Terms of Use, including the arbitration provision" when using defendant's website).

In any event, counsel's conceded notice of the arbitration agreement is properly imputed to plaintiffs. *See Tatham v. Rogers*, 283 P.3d 583, 601 (Wash. 2012) ("The knowledge of an attorney is imputed to the client."); *Nicosia v. Amazon.com, Inc.*, 2017 WL 10111078, at *11 (E.D.N.Y. Aug. 18, 2017) (plaintiff was on notice, through counsel, of defendant's arbitration provision).[2]

Plaintiffs' allegations reflecting their knowledge of "Big Fish's terms" are not surprising in light

---

[2] Plaintiffs' assertion that the district court in *Nicosia* "expressly" did not adopt this portion of the report and recommendation is inaccurate. Opp. at 20; *see Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 277 (E.D.N.Y. 2019) (denying "Plaintiff's objections to those portions of the R&R which concluded that Plaintiff had actual . . . and constructive . . . notice of the [conditions of use]").

of earlier communications between BFG personnel and plaintiffs that expressly referenced and provided hyperlinks to the Terms of Use. *See* Mot. at 10. Plaintiffs urge the Court to disregard this damaging evidence for two reasons, each of which lacks merit. *First*, plaintiffs object that the communications from BFG to plaintiffs did not take the form of an in-game pop-up that complied with the Court's November 2019 requirements relating to such pop-ups. Opp. at 17. Plaintiffs cite no authority in support of their baseless suggestion that in-game pop-ups are the only way to generate actual notice of a company's terms of use, and a large body of case law forecloses any such suggestion. *See, e.g.*, *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (email to user sufficient to confer notice of terms of use). Notably, the Court ordered the November 2019 in-game pop-up requirements in relation to "initial communication[s] directed to putative class members," *Kater* Dkt. 137 at 12—*not* in relation to BFG customer support responses to user-initiated communications. Nor did the Court suggest that BFG must ignore user communications if responding would require reference to the Terms of Use; indeed, the Court has confirmed that "defendants' domain is in their game and in their communication with their clientele[.]" Mar. 4, 2020 Hr'g Tr. at 5:25-6:1.

*Second*, plaintiffs claim that it was inappropriate for BFG personnel to communicate with plaintiffs about the Terms of Use because they were represented by counsel at the time.[3] *See* Opp. at 17-18. By that logic, however, it was *plaintiffs'* initiating communications that were improper, because they were directed to a represented party (BFG), not counsel. Plaintiffs' cited authority is inapposite, as those cases involved the unsolicited presentation of new terms to a represented litigant. *See Dasher v. RBC Bank (USA)*, 882 F.3d 1017, 1021 (11th Cir. 2018); *Russell v. Citigroup, Inc.*, 748 F.3d 677, 679 (6th Cir. 2014). Here, by contrast, BFG responded to communications initiated by plaintiffs and directed plaintiffs to the Terms of Use that govern every BFG user's gameplay, and which had not materially changed since March 2015, before any plaintiff filed any claim against defendants.

Finally, if the Court concludes that the facts already advanced are not sufficient to establish

---

[3] Plaintiffs' counsel refused, for months, to provide defendants with the user-identifying information that BFG needed to determine who, amongst its user population, plaintiffs' counsel claimed to represent. *See Kater* Dkts. 142 at 4, 143-1. Such information was provided only after the Court permitted defendants to serve limited discovery in connection with defendants' Motion.

plaintiffs' actual or inquiry notice, then defendants are entitled to discovery as to that notice. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (discovery appropriate to probe disputed factual issues not settled by arbitration motion briefing). Plaintiffs' argument to the contrary, in reliance on *Wilson v. Huuuge, Inc.*, is unavailing: in that case, the defendant did not present *any* evidence of the plaintiff's notice of the terms of service (instead only suggesting that it was "likely" the plaintiff viewed the terms) and did not seek arbitration-related discovery until its reply in support of the motion to compel arbitration. 351 F. Supp. 3d 1308, 1315 (W.D. Wash. 2018); *see also Wilson v. Huuuge*, 944 F.3d 1212, 1220 (9th Cir. 2019). Here, defendants have already presented ample evidence of plaintiffs' notice, and already requested additional discovery if the Court is not otherwise inclined to grant the motion to compel arbitration. *See* Mot. at 14.

### 2. Plaintiffs' Knowledge of the Terms of Use Conferred At Least Constructive Notice of their Contents.

Plaintiffs incorrectly argue that they cannot be bound by specific terms in the Terms of Use without evidence that those specific terms were expressly communicated to them. *See* Opp. at 14-16. That argument is contrary to Washington law, under which "knowledge of facts sufficient to excite inquiry is constructive notice of all that the inquiry would have disclosed." *Miebach v. Colasurdo*, 685 P.2d 1074, 1078 (Wash. 1984). Communications expressly referencing terms of use are routinely held to place the recipient on inquiry notice of those terms. *See, e.g.*, *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d at 1167 ("individualized [email] notice [of the terms] in combination with a user's continued use is enough for notice and assent"). Plaintiffs attempt to distinguish *In re Facebook* by suggesting that it involved clickwrap agreements. Opp. at 17 n.6. Although the *In re Facebook* plaintiffs had clicked to agree to *earlier* terms, the Court found that they agreed to the *then-current* terms as a result of email notice, and not through any clickwrap. 185 F. Supp. 3d at 1162-67. *M.A. Mortenson Co. v. Timberline Software Corp.*, which involved a software license agreement, is also instructive; there, the court held that, "[e]ven accepting the [plaintiff's] contention [that] it never saw the terms of the license" agreement, the plaintiff had notice of them because "it was not necessary for [the plaintiff] to actually read the agreement in order to be bound by it." 998 P.2d 305, 313 (Wash. 2000).

Here, plaintiffs had notice that the Terms of Use applied to BFG games. *See supra* Section

DEFENDANTS' REPLY IN SUPPORT OF RENEWED
MOTION TO COMPEL ARBITRATION (2:15-cv-00612-
RBL; 2:19-cv-00199-RBL)

- 5 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON 98104-7097
+1 206 839 4300

II.A.1. Given their awareness of the Terms of Use, plaintiffs were legally on notice of their contents, including terms requiring individual arbitration of any disputes and specifying that continued use of BFG games would constitute acceptance of the Terms. *See Mortenson*, 998 P.2d at 313; *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79 (2d Cir. 2017) (hyperlink to "Terms of Service" placed "reasonably prudent smartphone user" on inquiry notice of the terms, even if user did not open the link). And unlike in *Mortenson*, plaintiffs here do not assert that they never read the Terms of Use.

Each of the cases cited by plaintiffs has no bearing on the pertinent issues here, as those cases all concern whether a defendant's communication about terms of use, in isolation, adequately put the plaintiff on notice of the contents of those terms—but in none of those cases was there external confirmation of the recipients' awareness of those terms and constructive notice of their contents. *See* Opp. at 15-16 (citing *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012); *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 557 (1st Cir. 2005); *Robbins v. Comcast Cable Commc'ns, LLC*, 2019 WL 4139297, at *5 (W.D. Wash. Aug. 30, 2019); *Hunichen v. Atonomi*, 2019 WL 7758597, at *9 (W.D. Wash. Oct. 28, 2019); *Reichert v. Keefe Commissary Network, L.L.C.*, 2019 WL 7833109, at *1 (W.D. Wash. Oct. 30, 2019)). Here, there *is* external confirmation of the recipients' awareness of the Terms of Use, through the allegations in the Complaints, *supra* Section II.A.1. That awareness placed plaintiffs on constructive notice of the arbitration provision and means of acceptance. *See Mortenson*, 998 P.2d at 313.

### 3. Plaintiffs Accepted the Terms of Use by Continuing to Play BFG Games.

Because plaintiffs had actual and/or inquiry notice of the Terms of Use, they also knew or had reason to know that continuing to play BFG games would manifest their assent to the Terms. *Kater* Dkt. 206-2 at 32 ("By . . . accessing or using any Big Fish Offering, you agree to be bound by these Terms of Use[.]"). Plaintiffs do not dispute that they thereafter continued to play Big Fish Casino; as a result, they agreed to arbitrate their claims. *See Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610, at *5 (N.D. Cal. Apr. 1, 2005) (a consumer's access to and use of an online product or service "with knowledge of" the terms of use "constitute[s] acceptance of the terms").

**B. Defendants Have Not Waived Their Rights to Compel Arbitration.**

Plaintiffs argue that CDI and BFG waived certain of their arbitration rights because (1) CDI did not move to compel arbitration of Ms. Kelly's claims before she first asserted claims against CDI; and (2) BFG did not move to compel arbitration of Ms. Kater and Ms. Kelly's claims before they first asserted claims against BFG.[4] Opp. at 3-11. No matter who decides the waiver question,[5] plaintiffs' arguments fail. To show waiver, plaintiffs must establish that (1) CDI and BFG had knowledge of an existing right to compel arbitration; (2) CDI and BFG acted inconsistently with their arbitration rights; *and* (3) those purportedly inconsistent acts prejudiced plaintiffs. *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990). Plaintiffs fail to carry their "heavy burden of proof" with respect to all of these elements. *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1989).

**1. CDI Did Not Act Inconsistently With Any Existing Right to Compel Ms. Kelly's Claims to Arbitration.**

Ms. Kelly became a party in March 2019; prior to that point, she had not alleged any claims against CDI or any other defendant. Thus, before March 2019, CDI had no "existing right" to compel Ms. Kelly's non-existent claims to arbitration, and had no right to waive. *Britton*, 916 F.2d at 1412. Once Ms. Kelly asserted her claims, CDI promptly moved to compel arbitration. *Kater* Dkt. 100.

Nor did CDI act inconsistently with its right to arbitrate Ms. Kelly's claims. Before Ms. Kelly was a named plaintiff, she was not a party, and had no claim that CDI could have compelled to arbitration. As the Supreme Court has held, "[a] nonnamed class member is [not] a party to the class-action litigation before the class is certified." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) (citation omitted). And because Ms. Kelly was not a party before the Court until she was added as a named plaintiff, CDI could not have moved to compel arbitration of Ms. Kelly's claims at that time. *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011)

---

[4] Plaintiffs concede that Aristocrat has not waived any arbitration rights, and that no defendant waived any right to compel arbitration of Ms. Thimmegowda's claims. Opp. at 3, 7 n.1.

[5] If the Court concludes plaintiffs agreed to the Terms of Use, *see supra* Section II.A, any question of waiver should be delegated to the arbitrator. *See* Mot. at 14-15; *Hamby v. Power Toyota Irvine*, 2012 WL 13036860, at *7 (S.D. Cal. Mar. 22, 2012) (delegated questions of arbitrability include waiver). Plaintiffs do not argue otherwise. *See* Opp. at 13 (arguing the Court must decide "formation" issues).

("It does not appear to the Court that defendants could have moved to compel arbitration against such entities [because they were] . . . not parties to [the] action[.]" (citation omitted)); *Mora v. Harley-Davidson Credit Corp.*, 2012 WL 1189769, at *15 (E.D. Cal. Apr. 9, 2012), *report and recommendation adopted*, 2012 WL 3245518 (E.D. Cal. Aug. 7, 2012) (same). Once Ms. Kelly became a party with existing claims to compel to arbitration, CDI promptly enforced its arbitration rights. *See Kater* Dkt. 100; *see also, e.g., Olivares v. Hispanic Broad. Corp.*, 2001 WL 477171, at *1 (C.D. Cal. Apr. 26, 2001) (no waiver where the defendant moved to compel at "the first opportunity").

Plaintiffs try to avoid this common-sense conclusion by arguing that, because CDI waived its arbitration rights with respect to Ms. Kater, it also necessarily waived those rights as to any then-putative class member, including Ms. Kelly. *See* Opp. at 4. That is wrong. As multiple courts have held, waiver as to a named plaintiff does not result in waiver as to absent putative class members. *See Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1237 n.9 (11th Cir. 2018) (waiver of arbitration rights as to the named plaintiff did not mean defendant "ha[d] waived its rights to enforce the arbitration provisions . . . with each of the unnamed putative class members"); *see also Mora.*, 2012 WL 1189769, at *15 ("until a class is certified and the opt-out period has expired, unnamed Class members are not parties to this action, and their claims are not at issue" for purposes of asserting arbitration rights).

Plaintiffs' cited cases are inapplicable here, as they involved circumstances in which a party was deemed to have waived arbitration rights as to putative class members by taking extensive actions in litigation inconsistent with its arbitration rights *as to those putative class members*—none of which CDI has done. *See, e.g., In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1115, 1119 (10th Cir. 2015) (defendant raised arbitration rights only after class certification); *Kingsbury v. U.S. Greenfiber, LLC*, 2012 WL 2775022, at *5-6 (C.D. Cal. June 29, 2012) (defendant sought to arbitrate only after opposing four class certification motions); *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 943 (N.D. Cal. 2016) (suggesting in dicta potential waiver where the defendant moved for summary judgment before seeking to arbitrate class claims); *Edwards v. First Am. Corp.*, 289 F.R.D. 296, 307 (C.D. Cal. 2012) (defendant opposed two class certification motions, engaged in extensive class discovery, and never asserted arbitration rights as to any party until after class certification); *In re*

DEFENDANTS' REPLY IN SUPPORT OF RENEWED
MOTION TO COMPEL ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- 8 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON 98104-7097
+1 206 839 4300

*Universal Serv. Fund Tel. Billing Practices*, 320 F. Supp. 2d 1135, 1142 (D. Kan. 2004) (defendant never sought to compel arbitration of the named plaintiff's claim before class certification).

Here, CDI expressly invoked absent class members' agreements to arbitrate with CDI in its November 2018 Answer, *Kater* Dkt. 76, and moved to arbitrate Ms. Kelly's claims as soon as it had the opportunity, *Kater* Dkt. 100. CDI has not yet opposed class certification or sought summary judgment, and the only discovery it has served is a single interrogatory authorized by the Court in connection with defendants' motion to compel arbitration. To find waiver on these facts would be unprecedented. Because CDI acted consistently with its rights to arbitrate Ms. Kelly's claims and promptly moved to compel arbitration at the first opportunity, the Court should reject plaintiffs' waiver argument.

### 2. BFG Did Not Act Inconsistently With Any Existing Arbitration Right.

BFG had no "existing right" to compel arbitration of Ms. Kater's or Ms. Kelly's claims until March 2019, when they first pleaded claims against BFG. *See Kater* Dkt. 85; *Britton*, 916 F.2d at 1412. It promptly moved to compel arbitration thereafter, *Kater* Dkt. 100, foreclosing any waiver argument.

Plaintiffs contend that even though no claims were alleged against BFG, and BFG was not even a named defendant until March 2019, it still "could have sought to arbitrate" before that time and therefore acted inconsistently with its arbitration rights by not doing so. Opp. at 10. But plaintiffs do not explain *how* BFG could have sought to arbitrate such non-existent claims, which had not been asserted against BFG. In fact, the only authority plaintiffs cite in support, *Univar USA, Inc. v. Haas TCM, Inc.*, involved a *plaintiff* who petitioned to compel arbitration against a defendant that owed it money under a contract providing for arbitration of disputes, after the defendant refused the plaintiff's out-of-court request to arbitrate the dispute. 2009 WL 2406332, at *1 (W.D. Wash. Aug. 3, 2009). Plaintiffs have not identified a single case in which a defendant, like BFG, was found to have waived its right to compel arbitration of imaginary claims that had not yet been alleged against it.

Plaintiffs' other cited authorities—a smattering of out-of-circuit and out-of-state cases—are likewise inapposite. Those cases involved not merely a failure to intervene in a case to seek arbitration, but extensive conduct inconsistent with a right to arbitrate, like litigating the same dispute in a different forum, refusing an invitation to arbitrate, or expressly directing another party to the dispute to litigate.

DEFENDANTS' REPLY IN SUPPORT OF RENEWED
MOTION TO COMPEL ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- 9 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON 98104-7097
+1 206 839 4300

*See Robinson v. Alston*, 596 F. App'x 871, 873 (11th Cir. 2015) (defendant "ignor[ed] correspondence from the Plaintiffs seeking to initiate the arbitration proceedings."); *Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1358, 1366 (11th Cir. 1995) (defendant litigated prior action involving same dispute); *Bryant v. Clark*, 584 N.E.2d 687, 690 (Ohio 1992) (defendant insurer instructed insured to obtain a default judgment in litigation); *Booth v. Seaboard Fire & Marine Ins. Co.*, 285 F. Supp. 920, 925 (D. Neb. 1968) (not applying FAA or heavy burden of proving waiver, and stating in dicta that defendant had waived arbitration by not lodging a written demand for arbitration, as required in the arbitration agreement). BFG has done none of these things. Rather, it promptly moved to compel arbitration when it was named as a defendant. *Kater* Dkt. 100. That conduct was consistent with its right to compel arbitration. *See Meyer v. Kalanick*, 291 F. Supp. 3d 526, 535 (S.D.N.Y. 2018) (although its CEO had long been a defendant, Uber acted consistent with its arbitration rights by moving to compel once it was joined as a defendant).

### 3. Plaintiffs Have Not Been Prejudiced By Defendants' Timely Invocation of Their Arbitration Rights.

Plaintiffs also cannot establish waiver for the independent reason that BFG and CDI's timely invocation of their arbitration rights did not prejudice plaintiffs. *See Britton*, 916 F.2d at 1412. In considering whether a party has waived its arbitration rights, only prejudice *resulting from* that party's acts inconsistent with its rights is relevant. *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 697 (9th Cir. 1986). Because CDI and BFG have not acted inconsistently with their rights, there is no cognizable prejudice. *Id.* Plaintiffs also do not argue they would be prejudiced by BFG's enforcement of its arbitration rights. *See* Opp. at 8-11. That mandates rejection of their waiver argument as to BFG, as it is plaintiffs' "heavy burden" to prove prejudice. *Van Ness Townhouses.*, 862 F.2d at 758.[6]

---

[6] Plaintiffs claim that "Ms. Kater litigated this case for years as a putative class action," Opp. at 3, but no class issues have been litigated, no class discovery has occurred, and Ms. Kater has renounced her intention to serve as a class representative. *Kater* Dkt. 176 at 16 n.5. For the vast majority of time since the *Kater* case was filed it has either been (a) on appeal after Ms. Kater's complaint was dismissed, or (b) stayed pending resolution of other appeals. In any event, to the extent Ms. Kater litigated this case for years as a putative class action, she did so *before* naming BFG as a defendant; accordingly, any purported prejudice did not result from acts taken by BFG that were inconsistent with its arbitration rights.

DEFENDANTS' REPLY IN SUPPORT OF RENEWED
MOTION TO COMPEL ARBITRATION (2:15-cv-00612-
RBL; 2:19-cv-00199-RBL)

- 10 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON 98104-7097
+1 206 839 4300

Ms. Kelly's prejudice arguments as to CDI likewise fail. Plaintiffs posit that if CDI is permitted to compel arbitration of Ms. Kelly's claims, "both Ms. Kater and Ms. Kelly" would be prejudiced. *See* Opp. at 5. Any claimed prejudice to Ms. Kater (or anyone else, like putative class members) is irrelevant; what matters is the alleged prejudice to the "party opposing arbitration," which as to CDI in *Kater* is Ms. Kelly alone. *Britton*, 916 F.2d at 1412. And plaintiffs offer no argument or evidence as to any prejudice to Ms. Kelly resulting from CDI not having sought to compel arbitration of her claims before those claims were first alleged in March 2019. Ms. Kelly has not submitted to any discovery other than the sole interrogatory (authorized by the Court, *see Kater* Dkt. 191) to which she responded for purposes of this arbitration motion, and she has yet to litigate class certification or the merits of her claims.

By contrast, plaintiffs cite cases involving untimely attempts to compel arbitration after the parties had already expended significant resources in discovery (including class and expert discovery) and litigating class certification. *See, e.g.*, *Kingsbury* 2012 WL 2775022, at *6 (parties had "expended significant time and money to conduct discovery [and] litigate[d] four motions for class certification"); *Edwards v. First Am. Corp.*, 289 F.R.D. 296, 307 (C.D. Cal. 2012) (class had already been certified and defendants did not dispute prejudice); *Elliott v. KB Home N. Carolina, Inc.*, 752 S.E.2d 694, 703 (N.C. 2013) (class had been certified and significant expenses incurred); *Morgan v. AT&T Wireless Services, Inc.*, 2013 WL 5034436, at *2-3, 8 (Cal. Ct. App. Sept. 13, 2013) (unpublished) (parties had litigated class certification and undertaken "significant class certification-related discovery").

### C. As BFG "Affiliates," CDI and Aristocrat Are Entitled to Enforce the Terms of Use Arbitration Agreement.

Finally, plaintiffs assert CDI and Aristocrat have no right to enforce the Terms of Use arbitration agreement. Opp. 21-22. This too is a question for the arbitrator, not the Court, *see* Mot. at 14-15, 19-20; *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 492 F. App'x 150, 151 (2d Cir. 2012); *Grigsby v. DC 4400, LLC*, 2016 WL 7115903, at *5 (C.D. Cal. Dec. 5, 2016) ("Plaintiff is free to raise . . . with the arbitrator" its argument that "not every defendant here was a party to the Agreement."), and plaintiffs do not argue otherwise, *see* Opp. at 12 (arguing only that "the existence of a contract as a whole must be determined by the court prior to ordering arbitration"). Even

DEFENDANTS' REPLY IN SUPPORT OF RENEWED
MOTION TO COMPEL ARBITRATION (2:15-cv-00612-
RBL; 2:19-cv-00199-RBL)

- 11 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON 98104-7097
+1 206 839 4300

if it were proper for the Court to reach this issue, the arbitration provision plainly is enforceable by CDI and Aristocrat. The Terms of Use provide that BFG's "Affiliates" are entitled to enforce the arbitration agreement. *See* Dkt. 206-2 at 39 ("You and Big Fish agree that any dispute, claim or controversy arising out of or relating to your access to or use of any Big Fish Offering or to these Terms of Use . . . shall be determined by arbitration[.]"); *id.* at 32 ("The term 'Big Fish' means Big Fish Games, Inc. *along with its Affiliates*." (emphasis added)); *see also id.* ("Big Fish Games, Inc. and/or its Affiliates provide access to the Big Fish Offerings subject to the conditions set forth in these Terms of Use."). No such language was invoked in the cases plaintiffs cite. *See Haselwood v. Bremerton Ice Arena, Inc.*, 155 P.3d 952, 961 (Wash. Ct. App. 2007); *Riggins v. Bechtel Power Corp.*, 722 P.2d 819, 825-26 (Wash Ct. App. 1986).

These specific "Affiliate" terms supersede whatever the Terms of Use might say about third parties generally, *see* Opp. at 22, because "[i]t is a well-known principle of contract interpretation that "specific terms and exact terms are given greater weight than general language." *Adler v. Fred Lind Manor*, 103 P.3d 773, 786 (Wash. 2004) (citation omitted)). Plaintiffs do not dispute that the Terms of Use are enforceable by BFG's "Affiliates," or that CDI and Aristocrat are such "Affiliates"—indeed, plaintiffs ignore this contractual language altogether. *See* Opp. 21-22. Because CDI and Aristocrat are BFG "Affiliates," they are entitled to enforce the Terms of Use and arbitration agreement. Mot. at 14-15, 19-20; *see also Cox v. CA Holdings Inc.*, 2015 WL 631393, at *13 (S.D. Ind. Feb. 13, 2015) ("plain language" of the arbitration agreement determined which parties could enforce it); *Townsend v. Quadrant Corp.*, 153 Wash. App. 870, 889 (2009), *aff'd on other grounds*, 173 Wash. 2d 451 (2012) ("[O]rdinary principles of contract and agency" allow a parent to invoke an arbitration agreement to which only its subsidiary is a party "[w]hen the charges against the parent and subsidiary are based on the same facts, as is the case here, and are inherently inseparable."); *Prouty v. Gores Tech. Grp.*, 121 Cal. App. 4th 1225, 1234–35 (2004) (nonparty was entitled to enforce contract, despite general no-third-party-beneficiary provision, where specific provision expressly applied to the nonparty).

### III. CONCLUSION

For the foregoing reasons, and for the reasons presented in defendants' Motion, the Court should grant the Motion and stay the case pending resolution of the arbitration proceedings.

DEFENDANTS' REPLY IN SUPPORT OF RENEWED
MOTION TO COMPEL ARBITRATION (2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

- 12 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON 98104-7097
+1 206 839 4300

DATED: May 1, 2020						Respectfully submitted,

*/s/ Mark Parris*
*/s/ Paul Rugani*
Mark Parris (Bar No. 13870)
mparris@orrick.com
Paul F. Rugani (Bar No. 38664)
prugani@orrick.com
ORRICK HERRINGTON & SUTCLIFFE LLP
701 5th Avenue, Suite 5600
Seattle, WA 98104
Telephone: (206) 839-4320

*Attorneys for Defendants Aristocrat Technologies, Inc., Aristocrat Leisure Limited, Big Fish Games, Inc. and Churchill Downs Inc.*

*/s/ Emily Johnson Henn*
*/s/ Lindsey Barnhart*
Emily Johnson Henn (*pro hac vice*)
ehenn@cov.com
Lindsey Barnhart (*pro hac vice*)
lbarnhart@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306
Telephone: (650) 632-4700

*/s/ Gary Rubman*
Gary Rubman (*pro hac vice*)
grubman@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001
Telephone: (202) 662-6000

*/s/ Ashley M. Simonsen*
Ashley M. Simonsen (*pro hac vice* pending)
asimonsen@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4782

*/s/ Matthew Q. Verdin*
*/s/ David Watnick*
Matthew Q. Verdin (*pro hac vice*)
mverdin@cov.com
David Watnick (*pro hac vice*)
dwatnick@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
Telephone: (415) 591-7065

*Attorneys for Defendants Aristocrat Technologies, Inc., Aristocrat Leisure Limited, and Big Fish Games, Inc.*